**PERKINS COIE LLP**
David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com
Lauren A. Trambley, Bar No. 340634
LTrambley@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
Katena Computing Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COINMINT, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>KATENA COMPUTING TECHNOLOGIES, INC. and DOES 1-40, inclusive,<br><br>        Defendants. | Case No. 4:23-cv-04683-DMR<br><br>**KATENA COMPUTING TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION OR, IN THE ALTERNATIVE, TO QUASH PURPORTED SERVICE UNDER RULE 12(B)(5); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         November 9, 2023<br>Time:         1:00pm<br>Courtroom: 4, 3rd Floor<br>Judge:        Hon. Donna M. Ryu |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Thursday, November 9, 2023, at 1:00 p.m. or as soon as the matter may be heard thereafter, in the Oakland Courthouse of the U.S. District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, before Chief Magistrate Judge Donna M. Ryu or another duly-appointed judge, Defendant Katena Computing Technologies, Inc. ("Katena") will and hereby does move for an order compelling arbitration of the above action (the "Action") and staying the Action pending arbitration, or, in the alternative, quashing defective service of process upon Katena.

Specifically, Katena moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure for an order compelling arbitration of the above-captioned action (the "Action") pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and staying the Action pending completion of arbitration pursuant to 9 U.S.C. § 3. In the alternative, Katena moves under Rule 12(b)(5) of the Federal Rules of Civil Procedure for an order quashing Plaintiff's defective service of process on Katena and requiring Plaintiff to effect proper service before this Action may further proceed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This Court should compel arbitration and stay the Action. The contract entered into by Plaintiff Coinmint LLC ("Coinmint") and Katena contains a valid and enforceable arbitration provision covering the breach of contract claim that is the subject of the Action. Coinmint concedes that the arbitration provision is valid and enforceable. Compl. ¶ 14. Indeed, Coinmint has already invoked that same arbitration provision, initiating an arbitration against Katena before the American Arbitration Association (the "Arbitration," AAA Case No. 01-22-0001-7627), and asserting claims based on the same alleged facts as those asserted here. Further, this Court has already stayed a similar case brought by Coinmint against Katena's purported co-conspirators, arising from the same alleged facts, *Coinmint, LLC v. DX Corr Design, Inc.*, Case No. 3:23-cv-00599-RS (N.D. Cal.), on the basis that that action fell within the scope of the arbitration provision at issue here. The Arbitration hearing commenced on August 28, 2023, and is nearly

complete.[1]

Further, while Plaintiff appears to contend that process was served upon Katena, such service was defective in that it did not include copies of the summons and complaint. In order to preserve and not waive its defense that Coinmint has failed to properly serve the summons and complaint, Katena moves this Court in the alternative under Rule 12(b)(5) for an order quashing Coinmint's defective service and requiring that Coinmint effect proper service under 28 U.S.C. § 1448 before this action may further proceed.

## II.  BACKGROUND

### A.  Coinmint and Katena enter into the Agreement and Coinmint promptly breaches because it lacked the funds

Coinmint is a bitcoin mining company that operates a large digital currency data center in New York. Compl. ¶ 17. As Bitcoin prices soared in 2021, Coinmint (as the result of another lawsuit in which Ashton Soniat, Coinmint's principal financier, found himself) had been precluded from acquiring any meaningful number of Bitcoin mining rigs by a Delaware Chancery Court order. Declaration of Michael Gao ("Gao Decl") ¶ 6. By the time the Chancery Court had lifted the Order, most established Bitcoin mining rig manufactures had radically increased the price being charged for rigs per terahash ("/th")—the measure of processing power—and delivery times were as long as two years. *Id.* ¶ 4.

