1  MARC J. SCHNEIDER, State Bar No. 214609
   mschneider@stradlinglaw.com
2  JASON DE BRETTEVILLE, State Bar No. 195069
   jdebretteville@stradlinglaw.com
3  STRADLING YOCCA CARLSON & RAUTH LLP
   660 Newport Center Drive, Suite 1600
4  Newport Beach, CA 92660-6422
   Telephone: 949 725 4000
5  Facsimile: 949 725 4100

6  STEVEN D. FELDMAN, NY State Bar No. 2994407
   (*Admitted Pro Hac Vice*)
7  STRADLEY RONON STEVENS & YOUNG, LLP
   sfeldman@stradley.com
8  100 Park Avenue, Suite 2000
   New York, NY 10017
9  Telephone: (212) 404-0659

10 KEITH R. DUTILL, PA State Bar No. 46387
   (*Pro Hac Vice Admission Pending*)
11 STRADLEY RONON STEVENS & YOUNG, LLP
   kdutill@stradley.com
12 30 Valley Stream Parkway
   Malvern, PA 19355
13 Telephone: (610) 640-5809

14 Attorneys for Plaintiff
   COINMINT, LLC
15
                    **UNITED STATES DISTRICT COURT**
16
                  **NORTHERN DISTRICT OF CALIFORNIA**
17
                           **SAN FRANCISCO**
18
19 COINMINT, LLC,                    | CASE NO. 3:23-cv-04683-RS
                                       Honorable Richard Seeborg
                    Plaintiff,
20
21                  vs.               **PLAINTIFF'S COMBINED OPPOSITION TO
                                      CONFIRMATION OF ARBITRATION
   KATENA COMPUTING              AWARD AND CROSS-MOTION TO VACATE
22 TECHNOLOGIES, INC.,           ARBITRATION AWARD**

23                  Defendant.
                                      (Related to Dkt. 27)
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4872-3464-1075v8/108215-0003                              3:23-cv-04683-RS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday May 9, 2024 at 1:30 pm, or such later date as may be set by the Court, Plaintiff Coinmint, LLC ("Plaintiff" or "Coinmint") will move to vacate the arbitration award. Plaintiff files the instant combined opposition to defendant Katena Computing Technologies, Inc.'s ("Katena") petition to confirm the award (Dkt. 27 ("Petition")) and memorandum in support of its motion to vacate the arbitration award.

Coinmint respectfully request that the Court deny confirmation and enter an order vacating the arbitration award pursuant to the FAA because this is the rare case in which the arbitrators were guilty of "misconduct" and "misbehavior" by which the rights of a party was prejudiced; "exceeded [their] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made;" and manifestly disregarded the law. 9 U.S.C. § 10(a). Coinmint bases its request on the instant motion, the declaration of Randall M. Foret, filed in support of this motion, and all documents filed in this action.

Dated: April 1, 2024                      STRADLING YOCCA CARLSON & RAUTH LLP

                                          By:    */s/ Marc J. Schneider*
                                                 Marc J. Schneider
                                                 Jason de Bretteville

                                          STRADLEY RONON STEVENS & YOUNG, LLP
                                                 Steven D. Feldman *(Appearing Pro Hac Vice)*
                                                 Keith R. Dutill (*Pro Hac Vice Admission Pending*)
                                                 Attorneys for Plaintiff
                                                 COINMINT, LLC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-

PLAINTIFF'S COMBINED OPPOSITION TO CONFIRMATION OF ARBITRATION AWARD AND CROSS-MOTION TO VACATE ARBITRATION AWARD

4872-3464-1075v8/108215-0003                                      3:23-cv-04683-RS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................1

II.    FACTUAL BACKGROUND ...............................................................2

III.   PROCEDURAL HISTORY.................................................................6

IV.    ARGUMENT ........................................................................................7

     A.   Legal Principles .........................................................................7

     B.   Coinmint's Right To A Transcribed Record.............................7

     C.   The Arbitrators Sua Sponte Stripped Coinmint Of Its Right To A Transcribed Record ...............................................8

     D.   The Arbitrators Acted Without Due Process And Caused Significant Prejudice to Coinmint ...........................................10

     E.   The Four Untranscribed Witnesses Were Key To Coinmint's Claims...............14

     F.   Based On The Same Rationale, The Panel Refused To Permit Coinmint Access To Key Document Discovery...................16

     G.   The Panel's Refusal To Allow A Record Interfered With Coinmint's Right To Confront And Cross-Examine Witnesses ...........................17

     H.   After Preventing The Creation Of A Proper Record, The Panel Misstated Critical Untranscribed Testimony To Justify Its Untenable Award .................21

V.     RELIEF REQUESTED: VACATUR AND REMAND BEFORE A DIFFERENT PANEL IS THE APPROPRIATE REMEDY...................24

VI.    CONCLUSION...................................................................................24

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-iii-

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,
  913 F.3d 1162 (9th Cir. 2019) ..................................................................14

*Azod v. Robinson*,
  2024 WL 163371 (9th Cir. Jan. 16, 2024) ...................................................7

*Bergerco, U.S.A. v. Shipping Corp. of India*,
  896 F.2d 1210 (9th Cir. 1990) ...................................................................10

*Coinmint LLC v. DX Corr Design Inc. et al.*,
  No. 23CV410979 (Cal. Sup. Ct. 2023)........................................................6

*Coinmint, LLC v. DX Corr Design, Inc., et al*,
  No. 23-CV-410979 . (Cal. Super. Ct. Jan. 26, 2023)..................................15

*Coinmint, LLC v. DX Corr Design, Inc., et al.*,
  No. 3:23-cv-00599-RS (N.D. Cal. Apr. 24, 2023)...................................2, 3

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) .....................................................................7

*Davis v. Alaska*,
  415 U.S. 308 (1974)...................................................................................17

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)...................................................................................17

*Haliym v. Mitchell*,
  492 F.3d 680 (6th Cir. 2007) .....................................................................13

*Hardy v. United States*,
  375 U.S. 277 (1964)...................................................................................10

*ICAP Corporates, LLC v. Drennan*,
  2016 WL 644145 (D. N.J. Feb. 17, 2016) .................................................21

*Kyocera v. Prudential-Bache Trade Services*,
  341 F.3d 987 (9th Cir. 2003) .......................................................................7

*Lapine Technology Corp. v. Kyocera Corp.*,
  130 F.3d 884 (9th Cir. 1997) (overruled on other grounds) .......................7

*Lindsey v. Travelers Com. Ins. Co.*,
  636 F. Supp. 3d 1181 (E.D. Cal. 2022), *aff'd*, No. 22-16795, 2023 WL
  8613598 (9th Cir. Dec. 13, 2023) ..............................................................16

-iv-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

*Major League Baseball Players Ass'n v. Garvey*,
    532 U.S. 504 (2001)...................................................................................................24

*Move, Inc. v. Citigroup Global Mkts.*,
    840 F.3d 1152 (9th Cir. 2016) ...................................................................................7

*Pac. Motor Trucking Co. v. Auto. Machinists Union*,
    702 F.2d 176 (9th Cir. 1983) ...................................................................................14

*Singh v. Holder*,
    638 F.3d 1196 (9th Cir. 2011) (abrogated on other grounds)...................................10

*Thomas Kinkade Co. v. Hazlewood*,
    No. C 06 7034 MHP, 2007 WL 2462149 (N.D. Cal. Aug. 29, 2007) ....................24

*Thomas Kinkade Co. v. Lighthouse Galleries, LLC*,
    2010 WL 436604 (E.D. Mich. Jan. 27, 2010)..........................................................23

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,
    591 F.3d 1167 (9th Cir. 2010) ...................................................................................7

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987)...................................................................................................24

*United States v. Rechnitz*,
    75 F.4th 131 (2d Cir. 2023) .....................................................................................10

*Wachovia Sec., LLC v. Wiegand*,
    No. 07CV243 IEG (BLM), 2007 WL 9776732 (S.D. Cal. Apr. 16, 2007) .............24

*Westerlund v. Landmark Aviation*,
    2010 WL 3171044 (C.D. Cal. Aug. 9, 2010)...........................................................24

**Statutes**

9 U.S.C. § 10.................................................................................................................1

9 U.S.C. §10(a)..............................................................................................................7

9 U.S.C. § 10(b)...........................................................................................................24

Federal Arbitration Act................................................................................................25

**Rules**

American Arbitration Association Rule R-18...............................................................14

American Arbitration Association Rule R-23...............................................................14

American Arbitration Association Rule R-28.................................................................8

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-v-

TABLE OF AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Federal Arbitration Act provides for the review and remedy of arbitration awards rendered without fairness or due process. *See* 9 U.S.C. § 10. Vacatur is required where arbitrators exceed their powers, engage in misbehavior that prejudices the fundamental rights of a party, or manifestly disregard the law. This case meets that standard and merits vacatur.

