# EXHIBIT P

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Panel

---

In the Matter of the Arbitration Between:

Coinmint, LLC,

*Claimant and Counter-Respondent*

- vs –

Katena Computing Technologies, Inc.,

*Respondent and Counter-Claimant*

AAA Case No. 01-22-0001-7627

---

ORDER NO. 43 – RULINGS ON KATENA'S REQUEST FOR SANCTIONS FOR COINMINT'S VIOLATION OF THE STIPULATED PROTECTIVE ORDER

1. ***Overview***

    A. ***Procedural Backdrop of the Sanctions Issue***

This is a two-party dispute between Claimant Coinmint, LLC ("Coinmint") and Respondent Katena Computing Technologies, Inc. ("Katena").

Coinmint operates a Bitcoin mining company which, through an operating subsidiary, owns and operates a digital currency data center in Massena, New York. Coinmint's data center uses tens of thousands of "miner" computers, specially designed to perform Bitcoin mining operations. On or about May 12, 2021, Coinmint entered into a Sales and Purchase Agreement and Purchase Order ("the Agreement"), wherein Coinmint agreed to purchase and Katena agreed to provide 2,788 units of "ASIC mining equipment" for use in Coinmint's Bitcoin mining operations, for a total contract purchase price of $150 million.

In April 2022, Coinmint filed a demand with the American Arbitration Association seeking to rescind the Agreement and receive the return of the $23 million it had paid out to Katena before disputes arose between the parties, among other requested relief.

In May 2022, Katena filed an answering statement with counterclaims. Katena has denied all of Coinmint's claims and, through its counterclaims, is seeking $37.5 million in liquidated damages pursuant to a clause in the Agreement.

Since the filing of their respective claims and counterclaims, the parties have engaged in extensive discovery and motion proceedings, as evidenced by the fact that to date the Panel has issued over 40 procedural and discovery-related orders.

On November 10, 2022, before exchanging discovery, the parties, through their respective counsel, submitted a proposed form of stipulated protective order, which the Panel approved and adopted as Order No. 6 in this arbitration ("Stipulated Protective Order" or "SPO").[1]

On February 7, 2023, Katena submitted and served a motion in which Katena complained that Coinmint had violated the Stipulated Protective Order by attaching documents that Katena had designated as "CONFIDENTIAL" to a complaint Coinmint filed in state court.[2]

On February 9, 2023, Coinmint submitted and served a response to Katena's motion, and Katena submitted and served a supplemental brief concerning Coinmint's alleged violation of the Stipulated Protective Order.

After reviewing the complaint Coinmint filed in the State Court Action, as well as the parties' respective briefs, the Panel concluded that it was undisputed that the documents attached to Coinmint's complaint were materials produced by Katena in this matter that Katena designated as "CONFIDENTIAL." Additionally, upon review of Coinmint's complaint, the Panel found that Coinmint had quoted directly from or paraphrased some of the attached exhibits in several places in the complaint, which constituted a further violation of the Stipulated Protective Order even if the documents themselves had not been attached to the complaint.

On February 13, 2023, the Panel issued Order No. 18 in which it found that Coinmint had violated the Stipulated Protective Order. With regard to Coinmint's violation, the Panel stated as follows:

> "By stipulated agreement of the parties through their counsel which was accepted and signed by the Panel, the Protective Order was put in place and thus governs the parties' respective disclosures and productions, and the use of such materials. It is undisputed that Katena produced materials that it designated as "CONFIDENTIAL." It is undisputed that Coinmint never asked the Panel to intervene and de-designate any of the materials or disclosures Katena designated as "CONFIDENTIAL."
>
> Coinmint has not suggested the existence of any exigent circumstances, nor provided the Panel with evidence of any type of exigency – *e.g.*, the expiration of any statutes of limitation – that might justify the

---

[1] The specific terms of the Stipulated Protective Order are discussed in Section 2, below.

