# EXHIBIT Q

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Panel

In the Matter of the Arbitration Between:

Coinmint, LLC,

*Claimant and Counter-Respondent,*

- vs —

Katena Computing Technologies, Inc.,

*Respondent and Counter-Claimant.*

AAA Case No. 01-22-0001-7627

### ORDER NO. 47 – RULING ON COINMINT'S MOTION TO DEDESIGNATE

On July 6, 2023, Claimant Coinmint, LLC ("Coinmint") submitted and served its Motion to Dedesignate ("Motion") documents previously designated as confidential by Respondent Katena Computing Technologies, Inc. ("Katena") pursuant to the parties' Stipulated Protective Order ("SPO"), entered as Order No. 6. The Motion included an itemization of the documents and materials which Coinmint argued have been improperly designated by Katena as confidential, as well as copies of the documents and deposition materials at issue.

On July 20, 2023, Katena submitted and served its opposition to the Motion ("Opposition"). The Opposition included a detailed, item-by-item response by Katena to Coinmint's "improper designation" challenges.

On July 27, 2023, Coinmint submitted and served its reply to the Opposition ("Reply").

The Panel has considered the parties' submissions with regard to the Motion, as well as the record, pleadings and prior orders in this matter, and hereby DENIES the relief sought by the Motion for the reasons set forth below. The Panel's rulings with regard to the specific documents that are the subject of the Motion, and the parties' stated positions with respect thereto, are set forth in the chart attached hereto as Exhibit A and incorporated herein by this reference.

### 2.     *The Parties' Stipulated Protective Order*

On or about November 10, 2022, the parties, through their respective counsel, submitted a proposed form of stipulated protective order for purposes of this arbitration, which, as noted above, the Panel approved and issued as Order No. 6. Under the terms of the Stipulated Protective Order, the parties agreed to the following:

- The parties could designate disclosures and discovery materials produced or generated in this arbitration as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" (SPO ¶ 5).

- Upon designating disclosures and/or discovery materials as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," the materials would be treated as "Protected Material" (SPO ¶ 2.14) subject to the protections conferred by the Stipulated Protective Order (SPO ¶ 5).

- The protections conferred on Protected Material by the Stipulated Protective Order cover not only the Protected Materials themselves, but also **(1)** any information copied or extracted from the Protected Materials, **(2)** all copies, excerpts, summaries or compilations of the Protected Materials, and **(3)** any testimony, conversations, or presentations by Parties or their counsel that might reveal Protected Materials (SPO ¶ 3).

- Testimony given in deposition, pretrial or trial proceedings will automatically be considered Protected Materials for a period of 30 days following the delivery of the transcript of such depositions, hearings or proceedings so as to allow a party to designate some or all of the testimony as Protected Material (SPO ¶ 5.1(b)).

- A "Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party **in connection with this case only for prosecuting, defending, or attempting to settle this arbitration**" (emphasis added) and may disclose such materials only to the authorized persons described in paragraph 7.2 (SPO ¶ 7.1).

- The parties may challenge the other's designation at any time, but must do so in the manner prescribed in the SPO, to wit: **(1)** In order to initiate a challenge to the other party's designation, the challenging party must provide a written notice of each designation being challenged and must state the basis for each challenge, and must then meet-and-confer with the other side. **(2)** If any designation challenges are not resolved through the meet-and-confer process, the challenging party may seek the Panel's intervention, but must do so within 14 days of the failed meet-and-confer effort (SPO ¶ 6).

- If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in the Action as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" that Party must:

  (a)   promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

  (b)   promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Stipulated Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

  (c)   cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

  If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in the Action as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material—and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in the Action to disobey a lawful court order. (SPO ¶ 8)

### 3.    The Panel's Prior Orders

The relief Coinmint seeks through its Motion ties to its earlier violation of the Stipulated Protective Order (as discussed below) when Coinmint attached documents Katena had produced and marked "CONFIDENTIAL" to the complaint in a civil litigation action Coinmint filed in January 2023 in the Santa Clara Superior Court against DX Corr Design, Inc., Sagar Reddy, Robert Bleck, Jim DeNaut, Frank Kinney and Does 1-40, all of whom are companies and individuals associated with the instant arbitration between Coinmint and Katena, Case No. 23CV41 0979 ("the State Court Action"). It appeared upon reading the complaint that "Doe 1" referenced throughout is Michael Maloney, and his name was subsequently substituted for "Doe 1." Sagar Reddy removed the State Court Action to the United States District Court for the Northern District of California, where it is pending before the Honorable Richard Seeborg as Case No. 3:23-cv-00599-RS ("the Federal Court Action").

Katena, the company, was not named as a party to the State Court Action, but was provided with a courtesy copy by Coinmint. When Katena became aware that Coinmint had attached some of its "CONFIDENTIAL" documents to the complaint filed in the State Court Action, Katena filed a motion to "remedy" Coinmint's violation of the Protective Order through a request for sanctions submitted to the Panel.

The Panel found that Coinmint had violated the Stipulated Protective Order put in place for this arbitration because it attached "CONFIDENTIAL" documents to the complaint filed in the Santa Clara Superior Court without going through the de-designation procedure set forth in Section 6 of the SPO. In this regard, the Panel stated as follows:

> "By stipulated agreement of the parties through their counsel which was accepted and signed by the Panel, the Protective Order was put in in place and thus governs the parties' respective disclosures and productions, and the use of such materials. It is undisputed that Katena produced materials that it designated as "CONFIDENTIAL." It is undisputed that Coinmint never asked the Panel to intervene and de-designate any of the materials or disclosures Katena designated as "CONFIDENTIAL."