So, Coinmint turned to Katena, a start-up company focused on designing and manufacturing bitcoin mining rigs using semiconductor chips with cutting-edge technology. Compl. ¶¶ 2, 17; Gao Decl. ¶ 2. Coinmint negotiated aggressively and obtained a great deal, with prices that were half the market rate. *See, e.g.*, https://data.hashrateindex.com/asic-index-data.[2] Moreover, Katena was able to offer delivery far faster than other suppliers, as long as Coinmint paid the down payment so that Katena could fabricate the chips and manufacture the rigs. Gao Decl. ¶ 5. By all accounts, it was a great deal—far below market—that solved Coinmint's business issues.

---

[1] It is expected that the Arbitration Hearing will have been fully completed by the time this motion is heard.
[2] The hashrate price index for the relevant period may be viewed by clicking "all" in the top right-hand corner of the referenced webpage. Katena's offered rig was between 25 and 38 j/th.

Coinmint and Katena memorialized the deal in a Sales and Purchase Agreement dated May 12, 2021 (the "SPA"), and an associated Purchase Order No. 1 (collectively, the "Agreement"). Compl. ¶¶ 11; Gao Decl. ¶ 7; Declaration of John R. Hardin ("Hardin Decl.") ¶ 2. In the Agreement, Coinmint agreed to pay Katena $150 million for bitcoin mining rigs. Compl. ¶ 11; Gao Decl. ¶ 7. Under the terms of the Agreement, Coinmint was required to pay 25% down ($37.5 million), which would have provided Katena the ability to start the manufacturing process. Gao Decl. ¶ 7. But Coinmint instead breached, failing to make the down payment timely. *Id.* ¶ 9. And while Coinmint struggled over the next several months to pay money when it could, it simply didn't have the financial wherewithal to actually honor the Agreement and never paid Katena the full amount of the down payment that was due under the Agreement. *Id.* Instead, Coinmint decided to ask for its partial payment back, notwithstanding that it was expressly *non-refundable* under the terms of the Agreement. *Id.* ¶ 10. When Katena stood by its rights under the Agreement, Coinmint started to make up fantastical tales in its ongoing quest to recover these funds; this lawsuit is simply the latest one.

### B. The Agreement requires the Parties to arbitrate any dispute before the American Arbitration Association

In the Agreement, Coinmint and Katena agreed to arbitrate disputes between them before the American Arbitration Association, including all disputes and claims arising out of or relating to the Agreement. Specifically, Section 19.2 of the SPA (the "Arbitration Clause") contains a very broad arbitration provision, stating:

> ***Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination hereof or any dispute regarding non-contractual obligations arising out of or relating to this Agreement shall be referred to and finally resolved by arbitration*** administered by American Arbitration Association under the rules for commercial arbitration of the American Arbitration Association in force when the notice of arbitration is submitted. The decision and awards of the arbitration shall be final and binding upon the parties hereto.

SPA § 19.2, Hardin Decl. ¶ 3 (emphasis added).

### C. The Parties are currently arbitrating the very same dispute alleged in the Action in an arbitration pending before the American Arbitration Association in which the hearing has already commenced

Coinmint breached the Agreement. As a result of its financial problems, it failed to make the contractually required *full* down payment, triggering a liquidated damages provision. Gao Decl. ¶ 9. In an effort to evade its obligations under the Agreement, Coinmint filed an arbitration demand before the American Arbitration Association on April 27, 2022. Hardin Decl. ¶ 4; Compl. ¶13. Coinmint amended its arbitration demand on August 29, 2022. Hardin Decl. ¶ 4. Coinmint is seeking the same relief in the Arbitration that it is seeking in this Action: a refund of its nonrefundable payments under the Agreement based on the same alleged conduct by Katena. *Id.*

Katena filed an answering statement and notice of counterclaim on September 16, 2022, countersuing in part for breach of contract and seeking liquidated damages in the amount of $37.5 million guaranteed under the Agreement. *Id.* ¶ 5. The hearing in the Arbitration commenced on August 28, 2023, and is scheduled to end in mid-October. *Id.* ¶10.