Coinmint, LLC ("Coinmint") commenced an arbitration to recoup $23.4 million it paid to Katena Computing Technologies, Inc. ("Katena") after Katena, a start-up, induced Coinmint to sign a $150 million contract to purchase Bitcoin mining rigs. Unknown to Coinmint, Katena had no office or employees in the U.S., nor the financing needed to perform. Despite receiving $23.4 million from Coinmint, Katena never produced a single computer chip. The bribery and fraud scheme described in the arbitration demand included a brazen and largely successful effort by Katena to illegally influence the Coinmint CFO negotiating the deal through promises of lucrative employment with Katena and equity in the company – a scheme memorialized in a series of text messages among Katena executives. This Court previously reviewed these text messages in a separate action, and denied Katena's effort to block the shocking messages from public disclosure. The arbitrators brushed aside these outrageous text messages, misstated key witnesses' testimony after insisting it be taken without reporters, refused to allow Coinmint to obtain critical documents, denied Coinmint's requests for relief, and awarded Katena $14 million in liquidated damages on its Counterclaim, in addition to the $23.4 million previously paid by Coinmint.

Coinmint vehemently disagrees with the Award and its stated rationale, but that is not the basis for this Motion. Instead, Coinmint seeks vacatur because the Panel exceeded its powers and engaged in misbehavior and misconduct, imposing a series of biased and outlandish rulings that caused the arbitration to be so fundamentally flawed that Coinmint was deprived of due process. The Panel created its own irreconcilable conflict by entering Orders that robbed Coinmint of its due process rights so that the Panel could "protect" non-parties who are defendants in a parallel proceeding before this Court. Specifically, contrary to the governing rules, and without any

-1-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES
4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

1   semblance of due process, the Panel denied Coinmint the right to have a court reporter present

2   for select key witnesses, stripping Coinmint of its right to confront and cross-examine witnesses

3   with that testimony. The Panel also prevented Coinmint from obtaining critical documents in

4   discovery, again to "protect" these non-parties and Katena. This misconduct enabled the Panel to

5   misstate critical testimony, jury important documents, and justify an otherwise untenable Award.

6          In sum, the arbitrators' prejudiced rulings allowed Katena to secure a transcribed record

7   of its evidence, but then, without any due process, deny Coinmint's right to have a reporter

8   present to transcribe its most critical witness testimony, including the testimony of Coinmint's

9   former CFO who Katena bribed with a job offer, and Coinmint's expert technology consultant

10  who turned out to be a colleague of a Katena co-founder and an undisclosed advisor to his

11  company. This irredeemably prejudiced Coinmint's presentation of evidence. The half-baked

12  record of this arbitration proceeding evidences misconduct and misbehavior by the Panel, and a

13  manifest disregard for law and for the most basic due process rights of Coinmint. Pursuant to the

14  Federal Arbitration Act and the established law of this Circuit, the award produced by this

15  fundamentally flawed proceeding must be set aside.

16  **II.     FACTUAL BACKGROUND**

17         The factual contentions underlying the claim in arbitration and the context for this

18  Motion include, among other things, the bribery of a corporate executive and the creation of a

19  bogus due diligence report to facilitate a $150 million fraudulent contract. This Court accurately

20  summarized certain of the facts at issue in ruling on a series of motions filed in the action

21  captioned *Coinmint, LLC v. DX Corr Design, Inc., et al.,* No. 3:23-cv-00599-RS, ECF No. 40

22  (N.D. Cal. Apr. 24, 2023) (the "DX Corr Litigation").

23         Coinmint contracted to purchase approximately $150 million worth of cutting-edge

24  Bitcoin mining rigs[1] from Katena. *See* Exhibit A, Final Arbitration Award at 4-8. Katena held

25  itself out as a sophisticated creator of super-fast, energy efficient ASIC chips to enable faster and

26  more economical Bitcoin mining. *See* Exhibit B, First Am. Arbitration Demand ¶ 3 (Aug. 29,

27

28

---

[1] A Bitcoin mining rig is a constellation of Application Specific Integrated Circuit ("ASIC") chips working in tandem to perform complex computer calculations to "mine" Bitcoin.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                           3:23-cv-04683-RS

2022). In truth, however, Katena was selling "vaporware," a product that did not exist. It had never actually created or delivered a single ASIC chip, a single Bitcoin mining rig or even a prototype. Ex. B ¶ 8. It lacked the financing to fund its efforts, and never before or after delivered anything to any customer, including Coinmint. *Id.*

In order to induce Coinmint to sign a contract, Katena executives secretly offered a lucrative job and equity stake in Katena to Coinmint's lead negotiator, Chief Financial Officer ("CFO") Michael Maloney ("Maloney"). These texts, among others, between Katena's co-founders, CEO Henry Monzon ("Monzon") and Michael Gao ("Gao"), evidence the job offer:

> Gao:    The only world where this would be different is if
>         Maloney really wants the job
>
>             *       *       *
>
> Monzon: I do think he wants the job
>
> Gao     Hmmm... Then where's the urgency

*See* Exhibit C at KATENA006594-95 (May 4, 2021 text string). Maloney, eager to leave Coinmint and oblige his prospective employers at Katena, agreed to a series of one-sided contractual provisions that advantaged Katena at Coinmint's expense, including an immediate payment of $37.5 million. Even Gao was stunned: "Wow Mike [Maloney] even put clauses in our favor into the document. He must really wanna [sic] be hired." Exhibit D at KATENA006705 (May 8, 2021 text string). None of Maloney's machinations were shared with anyone else at Coinmint, and he conspicuously failed to share the proposed contract with Coinmint's general counsel or any outside counsel before informing Coinmint's Chairman that it was ready for his signature. Ex. B at ¶¶ 24-25.

When Coinmint's Chairman requested an outside expert consultant to investigate and report on whether the technology would perform as promised, Katena executives and the corrupted Coinmint CFO conspired to select an expert closely aligned with Sagar Reddy ("Reddy"), a Katena co-founder and its Chief Technology Officer ("CTO"). Ex. A. at 10. The Katena executives and Maloney hid from Coinmint's Chairman Ashton Soniat ("Soniat") and others that the consultant was not an unconnected, unconflicted third-party. This so-called

"expert" conducted no meaningful investigation into Katena's technical abilities, and his final report was secretly ghost-written by Katena's CTO. The expert report was a farce, complete with a mislabeled photograph clipped from an equipment maker's web page. Texts between Katena's Monzon and Reddy outlined their plan to create this phony expert report:

| | |
|---|---|
| Monzon: | Need an Engineer for Coinmint to hire to do tech due dil[igence] on Katena |
| Reddy: | ??? |
| Monzon: | The CFO at Coinmint will just say Eng[ineer] is his recommendation[.] Didn't come from us[.] Coinmint is customer[.] Wanting to place $100M order[.] |
| Reddy: | Oh, that kind. But [he] wants us to recommend [an] engineer? |
| Monzon: | Who can you identify that will do tech due dil on you, friendly, rubber stamp and credible[?] For Coinmint CFO to look good |
| Reddy: | Thinking . . . Thinking . . . |
| Monzon: | **The Coinmint CFO will join Katena after he gets us this deal[.] One of your engineers can act as consultant[.] Or someone in your network[.] To say we walk on water[.] We are top eng[ineering] team, results are 100% real[.] Recommendation to Coinmint: Place order[.] Now[.]** |
| Reddy: | Weird. I will need to check with a guy from my previous work. Let me call 3 guys right now that I can think of to see if they will do it |
| Monzon: | Yeah[.] Why weird[?] We are basically giving them the te[c]h due dil[igence] lead[.] |
| Reddy: | Not that. The fact that he wants to join us[.] |
| Monzon: | Oh yeah[.] He sees the upside that's why[.] **And his interview is this deal lol[.]** |

Exhibit E at KATENA008142-45 (May 4, 2021 text string) (emphasis added).