[2] The state court action filed by Coinmint is commonly referred to as *Coinmint, LLC v. DX Corr Design, Inc., et al.*, Santa Clara Superior Court, Case No. 23CV41 0979 ("the State Court Action").

need to file the complaint in the State Court Action without first seeking to de-designate Coinmint's intended exhibits of materials Katena designated as "CONFIDENTIAL." Contrary to Coinmint's argument in its Response, the fact that Coinmint is pursuing alleged fraud claims against third parties in court does not justify its failure to abide by the Stipulated Protective Order issued in this arbitration. Even if timing of the filing of the complaint in the State Court Action was an issue,[3] Coinmint could have filed its complaint *without* attaching or directly quoting from Katena's "CONFIDENTIAL" documents, and could have petitioned the Panel to declassify Katena's "CONFIDENTIAL" materials for use in the State Court Action following the declassification procedures to which Coinmint and Katena agreed as set forth in the SPO.

As the Panel reads and understands Coinmint's Response, Coinmint knew that it was attaching Katena's "CONFIDENTIAL" documents and did so purposefully without first going through the de-designation procedures in the Stipulated Protective Order. Moreover, Coinmint has not suggested that its use of Protected Material was due to a mistake or inadvertence. Nor could it reasonably so argue given Coinmint's liberal use of Protected Material throughout the body of the complaint and the number of attached exhibits of such designated material, as well as its deliberate delay in providing Katena with the materials it filed with the state court, including the complaint.[4]

Coinmint also has attempted to justify its use of Protected Materials by arguing that "And in any event, the civil lawsuit against Katena's co-conspirators is indeed necessary for 'prosecuting, defending, or attempting to settle this arbitration' and Coinmint informed Katena and the Panel of the same back on January 17, 2023' (Response at 4). This bold statement was unsupported by any explanation as to how Coinmint's pursuit of third parties would justify its use of Protected Material based upon this language in the SPO that expressly *limits* its use.[5] As the Panel made clear above, while

---

[3] In the hearing on the sanctions motion, Coinmint's counsel acknowledged that there was no pressing timing issue for filing the State Court Action such as a limitations period about to run. Rather, counsel asserted that suit needed to be filed for Coinmint to get access to the subpoena power afforded by court litigation.

[4] Coinmint filed the complaint in the State Court Action with redacted exhibits of Protected Material (but failed to redact text in the complaint that quoted or otherwise used the Protected Material), giving Katena 10 days to seek protection under CRC 2.551. However, Coinmint failed to give Katena written notice under CRC 2.551 of the filed complaint and the 10-day period until 11 calendar days had lapsed.

[5] Paragraph 7.1 of the Stipulated Protective Order makes clear that a Receiving Party may only use Protected Material produced by the other Party "in connection with this case *only for prosecuting, defending or attempting to settle this arbitration*" (italics added). Further, under paragraph 7.1, such material may be disclosed only to the categories of persons authorized, as described in paragraph 7.2.

> Coinmint indicated that it would be filing a civil action against third parties, Coinmint did not disclose that it intended to use Protected Material, and the Panel did not in any way authorize or approve of Coinmint's actions in attaching and quoting from documents produced by Katena in this arbitration that were designated as "CONFIDENTIAL" without first having those materials ordered de-designated as "CONFIDENTIAL" in accordance with the procedures in the Stipulated Protective Order that the parties themselves agreed to and negotiated. The Panel rejects Coinmint's argument that its use of the Protected Materials without de-designation was somehow "necessary for 'prosecuting, defending, or attempting to settle this arbitration,'" as Coinmint argues in seeking to defend its unjustified conduct."

As stated in Order No. 18, Coinmint's violation of the Stipulated Protective Order could not be ignored because it was an agreement between the parties that governs certain procedural aspects of this arbitration, and because it is an order of this tribunal that must be respected. Accordingly, the Panel set the issue of sanctions for briefing and oral argument with respect to **(a)** what type of sanctions are within the Panel's power, **(b)** what type of sanctions are appropriate under the circumstances, **(c)** in the case of requested monetary sanctions, the basis for and propriety of the amount requested, and **(d)** whether sanctions should be awarded against Coinmint, Coinmint's counsel, or both, and on what grounds.