> Coinmint has not suggested the existence of any exigent circumstances, nor provided the Panel with evidence of any type of exigency – *e.g.*, the expiration of any statutes of limitation – that might justify the need to file the complaint in the State Court Action without first seeking to de-designate Coinmint's intended exhibits of materials Katena designated as "CONFIDENTIAL." Contrary to Coinmint's argument in its Response, the fact that Coinmint is pursuing alleged fraud claims against others does not justify its failure to abide by the Protective Order issued in this arbitration. Even if timing of the filing of the complaint in the State Court Action was an issue, Coinmint could have filed its complaint *without* attaching or directly quoting from Katena's "CONFIDENTIAL" documents, and could have petitioned the Panel to declassify Katena's "CONFIDENTIAL" materials for use in the State Court Action. As the Panel reads and understands Coinmint's Response, Coinmint knew that it was attaching Katena's "CONFIDENTIAL" documents and did so purposefully without first going through the de-designation procedures in the Protective Order. Moreover, Coinmint has not suggested that its use of Protected Material was due to a mistake or inadvertence. Nor could it reasonably so argue given Coinmint's liberal use of Protected Material throughout the body of the complaint and the number of attached exhibits of such designated material, as well as its deliberate delay in providing Katena with the materials it filed with the state court, including the complaint."

*See* Order No. 18, p. 5.

In Order No. 18, the Panel did not address the scope of the confidentiality protections available to the parties under the Protective Order. Rather, the Panel found that once either party had designated a document as "CONFIDENTIAL" under the Protective Order, the other party had an obligation to seek de-designation pursuant to the *procedures* set forth in Section 6 before using Protected Materials in any setting or forum other than this arbitration. *Id.*

In May, after receiving briefing and oral argument for a sanctions motion brought by Katena against Coinmint for attaching CONFIDENTIAL documents to complaints in other forums, the Panel issued Order No. 43, which awarded sanctions against Coinmint for its violation of the Stipulated Protective Order in an amount to be determined in the final award. In Order No. 43, we addressed the scope of confidentiality protection afforded by the Stipulated Protective Order and held that

> "the parties defined the scope of confidentiality protection quite broadly to include 'confidential, proprietary and/or private information,' and made it clear that materials and information designated as 'confidential' could only be used 'for prosecuting, defending, or attempting to settle *this arbitration*.'"

*See* Order No. 43, p. 6.

In its briefing concerning an award of sanctions, Coinmint referred the Panel to court-defined standards, guidelines and legal principles concerning the types of materials and information that qualify for confidentiality protection in a federal court setting. The Panel addressed and rejected those arguments in Order No. 43, where the Panel stated that "no such standards or guidelines exist in arbitration because arbitration is not a public forum," and that "parties are thus free to define the scope of protection they deem necessary or appropriate for the circumstances of their dispute." *See* Order No. 43, p. 6.[1]

### 4.    The Issues Presented

Given the breadth of what the parties agreed to in terms of confidentiality protection, the questions now presented to the Panel are: **1.** Under what circumstances should a party be allowed to de-designate the other party's confidentiality designation, and **2.** What type of showing must be made by the party requesting de-designation?

Section 6 of the Stipulated Protective Order does not provide the Panel with any guidance. Katena suggested in its Opposition that Coinmint should be required to establish a legitimate interest in disclosing to the public what Katena has designated as "CONFIDENTIAL" because the materials contain private, internal business communications, proprietary

---

[1]   In support of its de-designation request, Coinmint has again argued that Katena's designation rights under the SPO must be limited to trade secret and proprietary information akin to that eligible for protection from the public in federal or state court. As noted above, the Panel has previously rejected Coinmint's argument and is not persuaded to deviate from its prior ruling or reasoning as set forth in Order No. 43.

information, and/or trade secrets. The Panel agrees, and notes that Coinmint did not address this issue in either its Motion or Reply. Instead, with regard to all of the challenged materials, Coinmint has argued that Katena's "CONFIDENTIAL" designation was "improper." Coinmint has also argued that to allow Katena to maintain the "CONFIDENTIAL" designation limiting use of the materials to this arbitration will condone and sanction fraud.

With regard to the documents and deposition transcript excerpts Coinmint attached to its complaint in the State Court Action and/or to certain pleadings filed in the Federal Court Action, Coinmint's implicit argument seems to be that since the documents are now in the public record, and since Judge Seeborg denied Katena's request to seal the documents from public view, the Panel should order de-designation of at least those documents.

### 5.   Coinmint's Request for De-Designation is Denied

#### A.   Katena's Designation of "CONFIDENTIAL" Materials Was Not Improper Under the Stipulated Protective Order Negotiated and Agreed to by the Parties

Unlike proceedings pursued through the court system, arbitration is – by its nature and definition – a private proceeding that is <u>not</u> open to the public. It is also a proceeding in which the parties – not a government body – have both the right and the power to define certain aspects of the procedural rules that will govern the arbitration. One such aspect is the scope of confidentiality protection to be afforded testimony and materials submitted or introduced in the arbitration. As discussed in Section 3, above, the Panel has previously held that – per the parties' agreement as set forth in the Stipulated Protective Order– the scope of confidentiality protection available with respect to materials produced by the parties is quite broad. If materials are designated as "CONFIDENTIAL" by either party, they can only be used *in this arbitration*, and cannot be shared, published, or disseminated with the outside public – even in a court proceeding – unless (a) the parties agree otherwise, or (b) the Panel orders otherwise.[2]

It bears noting again that the parties bargained for and agreed to confidentiality for 'confidential, proprietary and/or *private* information,' (italics added). The term "privacy" is defined by the Cambridge Dictionary as the "right to keep [one's] personal matters and relationships secret." https://dictionary.cambridge.org/us/dictionary/english/privacy. The term "privacy" is defined by Merriam-Webster as "the quality or state of being apart from company or observation," and "freedom from unauthorized intrusion." https://www.merriam-webster.com/dictionary/privacy#:~:text=a,one's%20right%20to%20privacy.