### D. Coinmint files this lawsuit.

On July 20, 2023, Coinmint filed this lawsuit in the Superior Court of California for the County of Santa Clara. Coinmint asserts one cause of action – breach of contract of the Agreement containing the Arbitration Clause. Compl. ¶¶ 54–58. Coinmint necessarily asserts that the Agreement with Katena is binding and enforceable. *Id.* ¶ 55 ("Katena entered into the Contract with Coinmint to provide Katena-designed Bitcoin mining rigs …."). Coinmint further acknowledges that the Agreement contains an arbitration provision and alleges that "Coinmint is presently pursuing its claims against Katena in arbitration *pursuant to the arbitration clause in the [Agreement]*." *Id.* ¶ 13 (*emphasis added*).

On September 12, 2023, Katena removed the lawsuit to this Court under the Federal Arbitration Act ("FAA") and on the basis of diversity jurisdiction. ECF No. 1.

### E. Coinmint (finally) seeks injunctive relief

In September 2022, Coinmint first raised with the arbitration panel the prospect of injunctive relief. Hardin Decl. ¶ 7. After waiting six months, Coinmint formally sought injunctive relief from the panel; filing a writ of attachment with the arbitrators on March 3, 2023, that sought

to enjoin Katena from disposing of certain assets pending the arbitration. *Id.*; Compl. ¶ 14. That application was denied by the Panel on both procedural and substantive grounds on March 21, 2023. Hardin Decl. ¶ 7; Compl. ¶ 15. Coinmint then waited three months until July 20, 2023—weeks before the arbitration hearing was set to commence—to file an Application for a Writ of Attachment in the Superior Court of California for the County of Santa Clara at the same time it filed the Action. Hardin Decl. ¶ 8. The clerk rejected Coinmint's application on July 31, 2023, for failure to file a required form, informing Coinmint of the exact form it was required to complete. *Id.* Coinmint then waited until September 1, 2023, to file that form and two others with the Court.[3] As of the date upon which the Action was removed, Katena had not received notice from Coinmint of the date upon which its motion was ultimately to be heard.[4]

## III. ARGUMENT

### A. The Motion to compel arbitration and to stay the Action should be granted

In ruling on a motion to compel arbitration under the FAA, the Court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the answer to both questions is "yes," the court must compel arbitration and stay the action. *Id.* Here, Coinmint concedes that the Arbitration Clause is valid, and Coinmint's sole claim – for breach of contract – falls squarely within the scope of that clause. Compl. ¶ 13. Accordingly, the Court is required to compel Coinmint to arbitrate this dispute and to stay the action under the FAA.

#### 1. The FAA applies to this dispute

The FAA applies to any contract affecting interstate *or* foreign commerce. 9 U.S.C. §§ 1, 2; *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015). Here, Katena, a California corporation, agreed to produce and deliver goods to Coinmint, a Puerto Rico limited liability company, for use at Coinmint's plant in New York. Compl. ¶¶ 1, 2, 11. Further, the

---

[3] The fact that these three documents were filed months after Coinmint filed its original pleading is relevant for reasons discussed below.
[4] Such motion, of course, cannot now be heard by the Santa Clara Superior Court since that court lost jurisdiction upon removal of the Action.

-5-
DEFENDANT'S MOTION TO COMPEL ARBITRATION, STAY ACTION, AND QUASH DEFECTIVE SERVICE

computers at issue were to be assembled in China using a specialized microchip designed by Katena, and manufactured in Taiwan, and the parties discussed their intention that this delivery would occur somewhere in Asia. Gao Decl. ¶ 8.

There is simply no disputing that the Agreement affects interstate (and for that matter foreign) commerce, and that the FAA accordingly applies. Indeed, during the initial conference before that AAA panel in the Arbitration, the Parties acknowledged that the Agreement was subject to the FAA. Hardin Decl. ¶ 6.

### 2. The Court must refer the Action to arbitration, as the parties have a valid agreement to arbitrate this dispute and the claims arise out of that agreement

The FAA reflects a "liberal federal policy favoring arbitration*.*" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344.