That same day, Monzon reported back to Michael Gao ("Gao"), the third Katena co-founder, that Reddy was worried about the plan:

| | |
|---|---|
| Monzon: | He's worried about people knowing about it |

\*            \*            \*

-4-

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

| Monzon: | Told him it would all be confidential[.] We need to move on this, fuck; [t]his is the way to Coinmint |
| --- | --- |
| Gao: | Maloney has walked it to the finish line for us[.] This is the easiest possible dd [due diligence] process |
| Monzon: | Yeah[.] So let's find a fucking person. |

Ex. C. at KATENA006623-24. Eventually, an individual listed on the website of DX Corr (Reddy's company) as an advisor to it, Robert Bleck ("Bleck"), agreed to take on the task. *See* Exhibit F, Joint Arbitration Ex. 6 – DxCorr Website, at 6-3.

When Coinmint initially withheld the first payment pending receipt of the expert consultant's report, Katena's co-founders discussed sweetening the secret job offer bribe to motivate Maloney to immediately wire the money. They exchanged the following texts:

| Monzon: | Maloney better not be fucking us…. |
| --- | --- |
| * | *                      * |
| Gao: | I don't get that sense yet[.] [D]id you have a chat with him about position here[?] |
| * | *                      * |
| Monzon: | We talked late last night, told him yeah let's do that etc, he was busy and it was late, we agreed to chat today[.] |
| * | *                      * |
| Gao: | Hey dude what do we do about Maloney[?] |
| * | *                      * |
| Monzon: | Nothing until that Jack Ass Robert [Bleck] gets full [expert] report done. Then we can go back to Maloney |
| * | *                      * |
| Monzon: | **You need to talk to him offline; Re his engagement with Katena, I think he should already start thinking of his own offer comp to join[.]** |

*See* Exhibit G at KATENA006640-45 (May 18, 2021 text string) (emphasis added).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

1    This Court reviewed these text messages and other documents when Katena filed motions

2    seeking to block public access to the messages and maintain them under seal. In denying

3    Katena's request to seal these messages, the Court noted that "some proposed redactions include

4    messages referring to Mr. Maloney's interest in a job with Katena, and Katena employees' desire

5    to leverage that interest…" (DX Corr Litigation, ECF 43). In large part, this Court ruled that the

6    shocking messages were neither proprietary nor confidential. *Id.* Yet, the Panel dismissed them

7    as "irreverent banter" and "wishful thinking." Ex. A at 40.

8    Katena's scheme succeeded: Coinmint ultimately sent $23.4 million to Katena. When

9    Coinmint learned that Katena had no U.S. employees, no office space, and no capability to

10   manufacture chips, it commenced the arbitration proceeding to recover its $23.4 million.

**III.    PROCEDURAL HISTORY**

12   Coinmint submitted its arbitration demand on April 27, 2022. Following an initial

13   conference, the Parties entered into a Stipulated Protective Order ("SPO") and began exchanging

14   discovery and scheduling depositions. Late in the discovery phase, in late December 2022,

15   Katena finally produced the WhatsApp text messages important to Coinmint's claims and that

16   revealed several culpable individuals.

17   As a result, Coinmint brought a parallel proceeding against several individuals who were

18   not parties to the underlying contract and could not be compelled to participate in the Arbitration.

19   Coinmint filed its new complaint in California state court in the matter titled *Coinmint LLC v.*

20   *DX Corr Design Inc. et al.*, No. 23CV410979 (Cal. Sup. Ct. 2023), on January 26, 2023. It

21   attached several exhibits, all filed under seal, obtained from Katena in the Arbitration. It also

22   quoted from those documents in its complaint. Among the defendants named were Reddy, James

23   A. DeNaut ("DeNaut"), and Bleck. Reddy subsequently removed the case to federal court where

24   it became the DX Corr Litigation now pending before this Court.

25   The Panel issued its Award on February 6, 2024. On February 8, 2024, Katena filed a

26   Petition to Confirm the Award. As set forth below, the Petition should be denied and the Award

27   vacated.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                              3:23-cv-04683-RS

## IV.     ARGUMENT

### A.     Legal Principles

The Federal Arbitration Act ("FAA") provides that a federal court may vacate an arbitration award upon the application of any party to the arbitration where, *inter alia*, the arbitrators engaged in "misconduct" or "misbehavior by which the rights of any party have been prejudiced," or where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a). "[A] federal court may only review an arbitral decision on the grounds set forth in the Federal Arbitration Act." *Kyocera v. Prudential-Bache Trade Services,* 341 F.3d 987, 1000 (9th Cir. 2003).

The Ninth Circuit explained that "[i]n determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, we ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Global Mkts.*, 840 F.3d 1152, 1158 (9th Cir. 2016). A "fair hearing" provides a party "notice… the opportunity to be heard and to present relevant and material evidence, and the decisionmakers were not infected with bias." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (citation and quotes omitted). "The district court may vacate an arbitration award if the arbitrator's misbehavior or misconduct prejudiced the rights of the parties, such as where a party did not have the opportunity to be heard and present relevant and material evidence."*Azod v. Robinson*, 2024 WL 163371, at *3 (9th Cir. Jan. 16, 2024) (quotation marks omitted).

Subsumed within the criteria set forth in the FAA, a federal court may vacate an arbitration award if it evidences a "manifest disregard of law." *Lapine Technology Corp. v. Kyocera Corp.*, 130 F.3d 884, 888 (9th Cir. 1997) (overruled on other grounds). In the Ninth Circuit, "manifest disregard of the law remains a valid ground for vacatur because it is a part of § 10(a)(4)." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).

### B.     Coinmint's Right To A Transcribed Record

The 2013 version of the Commercial Arbitration Rules of the American Arbitration Association ("AAA") (the "2013 AAA Rules") governed this proceeding by agreement of the

-7-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                                                 3:23-cv-04683-RS

parties. Rule R-28, entitled "Stenographic Record," expressly provides that "[a]ny party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three calendar days in advance of the hearing." 2013 AAA Rules R-28. Coinmint did so.

The right to a transcribed record is well-defined, explicit, and applicable to the instant case. In its first Order, the Panel acknowledged that Rule R-28 applied to the proceeding:

> *Court Reporter*. If any party wishes to utilize a court reporter at any hearing or proceeding, including but not limited to the evidentiary hearing on the merits, the responsibility for making arrangements to have the court reporter present rests with that party…. The Panel has no preference regarding the use (or non-use) of a court reporter…. If a court reporter is present and any party intends to cite to or quote from the reporter's transcript, a certified copy of the transcript must be provided to each member of the Panel and the other side.