This Order is a follow-on to Order No. 18, and is being issued after receiving and reviewing extensive briefing from the parties on the sanctions issue, and after conducting an in-person hearing on May 17, 2023 during which the parties' counsel presented their respective oral arguments and responses to one another and answered questions of the Panel over a three-hour period.

In its sanctions request, Katena has requested **(a)** terminating sanctions, **(b)** monetary sanctions, **(c)** a monetary sanction per use or quote for any future violations, and **(d)** attorney's fees and costs related to the SPO violation / sanctions proceedings. Coinmint has opposed Katena's sanctions request and has continued to argue that its conduct in using and quoting from the "CONFIDENTIAL" documents and deposition excerpts of Messrs. Gao and Monzon is not subject to sanctions as a matter of law.

### 2. *Legal Backdrop - Arbitration is a Creature of Contract*

Contract is the principal lens through which we understand arbitration.[6] As the Supreme Court explained in *Volt Information Sciences, Inc. v. Trustees of Leland Stanford Junior University*:

---

[6] *See, e.g.,* Hiro N. Aragaki, *Arbitration: Creature of Contract, Pillar of Procedure,* 8 Y.B. *Arb. & Mediation* 2 (2016); Thomas E. Carbonneau, *The Exercise of Contract Freedom in the Making of Arbitration Agreements,* 36 VAND. J. TRANSNAT'L. L. 1189, 1192-93 (2003); Paul D. Carrington and Paul H. Haagen, *Contract and Jurisdiction*, 1996 SUP. CT. REV. 331, 333-34.

-4-

> "[T]he FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms. Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit …. By permitting the courts to 'rigorously enforce' such agreements according to their terms, we give effect to the contractual rights and expectations of the parties …."

489 U.S. 468, 479 (1989).

In contrast to the courts where there are predefined rules of procedure and court guidelines, that is not so in arbitration. The parties to a commercial arbitration have both the right and the power – through mutual agreement – to define their process. Typically, as was the case here, they start by adopting the provider's rules.[7] However, in addition to their pre-dispute arbitration agreement, the parties can agree – post-dispute – to additional or supplemental procedures, subject to Arbitrator approval. One such instance is where the parties desire some degree of confidentiality protection with regard to materials and information that might be exchanged in discovery or provided to the Arbitrator during the course of the proceedings, and submit a stipulated protective order to the Arbitrator.[8]

### C.     Arbitration Is Private – Not Confidential

Arbitration is a private dispute resolution process that operates outside the public court system. In stark contrast to the courts where both the proceedings and filings are open for public view, neither the proceedings nor filings in arbitration are open or available to the public.

Privacy is not, however, the same thing as confidentiality. Neither the Federal Arbitration Act nor the AAA Commercial Rules requires the parties or their counsel to maintain the confidentiality of the proceedings or filings in their arbitration.[9] If parties want confidentiality, they must create a contractual duty of non-disclosure through a nondisclosure

---

[7] In this case, the parties' arbitration agreement provided for arbitration in accordance with the AAA Commercial Arbitration Rules. The AAA Commercial Arbitration Rules that were in effect when Coinmint's demand was filed in June 2022 were those amended and effective as of October 1, 2013 ("the 2013 Rules"). The AAA Commercial Arbitration Rules were amended, effective September 1, 2022 ("the 2022 Rules"), but those rules apply only to cases filed on or after September 1, 2022, unless the parties agree otherwise. The parties did not agree otherwise in this case, so the 2013 Rules apply.

[8] Other instances of party control over process include stipulations regarding ESI search terms and protocols, stipulations to change exchange and filing deadlines, and stipulations to make party witnesses available for deposition, all of which have been utilized by the parties in this arbitration.

[9] While the 2022 Rules added a rule about confidentiality, that rule provides only that "the arbitrator shall keep confidential all matters relating to the arbitration or the award," and says nothing about the parties or their counsel. *See* AAA Rule R-45.

or confidentiality agreement. Typically, parties will opt for a confidentiality agreement in the form of a stipulated protective order. When the stipulated protective order is approved by the Arbitrator, it operates as a procedural order that governs the rules of engagement in the arbitration.