---

[2]   Order No. 6 does not in any way impact or govern what the parties might do in other arbitration or court proceedings, but it requires that they go through whatever the required steps might be in those proceedings to obtain documents and/or reported testimony they may have had access to in these arbitration proceedings.

Given the breadth of the scope of the confidentiality protections agreed to by the parties pursuant to the Stipulated Protective Order, it was not "improper" for either party to designate materials as "CONFIDENTIAL" if they wanted to keep them "private" or secret from public view. In this regard, it is significant to the Panel that unlike many stipulated protective orders, the Stipulated Protective Order agreed to in in this matter (a) did not qualify the parties' right to designate materials as "CONFIDENTIAL" to the extent that such designation comported with generally accepted legal principles, and (b) did not include a covenant prohibiting over-designation based on generally accepted legal principles. The Stipulated Protective Order is silent in both regards.

Based upon the foregoing – in particular, the express terms of the Stipulated Protective Order – Coinmint's arguments to the effect that Katena's "CONFIDENTIAL" designations do not comport with the standards applied by the state or federal courts lack relevance because those standards are not the standards the parties agreed to abide by in this arbitration. They defined and agreed to a different, more lenient, and broader standard. That standard does not require page-by-page designation.

Based upon the foregoing, the Panel finds that Katena's "CONFIDENTIAL" designations of the challenged materials was not improper.

> **B.      The Parties' April 2021 Non-Disclosure Agreement is Not Controlling of the Issues Raised by Coinmint in its Motion.**

Coinmint has argued that the Stipulated Protective Order only applies to documents that the parties exchanged pre-litigation under a nondisclosure agreement ("NDA") signed in April 2021, attendant to the Sales and Purchase Agreement executed by the parties in May 2021. There is nothing in the April 2021 NDA that suggests it was meant to cover discovery in a subsequent arbitration (that had not yet been filed) or otherwise supports Coinmint's argument. The NDA preceded the parties' Stipulated Protective Order, the later of which was drafted to deal specifically with the claims and issues in this arbitration. There is no reference to the NDA in the Stipulated Protective Order. Accordingly, the parties' April 2021 non-disclosure agreement is not controlling of the issues raised by Coinmint in its Motion.

> **C.      Fraud Is Among the Disputed Claims and Issues in This Arbitration and Has Yet to be Proven**

Coinmint has argued that regardless of what definition of confidentiality is applied by the Panel, those protections must yield in the face of Coinmint's claim that the materials contain evidence of fraud. In Coinmint's Reply and in other communications, Coinmint asserts that Katena has no good arguments as to why "pure evidence of fraud and criminality could properly be subject to protection." Coinmint's repeated arguments that certain WhatsApp text messages and other communications establish fraud by Katena are not factual findings of the Panel but rather claimed evidence of fraud yet to be proven. So Coinmint's argument puts the

cart before the horse. The Panel has yet to hear the majority of evidence in this arbitration and make its own determination on any of the breach of contract and fraud claims asserted.

It was precisely for purposes of this arbitration that the parties jointly agreed to the terms of the Stipulated Protective Order. It is the intention of this Panel to keep the material confidential until at least the full evidentiary hearing is concluded and a final award is issued. Despite the judicial proceedings that are now occurring, or other actions threatened by Claimant, the integrity of this arbitration and the parties' mutual agreements concerning confidentiality, as memorialized in the Stipulated Protective Order, must be maintained.

### D.   Conclusion

Based upon the foregoing, the de-designation relief sought by the Motion is DENIED in its entirety.

IT IS SO ORDERED.

Dated:  8 August 2023

Rebecca Callahan, Chair
*On behalf of the Panel*

**Coinmint Motion for De-Designation with Panel Rulings re the Challenged Documents – Dated August 7, 2023**

*Coinmint, LLC v. Katena Computing Technologies, Inc.*, Case No. 01-22-0001-7627

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 1. | KATENA000599<br><br>[Page 599][3] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>These pages show Mr. Monzon sharing the Coinmint contract with a third party – J.P. Morgan. Clearly, there is nothing legitimately confidential about that.  In addition, Mr. Monzon falsely represents to J.P. Morgan that "proper due diligence" was done by Coinmint on Katena – without revealing that in fact the due diligence was done by Mr. Reddy's "bitch," Robert Bleck. | Katena communicates to J.P. Morgan under NDA proprietary business strategy, including Katena's sales strategies, such as "paus[ing] sales." | Katena has adequately identified proprietary, confidential and/or private information within the challenged document. While Coinmint has challenged the propriety of Katena's "CONFIDENTIALITY" designation, for the reasons discuss above, the Panel has determined that there was no impropriety in Katena's "CONFIDENTIALITY" designations. Accordingly, the burden was on Coinmint to explain why de-designation is necessary or appropriate. Coinmint has not carried its burden. Clearly, under the terms of the SPO / Order No. 6, the |

---

[3]   In its Motion, Coinmint specified specific pages within the Katena documents being challenged. The Panel agrees with Katena that the SPO / Order No. 6 does not require page-by-page designations. Accordingly, where Katena has designated an entire document as "CONFIDENTIAL," the Panel agrees and has ruled that the entire document is eligible for "CONFIDENTIAL" designation if Katena identifies confidential, proprietary or private information found anywhere in the designated document.

|  |  |  |  | "CONFIDENTIALITY" designation does not impede or impair Coinmint's ability to reference and use the designated documents in this arbitration. That suggests that Coinmint intends or anticipates using the designated documents outside of this arbitration, but has not provided the Panel with that information or an explanation with regard to why the broad privacy protections the parties agreed to at the outset of this arbitration should be reduced. Accordingly, the challenged document shall maintain its "CONFIDENTIAL" designation and is subject to the protections afforded and agreed to by the parties pursuant to the SPO / Order No. 6.