In ruling on a motion to compel arbitration under the FAA, the Court must first determine whether a valid agreement to arbitrate exists. *Lifescan, Inc.*, 363 F.3d at 1012. Coinmint admits that it does. Compl. ¶ 13.

Next, the Court must determine whether the Arbitration Clause at issue encompasses this dispute. *Lifescan, Inc.*, 363 F.3d at 1012. The Arbitration Clause here broadly covers "[a]ny dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination" of the Agreement. Hardin Decl. ¶ 3; SPA §19.2. *This expressly includes claims for "breach" of the Agreement.* Coinmint alleges only one cause of action in its complaint—Breach of Contract—alleging that Katena breached "a $150 million purchase contract pursuant to which Katena was to provide to Coinmint thousands of Bitcoin mining rigs." Compl. ¶ 11; *see also* Compl. ¶¶ 54–58. The contract that was allegedly breached is the very same Agreement that includes the Arbitration Clause above. The Action plainly falls within the scope of the Arbitration Clause.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the Court is required to refer the Action to arbitration. Conveniently, an arbitration between the same parties, surrounding the same dispute as is raised here, is already pending.

### 3. The Court must additionally stay the Action pending arbitration

Where issues before the court fall within an arbitration agreement, the court must grant a request for a stay. As stated in Section 3 of the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

As discussed above, Coinmint's breach of contract claim falls squarely within the Arbitration Clause contained in the Agreement, and the Action is therefore referable to arbitration. Accordingly, the Action must be stayed pending that arbitration.[5]

### B.   In the alternative, the Court should Quash Coinmint's defective service

To properly effect service upon a corporation under California law, a Plaintiff must deliver "a copy of the summons and complaint" upon one of the categories of persons expressly authorized to receive service. Cal. Civ. Proc. Code § 416.10. Here, while Coinmint purports to have served Katena, the documents actually served *did not* include copies of the summons or complaint. Katena therefore moves under Rule 12(b)(5) for an order quashing Coinmint's purported service and requiring that Coinmint be required to properly effect service before this Action may proceed. "Rule 12(b)(5) allows the defendant to attack the manner in which service

---

[5] Coinmint may argue that its purpose in filing the Action was merely as a mechanism to seek a writ of attachment in aid of arbitration. California law does provide a procedure for obtaining such a writ, however it does *not* involve the filing of a lawsuit, but rather the filing of an application accompanied by a copy of the arbitration demand and any response thereto in the "county in which [the] arbitration proceeding is pending" (which would be San Francisco, not Santa Clara). Cal. Code Civ. Proc. § 1281.8(b). Coinmint instead filed a brand-new action against Katena in state court, affirmatively seeking judgment for $23,397,197.91. *See* Compl., Prayer for Relief.

was, or was not, attempted. Once service is challenged, the plaintiff bears the burden of proving that service was valid under Rule 4." *Pine v. City of Oakland*, No. 19-cv-2136, 2020 WL 2512404 (N.D. Cal. May 16, 2020).[6]

Prior to the date upon which the Action was removed, Coinmint filed two purported proofs of service in Santa Clara Superior Court. *See* Hardin Decl., ¶ 9 and Exhs. A and B. The first of these states that Katena was served by personal service on "Charlotte Banice, A Registered Agent, Inc., Registered Agent for Service of Process" at "8 The Green Suite A, Dover, DE 19901." Hardin Decl. Ex. A at p. 1. The second states that Katena was served by substituted service by leaving a copy with a John Doe located at an address in Los Gatos which Coinmint asserts is the "place of business of the person to be served" and by subsequently mailing the same papers to Katena's CEO Zijing Gao, at the same address. Hardin Decl. Exh. B at p. 1.[7]

While the each of these proofs of service list eleven documents that were purportedly served, *only the last three documents* on this list were actually served during each of the two service attempts referenced above: [1] a Civil Lawsuit Notice, form CV-5012, [2] an Application for Right to Attach Order and Writ of Attachment, Form at-105, and [3] a Notice of Application and Hearing for Right to Attach Order and Writ of Attachment, Form AT-115. Gao Decl. ¶ 18. Coinmint's process servers did not ever, whether on August 11, August 14, or at any other time, deliver copies of the summons and complaint to these or any other persons or addresses affiliated with Katena. Gao Decl. ¶ 19.[8]