Exhibit H, Arbitration Order No. 1 ¶ 3.4 (Aug. 19, 2023). The rules make no provision for arbitrators to prohibit a party from transcribing the record.[2]

## C.     The Arbitrators *Sua Sponte* Stripped Coinmint Of Its Right To A Transcribed Record

Fourteen witnesses testified at the arbitration over multiple days spread out over eight months (the first evidentiary hearing taking place in April 2023, and the final hearing in November 2023). *See* Ex. A. at 1-3. With respect to ten of those witnesses, the arbitrators followed Rule R-28 and allowed a court reporter to transcribe the testimony. But on March 9, 2023, the arbitrators *sua sponte* entered an Order prohibiting Coinmint from retaining a court reporter to record and transcribe the testimony of three witnesses critical to Coinmint's case. *See* Exhibit I, Arbitration Order No. 24 at 3 (Mar. 9, 2023). The Panel entered this stunning Order without any warning or semblance of due process.

---

[2] The AAA's *Guide for Commercial Arbitrators* (the "Guide") similarly provides no discretion to deny a transcript: "A party may wish to have a stenographic record made of the proceeding…. Such arrangements are made directly between that party and the stenographer …and the opposing party should be so notified." Guide at 8. *See* https://www.adr.org/sites/default/files/document_repository/A%20Guide%20for%20Commercial%20Arbitrators.pdf.

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    Following Coinmint's initiation of parallel court litigation, Katena filed a motion

2  requesting to postpone certain hearing testimony until after this Court ruled on Reddy's motion

3  to stay the parallel federal court proceeding, allocate questioning time, modify the location of a

4  witness' testimony, and issue subpoenas. *See* Exhibit J, Katena's Mot. Related to Evidentiary

5  Hr'gs (Mar. 3, 2023). Katena's Motion did not ask the Panel to block Coinmint from hiring a

6  reporter to transcribe any testimony. Indeed, Katena's Motion made no reference to a court

7  reporter or a need to prevent the creation of a transcribed record.

8    Four business days later, on March 9, 2023, the Arbitrators ruled on Katena's Motion by

9  entering Order No. 24. *See* Ex. I. The Arbitrators ruled on each of the requests Katena made. But

10  they did not stop there. Without being asked, and without any notice to the parties, the

11  Arbitrators added this mandate, under threat of sanctions, to its Order:

> [P]articularly to protect the confidentiality of the testimony, *there will be no court reporter, transcript, videotaping or any other manner of recordation by any party of any of the April 2023 third-party hearing proceedings to take the testimony of Mssrs. Maloney, DeNaut and Bleck.* The Panel will work from its own hearing notes and, in its sole discretion, may record testimony for its own use only, not to be shared with or provided to the parties under any circumstances. The parties and their counsel are forewarned that a violation of this Order may result in one or more adverse inferences against the offending party under AAA Rule R-58(a).

18  Ex. I. at 3 (emphasis in original). In making its ruling, the Panel specifically noted that it "did not

19  request a response from Claimant Coinmint, LLC ("Coinmint") because it was not needed in

20  order for the Panel to address or decide the relief request (sic) by Katena's motion…." Ex. I. at 2.

21  But Katena had not requested this peculiar and highly-prejudicial preclusion. The Panel deprived

22  Coinmint of any due process whatsoever by preventing the creation of any record with respect to

23  these three critical witnesses, and without even allowing Coinmint to be heard.

24    To make matters worse, the Arbitrators subsequently added Reddy to this list of

25  untranscribed witnesses, bringing it to four.[3] *See* Exhibit K, Arbitration Order No. 48 at 7 (Aug.

---

26  [3] As discussed further in section IV(F) below, in addition to prohibiting Coinmint from recording

27  Reddy's hearing testimony, the Panel refused to permit Coinmint to depose Reddy or obtain
documents from his business, DX Corr, because Reddy was also a defendant in the parallel DX

28  Corr Litigation. *See* Exhibit L, Arbitration Order No. 21 (Feb. 2, 2023).

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                                    3:23-cv-04683-RS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8, 2023) ("[T]here shall be no court reporter for the testimony of Sagar Reddy, who is a defendant in the Federal Court Action, unless Mr. Reddy's counsel agrees in advance that his testimony may be recorded."). As Katena and Reddy shared counsel, the Panel thus gave Katena sole control over whether there would be a transcript of Reddy's testimony – the opposite of R-28.

**D.     The Arbitrators Acted Without Due Process And Caused Significant Prejudice to Coinmint**

The right to a transcribed record is among the most basic rights of any litigant – even in an arbitration proceeding and particularly in a dispute of this magnitude. *See United States v. Rechnitz*, 75 F.4th 131, 146 (2d Cir. 2023) ("A *comprehensive* record… is a paramount feature of fair proceedings. A *full* record… protects the rights of the parties and enables future proceedings—including… appeals….") (emphasis added); *Hardy v. United States*, 375 U.S. 277, 288 (1964) (Goldberg, J., concurring) ("[T]he most basic and fundamental tool… is the complete trial transcript…. Anything short of a complete transcript is incompatible with effective appellate advocacy.").

The Ninth Circuit does not hesitate to reverse when a party's due process rights are violated by a flawed record. For example, in *Singh v. Holder*, 638 F.3d 1196, 1208-09 (9th Cir. 2011) (abrogated on other grounds), it held that the BIA's policy of providing a "written memorandum" recounting an immigration hearing, instead of a transcript, violated due process rights: this "post hoc memorandum is inadequate, and… the absence of a contemporaneous record deprived him of due process." *Id*. Likewise, in *Bergerco, U.S.A. v. Shipping Corp. of India*, 896 F.2d 1210 (9th Cir. 1990), the Ninth Circuit ordered a new civil trial due to a missing transcript where the appellant (1) made a specific allegation of error; (2) showed the record defect materially affected its right to review of the decision; and (3) showed there was no alternative means to produce an adequate substitute for the missing record. 896 F.2d at 1217.

Here, the Panel manifestly disregarded the law by denying Coinmint's due process right to transcripts. Even more remarkably, it did so without being asked, without any notice, without permitting Coinmint to be heard, and without any pretense of due process. The Panel's

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

misbehavior in prohibiting the transcription of key witness testimony prejudiced Coinmint's due process rights because: (1) Coinmint's ability to cross-examine witnesses was severely hindered; (2) Coinmint had no record to substantiate its claims and only the Arbitrators' notes, deemed private, could be a basis for the Award; (3) witnesses were not treated on a level playing field depending on which party sought to elicit testimony; (4) the parties were unable to uniformly prepare findings of facts and conclusions of law; and (5) Coinmint now lacks a record to show this Court that the Panel's findings are specifically belied by actual untranscribed testimony. Finally, there is no means to create an adequate substitute for the record. Indeed, as explained further in Section IV(G) below, the Panel and the parties subsequently could not agree on the testimony of these witnesses during the proceedings, resulting in multiple interruptions and prejudice to Coinmint throughout the arbitration hearing. As there is no way to remedy the harm, vacatur is required.

The Panel's error and misconduct is clear. As demonstrated, Order No. 24 was entered in response to Katena's March 3, 2023 Motion which made procedural and administrative requests aimed at delaying and preserving the confidentiality of proceedings, but never mentioned a court reporter or a need to strip Coinmint of its right to a record of critical testimony. Coinmint had *no* notice that the Panel was considering such a draconian measure and, as the Panel expressly stated, Coinmint was precluded from being heard on the issue. It is undisputed that the Panel entered the reporter-prohibition portion of Order No. 24 *sua sponte*.

Katena may argue that Order No. 24 preventing the creation of a proper record was appropriately justified as a sanction on Coinmint for purportedly violating the SPO. That is demonstrably false. One of many motions filed by Katena was a February 7, 2023 Motion for Sanctions alleging that Coinmint had violated the SPO. *See* Exhibit N, Katena's Mot. for Remedy (Feb. 7, 2023). On February 13, 2023, the Panel found a violation and requested briefing with respect to sanctions, with the first brief due on March 27, 2023. *See* Exhibit O, Arbitration Order No. 18 (Feb. 13, 2023). Order No. 24 prohibiting Coinmint from having a court reporter present to transcribe testimony was entered on March 9, 2023 – 18 days *before* the first brief on sanctions was even due. *See* Ex. I.