As the record reflects, the parties in this case submitted a stipulated protective order to the Panel on November 10, 2022, and asked that the Panel approve it. The Panel did just that through the issuance of Order No. 6.

### 2. *The Stipulated Protective Order*

While parties in a court proceeding may be constrained by court-defined standards, guidelines and legal principles concerning the types of materials and information that properly may be designated as "confidential" for purposes of keeping such materials and information away from the public, no such standards or guidelines exist in arbitration because arbitration is not a public forum. The parties are thus free to define the scope of protection they deem necessary or appropriate for the circumstances of their dispute.

In this arbitration, the parties defined the scope of confidentiality protection quite broadly to include "confidential, proprietary and/or private information," and made clear that materials and information designated as "confidential" could only be used "for prosecuting, defending, or attempting to settle this arbitration." *See* Order No. 6, ¶¶ 1 and 7.1. Under the terms of the Stipulated Protective Order, the only prerequisite to material or information becoming "Protected Material" was for a party to affix the legend "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" to each page containing information that party wanted to be protected under the Stipulated Protective Order. *See* Order No. 6, ¶ 5. Importantly, the SPO does <u>not</u> contain a provision instructing against "over designation," setting limits on designation, or requiring the parties to only designate materials that would qualify for protection in the courts under general legal principles. This omission is significant because, as discussed in Section 4, below, Coinmint has argued that Katena's designation of "confidential" material should be evaluated in the context of court guidelines and case law rather than the specific terms and provisions of the Stipulated Protective Order agreed upon by the parties.[10]

The keys terms of the Stipulated Protective Order, as adopted and approved by the Panel's Order No. 6, are the following:

- The parties could designate disclosures and discovery materials produced or generated in this arbitration as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." (¶ 5)

---

[10] As discussed in Section 4, the Panel has rejected Coinmint's arguments in this regard because they are anathema to the core concept of arbitration: namely, arbitration is a creature of contract and is a dispute resolution process agreed to and defined by the parties.

- Upon designating disclosures and/or discovery materials as "CONFIDENTIAL" or ATTORNEYS' EYES ONLY," the materials would be treated as "Protected Material" (¶ 2.14) subject to the protections conferred by the Stipulated Protective Order. (¶ 5)

- The protections conferred on Protected Material by the Stipulated Protective Order cover not only the Protected Materials itself, but also **(1)** any information copied or extracted from the Protected Materials, **(2)** all copies, excerpts, summaries or compilations of the Protected Materials, and **(3)** any testimony, conversations, or presentations by the parties or their counsel that might reveal Protected Materials. (¶ 3)

- Testimony given in deposition, pretrial or trial proceedings would automatically be considered Protected Materials for a period of 30 days following the delivery of the transcript of such deposition, hearing or proceedings so as to allow a party to designate some or all of the testimony as Protected Material. (¶ 5.1(b))

- A "Receiving Party" could use Protected Material "only for prosecuting, defending, or attempting to settle this arbitration" and could disclose such materials "only to the categories of persons and under the conditions described in this [Protective Order]." (¶ 7.1)

- The parties may challenge the other's designation at any time, but must do so in the manner prescribed in the SPO, to wit: **(1)** In order to initiate a challenge to the other party's designation, the challenging party must provide a written notice of each designation being challenged and must state the basis for each challenge, and must then meet-and-confer with the other side. **(2)** If any designation challenges are not resolved through the meet-and-confer process, the challenging party may seek the Panel's intervention, but must do so within 14 days of the failed meet-and-confer effort. (¶ 6)

- The parties could mutually agree to modify the terms of the SPO and, absent agreement, either party could petition the Panel to modify the terms of the Stipulated Protective Order "upon a showing of good cause." (¶ 14)

### 3. *Coinmint Has Violated the Stipulated Protective Order*

Thus far, Coinmint has violated the Stipulated Protective Order on three occasions by using documents in proceedings other than this arbitration that were produced by Katena in this arbitration and marked "CONFIDENTIAL." Additionally, as discussed below, Coinmint has violated the Stipulated Protective Order and a specific order of the Panel (Order No. 20) by attaching excerpts of depositions ordered to be treated as "CONFIDENTIAL" in accordance with paragraphs 5.1 and 7 of the Stipulated Protective Order.