De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 2. | KATENA000926<br><br>[Page 926] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Page 926 shows Katena's attempt to bribe Coinmint's then CFO with offers of employment at the very same time the CFO was negotiating the contract between the parties.  That is evidence of fraud and criminality on Katena's part; but it certainly isn't legitimately confidential or proprietary.  (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].)<br><br>Judge Seeborg had this to say about this document,<br><br>"Notably, some proposed redactions include messages | These emails consist of a conversation between Katena and Jim DeNaut, in which they discussed the private and confidential terms of an offer of employment to Mr. DeNaut made after Mr. DeNaut left Coinmint, and which Mr. DeNaut did not accept. The emails also contain a discussion of Katena's non-public and proprietary potential acquisition strategy "to create an integrated manufacturing/mining operation." | Same as No. 1 – incorporated herein by this reference.<br><br>With regard to Coinmint's reference to rulings or statements the U.S. District Court has made, those statements / rulings have been in the context of a civil action that (a) does not involve Katena as a named party, and (b) involves Katena "intervening" via a motion to seal, which is subject to standards uniquely set in the federal court system that do not apply in private arbitration.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | referring to Mr. Maloney's interest in a job with Katena, and Katena employees' desire to leverage that interest, but these are germane to the allegations in this case and not related to internal hiring practices or standard that should be confidential."  (Liu Decl., ¶ 7, Exh. D, p. 2:6-9.) | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 3. | KATENA002986-2992<br><br>[Pages 2986-298-2992] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Page 2986 and 2988-2992 evidence fraud on the part of Katena in that Katena offered Coinmint's CEO a position with them.  These pages also shows the terms of that deal, which is relevant to Coinmint to prove fraud as to both Katena and its former CEO, James DeNaut. | This is an email from Katena to Mr. DeNaut, in which they discussed the private and confidential terms of an offer of employment to Mr. DeNaut made after Mr. DeNaut left Coinmint, and which Mr. DeNaut did not accept. Obviously, Katena does not want others to know what employment terms they would be willing to offer. | Same as No. 1 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 4. | KATENA003842-3847 [Pages 3842-3843] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)  Pages 3842 -3843 show that Katena provided information about the Coinmint contract to a third party – J.P. Morgan.  There is certainly nothing proprietary or confidential about that.  No confidential financial information is revealed. | Katena communicates confidential, proprietary, and commercially sensitive non-public financial information under NDA to its financial advisor, J.P. Morgan: "256M in 2022 strategic evaluation (we haven't evaluated potential orders beyond 2022 yet), and 276M signed binding agreements. 532M combined opportunity including 2022 evaluation and all signed PO's, 502M to be recognized as revenue in 2022 (246 PO's, 256 evaluation), and an extra 30M already signed (to be delivered Q1 2023 – doesn't need to be in graphs just part of the 276 number)."  There can be no question that these proprietary business projections are confidential.4 | Same as No. 1 – incorporated by this reference.  De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 5. | KATENA005817-5822<br><br>[Pages 5817-5822] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>This document, pages 5817-5822, contains the substance of Katena's misrepresentations that it would use to lure victims into its fraudulent scheme. | This is a non-public teaser deck that was shared with prospective investors under NDA.  It contains sensitive non-public financial information: "$276M of signed binding agreements" and "$200M secured revolving credit, up to $1Bn financing." It also says that Katena is estimated to make $977 million in revenue in 2023.The deck also compares Katena's technology to the technology of other companies. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |
| 6. | KATENA0058877-5881<br><br>[Pages 5877-5880] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 5877-5880, evidence Katena's utilization of a fraudulent due diligence scheme, by showing that they would literally tell the due diligence person what to put in their due diligence report and also shows that the due diligence was not independent.  Mr. Monzon's comment that the Coinmint audience won't understand it anyways go towards their state of | This private text message communication between Mr. Monzon and Mr. Reddy includes a discussion of Katena's non-public business negotiations with other prospective customers and with J.P. Morgan. It also discusses non-public information regarding the status of chip design (e.g., "All layer review is done. So they should be taping in to tsmc next week.") | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | mind in defrauding Coinmint and they repeatedly discuss hurrying Robert Bleck with his report. There is nothing legitimately proprietary or confidential about Katena's effort to subvert the due diligence process. | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 7. | KATENA005889-5894 [Pages 5889-5891 and 5893-5894] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.) Pages 5889-5891 and 5893-5894 show further evidence of Katena's utilization of a fraudulent due diligence scheme, by showing the importance of the fraudulent due diligence to completing the fraud. There is nothing legitimately proprietary or confidential about Katena's effort to subvert the due diligence process. | Mr. Monzon discusses with Mr. Reddy a call that he had with Kevin O'Leary, a prospective customer, in which they discuss O'Leary's company conducting their due diligence on Katena. They also discuss payments by Katena to IMEC and TSMC. This is proprietary non-public business information. | Same as No. 1 – incorporated by this reference. De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 8. | KATENA005931-5933<br><br>[Pages 5931-5933] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 5931-5933 show further evidence of Katena's utilization of a fraudulent due diligence scheme, in that these pages show Mr. Monzon confirming that Mr. Bleck agreed to show Katena the due diligence report before giving it to Coinmint (despite Coinmint paying for the due diligence report!) and that Mr. Bleck was on board with the fraud and wont "be a hurdle." There is nothing legitimately proprietary or confidential about Katena's effort to subvert the due diligence process. | Mr. Monzon discusses with Mr. Reddy Katena's negotiations with Coinmint under NDA. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 9. | KATENA005947-5961<br><br>[Pages 5947-5961] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 5947 - 5961 show the extent of actions Katena took to fraudulently represent that Robert Bleck was not connected to them, by ensuring that a Google search of his name did not show his connection to their company and also by ensuring that he scrubbed his LinkedIn of information showing his connection to them.  There is nothing legitimately proprietary or confidential about Katena's effort to subvert the due diligence process. | Mr. Monzon discusses with Mr. Reddy and Mr. Gao Katena's negotiations with Coinmint under NDA.<br><br>Considering the confidential nature of their discussion, this is a private communication, as they are discussing non-public information. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|--------------------|-------------------|---------------------|
| 10. | KATENA006195-6223<br><br>[Pages 6195-6199, 6215-6217, 6218] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 6195 – 6199 show Katena taking advantage of Coinmint's CFO, Michael Maloney, by using his "eventual onboarding" with them to push him into behaving in their best interest for the negotiation of the Sales and Purchase Agreement.<br><br>Pages 6215 – 6217 shows Henry Monzon and Michael Gao admitting to their fraudulent conspiracy/actions of compromising a high-level officer of a target victim by offering them a sweetheart position with their company and then being able to manipulate that officer into breaching its duty of loyalty to their current employer and helping them with their fraud. E.g., Henry Monzon states, "It definitely won't be easy to get another deal like Coinmint. Don't expect that. It won't happen. It's due to Maloney | Mr. Monzon discusses with Mr. Gao his private conversations with the CEO of another company regarding Katena's business. Mr. Monzon also discusses the status of non-public negotiations with J.P. Morgan. And they discuss the non-public terms of a potential deal between Katena and non-party Celsius.<br><br>Considering the confidential nature of their discussion, this is a private communication, as they are discussing non-public information. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | | | |
|---|---|---|---|---|
| | | because of deal in the works for him."  In discussing another potential victim, a company named Celsius, Michael Gao responds, "Maybe we offer a job to [the] CFO [of] Celsius" followed by a wink emoji  ";)."