---

[6] Rule 12(h)(1) compels Katena to assert the defense of lack of service though a Rule 12(b) motion to avoid waiving it. *See, e.g.*, *Johnson v. Yaghoubian*, 2018 WL 6592778, at *3 (E.D. Cal. Dec. 14, 2018) (barring defendant who asserted that it was "not properly served with the notice of motion for default, the order entering default or the default judgment" from challenging default judgment because defendant had "waived" the "affirmative defense of insufficient service of process" by failing to raise it in an answer or pre-answer motion).

[7] Considering that these service packages did not include a copy of the summons or complaint, they were ineffective. But even if they had, they would nonetheless be ineffective since "A Registered Agent, Inc." is *not* registered in California as Katena's registered agent for service of process (Gao Decl. ¶ 11) and the Los Gatos address is *not* Mr. Gao's place of business (*see* Gao Decl. ¶ 14). This forms yet another independent basis upon which to quash the defective service under Rule 12(b)(5).

[8] It is noteworthy that the three documents that actually were served during these two service attempts were the same three documents that were filed by Coinmint in Santa Clara Superior Court on September 1, 2023 – after that court called-out Coinmint for having failed to file the necessary documents in support of its motion for a writ of attachment. It may be that, due to a miscommunication between Coinmint and its process server, only these three documents were

Upon learning of the defective service attempts, counsel for Katena reached out to Coinmint's counsel and offered to accept service on behalf of Katena. Although this would have resolved this issue and avoided the necessity of raising it with the Court, Coinmint's counsel would not agree to do so. It should also be noted that in light of the active pending arbitration, Coinmint's and Katena's counsel have for months been in constant contact. Yet Coinmint never informed Katena's counsel of the filing of the Action nor asked them to accept service.[9]

Since the summons and complaint were not served upon Katena, the service attempts were defective and should be quashed, and Coinmint ordered to serve Katena with an unredacted[10] version of the summons and complaint. *Hickory Travel Systems, Inc. v. TUI AG*, 213 F.R.D. 547, 555 (N.D. Cal. 2003) (holding that "quashing service is the typical remedy if initial defects in service might be corrected"); *S.J. v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir.2006) (holding that where service of process is insufficient, district court has "discretion to dismiss [the] action or quash service").

## IV.  CONCLUSION

For the reasons stated above, Defendant Katena Computing Technologies, Inc. requests the Court to compel Coinmint to arbitrate its claim, stay this matter pending arbitration, and to quash the defective service upon Katena.

---

served while the summons, complaint, and other documents – filed with the Court months earlier – were omitted. But, regardless of the reason for this omission, the service was defective.

[9] While Katena is loathe to burden the Court with addressing an issue that could have been resolved were Coinmint willing to serve Katena's counsel, it is compelled to do so since Rule 12(h)(1) may be read to compel Katena to assert the defense of lack of service though a Rule 12(b) motion to avoid waiving it. See, e.g., *Johnson v. Yaghoubian*, 2018 WL 6592778, at *3 (E.D. Cal. Dec. 14, 2018) (barring defendant who asserted that it was "not properly served with the notice of motion for default, the order entering default or the default judgment" from challenging default judgment because defendant had "waived" the "affirmative defense of insufficient service of process" by failing to raise it in an answer or pre-answer motion).

[10] The proofs of service filed by Coinmint in the Santa Clara Superior Court state that only a redacted copy of the complaint was served. While, in fact, not even a redacted copy was served, Coinmint should be ordered to serve an unredacted copy so that Katena can properly respond to the allegations of the complaint.

DATED: September 19, 2023

**PERKINS COIE LLP**

By: /s/
David P. Chiappetta
Lauren A. Trambley
Attorneys for Defendant
Katena Computing Technologies, Inc.