-11-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1      Further, when the Panel ultimately imposed certain sanctions on May 25, 2023, those

2  sanctions did not include denying Coinmint a transcribed record. *See* Exhibit P, Arbitration

3  Order No. 43 (May 25, 2023). Indeed, the Panel's May 25, 2023 sanction Order was completely

4  silent on the issue. *Id.* The record – even in its partial and corrupted form – is entirely clear that

5  Order No. 24 was not labeled a sanction for Coinmint's conduct. Whatever due process preceded

6  the May 25, 2023 Sanction Order had nothing whatsoever to do with the Panel's unilateral

7  March 9, 2023 decision to take the hearing testimony of these four witnesses while blocking

8  Coinmint from employing a court reporter.[4]

9      Indeed, the only explanation offered by the Panel for this selective transcript ban was "to

10  protect the confidentiality of the testimony" of Coinmint's three (later extended to four) key,

11  adverse witnesses. Ex. I at 2(e). But the testimony Coinmint sought to introduce had nothing to

12  do with confidential or proprietary information. This Court reached a similar conclusion when it

13  reviewed the underlying documents Katena had sought to maintain under seal. These witnesses

14  "negotiated" the contract between Coinmint and Katena, negotiated multiple payments from

15  Coinmint to Katena, and conjured a phony due diligence report to sell the deal. Their testimony

16  focused on these non-confidential dealings between the parties. Remarkably, without requesting

17  a proffer from Coinmint, holding a hearing, or otherwise determining whether the anticipated

18  testimony was likely to be confidential, the Panel concluded that these crucial witnesses would

19  testify to information so highly confidential that the entirety of their testimony must be given in

20  secret and never transcribed (unlike every other witness in the arbitration). Less onerous

21  measures were passed by without any apparent consideration.

22

23

24  ----

[4] While the purpose of this Motion is not to argue the merits, Coinmint strongly disagrees with the Panel's sanctions ruling. The alleged violation of the SPO amounted to filing exhibits *under seal* in the DX Corr Litigation before a state court and this Court, and referencing those exhibits in the Complaint. Katena over-designated its production as "confidential" to hide its documents from public view. This Court reviewed the documents and determined that the vast majority were not confidential or proprietary. (DX Corr Litigation, ECF 43). The Panel ultimately came to the same conclusion. (Ex. A. at 98). Yet the Panel, even when made aware of this Court's Order, never agreed to de-designate the same materials in the context of the Arbitration proceeding. *See* Exhibit Q, Arbitration Order No. 47 (Aug. 8, 2023).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                    3:23-cv-04683-RS

1    No speculation by Katena can transform why the Panel actually refused to allow

2  Coinmint to obtain transcripts of the four witnesses' testimony it needed to prove its case. The

3  Panel stated its reasons clearly in two written Orders. Order No. 24 prohibited the use of this

4  testimony "in <u>any proceeding other than this arbitration</u>" to "protect the confidentiality of the

5  testimony" of the non-party witnesses. *See* Ex. I at 3 (emphasis added). When Coinmint sought

6  reconsideration, the Panel refused, defending its extraordinary ruling by contending that it was

7  "creating an environment where the witnesses can answer fully without fear that their testimony

8  in this arbitration will be treated as some type of pre-hearing discovery and <u>used against them in</u>

9  <u>the Federal Court Action</u> or some other proceeding." *See* Exhibit R, Arbitration Order No. 29

10  (May 23, 2023) (emphasis added).

11    This ruling severely prejudiced Coinmint as it invited false testimony by ensuring that

12  four adverse witnesses could speak free from any record and free from any accountability for

13  testifying falsely under oath, in the arbitration or any other proceeding. The "opportunity to ask

14  questions that a witness must answer under oath is crucial because the oath… implicates the

15  perjury statutes…. Likewise, some minimum capacity for recording… information is a

16  precondition to a meaningful oath to tell the truth…." *Haliym v. Mitchell*, 492 F.3d 680, 702–03

17  (6th Cir. 2007). Here, the Panel's Orders created a selectively secret arbitration proceeding

18  where certain biased witnesses who Coinmint separately sued for fraud could provide narratives

19  knowing that their statements could not be scrutinized in the future, that they would not be bound

20  by their statements, and that there could be no future repercussions for anything they said. In so

21  doing, the Panel deprived Coinmint of its due process rights by holding the adverse witnesses to

22  a different standard than all the others, critically impairing Coinmint's ability to obtain reliable

23  evidence from them, and irrevocably tainting the record.

24    The Panel thus stepped out of its proper role as the neutral arbiter and appointed itself the

25  advocate for, and defender of, the very individuals charged with carrying out the fraud and

26  bribery scheme at issue. In so doing, it created an irreconcilable conflict. The Arbitrators proudly

27  state in their own Orders their staunch commitment to shield these non-party witnesses from

28  claims pending against them as defendants in the lawsuit before this Court. That misplaced and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-13-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                      3:23-cv-04683-RS

wholly improper commitment trumped the Panel's obligation under 2013 AAA Rules R-18 to remain "impartial and independent" and produced the *sua sponte* ruling depriving Coinmint of its right to have a court reporter present for this critical testimony. When their legitimate role as neutral arbiters collided with their self-appointed role as protectors of the four alleged fraudsters, the latter prevailed and Coinmint paid the price. It is difficult to imagine a clearer example of arbitrators misusing and exceeding their power.

This violated the Panel's obligation to faithfully arbitrate the contracts entered into by the parties. The parties did not agree to a more stringent protective order that would prevent witness testimony and discovery in the Arbitration from being used in this Court in the DX Corr Litigation. The Panel had no power to deny Coinmint's right to a court reporter as a response to address the parties' failure to agree to a more stringent protective order. But the Panel did have the ability to issue a protective order placing conditions regarding the use of this evidence. (*See* 2013 AAA Rules R-23). It was impermissible error for the Arbitrators to disregard the agreed upon procedures in the 2013 AAA Rules by concocting new procedures to "achieve a desired result" of protecting the four witnesses. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167 (9th Cir. 2019). *Accord Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983) (holding that district court properly vacated award where arbitrator dispensed own brand of justice by disregarding a specific contract provision to correct what he perceived as an injustice).

### E.    The Four Untranscribed Witnesses Were Key To Coinmint's Claims

The four witnesses for whom Coinmint was denied transcripts were instrumental to Coinmint's claims. Indeed, as a result of the evidence of their conduct produced in discovery, Coinmint brought individual fraud claims against Reddy, Maloney, DeNaut and Bleck in the parallel court litigation. By contrast, other witnesses crucial to Katena's claims, such as its co-founders Gao and Monzon, were called by Katena and their testimony was transcribed.

Maloney's testimony was vitally critical to Coinmint's case. Maloney was the executive tasked by Coinmint's Chairman with negotiating the purchase of Bitcoin mining rigs with Katena. Unknown to Soniat, Maloney was unhappy at Coinmint and was communicating directly

-14-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

with Katena's Gao and Monzon to explore a job with Katena. Maloney signed a secret NDA with Katena and hid that fact from Coinmint. Maloney persuaded Coinmint's Chairman to sign the contract and then convinced Coinmint to send an initial $7.5 million wire to Katena, all without disclosing that Katena was simultaneously dangling a lucrative job offer with equity. Coinmint ultimately terminated Maloney in September 2021, in part based on his erratic behavior which included locking Coinmint out of its data room and threatening to "burn down" the company. (Foret Decl. at ¶¶ 9-10).

Reddy's testimony was important as he was Katena's CTO and ghost-wrote Bleck's glowing expert report with a purported photo of DX Corr's office that was actually clipped from an unrelated website. Reddy secretly recruited Bleck to serve ostensibly as Coinmint's expert consultant. The Whats App messages show that Reddy worked at the direction of his other Katena co-founders to recruit Bleck, then coordinated with Bleck to delete references from Bleck's LinkedIn account in order to hide Bleck's conflict of interest.