#### A. *First Violation*

Coinmint's violation of the Stipulated Protective Order started with the filing of its complaint in the State Court Action on January 26, 2023, when Coinmint **(a)** attached as exhibits to the complaint 14 documents that Katena had designated as "CONFIDENTIAL," and **(b)** quoted or paraphrased or otherwise summarized the contents of the attached exhibits in the complaint allegations.

#### B. *Second Violation*

On March 20, 2023, Coinmint violated the Stipulated Protective Order a second time with its filing of opposition papers to Sagar Reddy's motion in the Federal Court Action[11] seeking to stay that litigation pending the conclusion of this arbitration. In connection with the filing of its opposition, Coinmint attached as exhibits 23 documents produced by Katena in this arbitration and designated "CONFIDENTIAL."[12] Additionally, Coinmint attached as exhibits to its opposition excerpts from the depositions of Michael Gao, current Chief Executive Officer and former Chief Strategy Officer of Katena, and Henry Monzon, former Chief Executive Officer of Katena, in violation of paragraph 5.1 of the Stipulated Protective Order and the Panel's Order No. 20, discussed below.

---

[11] Sagar Reddy, one of the defendants named in the State Court Action, removed the matter to the United States District Court for the Northern District of California, where the Coinmint action is commonly referred to as *Coinmint, LLC v. DX Corr, et al.,* Case No. 5:23-cv-00599-RS ("Federal Court Action") and subsequently filed a motion to stay pending this arbitration. The Panel has been advised by the parties' counsel that Mr. Reddy's stay request was granted until this arbitration is completed. Additionally, the Panel has been provided with a copy of the District Court's "Order Granting Stay Pending Arbitration, Etc." filed on April 24, 2023.

[12] Nine of the exhibits were previously attached to Coinmint's complaint in the State Court Action and represent repeat violations of the Stipulated Protective Order with respect to those documents. Fourteen of the exhibits were not published previously, and thus represent new violations of the Stipulated Protective Order.

On February 14, 2023, the Panel issued Order No. 20, which expressly prohibited the parties and their counsel from using, copying, excerpting or quoting from any deposition or its exhibits pending the expiration of the 30-day period following delivery of the transcript so as to allow the parties and their counsel time to make confidentiality designations in accordance with paragraph 5.1(b) of the Stipulated Protective Order. In this regard, Order No. 20 provides as follows:

> "IT IS FURTHER ORDERED THAT all deposition transcripts in this matter are governed by Paragraph 5.1(b) of the Protective Order. Accordingly, the parties and their counsel are cautioned to *not* use, copy, excerpt or quote from any deposition or its exhibits unless and until the 30-day period following delivery of any transcript has lapsed without either party designating all or any portion of the transcript as "CONFIDENTIAL," as provided by the Stipulated Protective Order. The parties and their counsel are further cautioned that if all or any portion of any deposition transcript is designated as "CONFIDENTIAL" pursuant to the Protective Order, they must (1) limit disclosure as set forth in Section 7 of the Protective Order for the purposes and to the authorized persons stated therein, and (2) *not* use, copy, excerpt or quote from any deposition or its exhibits without following the procedures for challenging the "CONFIDENTIAL" designation as set forth in Section 6 of the Protective Order and having such designation removed by consent of the designating party or order of the Panel."

On February 22, 2023, in an email to the Panel, Coinmint's counsel acknowledged receipt of Order No. 20 and represented that "Coinmint fully intends to abide by that order." Coinmint's counsel continued, stating: "(It may well be that such use is ultimately permitted; but Coinmint will follow the terms of the order with respect thereto.)" *See* Katena Opposition, Exhibit F.