Page 6218 shows Henry Monzon plotting to use Katena contract to lure others into fraudulent scheme, by FOMO (an acronym for "fear of missing out").  Mr. Monzon: "I can use Coinmint PO 'in confidence' to sales fomo other, don't need PR for that either."  Mr. Gao: "Lol. . . Now everyone will beg."

These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those | | |

| | | circumstances, is guilty of commercial bribery."].) It certainly isn't legitimately proprietary or trade secret information.  The same is true of the evidence of Katena's subversion of the due diligence process. | | |
| --- | --- | --- | --- | --- |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 11. | KATENA006417-6419<br><br>[Page 6418] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Here, page 6418 shows evidence of fraud/illegality, and bribes/kickbacks, when Mr. Gao states" Hey, why not fund Maloney with $500K now and do yet another capital call. . . Question is, we lose $500k as a sales commission I guess. . . Unless we find a scheme."<br><br>These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime.  (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives | Mr. Monzon discusses with Mr. Gao a potential strategy by which Mr. Maloney could cause a capital call at Coinmint in order to unlock additional investment by Mr. Soniat, which could be used by Coinmint to pay its contractual debt to Katena. This is a private business communication. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) It certainly isn't legitimately proprietary or trade secret information. | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 12. | KATENA006586-6624 [Pages 6586-6596, 6607-6608, 6616-6624] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.) Pages 6586 - 6596 show Katena plotting to utilize its FOMO strategy to get other victims on board with them and eventually discussing how their fraudulent bribery of Maloney would be even more effective by stating that "The only world where this would be different is if Maloney really wants the job."  Henry responded "I do think he wants the job," and Gao stated, "Hmm.. Then where's the urgency." On pages 6607-6608, they appear discuss their desire to find other companies/victims to enter into deals without due diligence, "Why would David have an 'in' without usual due diligence . . . Too good to be true." Pages 6616 – 6624 show the heart of this fraud and conspiracy to defraud Coinmint, in that | Mr. Monzon discusses with Mr. Gao the details of non-public business negotiations between Katena and multiple potential customers. They also discuss non-public details of a contract between Katena and DXCorr. Considering the confidential nature of their discussion, this is a private communication, as they are discussing non-public information. | Same as No. 1 – incorporated by this reference. De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | these pages show Katena discussing the plan for them to select someone for due diligence and provide their identity to the CFO for Coinmint, who would then lie to Coinmint and tell Coinmint that the expert was found by the CFO, rather than selected by Katena (who selected someone that would let them rewrite the report to their liking and who had to scrub his internet history and LinkedIn profile in order to hide his relationship with Katena).  It also shows that the CFO involved the CEO who helped to develop this method of fraudulently proposing a tech due diligence firm.  "Interesting call with Mike from Coinmint . . . CEO has been briefed on Katena. . . They [they here refers to the CFO, Michael Maloney and the CEO James DeNaut] want us to recommend them a tech due diligence firm, he will just say he found them himself.. . . Lock PO by Thursday of next week."  Then, they discuss who to propose for the due diligence, and Mr. Monzon suggests "One of Sagar's b***h engineers" and "we need to move on this, f**k; This is the way to Coinmint." Mr. Gao offers his input, "Maloney has walked it to the finish line for us." | | |

| | | These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) It certainly isn't legitimately proprietary or trade secret information.  The same is true of the evidence of Katena's subversion of the due diligence process. | | |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 13. | KATENA006638-6650<br><br>[Pages 6639-6949 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 6639 – 6949 show Mr. Gao and Mr. Monzon discussing how slow Robert Bleck is with getting his report done and how to speed up the process, with discussions as to how to ensure Coinmint CFO Maloney goes along with their scheme.  Mr. Gao states, "did you have chat with him about position here" to which Mr. Monzon responded, "We talked last night, told him year let's do that, etc… we agreed to chat today. . . You need to talk to him offline; Re his engagement with Katena, I think he should already start thinking of his own offer comp to join" Mr. Monzon then sends Mr. Gao a screenshot of a text message he sent to Mr. Maloney stating, "How's June 1st as a tentative start date at Katena . . . Can you start putting together /  thinking of comp package for yourself that can be reasonable for us to discuss?" Mr. Monzon | Mr. Monzon discusses with Mr. Gao the status of work done by J.P. Morgan under NDA for Katena and the status of negotiations with Coinmint under NDA. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

states how Mr. Maloney will help them get the money from Coinmint in a fast manner because he will not want to "disappoint" his future boss.  Mr. Monzon discusses the fact that he will not give Maloney the job with Katena unless and until Maloney gets them the money from Coinmint.