Bleck is an engineer and Reddy's long-time associate. Bleck's testimony was essential as he was secretly recommended by Reddy and Katena to Maloney to serve as Coinmint's purported independent expert consultant, and he took the job. Lacking independence, Bleck clandestinely provided one or more drafts of his Katena analysis to Reddy to review and edit before ever submitting the final report to his "client," Coinmint.

The testimony of Denaut was important because he was instrumental in negotiating Coinmint's payment schedule with Katena following Maloney's departure from Coinmint, and encouraged Coinmint to continue sending payments to Katena. After failing to reach an agreement about his employment terms, DeNaut departed Coinmint in early November 2021. The WhatsApp messages show that within days of leaving, Katena offered DeNaut a role as an advisor. He began working with Katena on various exploratory projects for the next several months. *See* Exhibit V, Compl. filed in *Coinmint, LLC v. DX Corr Design, Inc., et al*, No. 23-CV-410979 ¶ 34. (Cal. Super. Ct. Jan. 26, 2023).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

1

2

      **F.**     **Based On The Same Rationale, The Panel Refused To Permit Coinmint Access To Key Document Discovery**

3

4

5

6

7

8

9

10

11

12

13

      Blocking transcriptions of key witnesses was not the only distortion of the proceeding wrought by the Panel's entirely improper obsession with "protecting" the four non-parties. That same preoccupation led the Panel to deny without justification Coinmint's request for discovery of documents from Katena's virtual data room. *See* Exhibit S, Arbitration Order Nos. 7 (Nov. 11, 2022), 23 (Mar. 3, 2023), and 44 (May 25, 2023). The virtual data room contained Katena materials that Maloney (and thus Coinmint) reviewed and relied upon in deciding to sign the contract and do business with Katena. The data room documents were important to prove that Katena misrepresented to Coinmint its experience, contracts with other customers, and bank financing, all <u>before</u> Coinmint signed the contract. (Foret Decl. at ¶ 13). As with the text messages, Katena delayed producing data room documents in discovery. After Coinmint brought its parallel proceeding, Katena obtained an order precluding their production.

14

15

16

17

18

19

20

21

22

23

24

25

26

      After prohibiting Coinmint access to Katena's data room, the Panel faulted Coinmint for failing to prove exactly which version of the Katena marketing documents Coinmint reviewed prior to signing the contract – evidence uniquely available in the virtual data room. The Panel blocked Coinmint from securing this evidence and then ruled against Coinmint on the merits based in part on the absence of that very evidence. Where an arbitrator refuses to permit a party to obtain crucial discovery, not based on relevancy or burdensomeness or similar grounds, but instead to prohibit use of the materials in a parallel federal lawsuit, the arbitrator has engaged in misconduct and demonstrated bias. Vacatur is warranted where an arbitrator blocked a party from obtaining discovery then ruled against it for failing to offer the barred evidence. *See Lindsey v. Travelers Com. Ins. Co.*, 636 F. Supp. 3d 1181, 1184-86 (E.D. Cal. 2022), *aff'd*, No. 22-16795, 2023 WL 8613598 (9th Cir. Dec. 13, 2023) (vacating award where "arbitrator denied [Plaintiff] the very evidence he later faulted him for not producing…. render[ing] the proceedings fundamentally unfair").

27

28

-16-

MEMORANDUM OF POINTS AND AUTHORITIES

3:23-cv-04683-RS

**G.     The Panel's Refusal To Allow A Record Interfered With Coinmint's Right To Confront And Cross-Examine Witnesses**

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). "[C]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). The Panel's refusal to allow the testimony of these four critical witnesses to be recorded materially interfered with Coinmint's due process right to cross-examine these and other witnesses. Coinmint specifically alerted the Panel to the insurmountable obstacles the untranscribed testimony was creating. Following the on-the-record testimony of Katena's CEO, Coinmint reiterated its request for a stenographer for Reddy's testimony, noting the difficulties that the parties were already encountering:

> [W]e're going to be deprived of due process if we have no record of [Reddy's] testimony. We've already seen with Mr. Maloney and Mr. Bleck, [Katena] says they said X, and I said they said the opposite of X. Without a record, we understand the panel has notes, but we don't have access to those. And we think that AAA rules are clear, that if a party requests a court reporter, they're entitled to it.

(Ex. M, Aug. 28, 2023, Evidentiary Hr'g Tr. at 345:14-23). After the Panel refused to allow Reddy's testimony to be transcribed, Katena objected when Coinmint attempted to impeach Gao with Reddy's testimony, claiming that doing so would create an indirect record of Reddy's otherwise untranscribed testimony:

> [Coinmint]: Now, the K10 chip project was abandoned in September or October of 2021, correct?
>
> A. No, that's not accurate.
>
> Q. You don't agree with Mr. Reddy's testimony on that point?
>
> A. Mr. Reddy is sometimes a little --
>
> [Katena]: Before you answer, I'm going to object again. We're referencing Mr. Reddy's testimony when it's not to be recorded.
>
> ARBITRATOR CALLAHAN: Just stay to the facts, and it doesn't -- we all heard what Mr. Reddy did or didn't testify to. Let's just ask Mr. Gao for his knowledge of the factual topics on which you

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

2

> want… Without the preface as to Mr. Reddy…. Just like was that K chip abandoned and you pick your date.

3

> BY MR. ALFORD: Q. Is it true, Mr. Gao, that the K10 chip project was abandoned in September/October of 2021?

4

5

> A. No. On the contrary, we actually, even in March 2022, we were still trying to produce the K10 miner.

6

(Ex. T, Sept. 18, 2023, Evidentiary Hr'g Tr. at 992:11-993:12). Similarly, when Katena took its

7

expert's testimony, it was permitted to question him off-the-record about Reddy's testimony:

8

> [Katena]: Madam Chair, I'd like to get into some of this. Should we go off the record? It's going to be about Mr. Reddy's testimony.

9

10

> [Coinmint]: **I object to that**. [A]s I understand it, the purpose of having Mr. Reddy's testimony… and Mr. Bleck's testimony off the record is so nothing they say can be used against them. If a witness testifies under oath, generally, that testimony is admissible against them later…. [T]hat was the panel's concern. But, of course, Mr. Markovic's testimony about what he thinks Mr. Bleck said wouldn't be admissible against Mr. Bleck in a court, it's hearsay, and it's not an admission of Mr. Bleck. . . . **Plus, I do think it's going to be a real problem if I can't examine Mr. Markovic on the record and point out important… contradictions between what he says and Mr. Bleck and Mr. Reddy say. If all that's off the record, we have an incomplete record on a really critical point.**

11

12

13

14

15

16

> ARBITRATOR CALLAHAN: We don't have a complete record for a variety of reasons… in terms of there being a transcript of every word…. Here's one of the issues that the panel has been presented with, and we've tried to balance it as best we can. We could have been helped along the way if there had been a further stipulated protective order that clients and lawyers signed and had the panel approve. So we're operating under the Order Number 6, which has not, you know, had the breadth that the panel thought it did in terms of affording protections. So… without getting too technical here, **I'm going to accommodate the request, because there was another way that was, for whatever reason, chosen to not be chosen, that would have helped a lot**.

17

18

19

20

21

22

23

> *      *      *

24

> **But there is no record, there's never been a record. The panel was there, took its notes, and you all took your notes, and you'll say what you think you said and Mr. Markovic will say what he thinks he says.**

25

26

(Ex. W, Sept. 20, 2023, Evidentiary Hr'g Tr. 1546:20-48:19, 1549:10-14) (emphasis added).

27

As Coinmint anticipated, when it attempted to cross-examine the same expert using

28

Reddy's prior testimony, Katena objected that Reddy's prior testimony could not be referenced

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003

3:23-cv-04683-RS

1   on the record. The Panel sustained the objection, disrupting Coinmint's effort to question

2   Katena's expert. The Panel's "remedy" was to take a portion of this new witness's testimony off-

3   the-record solely to avoid on-the-record references to Reddy's untranscribed testimony. That, of

4   course, only compounded the problem, creating a second level of untranscribed testimony, now

5   discussing untranscribed testimony:

6           [Coinmint]Q: [Y]ou told us that Mr. Bleck, according to what Mr.
            Reddy said at least, asked an insightful question… about can one
7           chip find two blocks –

8           [Katena]: Objection. Record. Record.