According to Katena, the date of delivery of the deposition transcript for Michael Gao was February 21, 2023, which means that the 30-day designation period did not expire until March 23, 2023. The date of delivery of the deposition transcript for Henry Monzon was March 8, 2023, which means that the 30-day designation period did not expire until April 7, 2023. *See* Katena Opposition, Exhibit E. By email dated March 16, 2023, Katena's counsel provided those dates to Coinmint's counsel and, referencing paragraph 5.1(b) of the Stipulated Protective Order and Order No. 20, stated that the transcripts of the depositions of Messrs. Gao and Monzon remained conditionally designated "confidential" in full as within the 30-day designation period and could not be used, copied, excerpted, or quoted from until that period lapsed without either party designating all or any portion of the transcript as "confidential" as provided in the Stipulated Protective Order. *Id.* Nevertheless, Coinmint filed its opposition in the Federal Court Action on March 20, 2023. By attaching excerpts of the deposition transcripts of Messrs. Gao and Monzon to its March 20, 2023 opposition, before the expiration of both of those 30-day designation periods and without otherwise seeking permission, Coinmint breached its promise to the Panel and its obligations, to which it agreed, under the Stipulated Protective Order.

### C. Third Violation

On March 20, 2023, Coinmint filed a "First Amended Complaint" in the Federal Court Action **(a)** attached as exhibits to the complaint the same 14 documents attached to the complaint in the State Court Action, and **(b)** quoted or paraphrased or otherwise summarized the contents of the attached exhibits in the amended complaint allegations.

### 4. *Coinmint's Arguments Do Not Justify or Excuse Its Violation of the Stipulated Protective Order and Order Nos. 6, 18 and 20*

#### A. Katena Over-Designated

Coinmint has argued that it should not be sanctioned because it is really Katena that is at fault under the Stipulated Protective Order because Katena over-designated and "robo-stamped" documents as "confidential." In support of this argument, Coinmint has cited to court authorities, guidelines and standards, which are inapplicable here because (a) this is arbitration, and (b) the federal court standards for judging what should be held confidential from the public do not apply absent party agreement (on which there is none per the terms of the Stipulated Protective Order).

#### B. The State and Federal Court Actions Are "Related"

Coinmint has argued that it is allowed to use the designated documents and deposition excerpts in the State and Federal Court Actions because those actions are "related" to this arbitration insofar as they both involve the same underlying contract transaction. That argument is defeated by the express terms of paragraph 7.1 of the Stipulated Protective Order which clearly states that "[a] Receiving Party may use Protected Materials that are produced by another Party or by a Non-Party in connection with *this case only* for prosecuting, defending, or attempting to settle this arbitration." [Emphasis added.]

#### C. Coinmint's Actions Are Privileged

Coinmint has argued that it should not be sanctioned because it used the designated documents in the pursuit of advocating for a client in a litigation matter, and that its actions in the State and Federal Court Actions are protected under California Civil Code Section 47(c). The Panel rejects the premise that Coinmint can avoid its obligations under the Stipulated Protective Order by simply having the same lawyers represent it in both this arbitration and the State and Federal Court Actions. Under such a reading of the Stipulated Protective Order, the disclosure limitation to "the Receiving Party's Outside Counsel of Record in the Action" would be meaningless, as would the designation and disclosure limitation to "ATTORNEYS' EYES ONLY."

        **D.**    *Coinmint's Actions Are Excused Because It Is Pursuing a Claim of Alleged Civil Bribery and, If Enforced by Sanctioning Coinmint, the Stipulated Protective Order Would Exempt Katena from Fraud Liability*

Coinmint has argued that it used the designated documents and deposition excerpts in pursuit of a claim for civil bribery and, in this context, the Stipulated Protective Order is unenforceable under California Civil Code Section 1668 as an illegal contract and, if interpreted to warrant sanctions against Coinmint, it would operate indirectly to exempt Katena from liability for fraud.