These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].)  It is certainly not protectable, proprietary business information.

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 14. | KATENA006659-6665<br><br>[Pages 6661-6663 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>In pages 6661 – 6663, Mr. Monzon states "Maloney- how r we going to get more $ from him" to which Mr. Gao responds, "He may be able to wire a few more million but I'm still working on that . . . I told him we need it to clinch 5nm potentially, so he better get on that if he's gonna come here" This shows the extent to which they were extracting money out of Coinmint by their bribery of Coinmint's then CFO.<br><br> These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in bribing Coinmint's then-CFO, Maloney, with offers of employment in exchange for Maloney's role in facilitating payments to Katena is a crime.  (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from | Mr. Monzon discusses with Mr. Gao the status of negotiations with prospective investors under NDA, including details of negotiations regarding a possible investment by an individual. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | | | |
|---|---|---|---|---|
| | | a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) | | |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 15. | KATENA006700-6720<br><br>[Pages 6700-6720] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Page 6700 shows Mr. Gao and Mr. Monzon discussing how they are using Maloney's job offer with them to make him essentially start working for them while he was still Coinmint CFO.<br><br>Pages 6701 – 6720 shows the extent to which Maloney's  duty of loyalty to his current employer was compromised by Katena's bribery, as Mr. Gao brags about the proposed purchase order, "Wow  Mike even put clauses in our favor into the document . . . He must really wanna be hired." They then discuss how to get rid of the escrow clause that would hold money is safe location until product provided, which obviously was not good for their fraud.  They plot how to make it seem like there is a short timeline and that delay could hold up entire deal.<br><br>These pages do not include any | Mr. Monzon and Mr. Gao discuss a meeting with a potential investor set up by J.P. Morgan for Katena. They also discuss negotiations with Coinmint under NDA; negotiations with other prospective customers; the details of contracts with other customers (which are subject to confidentiality provisions); and non-public details regarding Katena's financial performance. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | legitimately confidential or propriety financial or business data. Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing favorable treatment on a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 16. | KATENA006721-6728<br><br>[Pages 6721-6726 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 6721- 6726 show further scheming on Katena's part, and show that the SPO Katena asserts in its SPO counterclaim is not the final contract.  This also shows that they planned to use the fact that there would not be an updated written contract to their advantage, as Mr. Gao states, "Maloney is willing to send the money without contract revisions . . . Just an email written acknowledgement of new terms [and] acceptance."  Mr. Monzon responds, "This is a good faith sign . . . Because for raise we can play it as part of total original agreement." To which Mr. Gao responds, "Yup," and Monzon, "If there's no contract amendments."  Mr. Gao then states, "I drove that hard with him… he originally wanted to redline. . . Lol." They then discuss the terms of the new agreement that is not being | Mr. Monzon discusses with Mr. Gao conversations with prospective investors under NDA and details regarding negotiations with Coinmint under NDA.6 | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | | | |
|---|---|---|---|---|
| | | modified in writing, as being "$7.5m and first $50m payment at $60/th." Katena does not have any proprietary rights or legitimate confidentiality interests in writings that memorialize discussions with Coinmint's then-CFO about modification of the contract. | | |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 17. | KATENA006736-6756<br><br>[Pages 6736, 6741, 6742-6743, 6746-6750, 6752-6756] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 6736 and 6746shows Katena discussing its strategy of "fomo'ing" companies, a strategy they employed on Coinmint. Page 6741 shows Mr. Monzon asking Mr. Gao if he gave Maloney an offer yet.<br><br>Pages 6742-6742 shows Mr. Gao and Mr. Monzon celebrating when their fraudulent scheme resulted in obtaining $7.5 million from Coinmint.  Mr. Monzon:<br><br>"Holy shit . . . we got $7.5M from Coinmint . . . [party emoji, party emoji, party emoji].  Mr. Gao: "Holy f**k!"  Mr. Monzon: "F**k yeah . .  Let's keep momentum . . . Standard Power is within reach . . .Interest is definitely there."  Mr. Gao: "$$$$$$$$"<br><br>Pages 6746-6750 show Katena talking about the job offer to Mr. Maloney. | Mr. Monzon discusses with Mr. Gao Katena's business strategy and goals for the company. They also discuss reaching out to other companies that they hope will enter into a deal with Katena. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

Pages 6752-6756 shows Mr. Monzon giving Mr. Gao a $100K payment for Mr. Gao's assistance in helping to get the first $7.5 million out of Coinmint.

These pages do not include any legitimately confidential or propriety financial or business data. Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) Monzon's and Gao's celebratory reaction to receipt of the first payment from Coinmint – and their stated intention to use some of that payment to divert to Gao – reveals no legitimately proprietary or confidential information.