9           ARBITRATOR CALLAGHAN: Remember, we have to sound –

10          MR. ALFORD: I think that was on the record….

11          ARBITRATOR CALLAGHAN: I will check my notes…. I don't
            believe it was.
12
            MR. ALFORD: I don't want to spend time arguing about that. We
13          can go off the record then.

14          ARBITRATOR CALLAGHAN: Let's go off the record.

15   (Ex. W. at 1611:19-1612:12).

16          [Coinmint]: Has anyone at Perkins Coie, until the time that you sat
            here today, ever told you that Mr. Reddy testified to this panel that
17          these machines were obsolete as of September of 2021 and the
            project was discontinued.
18
19          [Katena]: Objection. Mischaracterizes Mr. Reddy's testimony.

20          ARBITRATOR CALLAHAN: Just -- you can answer the question
            that that's an assumed fact. It doesn't – it's not a substitute for
21          whatever Mr. Reddy testified to.

22          [Katena]: …I would object to any questions regarding the
            testimony of witnesses whose testimony was not transcribed if
23          we're going to be on the record. As we've done with Mr. Bleck's
            testimony…. If there are, I'd request we be off the record for those
24          questions. Thank you.

25          ARBITRATOR CALLAHAN:· Your request is granted and we'll
            continue with the previous protocol. So, Mr. Alford, you'll need to
26          give us an alert.

27          [Coinmint]: All right. Let's go off the record briefly. (Off the
            record.)
28
     (Ex. X, Oct. 16, 2023, Evidentiary Hr'g Tr. at 177:8-178:8).

MEMORANDUM OF POINTS AND AUTHORITIES

1    As a result, when trying to impeach Gao with Reddy's testimony, Coinmint had to

2    anonymize the speaker of the prior testimony:

> 3   [Coinmint] Q. So if **someone** came in here and told this panel
> 4   under oath that Katena ceased work on the K10 in September or
>      October of 2021, that would not be truthful testimony, right?
>
> 5   [Katena]: Objection. Argumentative.
>
> 6   ARBITRATOR CALLAHAN: Well, it's a hypothetical for a lay
> 7   witness. What's the relevance, Mr. Alford?
>
> 8   MR. ALFORD: The relevance is credibility and impeachment.
>
> 9   ARBITRATOR CALLAHAN: What's the foundation?
>
> 10  MR. ALFORD: **I can't say his name**. I guess what Mr. Reddy
>      testified, that the plug was pulled in September/October.
>
> 11  ARBITRATOR CALLAHAN:· But why does it matter?
>
> 12  MR. ALFORD: It matters if two principals of the company are
> 13  saying totally different things….

14   (Ex. Y, Sept. 19, 2023, Evidentiary Hr'g Tr. 1162:23-1163:17) (emphasis added).

15        Coinmint's efforts to question witnesses were interrupted by opposing counsel and the

16   Panel contending that a question or its premise mischaracterized prior testimony – all based on

17   individual notes of testimony that had not been recorded nor shared.[5]

> 18  [Coinmint Q]: Has anyone at Perkins Coie, until the time that you
> 19  sat here today, ever told you that Mr. Reddy testified to this panel
>      that these machines were obsolete as of September of 2021 and the
> 20  project was discontinued.
>
> 21  [Katena]: Objection. Mischaracterizes Mr. Reddy's testimony.
>
> 22  ARBITRATOR CALLAHAN: [Y]ou can answer the question that
>      that's an assumed fact… [I]t's not a substitute for whatever
> 23  Mr. Reddy testified to.

24   (Ex. X at 177:8-177:17). Without a transcript, the parties could not agree on Reddy's testimony.

25   _____

26   [5] The Panel's decision to referee the contents of the unrecorded testimony was particularly
     troubling given its related rulings. In response to a prior inquiry from Coinmint, the Panel ruled
27   that its notes of the untranscribed hearing testimony would *not* serve as the official record, would
     *not* be part of the arbitration record, and would *not* be available to the parties. *See* Exhibit Z,
28   Arbitration Order No. 32 at 2 (Mar. 31, 2023).

-20-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                           3:23-cv-04683-RS

1    Reddy gave important testimony in which he admitted that Katena's "project was canceled in

2    September or October of 2021," and that the ASIC chip "was no longer viable by the spring of

3    2022." (Foret Decl. at ¶ 12)

4            In its closing argument, Coinmint asserted that Reddy testified that the project was

5    canceled in September or October 2021, but Katena nevertheless continued to solicit and receive

6    Coinmint payments. *See* Exhibit U, Jan. 12. 2024, Evidentiary Hr'g Tr. 112:22-114:15. Katena

7    argued that the project was not cancelled in October 2021, and that Reddy's testimony was in

8    reference to the cancellation of a different chip. Ex. U at 120:23 – 121:21. This topic, which both

9    parties previewed in their openings, should not have remained in dispute after Reddy's testimony

10   but for the fact that there was no transcript of his words. Vacatur is appropriate where the

11   arbitrators commit misconduct through a "procedurally flawed and prejudicial situation that the

12   arbitrators themselves created" that blocked a party from offering pertinent, material evidence,

13   prejudicing that party's rights. *ICAP Corporates, LLC v. Drennan*, 2016 WL 644145, at *5-*7

14   (D. N.J. Feb. 17, 2016).

15           **H.     After Preventing The Creation Of A Proper Record, The Panel Misstated**

16                    **Critical Untranscribed Testimony To Justify Its Untenable Award**

17           The Panel's extraordinary misbehavior and misconduct in prohibiting a record for the

18   entirety of the testimonies of Maloney, Bleck, DeNaut and Reddy did far more than undercut

19   Coinmint's right to cross-examine witnesses and present evidence. It permitted the Panel to re-

20   invent the record untethered to the actual evidence. The absence of a record evidenced a manifest

21   disregard for the law as it enabled the Panel to ignore the overwhelming evidence of Katena's

22   fraud and bribery scheme memorialized in text messages by recasting and misstating these four

23   witnesses' testimony. Dismayed that Coinmint initiated parallel court proceedings and used

24   Katena documents filed under seal as support, the Panel justified its Award against Coinmint and

25   explained away the clear documentary evidence by repeatedly relying on its own recollections of

26   unrecorded testimony that squarely contradicted the actual witness testimony on the central

27   issues in the case and contemporaneous communications.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-
MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                                3:23-cv-04683-RS

1    Proving this necessarily requires Coinmint to compare the Award findings of the Panel

2    respecting the untranscribed testimony to the testimony recorded in the contemporaneous notes

3    of Coinmint's attorneys, including Randall Foret, Coinmint's General Counsel, who attended and

4    took copious notes at the hearings of the four untranscribed witnesses. In the Foret Declaration,

5    ¶ 13, Coinmint shows material discrepancies between the Panel's Award and Coinmint's notes

6    of the untranscribed testimony. The Panel's unlawful orders put Coinmint in this position by

7    refusing to allow a transcript which would have eliminated any need to dispute who said what.

8    Depriving Coinmint of vacatur on the ground that Coinmint cannot prove with a transcript that

9    the Panel misstates and misrepresents the case's most fundamental evidence would be the

10   ultimate Catch-22. The Panel should not be allowed to justify its partiality or misbehavior by

11   ensuring that no evidence exists to prove its misconduct.

12   Even worse, the Panel's bias and misconduct in misstating the untranscribed testimony

13   goes to the very heart of Coinmint's claims. For instance, Coinmint contended, and the

14   overwhelming evidence – including the Katena text messages – established, that Katena offered

15   Maloney a lucrative job at Katena, and then leveraged that opportunity to incentivize Maloney to

16   secure Coinmint's consent to the Purchase Agreement and to wire payments to Katena.