California Civil Code Section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Coinmint's arguments are off point. The object of the Stipulated Protective Order is not to exempt anybody from anything. It is a contract voluntarily entered into between Coinmint and Katena to protect the confidentiality of information and materials in this arbitration as the producing party might designate in accordance with the Stipulated Protective Order's terms and provisions. Moreover, the Stipulated Protective Order includes a set of procedures should either party wish to challenge the other's designation. If there is something in the materials Katena has designated as "confidential" that Coinmint needs to pursue claims outside of this arbitration, Coinmint needs to go through the agreed upon de-designation procedure. *See* Order No. 6, ¶¶ 6.2 and 6.3. Coinmint has not done so and has not provided an explanation as to why it could not have done so. Instead, Coinmint took matters into its own hands and made the unilateral decision to ignore Katena's "confidential" designations and the Panel's Order Nos. 6, 18 and 20.

     **5.**    *Sanctions*

        **A.**    *The Panel Has Authority to Issue Sanctions and Allocate Attorney's Fees and Costs*

Pursuant to paragraph 19.2 of the Agreement, this arbitration is being conducted in accordance with the 2013 Rules.[13] The AAA Rules empower the Panel to police its own orders and award sanctions and/or such other relief as it deems appropriate to address a party's failure to comply with the Rules or the Panel's orders.

---

[13] *See* footnote 7.

AAA Rule R-23 grants the Panel broad authority to enforce the Rules and address willful violations of its orders. In pertinent part, Rule R-23 provides as follows:

> "The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation….
>
> (d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and
>
> (e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law."

AAA Rule R-58 grants the Panel with broad authority to order appropriate sanctions where a party fails to comply with the Rules or the Panel's orders. In pertinent part, Rule R-58 provides as follows:

> "(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator…."[14]

### B. An Award of Sanctions Is Appropriate Against Coinmint

As noted in Sections 4 and 5, the Panel has found clear violations of the Stipulated Protective Order by Coinmint. The scope of protection available under the Stipulated Protective Order extends to information and materials the parties, for whatever reason, consider "private" and do not want shared with the public. There is no provision limiting confidentiality designations to only those materials that would qualify for protection from public disclosure in a court of law, nor is there a provision prohibiting over-designation. As the Panel reads the Stipulated Protective Order, the scope of protection available under the Stipulated Protective Order is potentially as broad as a blanket nondisclosure agreement unless the parties otherwise agree or the Panel otherwise orders upon a showing of good cause. *See* Order No. 6, ¶¶ 2.3, 2.14, 3, 5, 6.3, 7.1, 7.2 and 7.3.

---

[14] Rule R-58(b) further provides that "The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application." Coinmint has been permitted to respond to Katena's motion in writing, as well as participating in oral argument before the Panel on the motion.

12

Given the breadth of the scope of protection afforded by the Stipulated Protective Order, the Panel has found that Coinmint's disclosures in the State and Federal Court Actions were in violation of Order Nos. 6 and 20. Based upon Coinmint's arguments and the circumstances surrounding Coinmint's violations, as well as Coinmint's arguments at the May 17, 2023 hearing, the Panel concludes that Coinmint acted intentionally and in knowing disregard of the Stipulated Protective Order and the Panel's orders. An award of sanctions is thus appropriate against Coinmint to redress this conduct and discourage any further violations of the Stipulated Protective Order and the Panel's orders.

In its reply, Katena has argued that sanctions should be awarded against Coinmint and its attorneys in this arbitration (Gordon Rees Scully Mansukhani LLP). That request is at odds with the relief requested in Katena's motion where Katena expressly stated that it was <u>not</u> requesting sanctions against Coinmint's counsel "as Gordon Rees did not sign the SPO." *See* Motion, p. 20. In any event, pursuant to Rule R-58(a) of the 2013 Rules, the Panel's sanctioning power is limited to the parties to the arbitration unless the parties' counsel stipulate and submit otherwise, which they have not done.