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 18. | KATENA006809-6875<br><br>[Pages 6815-6816, 6818-6821, 6831, 6857-6862] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 6815-6816 talks about how they need Coinmint to sign, along with other victims, so that they would get<br><br>"nearly half a billion dollars" and "then jp morgan and institutions will be our b***h even more"<br><br>Pages 6818–6821 shows Mr. Gao and Mr. Monzon ruminating over how hard it is to find someone to do their fraudulent due diligence report and why can't they find someone who wants a quick and easy $15K?.  Mr. Gao: "Can't believe Sagar hasn't gotten single person who agrees to tech dd. . . Why is Sagar's network so shitty?"  Mr. Monzon: "I think it's more sagar being a pussy in selling it . . . who wouldn't want $15k in their pocket, shit" Mr. Gao:  "What kind of friends do you have if you can't pay them $15k to help you. . ."  Mr. Monzon: | Mr. Monzon discusses with Mr. Gao Katena's financials. They also discuss Katena's potential deal with Celsius. And they discuss an arrangement between Katena and J.P. Morgan. With regard to the arrangement with J.P. Morgan, Gao says, "[i]f we sign $300m before, valuation will go up to $4b." Monzon responds by saying, "yes valuation is key here."<br><br>Considering the confidential nature of their discussion, this is a private communication, as they are discussing non-public information. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

|  |  | "we're basically being given a gold mine and can't pick the shovel."<br><br>Page 6831 is where Mr. Gao informs Mr. Monzon that "Sagar found a guy . . . Robert Bleck, look him up. . .<br><br>These pages evidence Katena's subversion of the due diligence process through fraud and misrepresentation.  They reveal no legitimately proprietary or confidential information. |  |  |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 19. | KATENA007115-7120<br><br>[Pages 7115-7118] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 7115-7118 show Mr. Gao bragging to Mr. Monzon about how he called Maloney and got him to agree to no escrow for the money for the deal, and he also bragged about getting a shipping term in Katena's favor.  This shows that Katena's fraud on Coinmint, with the assistance of Coinmint's compromised CFO, Michael Maloney, who was freely giving Katena contractual gifts during the tainted negotiation process for the SPA.  They then schemed about how they should get the compromised CFO to unilaterally agree to a larger deal with them, such as $150-200 million instead of $130 million.<br><br>They then conspire as to how they should instruct their hand-picked due diligence puppet, Robert Bleck, to behave in order to best sell Coinmint on the deal, "We should tell Sagar to somehow get Bleck to be super | Mr. Monzon discusses with Mr. Gao a potential deal involving Katena. Gao says, "[a]fter big PO signed we need to immediately go back to Samsung and GF, as for real capacity." They also discuss the status of negotiations with Coinmint under NDA and conversations with under potential customers under NDA. | Same as No. 1 – incorporated by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | enthusiastic.  "I mean, this will be the easiest tech dd in history."<br><br>These documents evidence Katena's bribery of Maloney in exchange for Maloney's favorable treatment of Katena on contract terms.   They also show Katena's subversion of the due diligence process.   But they do not reveal any legitimately proprietary or confidential information. | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 20. | KATENA007484-7501<br><br>[Pages 7494-7496] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 7494-7496 show Henry Monzon and Rachel Pipan discussing Katena's plan to hire Coinmint CFO Maloney.<br><br>Katena certainly has no proprietary rights or legitimate ground to assert confidentiality over communications between Katena and a third party about possibly hiring Coinmint employees.  These documents evidence Katena's fraudulent bribery scheme – nothing more. | Mr. Monzon has a private discussion with Rachel Pipan, a friend and consultant to Katena, about their personal lives; they also discuss Katena's non-public business and communications strategy and Katena's hiring needs. | Same as No. 1 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 21. | KATENA007527<br><br>[Page 7527] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>This page shows Mr. Monzon offering Coinmint's CFO an advisor position in November 2021, and asking for a resume.  It also shows that Coinmint's CFO being accepting and excited for this event to occur.<br><br> These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those | This is a private communication between Mr. Monzon and Mr. DeNaut about possible employment with Katena after Mr. DeNaut left Coinmint.7 | Same as No. 1 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | circumstances, is guilty of commercial bribery."].) | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 22. | KATENA007534-7536 [Pages 7534-7535] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)  Pages 7534-7535 show that Coinmint's former CEO, James DeNaut was compromised and working for Katena's interest at a time when he had represented to Coinmint that he was acting in Conmint's interests to try to secure a refund from Katena. Here, Mr. Monzon instructs Mr. DeNaut to "not offer any scenario of 'giving $ back' to Coinmint."  These pages do not include any legitimately confidential or propriety financial or business data.  Katena's conduct in holding out to executives of target customers the prospect of possible employment with Katena in exchange for their role in securing a contract is a crime. (Penal Code § 641.3, subd. (a) ["Any employee who . . . accepts, or agrees to accept money or any thing of value from a person . . . in return for using or agreeing to | This document contains private discussions of potential settlement of the Coinmint-Katena dispute. In addition to being private and proprietary, this document should not be admissible in the arbitration. | Same as No. 1 – incorporated herein by this reference.  De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery."].) Discussions about whether to refund money to Coinmint certainly do not constitute Katena's proprietary information. | | |
|---|---|---|---|---|