17   Remarkably, relying on its own misstatement of the untranscribed testimony, the Panel in its

18   Award found "no evidence that Katena ever offered Maloney a job or equity in Katena." (Ex. A.

19   at 38). Similarly, the Panel asserted that there was a "lack of any evidence showing that Katena

20   offered or paid anything to Maloney…." (Ex. A at 42). In direct contradiction to the Panel's

21   finding, Maloney himself <u>admitted</u> that Katena offered him a job before the contract was ever

22   signed, but he did not tell others at Coinmint about the offer. (Foret Decl. at ¶¶ 7-8). Further

23   contradicting the Panel's statement that there was no evidence that Katena ever offered anything

24   to Maloney, Maloney testified that he decided not to accept the job with Katena because he did

25   not want to work for a start-up. *Id.*

26   The Panel also stated in its Award that "Coinmint failed to satisfy the statutory

27   requirement that either Maloney or Katena acted 'corruptly' by specifically intending to injure or

28   defraud Coinmint." Ex. A. at 42. Again, with no transcript, the Panel was free to engage in

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4872-3464-1075v8/108215-0003                                                    3:23-cv-04683-RS

misconduct and reach its conclusion unchecked by the actual contrary testimony. In fact, DeNaut testified that in one of Maloney's many "tirades" he threatened to "burn down" Coinmint using information he threatened to disclose. (Foret Decl. at ¶¶ 9-10). DeNaut recalled that Maloney cut off Coinmint's access to its own data room, and held the data hostage because he was frustrated about the lack of repayment of expenses that he thought were due to him. (Foret Decl. at ¶10).

This untranscribed testimony goes to the core of the dispute. It establishes Katena's successful leveraging of a job offer to Maloney to obtain Soniat's signature on the contract, Maloney's personal animus to "burn down" Coinmint, and the deception and subterfuge surrounding the phony due diligence used to persuade Coinmint to wire the initial $7.5 million payment. In addition, as Maloney was the sole negotiator opposite Katena and relayed Katena's representations to Soniat, depriving Coinmint of Maloney's transcribed testimony severely inhibited Coinmint's ability to support its fraud in the inducement claims. Arbitrators are entitled to weigh evidence however they see fit, but they are not entitled to engage in misconduct by manufacturing or relying on false recitations of evidence. Transcribed records exist to prevent that very mischief from both the witnesses and the judges.

Coinmint was prevented from transcribing four key witnesses' testimony; prevented from obtaining Katena's data room documents; prevented from deposing Reddy, obtaining his documents, or obtaining documents from DX Corr (his company); prevented from recording testimony of other witnesses discussing the testimony of the four "protected" witnesses; all resulting in an Award rife with factual statements contradicted by untranscribed testimony. In *Thomas Kinkade Co. v. Lighthouse Galleries, LLC*, 2010 WL 436604, at *8 (E.D. Mich. Jan. 27, 2010), the court vacated an arbitration award based on multiple questionable rulings favoring one party: "Taken together the aforementioned issues cast a dark shadow over the parties' arbitration proceeding. It is not just that Defendant[] benefitted from a single error of law; time and again, irregularities in the proceeding favored Defendant[]." 2010 WL 436604, at *8. Such one-sided rulings also mandate vacatur here.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                                    3:23-cv-04683-RS

1  **V.    RELIEF REQUESTED: VACATUR AND REMAND BEFORE A DIFFERENT**

2  **PANEL IS THE APPROPRIATE REMEDY**

3       Where "the arbitrator's award may properly be vacated, the appropriate remedy is to

4  remand for further arbitration proceedings." *Major League Baseball Players Ass'n v. Garvey*,

5  532 U.S. 504, 511 (2001); 9 U.S.C. § 10(b) ("court may, in its discretion, direct a rehearing by

6  the arbitrators"). In that case, a court should either "vacate the award[] leaving open the

7  possibility of further proceedings" or "remand for further proceedings" when appropriate. *United*

8  *Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.10 (1987); *accord*

9  *Westerlund v. Landmark Aviation*, 2010 WL 3171044, at *4 (C.D. Cal. Aug. 9, 2010).

10      Where appropriate, a case should be remanded to a different arbitration panel than the

11  one that originally rendered the award. *See, e.g.*, *Wachovia Sec., LLC v. Wiegand*, No. 07CV243

12  IEG (BLM), 2007 WL 9776732, at *12 (S.D. Cal. Apr. 16, 2007) (finding that where arbitrators

13  exceeded their authority, vacatur was appropriate and the arbitration should be remanded to

14  heard "before a different arbitration panel.") (emphasis in original). Even where there is no

15  express finding of bias or corruption justifying vacatur, but an award is vacated on other

16  grounds, impaneling new arbitrators is appropriate. *See Thomas Kinkade Co. v. Hazlewood*, No.

17  C 06 7034 MHP, 2007 WL 2462149, at *4 (N.D. Cal. Aug. 29, 2007) (stating "pattern of

18  shenanigans and open acrimony among all parties involved" supports not "entrust[ing] further

19  proceedings to the original arbitration panel").

20      This Panel's past actions would taint the legitimacy of any future proceedings if

21  remanded to the same Panel. Placing this dispute before the original Panel would only exasperate

22  an atmosphere of contention and distrust between the litigants and the triers of fact. The

23  appropriate remedy is for the Court to vacate the Award, and to remand this case to be heard

24  before a different arbitration panel.

25  **VI.    CONCLUSION**

26      Vacatur and remand to a new Panel is mandated because the Arbitrators exceeded their

27  powers and engaged in misbehavior and misconduct. The Panel imposed a series of biased and

28  outlandish rulings that so fundamentally flawed the arbitration that Coinmint was deprived of

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-24-

MEMORANDUM OF POINTS AND AUTHORITIES

4872-3464-1075v8/108215-0003                                                    3:23-cv-04683-RS

1   due process. In direct defiance of an explicit AAA rule, the Arbitrators denied Coinmint the right

2   to have a stenographic reporter present for four key witnesses, stripping Coinmint of its right to a

3   transcript and to confront and cross-examine witnesses with that testimony, and enabling the

4   Panel to misstate critical testimony to justify an unwarranted Award. The Panel further denied

5   Coinmint access to critical party and witness discovery, then faulted Coinmint for failing to

6   submit the very evidence the Panel denied to it.

7          The Panel failed to act impartially by entering orders that robbed Coinmint of its due

8   process rights in order to "protect" non-party witnesses who are defendants in a parallel

9   proceeding pending before this Court. The Arbitrators also failed in their duty to impartially

10  implement the controlling contracts agreed to by the parties, instead punishing Coinmint for

11  failing to enter into a new protective order agreement that the Panel desired. The record

12  evidences egregious misconduct and misbehavior by the Panel, and a manifest disregard for law

13  and for the most basic due process rights of Coinmint. Pursuant to the Federal Arbitration Act

14  and the established law of this Circuit, the award produced by this fundamentally flawed

15  proceeding must be set aside.

16         For all of the foregoing reasons, Coinmint respectfully requests that Defendant's Petition

17  to Confirm the Arbitration be denied, and that the Award be vacated and remanded for rehearing

18  before a different arbitration panel.

19
20  Dated: April 1, 2024                    STRADLING YOCCA CARLSON & RAUTH LLP

21                                          By:    /s/ Marc J. Schneider
                                                   Marc J. Schneider
22                                                 Jason de Bretteville

23
24                                          STRADLEY RONON STEVENS & YOUNG, LLP
                                                   Steven D. Feldman *(Appearing Pro Hac Vice)*
25                                                 Keith R. Dutill (*Pro Hac Vice Admission Pending*)

26                                                 Attorneys for Plaintiff
                                                   COINMINT, LLC
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-25-
MEMORANDUM OF POINTS AND AUTHORITIES