### C.   *Terminating Sanctions Are Not Appropriate*

Katena has cited to numerous cases where arbitrators have awarded terminating sanctions in circumstances where a party's violation of arbitral orders was found to be intentional (versus inadvertent). In many of the cases cited by Katena, the terminating sanction award resulted in the entire case being resolved / closed through that order. Against the backdrop of a party abusing the arbitral process, that may be an appropriate outcome. However, in this case, the parties have asserted offsetting claims. A terminating sanctions order against Coinmint would not resolve or close the case because Katena's counterclaim would still be left for hearing and determination, and Coinmint's defense to Katena's counterclaim is inextricably intertwined with its affirmative claims against Katena. Under these circumstances, the Panel finds that terminating sanctions directed at Coinmint's claims are not appropriate and would only confuse and confound the merits hearing, which would not serve the goal of reaching a final award after a full and fair hearing on the merits. *See, e.g.*, Rules R-21(b), R-22(a), and R-32(a).

The Panel believes that the sanction should tie to the harm caused by Coinmint's violative conduct. Here, Katena made no showing with respect to how it has been economically harmed. The harm Katena has complained of is reputational harm through Coinmint's public filings in the State and Federal Court Actions.[15] Having reviewed the documents and testimony at issue, it is clear that the content of those materials does not include trade secrets or proprietary information, but are principally internal and private conversations among the principals of Katena, a young company seeking both customers and capital financing.  Without

---

[15]   The Panel's authority is over Coinmint and Katena with respect to the disputes they have submitted for hearing and determination in this arbitration. The Panel has no authority to direct or dictate what the parties or their counsel may do in other forums.

13

evidence of some type of particularized harm, the Panel is left to assess what is an appropriate sanction to redress Coinmint's intentional violation of the Stipulated Protective Order and the Panel's orders. The Panel's conclusion is that monetary sanctions and an award of reasonable attorney's fees and costs incurred by Katena in connection with the SPO violation / sanctions motion proceedings constitute the appropriate sanctions.

### D. Monetary Sanctions and Reasonable Attorney's Fees and Costs Shall Be Awarded to Katena

The Panel has determined that an award of monetary sanctions is appropriate to redress Coinmint's violations of the Stipulated Protective Order and the Panel's orders, as discussed above. Given the position Coinmint has taken concerning the applicability and enforceability of the Stipulated Protective Order, coupled with the fact that there are several related court proceedings that are actively being prosecuted in tandem with this arbitration, the Panel has decided to take the monetary amount of sanctions under submission until the close of the upcoming evidentiary hearing proceedings scheduled for the weeks of August 28, 2023 and September 18, 2023. The award of monetary sanctions will be included in the Final Award irrespective of the outcome on the merits of the parties' respective claims and counterclaims concerning the Agreement.

The Panel has also determined that reasonable attorney's fees and costs incurred by Katena in this arbitration with regard to the Stipulated Protective Order violation / sanctions motion proceedings shall be awarded to Katena as part of the Final Award. At the conclusion of the evidentiary hearing proceedings, the Panel will set a deadline for Katena to submit its fee and cost application. This award will be included in the Final Award irrespective of the outcome on the merits of the parties' respective claims and counterclaims concerning the Agreement.

### 6. Order

Having reviewed and considered the parties' respective briefs and arguments, as well as the underlying pleadings and orders in this arbitration, for the reasons discussed above, IT IS HEREBY ORDERED THAT:

a. Katena shall be awarded monetary sanctions against Coinmint as part of the Final Award issued in this matter, the amount of which will be determined after the close of the evidentiary hearing.

b. Katena shall be awarded its reasonable attorney's fees and costs incurred in connection with the SPO violation / sanctions motion proceedings as part of the Final Award issued in this matter, the amount of which will be determined by application after the close of the evidentiary hearing.

  c. Katena's request for an award of sanctions against Gordon Rees Scully Mansukhani LLP is DENIED.

  d. Katena's request for terminating sanctions against Coinmint is DENIED.

Dated:  25 May 2023

                 *[signature]*

                 Rebecca Callahan, Chair
                 *On behalf of the Panel*