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 23. | KATENA008141-8146<br><br>[Pages 8141-8145] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential. (SPO, ¶¶ 5, 6.)<br><br>Pages 8141 – 8145 show Katena's conspiracy to defraud Coinmint by spelling out very clearly that Katena will find an engineer "for Coinmint to hire to do tech dd dil on Katena," and that "The CFO at Coinmint will just say Eng is his recommendation" and that it "Didn't come from<br><br>[Katena]." Mr. Monzon then lays out this fraud in full scope by clarifying that Katena is a customer that wants to place a $100M order, and that the engineer they are looking for should not be real, but should be willing to<br><br>"rubber stamp" the due diligence and be "friendly" and "credible." Then, in furtherance of his admission to unlawful behavior, Mr. Monzon states that "The Coinmint CFO will join Katena after he gets us this deal. . . one | Mr. Monzon discusses with Mr. Reddy the details of negotiations with Coinmint under NDA. | Same as No. 1 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| | | of your engineers can act as consultant . . .or someone in your network." Mr. Monzon then states what he expects the phony due diligence engineer to say in his/her report: "To say we walk on water . . . We are top eng team, results are 100% real . . . Recommendation to Coinmint: Place order… Now"  When Sagar states it is "weird" the Coinmint CEO wants to join Katena, Mr. Monzon replies that "his interview is this deal lol." | | |
| | | These documents evidence Katena's bribery of Maloney in exchange for Maloney's favorable treatment of Katena on contract terms.   They also show Katena's subversion of the due diligence process.   But they do not reveal any legitimately proprietary or confidential information. | | |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 24. | KATENA008167-8168<br><br>[Pages 8167-8168] | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Pages 8167 – 8168 show that Coinmint did not even have any payroll setup during their negotiations with Coinmint, and needed the money from Coinmint to "set[] up payroll." These pages also show Katena's knowledge of how important the bogus due diligence report was to pull off its fraud.  They knew that prior to getting any money from Coinmint, that "Coinmint needs full report from Blake [sic] first. . ."<br><br>No specific payroll dollar figures are revealed.   No confidential business strategy is revealed.  The fact that Katena planned to use Coinmint's money to set up payroll is crucial evidence of fraud.   It does not constitute legitimately proprietary or confidential information. | Mr. Monzon discusses with Mr. Reddy Katena's long-term business strategy. Monzon says "we need to roll in Engineers now, into Katena. Or we'll take an impact on valuation. I'll discuss later today at founders sync." | Same as No. 1 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|-----|---------------------------|---------------------|-------------------|---------------------|
| 25. | GAO DEPOSITION TRANSCRIPT<br><br>Page 22, lines 20-23 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential. (SPO, ¶¶ 5, 6.)<br><br>Mr. Gao's testimony that Katena has not, as of the date of his testimony, built a single mining rig is relevant evidence to show that Katena has committed fraud on Coinmint. No specific business plans or strategies are discussed. This is simply an admission that Katena has never built a single mining rig. Katena can hardly claim that information is legitimately proprietary. It is a basic business metric of the kind routinely released by businesses of all kinds: How many widgets has Company X produced? | Mr. Gao's confidential deposition testimony discusses "marketing efforts at Katena" and Katena's business strategy and progress. | Under the terms of the SPO / Order No. 6, both parties have the right to designate as "CONFIDENTIAL" the deposition testimony provided by party witnesses. There is no qualifier for making such designations, and the "CONFIDENTIALITY" designation does not impede or impair the parties' ability to use and refer to the deposition transcripts in these arbitration proceedings.<br><br>The burden was on Coinmint to explain why de-designation is necessary or appropriate. Coinmint has not carried its burden.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 26. | GAO DEPOSITION TRANSCRIPT<br><br>Page 86, line 24 to<br><br>Page 87, line 1 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Mr. Gao's testimony that Katena had not executed a contract with IMEC or any other aggregator at any time in 2021 is relevant evidence to show that Katena had committed fraud on Coinmint. No specific contract terms or financial metrics are revealed.   The absence of a contract cannot reasonably be viewed as proprietary or confidential. | Mr. Gao's confidential deposition testimony discusses the details of Katena's contracts with vendors including IMEC and TSMC, which include confidentiality provisions. | Same as No. 25 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 26. | GAO DEPOSITION TRANSCRIPT Page 109, lines 15-25 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.) Mr. Gao's testimony that he does not remember whether Katena executed any contracts with partners in other parts of the world for the fabrication and assembly of the chip and mining rigs is relevant evidence to show that Katena had committed fraud on Coinmint.  No specific contract terms or financial metrics are revealed.   The absence of a contract cannot reasonably be viewed as proprietary or confidential. | Mr. Gao's confidential deposition testimony discusses Katena's business strategy, progress, and contracts with third parties. | Same as No. 25 – incorporated herein by this reference. De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 28. | GAO DEPOSITION TRANSCRIPT<br><br>Page 245, line 11 to<br><br>Page 246, line 5 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Mr. Gao's testimony on the topic of Katena's recruitment of Coinmint's CEO is relevant evidence to show that Katena had committed fraud on Coinmint.  See discussion of this topic above. | Mr. Gao's confidential deposition testimony discusses confidential employment information regarding Katena's executive assistant. | Same as No. 25 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |
| 29. | GAO DEPOSITION TRANSCRIPT<br><br>Pages 62 to 66 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Mr. Gao's testimony here regarding the production status of the product that Coinmint contracted for is relevant evidence to show that Katena had committed fraud on Coinmint. | Mr. Gao's confidential deposition testimony discusses non-public information regarding the status of Katena's business and its contractual relationship with third-party IMEC which is subject to a confidentiality agreement. | Same as No. 25 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |

| No. | Katena Document Challenged | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 30. | MONZON DEPOSITION TRANSCRIPT<br><br>Pages 190 to 191 | The confidentiality designations on these pages do not comply with the requirements of the SPO and the pages in question do not contain any trade secrets or proprietary information justifying their status as confidential.  (SPO, ¶¶ 5, 6.)<br><br>Mr. Monzon's testimony here regarding his representations to JP Morgan that Mr. Bleck's due diligence report was unbiased and regarding his efforts to not have escrow involved in the transaction are relevant to Coinmint's fraud claim against Katena.  See discussion of these topics above. | Mr. Monzon's confidential deposition testimony discusses communications with J.P. Morgan under NDA and details of negotiations with Coinmint under NDA. | Same as No. 25 – incorporated herein by this reference.<br><br>De-designation DENIED for the reasons stated herein and in the above rulings. |