David P. Chiappetta, California State Bar No. 172099
DChiappetta@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

John R. Hardin, Texas State Bar No. 24012784 *(admitted pro hac vice)*
JohnHardin@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone: +1.214.965.7700
Facsimile:  +1.214.965.7799

Jacob J. Taber, New York State Bar No. 5374020 *(admitted pro hac vice)*
JTaber@perkinscoie.com
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900
Facsimile:  +1.212.977.1649

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COINMINT, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KATENA COMPUTING TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 3:23-cv-04683-RS<br><br>**KATENA'S MEMORANDUM IN FURTHER SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD AND IN OPPOSITION TO COINMINT'S CROSS-MOTION TO VACATE** |

1

**TABLE OF CONTENTS**

2   EXECUTIVE SUMMARY ........................................................................................... 1

3   FACTUAL BACKGROUND ....................................................................................... 3

4          A.    Pre-Arbitration ........................................................................ 3

5          B.    The Arbitration ....................................................................... 3

6               1.    The SPO ................................................................... 3

7               2.    Coinmint violates the SPO for the first time ................................. 4

8               3.    The Panel finds that Coinmint willfully violated the SPO ............ 4

9               4.    The Panel orders that the testimony of Bleck, DeNaut, and Maloney not be transcribed. ............................................. 5

10

11               5.    The Panel orders that Sagar Reddy need not appear to be deposed. .............................................................. 8

12               6.    The Panel places reasonable conditions on Coinmint receiving documents from Katena's data room that Coinmint never meets. ........................................... 8

13

14               7.    Coinmint's current attorneys had not appeared (and presumably were not engaged) during these events. ................ 9

15

16               8.    The Panel conducted a fair hearing. ............................. 10

17   ARGUMENT ......................................................................................... 10

18        I.    Coinmint's failure to clearly identify vacatur grounds requires denial of its motion. ........................................................................... 11

19        I.    Coinmint has not proven "evident partiality" under Section 10(a)(2). ............... 13

20        II.   Coinmint has not proven "misconduct" or "misbehavior" under Section 10(a)(3). ........................................................................... 15

21

22          B.    The Panel correctly conditioned Coinmint's access to data room documents. ........................................................... 15

23          C.    The Panel correctly interpreted the AAA Rules in ordering that the testimony of certain third-party witnesses not be transcribed. ................. 17

24

25        III.  Coinmint has not proven that the Panel "exceeded their powers" or manifestly disregarded the law under Section 10(a)(4). ..................................... 20

26        IV.  Purported errors of fact are not grounds for vacatur. ........................................... 24

27        V.   The court should confirm the Final Award. ....................................................... 25

28

3:23-CV-04683-RS

KATENA'S MEMORANDUM IN FURTHER SUPPORT OF PETITION TO CONFIRM ARBITRATION
AWARD AND IN OPPOSITION TO COINMINT'S CROSS-MOTION TO VACATE
PAGE i

1

### TABLE OF AUTHORITIES

2

CASES

3

*ALS & Assocs., Inc. v. AGM Marine Constructors, Inc.,*

4

  557 F. Supp. 2d 180 (D. Mass. 2008) .................................................................................. 24

5

*ANR Coal Co. v. Cogentrix of N. Carolina, Inc.,*

  173 F.3d 493 (4th Cir. 1999).............................................................................................. 24

6

*Arteaga v. Bevona,*

7

  21 F. Supp. 2d 198 (E.D.N.Y. 1998) ................................................................................ 22

8

*Bergerco, U.S.A. v. Shipping Corp. of India,*

9

  896 F.2d 1210 (9th Cir. 1990)............................................................................................ 23

10

*Biller v. Toyota Motor Corp.,*

  668 F.3d 655 (9th Cir. 2012)............................................................................................... 21

11

*Bosack v. Soward,*

12

  586 F.3d 1096 (9th Cir. 2009)....................................................................................... 21, 24

13

*Carmack v. Chase Manhattan Bank (USA),*

14

  521 F. Supp. 2d 1017 (N.D. Cal. 2007) ............................................................................ 13

15

*Carpenters 46 N. Cal. Counties Conference Bd. v. Zcon Builders,*

  96 F.3d 410 (9th Cir. 1996)...................................................................................... 15, 17, 19

16

*Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,*

17

  264 F. Supp. 2d 926 (N.D. Cal. 2003) .............................................................................. 13

18

*Chelmowski v. AT & T Mobility LLC,*

19

  No. 14-cv-7283, 2015 WL 231811 (N.D. Ill. Jan. 15, 2015)............................................ 23

20

*Coutee v. Barington Cap. Grp., L.P.,*

  336 F.3d 1128 (9th Cir. 2003)............................................................................................. 11

21

*Div 15 Tech v. Sheet Metal Workers' Int'l Ass'n, Loc. 104,*

22

  No. 10-cv-05309, 2011 WL 13244832 (N.D. Cal. Mar. 14, 2011)........................................ 13

23

*Freeman v. Citibank, N.A.,*

  No. 14-cv-00067, 2015 WL 13777266 (N.D. Ga. Jan. 20, 2015).......................................... 24

24

*Freeman v. Pittsburgh Glass Works, LLC,*

25

  709 F.3d 240 (3d Cir. 2013).............................................................................................. 23

26

*Gilmer v. Interstate/Johnson Lane Corp.,*

27

  500 U.S. 20 (1991).............................................................................................................. 22

28

1

2

*Glob. Gold Mining LLC v. Caldera Res., Inc.*,
     941 F. Supp. 2d 374 (S.D.N.Y. 2013) ........................................................................... 18, 24

3

*Golden v. O'Melveny & Myers LLP*,
     No. 2:14-cv-08725, 2019 WL 5693760 (C.D. Cal. Nov. 1, 2019) ........................................ 14

4

*Goulds Pumps (IPG), LLC v. United Steel Workers Loc. Union No. 3298*,
     583 F. Supp. 3d 427 (W.D.N.Y. 2022) ........................................................................... 22, 23

5

6

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
     552 U.S. 576 (2008) ........................................................................................................... 11

7

8

*Halliburton Energy Servs., Inc. v. NL Indus.*,
     553 F. Supp. 2d 733 (S.D. Tex. 2008) ........................................................................... 23, 24

9

10

*Hardy v. United States*,
     375 U.S. 277 (1964) ........................................................................................................... 22

11

*HayDay Farms, Inc. v. FeeDx Holdings, Inc.*,
     55 F.4th 1232 (9th Cir. 2022) ........................................................................................ 21, 23

12

13

*Howsam v. Dean Witter Reynolds, Inc.*,
     537 U.S. 79 (2002) ........................................................................................................... 18

14

*ICAP Corporates, LLC v. Drennan*,
     No. 14-cv-5451, 2016 WL 644145 (D.N.J. Feb. 17, 2016) .................................................... 17

15

16

*Indep. Towers of Wash. v. Wash.*,
     350 F.3d 925 (9th Cir. 2003) ........................................................................................... 12

17

18

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
     141 F.3d 1434 (11th Cir. 1998) ........................................................................................ 16

19

20

*Int'l Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*,
     418 F. Supp. 3d 481 (N.D. Cal. 2019) .............................................................................. 10

21

*Kheireddine v. Gonzales*,
     427 F.3d 80 (1st Cir. 2005) .............................................................................................. 19

22

23

*Lagstein v. Certain Underwriters at Lloyd's, London*,
     607 F.3d 634 (9th Cir. 2010) ........................................................................................ 11, 21

24

25

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
     363 F.3d 1010 (9th Cir. 2004) ........................................................................................ 18, 23

26

*Lindsey v. Travelers Commercial Insurance Co.*,
     636 F. Supp. 3d 1181 (E.D. Cal. 2022) ...................................................................... 16, 17, 18

27

28

*M & L Power Servs., Inc. v. Am. Networks Int'l*,
   44 F. Supp. 2d 134 (D.R.I. 1999)........................................................ 19, 21

*Masser v. Johnson*,
   108 Ohio App. 419 (1958) ................................................................. 19

*Merit Ins. Co. v. Leatherby Ins. Co.*,
   714 F.2d 673 (7th Cir. 1983) (Posner, J.) ............................................ 23

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Tadco Constr. Corp.*,
   No. 07-cv-2712, 2008 WL 540078 (S.D.N.Y. Feb. 28, 2008)...................... 19, 22

*New Frontier Inv. AG v. BitCenter, Inc.*,
   -- F. Supp. 3d --, No. 23-mc-80154-PHK, 2024 WL 459070 (N.D. Cal. Feb. 6,
   2024) ............................................................................................ 11, 24

*Nordahl Dev. Corp. v. Salomon Smith Barney*,
   309 F. Supp. 2d 1257 (D. Or. 2004), *aff'd sub nom. Olson v. Salomon Smith
   Barney, Inc.*, 137 F. App'x 972 (9th Cir. 2005).................................... 13, 14

*PhotoFixitPro, Inc. v. Costco Wholesale Corp.*,
   No. 22-cv-8955, 2023 WL 3432235 (C.D. Cal. Mar. 16, 2023)..................... 21

*Pickman Brokerage v. Bevona*,
   No. 93-cv-6677, 1994 WL 37820 (S.D.N.Y. Feb. 8, 1994)........................ 19, 22

*Province v. American Express National Bank*,
   2019 WL 13191938 (S.D. Tex. Nov. 22, 2019)...................................... 22

*Ramirez-Baker v. Beazer Homes, Inc.*,
   636 F. Supp. 2d 1008 (E.D. Cal. 2008)............................................... 13

*Riley v. QuantumScape Corp.*,
   No. 22-cv-03871-BLF, 2023 WL 1475092 (N.D. Cal. Feb. 2, 2023), *aff'd*, No.
   23-15277, 2024 WL 885034 (9th Cir. Mar. 1, 2024).............................. 12, 21

*Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011)........................................................ 22, 23

*State v. Anderson*,
   162 Idaho 610 (2017)................................................................... 19

*State v. Bell*,
   283 Conn. 748 (2011) .................................................................. 19

*Thomas Kinkade Co. v. Lighthouse Galleries, LLC*,
   No. 09-cv-10757-PJD, 2010 WL 436604 (E.D. Mich. Jan. 27, 2010) ................. 14

*Thomas Kinkade Co. v. White*,
   711 F.3d 719 (6th Cir. 2013)................................................................. 14

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*,
   591 F.3d 1167 (9th Cir. 2010).................................................. 15, 16, 17

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987)......................................................................... 18

*United States v. Geston*,
   299 F.3d 1130 (9th Cir. 2002)............................................................ 19

*United States v. Rechnitz*,
   75 F.4th 131 (2d Cir. 2023).............................................................. 22

*United States v. SF Green Clean, LLC*,
   No. C 14-01905, 2014 WL 3920037 (N.D. Cal. Aug. 8, 2014)........................... 11

*Villegas v. US Bancorp*,
   No. 10-cv-1762, 2014 WL 1338734 (N.D. Cal. Mar. 31, 2014) (Seeborg, J.),
   *aff'd sub nom. Villegas v. U.S. Bank NA*, 639 F. App'x 463 (9th Cir. 2016) ....................... 21

*Woods v. Saturn Distrib. Corp.*,
   78 F.3d 424 (9th Cir. 1996)................................................................ 13

**STATUTES**

9 U.S.C. § 9 ................................................................................... 11

9 U.S.C. § 10(a)(1) ........................................................................... 11

9 U.S.C. § 10(a)(2) ........................................................................... 13

9 U.S.C. § 10(a)(3) .................................................................. 12, 15, 17

9 U.S.C. § 10(a)(4) .............................................................. 20, 21, 23, 24

**OTHER AUTHORITIES**

AAA Rule R-25 ................................................................................. 6

AAA Rule R-28 ......................................................................... 6, 18, 24

Fed R. Civ. P. 45(d)(1)....................................................................... 15

**EXECUTIVE SUMMARY**

Why did the Panel order that testimony from certain witnesses at the arbitration hearing not be transcribed? What did the Panel order with respect to the data room documents? Those are key questions raised by Coinmint's Motion to Vacate ("Coinmint's Motion") that Coinmint ignores so that it can argue the Panel acted arbitrarily and without reason in taking these actions. The bases Coinmint now uses to contest the February 6, 2024, Final Arbitration Award ("Final Award") were reasonable and thoughtful precautions that the Panel implemented to address the willful and ongoing misconduct by Coinmint and its former counsel, Gordon Rees. That conduct included (but was not limited to) Coinmint purposefully and willfully violating the Stipulated Protective Order ("SPO") that Coinmint agreed to and the Panel so ordered, and then asserting that the Panel could not take any actions with respect to those violations because the SPO was void and unenforceable.

Coinmint's arbitration misconduct started on January 27, 2023. The Arbitration had been ongoing for months. The Parties had negotiated and signed the SPO, and Katena had produced confidential discovery materials pursuant to and under its protection. Coinmint used Katena's confidential discovery materials to initiate a lawsuit against Michael Maloney, its former CFO; Jim DeNaut, a previous candidate for Coinmint's CEO; Robert Bleck, Coinmint's retained consultant who assessed the feasibility of Katena's technology; Sagar Reddy, Katena's Chief Technology Officer ("CTO"); and DxCorr Design, Inc. ("DxCorr"), a third-party company to which Katena had outsourced the design and fabrication of its custom computer chip. Coinmint attached to its complaint over a dozen of Katena's confidential documents produced in the Arbitration and quoted and misquoted those confidential discovery materials throughout the body of its complaint. As the Panel found, Coinmint's actions violated the SPO—knowingly and purposefully.

Normally such a clear ruling would stop the misconduct. Not here. Again and again, Coinmint violated the SPO and other Panel orders. The Parties spent hundreds of hours over the following months dealing with Coinmint's repeated violations and unrelenting arguments that its actions were justified because the SPO was void and unenforceable. The Panel then had to navigate Coinmint's continuing misconduct as it addressed three separate issues relevant to this Motion.

First, the Panel needed to obtain testimony at the arbitration hearing from witnesses that were previously associated with Coinmint—Messrs. Bleck, DeNaut, and Maloney—all of whom had been identified as key witnesses and then sued by Coinmint. But, by this time, Coinmint had violated the SPO and staked out a hard position that the SPO was void and unenforceable, meaning that, to Coinmint, there was no obstacle to using the arbitration hearing as a vehicle to obtain one-sided early discovery for its federal lawsuit. There was, therefore, real concern that Coinmint's actions would have a chilling effect on the testimony of these critical third-party witnesses. So, the Panel ordered that their hearing testimony not be transcribed—the Panel would rely on their notes and their memories, as centuries of judges have done.

Second, the Panel had to decide how to handle the testimony of Katena's Chief Technology Officer, Sagar Reddy. Mr. Reddy was the architect of the specialized computer chip (ASIC) for Katena's Bitcoin mining rig and knew "the secret sauce." Given Coinmint's assertion that the SPO was void and unenforceable, Katena was worried that Coinmint would publicize Katena's trade secrets that it learned. So, Katena sought relief from having to produce Mr. Reddy for a deposition, and the Panel agreed. The Panel also ordered that Mr. Reddy's hearing testimony not be transcribed for the same reasons as Messrs. Bleck, DeNaut, and Maloney.

Third, the Panel had to decide how to handle Coinmint's late demand that Katena produce documents from its confidential data room. Even though Coinmint never served a written request for them, Katena wanted to produce these documents as Katena intended to use some of them during the Arbitration. But these were sensitive documents, and Coinmint had repeatedly violated the SPO based on its unilateral assertion that it was void and unenforceable. Katena could not produce those documents without a protective order that Coinmint would comply with. The Panel agreed. Noting that this was a "conundrum of Coinmint's own making," the Panel ordered that Katena need not produce the data room documents (or any discovery) until a new protective order was signed by Coinmint and its attorneys that provided an acceptable remedy for any future violations of the protective order. Coinmint and Gordon Rees declined, instead choosing to continue violating the existing SPO. It is for this reason that Coinmint ultimately was not granted access to the documents.

The Panel's orders on these topics were not rampant bias as Coinmint's new counsel argues; nor did they deprive Coinmint of due process. The Panel's decisions reflect reasonable parameters to deal with a recalcitrant litigant who argued that existing orders were void and unenforceable and repeatedly violated them. The Federal Arbitration Act ("FAA") does not allow vacatur of the Final Award just because Coinmint dislikes some of the procedural rulings that the Panel was forced by Coinmint's intransigence to make. Coinmint's Motion does not even attempt to articulate how these orders fit within the four *narrow* grounds for vacatur under the FAA, and indeed they don't. Coinmint's Motion should be denied; the Final Award should be confirmed.

## FACTUAL BACKGROUND

### A.    Pre-Arbitration

Coinmint repeats its now-discredited allegations—that there was a conspiracy or fraud that caused its CEO, Ashton Soniat, to sign the Agreement between Coinmint and Katena—as if they were facts. They aren't. After listening to more than 90 hours of testimony by 14 witnesses over 13 hearing days and considering 236 exhibits, the Panel thoroughly rejected Coinmint's theories in a well-reasoned 103-page Final Award. ECF No. 27-1 at 29–31, 37–58. There was no fraud. Coinmint signed a contract when Bitcoin prices and demand for miners were at their peak, breached as the market went down, and because of its nonpayment owes Katena liquidated damages it contractually agreed to of more than $14 million. Nothing more. *Id.* at 74–84.

### B.    The Arbitration

Coinmint filed its Arbitration Demand against Katena on April 27, 2022, and amended its demand on August 29, 2022. *See* Declaration of John R. Hardin ("Hardin Dec.") at ¶ 4. Katena filed counterclaims on May 12, 2022, and amended counterclaims on September 16, 2022. *Id.* The Panel set a discovery schedule. Before document production began, the Parties turned to negotiating a protective order.

#### 1.    The SPO

In November 2022, both Coinmint and Katena negotiated the SPO and jointly agreed to the

3:23-CV-04683-RS

KATENA'S MEMORANDUM IN FURTHER SUPPORT OF PETITION TO CONFIRM ARBITRATION
AWARD AND IN OPPOSITION TO COINMINT'S CROSS-MOTION TO VACATE
PAGE 3

following relevant provisions. *Id.* at ¶ 5. First, the Parties agreed that the SPO would broadly cover "confidential, proprietary, and/or private information." Ex. 1 at 1.[1] Second, the Parties agreed to limit the use of any discovery materials designated as confidential "only for prosecuting, defending, or attempting to settle this arbitration" and not for any other purpose. *Id.* at 6. Third, the Parties agreed that confidential discovery materials could not be publicly disclosed. *Id.* at 7. Fourth, the Parties agreed on a specific procedure to challenge another party's confidentiality designations. *Id.* at 6. Fifth, the Parties extended the SPO's protections to "information produced by a Non-Party in the Action" and agreed that "[n]othing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections." *Id.* at 8.

Both Parties agreed to these provisions (and every other provision) and authorized their attorneys to sign on their behalf, but no law firm was a direct party to the SPO. The Parties submitted the signed SPO to the Panel, and the Chair signed and entered the SPO as Order No. 6. Hardin Dec. ¶ 6.

### 2. Coinmint violates the SPO for the first time[2]

On January 27, 2023, Coinmint violated the SPO by using confidential discovery materials produced by Katena under the SPO to file a new lawsuit in California state court against (among others) Messrs. Bleck, DeNaut, Maloney, and Reddy. Ex. 2. Katena was <u>not</u> named; nevertheless, Coinmint attached 14 confidential documents that Katena had produced in the Arbitration as exhibits to the complaint, and extensively quoted (and misquoted) them in the body of the complaint. Hardin Dec. ¶ 8. Coinmint could have followed the SPO's procedure and sought to de-designate the discovery materials as "confidential" before using them outside the Arbitration (and had ample time to do so) but chose not to.

### 3. The Panel finds that Coinmint willfully violated the SPO.

Coinmint delivered a copy of the filed complaint to Katena on February 6, 2023, and Katena

---

[1] "Ex. __" refers to the exhibits attached to the Hardin Declaration.

[2] Coinmint repeatedly violated the SPO causing the Parties to spend an extraordinary amount of time on these issues. By no means is Katena's recounting herein complete.

filed a motion for sanctions with the Panel the next day. Hardin Dec. ¶¶ 9–10; Ex. 3. Coinmint opposed Katena's motion because—in Coinmint's view—the SPO was void and against public policy to the extent that it prohibited Coinmint from using confidential discovery materials outside of the arbitration. Ex. 4. In short, Coinmint telegraphed its refusal to abide by the SPO that it had negotiated and signed.

In response, the Panel issued Order No. 18 on February 13, 2023—well before its order regarding transcription of the hearing—finding that Coinmint had breached the SPO by using confidential discovery materials outside of the arbitration and quoting unredacted confidential discovery materials in the body of the complaint. Ex. 5 at 4. The Panel faulted Coinmint for publicly filing the confidential discovery materials without first seeking to de-designate them: "As the Panel reads and understands Coinmint's Response, Coinmint knew that it was attaching Katena's 'CONFIDENTIAL' documents *and did so purposefully* without first going through the de-designation procedures in the Protective Order." *Id.* at 5 (emphasis added).

But the Panel did not issue a remedy for Coinmint's violation at that time. Instead, the Panel ordered further briefing with Katena to file its opening brief on March 27, 2023, Coinmint to respond on April 13, 2023, and Katena to file a reply on April 27, 2023. *Id.* at 6–7. Oral arguments were set for May 15, 2023. In its opening brief, Katena noted that Coinmint had continued to violate the SPO by filing additional Katena confidential discovery materials and confidential deposition transcripts to the public docket. Ex. 6 at 4–6. Coinmint's opposition brief repeated its argument that the SPO is "void as against California law and public policy," explaining why Coinmint persisted in ignoring it. Ex. 7 at 9–11. On May 25, 2023, the Panel issued Order No. 43 sanctioning Coinmint for its repeated violations of the SPO. Ex. 8 at 8, 11 ("Instead, Coinmint took matters into its own hands and made the unilateral decision to ignore Katena's 'confidential' designations and the Panel's Order Nos. 6, 18 and 20.")

### 4. The Panel orders that the testimony of Bleck, DeNaut, and Maloney not be transcribed.

After the Panel issued Order No. 18, Katena filed a motion on March 3, 2023, asking to

1  postpone the scheduled testimony of third-party witnesses Messrs. DeNaut, Maloney, and Bleck

2  until after the Panel awarded a specific sanction against Coinmint for past and future violations.

3  Ex. 9. Katena expressed its well-founded concern that "Coinmint's continued refusal to comply

4  with the SPO will have a chilling effect on the third-party witnesses who don't want their testimony

5  in a private arbitration to end up in the public domain as a smear tactic" and would prevent the

6  Panel from obtaining the complete and truthful testimony of these critical witnesses. *Id.* at 7.

7  Coinmint chose not to submit an opposition. Hardin Dec. ¶ 16. The Panel denied Katena's request

8  to postpone the testimony on March 9, 2023, Ex. 10, instead directly addressing Katena's concern

9  about the chilling effect by ordering that documents and testimony provided by third-party

10  witnesses in response to subpoenas be designated confidential under the SPO and, "to protect the

11  confidentiality of the testimony," that it not be transcribed. *Id.* at 3.

12      The testimony of Messrs. Bleck, Maloney, and DeNaut were taken out of order. The Panel

13  held additional hearing days on April 18, May 16, and November 17, 2023, respectively, to receive

14  their testimony. Order No. 18 was entered over a month before the first witness testified, giving

15  Coinmint plenty of time to be heard on this issue, which Coinmint took advantage of. Coinmint

16  orally moved to reconsider Order No. 24 at the March 22, 2023, case management conference.

17  Hardin Dec. ¶ 18; *see* Ex. 11 at 2. Coinmint could have filed a written motion for reconsideration

18  but chose not to. The Panel denied Coinmint's request at the conference and issued Order No. 29

19  explaining why: [3]

20      First, AAA Rule R-28 does not create an absolute right to a stenographic record.
    Rule R-28 simply makes clear that if a party desires a stenographic record, that party
21  is responsible for making the arrangements. … All members of the Panel have
    conducted numerous evidentiary hearings in arbitrations where there has been no
22  court reporter. The lack of a court reporter transcript of evidentiary hearing
    proceedings will not impinge on the ability of the Panel to (a) hear and understand
23  the evidence, or (b) rule on the claims and issues presented. Second, the members
    of the Panel are responsible for maintaining the privacy of the evidentiary hearing,
24  and AAA Rule R-25 gives the Panel the discretion to determine the propriety of the

25

26  [3] In its motion, Coinmint incorrectly gives the date of Order No. 29 as May 23, 2023, which is after
    Messrs. Bleck and Maloney testified. Mot. at 13. In fact, Order No. 29 was issued on March 23,
27  2023, weeks before they testified. Ex. 11 at 5.

28

attendance at the evidentiary hearing of any person other than the parties or other essential persons. …

Coinmint has stated that it does not believe that the SPO applies and that it cannot be enforced to restrict what Coinmint may want to file in other actions or proceedings, including the State and Federal Court Actions. … Under these circumstances, the Panel has exercised its discretion to exclude court reporters from the hearing proceedings so as to assure both the privacy and confidentiality of those proceedings. By not allowing a court reporter or the preparation of a reporter's transcript, the Panel is not in any way preventing or impeding the taking and receipt of testimonial evidence in this matter. To the contrary, it is creating an environment where the witnesses can answer fully without fear that their testimony in this arbitration will be treated as some type of pre-hearing discovery and used against them in the Federal Court Action or some other proceeding.

Ex. 11 at 3–4. The purpose of Order Nos. 24 and 29 was to prevent discovery abuse—the Panel would not allow Coinmint to use subpoenas in the Arbitration for the purpose of obtaining information to be used in a different action against different parties, and its reasoning shows the Panel carefully considered the propriety of the relief it ultimately granted to carry out this objective.

On March 30, 2023, Coinmint filed a motion to clarify Order No. 29 to address the procedure for making a record of a witness's non-appearance in the absence of a court reporter. Ex. 12 at 5. The Panel <u>granted</u> Coinmint's motion to clarify: "[F]or the limited purpose of making a record of non-appearance, the parties may have a court reporter present. If the witness appears, then the court reporter will be excused." Ex. 13 at 2.

On July 17, 2023, the Panel held another case management conference at which it again wrestled with the transcript issue. Hardin Dec. ¶ 22. The Panel asked the Parties whether or not they wanted a court reporter for the remaining witnesses at the evidentiary hearing. Katena said no, because it would be inconsistent and Katena was concerned "that Coinmint [would] use the transcripts in other proceedings outside of [the] arbitration." Ex. 14 at 2. Coinmint asked for a transcript.[4] *Id.* The Panel initially ruled for Katena, *id.*, but, on August 15, 2023, the Panel *sua*

---

[4] Coinmint now argues that the Final Award should be vacated because the "witnesses were not treated on a level playing field." Mot. at 11. But it is Coinmint, not Katena, that requested that some witnesses be transcribed and others not. Coinmint cannot complain that the very procedure it requested rendered the Arbitration fundamentally unfair.

1    *sponte* reconsidered its order and granted Coinmint's request for a court reporter (except with

2    respect to Mr. Reddy, one of the witnesses Coinmint had sued). Ex. 15 at 7–8.

3                    **5.      The Panel orders that Sagar Reddy need not appear to be deposed.**

4            After Coinmint breached the SPO and made clear it would continue, Katena objected to

5    producing Mr. Reddy for a transcribed deposition that could reveal proprietary trade secrets about

6    Katena's chip design. Coinmint sent an "emergency" email to the Panel on February 22, 2023,

7    demanding Mr. Reddy's deposition and the ability to transcribe it. Ex. 16. Katena opposed. Ex. 17.

8    The Panel issued Order No. 21 on February 23, 2023. Ex. 18. Because of "Coinmint's prior

9    statements / arguments in this matter to the effect that the stipulated protective order does not apply

10   when / if it wants to use 'CONFIDENTIAL' documents or testimony in lawsuits filed against

11   others," the Panel denied Coinmint's request to depose Mr. Reddy. *Id*. at 1–2 ("Pre-hearing

12   depositions are not required, especially where, as here, a witness can be summoned to appear at the

13   evidentiary hearing."). As just noted above, the Panel subsequently provided in Order No. 48 that

14   Mr. Reddy's hearing testimony would also not be transcribed. Hardin Dec. at ¶ 23; Ex 15.

15                   **6.      The Panel places reasonable conditions on Coinmint receiving
                              documents from Katena's data room that Coinmint never meets.**
16

17           Also on February 23, 2023, Coinmint submitted a Redfern schedule[5] demanding additional

18   documents from Katena, including the contents of Katena's data room. But, again, the Panel had to

19   address this request within the context of Coinmint's unilateral rejection of the SPO. So, the Panel

20   ordered that Katena would not need to produce any additional confidential discovery materials until

21   Coinmint agreed to a new SPO (in a form suitable to the Panel) that contained provisions identifying

22   the remedies available should the new SPO be violated:

23           As discussed in order number 18, Coinmint and its counsel have demonstrated their
             unwillingness to respect and comply with the protective order—Order No. 6—
24           which the parties and their attorneys agreed to in November 2022… It is a
             conundrum of Coinmint's own making that Katena has documents Coinmint would
25           like to inspect, but those inspection rights are conditioned on maintaining the
             confidentiality of the documents and limiting their use to this arbitration. Because
26

27   ―――――――――――――――
     [5] A Redfern schedule is a summary method for presenting discovery disputes for resolution.
28

> Order No. 6 has been violated, a further, specific protective order is needed to protect the documents and Katena's virtual data room. Accordingly Katena shall have no obligation to make the virtual data room documents available to Coinmint unless and until the Panel is provided with a stipulated protective order covering all documents and information in the virtual data room between Coinmint, Katena and their attorneys, as parties to the stipulation, in a form satisfactory to the Panel with regard to (a) the protections to be afforded any documents in the production that Katena may designate as "CONFIDENTIAL" or "ATTORNEYS EYES ONLY," and (b) the remedies available to the Panel should the protective order be violated.

Ex. 19 at 14–15. There was no surprise in why the Panel was doing what it was doing. It wasn't arbitrary. And there was a path forward for Coinmint: sign a new SPO that bound the attorneys and provided remedies for future violations. *See id.* Coinmint never agreed to that second SPO, a point that Katena memorialized as the discovery period ended. Hardin Dec. ¶¶ 31–32; Ex. 20, at 1–2.

### 7.    Coinmint's current attorneys had not appeared (and presumably were not engaged) during these events.

The above actions occurred well before Coinmint's current attorneys appeared in the arbitration. Mr. Feldman first appeared sometime in October 2023 after Gordon Rees had been disqualified from questioning one of the third-party witnesses, Mr. DeNaut. Mr. DeNaut objected to the enforcement of the arbitral subpoena on the ground that Coinmint lawyer Fletcher Alford and the Gordon Rees firm had offered to represent him personally in connection with the arbitration before reneging, suing him in California, and obtaining a subpoena for his testimony. Ex. 21 at 2–3. After a two-day evidentiary hearing, Magistrate Judge S. Dave Vatti of the U.S. District Court for the District of Connecticut found that Mr. DeNaut was a credible witness and that Mr. Alford and Coinmint's General Counsel, Randy Foret, were not. *Id.* at 16–19. Judge Vatti found Coinmint's conduct, and misrepresentations to Katena's counsel, concerning:

> The Court does not credit either Attorney Alford's testimony that he did not offer representation during the call or Foret's testimony that he did not "recall" hearing such an offer. It is concerning that Alford made a definitive statement to Katena's counsel "confirming" that he represented DeNaut despite the fact that they had never spoken, and there is no evidence that Foret, as Coinmint's general counsel managing Alford's work, expressed any qualms about this misstatement. This raises some general skepticism about their version of these events.

1    *Id.* at 17–18. He therefore ordered Coinmint to obtain conflicts counsel to question Mr. DeNaut at

2    the hearing, and Mr. Feldman appeared. *Id.* at 32.

3             **8.   The Panel conducted a fair hearing.**

4         The Panel conducted the evidentiary hearing in accordance with its well-reasoned orders.

5    Over the course of 13 hearing days, the Panel heard more than 90 hours of testimony from 14

6    witnesses. Except for the testimony of the four witnesses who Coinmint sued individually and

7    whose testimony was not transcribed for the reasons detained above, all other lay and expert witness

8    testimony was transcribed. The Panel admitted 236 exhibits into evidence, including all the text

9    messages that Coinmint cherry-picked for its brief.[6] *See* Mot. to Vacate ("Mot.") at 3–6. After

10   carefully considering all the evidence, the Panel issued its unanimous 103-page Final Award

11   dismissing all of Coinmint's claims and awarding Katena liquidated damages for Coinmint's breach

12   of the Parties' contract. ECF No. 27-1 at 74-84. While Coinmint continues to cry fraud and to quote

13   from its now-discredited theories, the Panel concluded that Coinmint failed to prove fraud or any

14   other misconduct by Katena: Coinmint entered into the contract based on truthful representations

15   by Katena; Katena stood ready, willing, and able to perform under the Parties' agreement; and it

16   was only Coinmint's failure to make the required down payment that prevented Katena from

17   delivering the promised mining rigs. *Id.* at 47–48; 56–58; 60. The unrebutted lay and expert

18   evidence showed that Katena's custom chip worked, would perform as promised, and was ready

19   for manufacture as soon as Coinmint paid. *Id.* at 11–12; 47–48; 56–57. Coinmint's shenanigans

20   had failed. Coinmint lost.

21

22                       **ARGUMENT**

23        An arbitration award should ordinarily be confirmed. Vacatur is the rare exception. "[T]he

24   role of the courts in reviewing arbitration awards is extremely circumscribed," *Int'l Petroleum*

---

25   [6] While Coinmint includes these text messages as exhibits, they are not relevant to Coinmint's
Motion and it seems clear that Coinmint selectively quoted from them for the sole purpose of

26   attempting to prejudice the Court against Katena. Coinmint's dissatisfaction with the fact that these
texts failed to carry the day on the merits with the Panel is not a basis to seek vacatur, as is evidenced

27   by Coinmint's failure to even make the argument.

28   

*Prods. & Additives Co. v. Black Gold, S.A.R.L.*, 418 F. Supp. 3d 481, 487 (N.D. Cal. 2019), and review of an arbitration decision is "limited and highly deferential." *Coutee v. Barington Cap. Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003). Unless Coinmint carries its "heavy burden" to prove one of the grounds for vacatur under Section 10 of the FAA, *United States v. SF Green Clean, LLC*, No. C 14-01905, 2014 WL 3920037, at *6 (N.D. Cal. Aug. 8, 2014), the Court "must" confirm the award. 9 U.S.C. § 9.

The FAA "permits a district court to vacate an arbitration award under **only** four circumstances." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010) (emphasis added); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding the FAA statutory grounds are the "exclusive" means for vacatur). Those four grounds are:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4) ("Section 10").

## I.    Coinmint's failure to clearly identify vacatur grounds requires denial of its motion.

Coinmint's Motion is bereft of the analysis and specifics the FAA requires to vacate an award. This deficiency is not simply form over substance. It is fatal.

Vacatur is strictly limited to the statutory grounds set forth in Section 10, and "[t]he burden of *establishing grounds for vacating* an arbitration award is on the party seeking vacatur." *New Frontier Inv. AG v. BitCenter, Inc.*, -- F. Supp. 3d --, No. 23-mc-80154-PHK, 2024 WL 459070, at *4 (N.D. Cal. Feb. 6, 2024) (emphasis added). This Court therefore denied a motion to vacate under

Section 10(a)(3) where a petitioner "offer[ed] no argument for vacatur on this basis" in his opening brief: "It is [petitioner's] burden to establish that vacatur is appropriate, and the Court will not take [petitioner's] invitation to scour his brief and extract arguments for him." *Riley v. QuantumScape Corp.*, No. 22-cv-03871-BLF, 2023 WL 1475092, at *15 (N.D. Cal. Feb. 2, 2023), *aff'd*, No. 23-15277, 2024 WL 885034 (9th Cir. Mar. 1, 2024). These rulings are based on binding Ninth Circuit precedent. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (finding argument forfeited because judges "cannot manufacture arguments for [a party] and therefore … will not consider any claims that were not actually argued" in the opening brief (quotation marks omitted)).

That is exactly what Coinmint has done (or, more exactly, failed to do). Coinmint fails to explain or apply the law to its incomplete recitation of events. Coinmint does not clearly articulate specific grounds under which it seeks vacatur. Instead it asserts three general fairness complaints—(1) the Panel responded to Coinmint's repeated violations of the SPO by precluding a transcript of the testimony of certain witnesses who had been sued by Coinmint outside the Arbitration; (2) the Panel required Coinmint to sign a new SPO that bound the parties and the lawyers before receiving more confidential discovery materials (which Coinmint and Gordon Rees declined to do); and (3) Coinmint's general counsel, a fact witness at the hearing, disagrees with the Panel's characterization of certain hearing testimony—and then invites the Court to find a basis for how they might satisfy Section 10's requirements.[7] None of those complaints, either alone or together, comes remotely close to warranting vacatur under Section 10, which explains why Coinmint failed to clearly articulate how or why these arguments satisfy its "heavy burden" for vacatur.

---

[7] In paragraph 5 of his declaration, Mr. Foret attests that "[d]uring the course of discovery, the AAA Arbitration panel (the 'Panel') desired that the parties agree to a more stringent protective order that would prevent witness testimony and discovery in the Arbitration from being used in other legal proceedings. There was no such agreement by the parties." That's blatantly wrong as the Court can tell from reading the SPO. Ex. 1. The Panel found that Coinmint violated the SPO by using confidential discovery documents outside the Arbitration because the SPO that Coinmint negotiated and signed already prohibited doing just that. Ex. 5 at 4–6. As for Mr. Foret's statement to the contrary, Katena respectfully directs the Court to Magistrate Judge Vatti's assessment of Mr. Foret's credibility. Ex. 21 at 11–12, 17–18.

1    **I.      Coinmint has not proven "evident partiality" under Section 10(a)(2).**

2           Coinmint includes a few stray references to "partiality" and "bias" in its motion, but

3    otherwise does not explain what the law requires to vacate under this prong or even attempt to show

4    how the Panel's actions rise to that standard. *See* Mot. at 7, 16, 22. Evident partiality under Section

5    10(a)(2) is established through nondisclosure or actual bias. *Woods v. Saturn Distrib. Corp*., 78

6    F.3d 424, 427–30 (9th Cir. 1996). Coinmint does not argue that the arbitrators failed to disclose

7    any conflict. *See id.* at 427. Thus, Coinmint must show *actual* bias. *Id.* The standard for showing

8    actual bias is "stringent" and higher than that for nondisclosure. *Certain Underwriters at Lloyd's,*

9    *London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 940 (N.D. Cal. 2003); *Carmack v. Chase*

10   *Manhattan Bank (USA)*, 521 F. Supp. 2d 1017, 1026–27 (N.D. Cal. 2007) ("The Ninth Circuit

11   requires a high standard for allegations of actual bias by an arbitrator under the FAA."). "The

12   appearance of impropriety, standing alone, is insufficient to establish evident partiality in actual

13   bias cases." *Id*. at 1027; *Woods*, 78 F.3d at 427. Rather, "the party alleging evident partiality [in

14   actual bias cases] must establish specific facts which indicate improper motives." *Id.* (brackets in

15   original). Coinmint falls far short of meeting that high standard.

16          Coinmint's argument centers on two of the panel's rulings: (i) its order precluding a court

17   reporter from transcribing the hearing testimony of four witnesses, and (ii) its order conditioning

18   access to Katena's virtual data room on a new SPO. Coinmint, without anything more, contends

19   that these "outlandish" rulings demonstrate arbitral bias.[8] *See* Mot. at 1, 16, 24. Hardly.

20          First, "it is insufficient as a matter of law to allege bias based on unfavorable rulings." *Div*

21   *15 Tech v. Sheet Metal Workers' Int'l Ass'n, Loc. 104*, No. 10-cv-05309, 2011 WL 13244832, at

22   *3 (N.D. Cal. Mar. 14, 2011); *Nordahl Dev. Corp. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257,

23

24   ------------

     [8] Coinmint also makes cursory reference in footnote 3 and at the end of its brief (at 23) to the Panel's
25   ruling on deposing Reddy, but Coinmint presents no other information or argument on this point. The
     AAA Rules expressly provide arbitrators with "broad . . . authority to order and control the exchange
26   of information, including depositions." Coinmint does not (and cannot) argue that the Panel abused its
     discretion by ruling that Coinmint could not depose Reddy. *See Ramirez-Baker v. Beazer Homes, Inc.*,
27   636 F. Supp. 2d 1008, 1020 (E.D. Cal. 2008) (denying unconscionability challenge and enforcing
     arbitration agreement that required arbitrator approval for each deposition).

28                                                                  3:23-CV-04683-RS

1267 (D. Or. 2004) (observing that "[i]n almost any adversarial proceeding either side can list a number of tangential rulings decided against it," and so "[e]ven repeated rulings against one party … will not establish bias absent some evidence of improper motivation"), *aff'd sub nom. Olson v. Salomon Smith Barney, Inc.*, 137 F. App'x 972 (9th Cir. 2005). Courts in this Circuit therefore regularly deny motions to vacate that cry bias just because the arbitrator ruled against it. *See, e.g.*, *Nordahl*, 309 F. Supp. 2d at 1267 (listing numerous unfavorable decisions against movant during arbitration—including decisions concerning venue, amendments to pleadings, issuance of subpoenas, the presence of witnesses at the proceedings, a delay in the arbitration for over a year to accommodate the other side, and others—but finding no bias); *Golden v. O'Melveny & Myers LLP*, No. 2:14-cv-08725, 2019 WL 5693760, at *19 (C.D. Cal. Nov. 1, 2019)) (rejecting argument that arbitrator was partial because he made unfavorable rulings against movant on conflicts of interest and discovery requests), *aff'd*, No. 19-56371, 2021 WL 3466044 (9th Cir. Aug. 6, 2021).

Coinmint's single, unpublished out-of-circuit case (which expressly declined to apply Ninth Circuit precedent) does nothing to help its cause. *See Thomas Kinkade Co. v. Lighthouse Galleries, LLC*, No. 09-cv-10757-PJD, 2010 WL 436604, at *5 (E.D. Mich. Jan. 27, 2010). The court in that case vacated an award made in favor of the defendants/counterclaimants because of pervasive bias, including: after the hearing and the submission of closing briefs, the arbitrators *sua sponte* provided the defendants multiple opportunities to bolster their proof of causation and damages, including through the production of 880 additional pages of financial records that were not available to plaintiff's damages expert and were not properly part of the hearing record; the neutral arbitrator's law firm was retained by defendant during the arbitration on another matter; and the neutral arbitrator's law partner was hired by the defendants' appointed arbitrator as a defense expert in a malpractice case against him. *Id.* at *2–4. That arbitration was full of "blemishes" and was "a model of how not to conduct one." *Thomas Kinkade Co. v. White*, 711 F.3d 719, 720 (6th Cir. 2013). Coinmint's attempt (Mot. at 23) to compare that case to the Panel's rulings here falls flat.

Second, Coinmint has not proven any improper motive by the Panel. The closest articulation to an allegedly "improper motive" that Coinmint makes is the Panel's supposed concern with

protecting nonparty witnesses. *See* Mot. at 16 (referring to the panel's purported "improper obsession with 'protecting' the four non-parties"). But Coinmint does not and cannot provide any authority holding that, in exercising their subpoena power, arbitrators may not consider and protect the interests of third-party witnesses. The Federal Rules of Civil Procedure require a district judge to protect subpoena recipients against "undue burden or expense." Fed R. Civ. P. 45(d)(1). Surely it is not a due process violation for an arbitrator to do the same. In any event, the challenged Panel rulings were not simply about "protecting" nonparty witnesses—they were necessitated by Coinmint's repeated, flagrant breaches of the Panel's written orders after Coinmint unilaterally declared them void and unenforceable. Not once did Coinmint provide assurance that it would abide by the SPO or the Panel's rulings; a point the Panel noted in its ruling. Ex. 11 at 3. The Panel's rulings were not "improperly motivated." They were reasonable and pragmatic decisions made with the exceedingly proper objective of enforcing the Parties' SPO and reducing the potential harm to third parties that Coinmint could cause through its continued disregard of the SPO. That is not bias.

## II.      Coinmint has not proven "misconduct" or "misbehavior" under Section 10(a)(3).

Coinmint next claims (again without any substantive arguments) that the Panel "engaged in misbehavior and misconduct" with the transcript and data room orders. Mot. at 1; *see also id.* at 2, 11. To justify vacatur under this prong, Coinmint must prove that it was prejudiced by (1) the arbitrator's refusal to postpone the hearing,[9] (2) the arbitrator's refusal to "hear evidence pertinent and material to the controversy," or (3) other misbehavior by the arbitrator that denies petitioner a fair hearing. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173–74 (9th Cir. 2010). A hearing is fundamentally fair "if the minimal requirements of fairness" are met: (1) adequate notice, (2) a hearing on the evidence, and (3) an impartial decision by the arbitrator. *Carpenters 46 N. Cal. Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996).

### B.      The Panel correctly conditioned Coinmint's access to data room documents.

Coinmint does not argue that it was prejudiced by any decision of the Panel excluding

---

[9] Coinmint does not make any arguments under this subpart.

relevant evidence from the hearing and cannot do so—the Panel heard over ninety hours of testimony, split evenly between the Parties, and considered hundreds of exhibits. "Arbitrators enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.'" *U.S. Life Ins. Co.*, 591 F.3d at 1175 (quoting *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998)). Coinmint has not shown that the Panel abused its discretion.

At most, Coinmint argues that it was prejudiced by the Panel's decision conditioning access to Katena's data room documents on the entry of a new protective order in light of Coinmint's refusal to abide by the SPO. Mot. at 16. But Coinmint substantially mischaracterizes both its motion and the Panel's ruling. Katena did not "delay[] producing data room documents in discovery," as Coinmint baselessly asserts. *Id.* Rather, as Katena explained in opposing Coinmint's motion to compel, Coinmint did not propound any document requests seeking the documents in Katena's data room. Ex. 19 at 14. Katena nevertheless conditionally agreed to <u>voluntarily</u> provide the data room documents to Coinmint (despite Coinmint's failure to request them) as soon as Coinmint agreed to a new binding protective order. *Id.* The Panel accordingly denied Coinmint's motion without prejudice given Coinmint's willful refusal to honor the Parties' SPO: "It is a conundrum of Coinmint's own making that Katena has documents Coinmint would like to inspect, but those inspection rights are conditioned on maintaining the confidentiality of the documents and limiting their use to this arbitration." *Id.* Coinmint never proposed the terms of a new protective order, let alone agreed to one, and so Katena did not produce the documents.

That is a far cry from *Lindsey v. Travelers Commercial Insurance Co.*, 636 F. Supp. 3d 1181, 1186 (E.D. Cal. 2022), on which Coinmint relies. In *Lindsey*, the arbitrator failed to consider Plaintiff's motion to compel certain documents, granted summary judgment against plaintiff for failing to come up with the very evidence he was seeking in the motion to compel, and then denied Plaintiff's pending motion to compel as moot. Here, unlike in *Lindsey, id.* at 1183, Coinmint never served a document request for the supposedly critical documents, and then never followed through

1  with the Panel's requirements to receiver those documents.[10] *See* Ex. 19 at 14.

2  Coinmint's reliance on *ICAP Corporates, LLC v. Drennan*, No. 14-cv-5451, 2016 WL

3  644145 (D.N.J. Feb. 17, 2016) is similarly misplaced. In *ICAP*, the arbitrators at the very last minute

4  cancelled a hearing day, gave respondent less than a full day to present its case, and barred four of

5  respondents' seven witnesses in part or in full. *Id.* at *5–7. Coinmint does not claim that it was

6  barred from submitting any testimony or relevant evidence or that it was denied hearing time.

7  ### C.  The Panel correctly interpreted the AAA Rules in ordering that the testimony of certain third-party witnesses not be transcribed.

8

9  Nothing the Panel did denied Coinmint a "fundamentally fair hearing." Coinmint held the

10  power all along—it could have honored the SPO it negotiated; it could have acknowledged its first

11  violation and committed to following the SPO thereafter; it could have signed (or at least proposed)

12  a new SPO.[11] Instead of any number of reasonable approaches it could have taken, Coinmint chose

13  to commit repeated, willful breaches of the SPO, openly contest its enforceability, and make it

14  generally known that it would use confidential discovery documents outside of the Arbitration.

15  Coinmint should not be allowed to now object that the Panel's reasonable response to Coinmint's

16  unreasonable behavior rendered the hearing somehow unfair. Parties to an arbitration are not

17  entitled to a "perfect hearing," only a "fair" hearing. *U.S. Life Ins. Co.*, 591 F.3d at 1177. A hearing

18  is fundamentally fair "if the minimal requirements of fairness" are met: (1) adequate notice, (2) a

19  hearing on the evidence, and (3) an impartial decision by the arbitrator. *Zcon Builders*, 96 F.3d at

20  413. "An award can be vacated under § 10(a)(3) only if an error was 'in bad faith or so gross as to

21

---

22  [10] *Lindsey* was an employment discrimination case. The critical evidence was the defendant's payroll, which would show whether the plaintiff was paid less than white coworkers, and it could

23  only be obtained from the defendant. 636 F. Supp. 3d at 1185. But Coinmint alleged that the data room documents were the basis of its fraudulent inducement claim. Coinmint allegedly relied on

24  them when entering into the Parties' contract. Even without discovery from Katena, Coinmint's own employees could testify regarding the misstatements that they allegedly relied on, and

25  Coinmint should have possessed copies of the documents it received. Coinmint's failure to introduce such evidence at the hearing was hardly the result of misconduct by the arbitrators.

26  [11] Coinmint brazenly argues that the Panel should have entered a new protective order to remedy Coinmint's breach. Mot at 14. But Coinmint repeatedly told the Panel that it would not follow any

27  protective order that limited its ability to use arbitration discovery outside the arbitration. What good would a new protective order had done unless Coinmint agreed to follow it?

28

1    amount to affirmative misconduct.'" *Lindsey*, 636 F. Supp. 3d at 1185 (quoting *United*

2    *Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).

3          Given Coinmint's conduct, the Panel's approach was reasonable and pragmatic; it certainly

4    was not "in bad faith or so gross as to amount to affirmative misconduct." First, Coinmint cannot

5    show that the Panel violated any rule in denying Coinmint's request for a court reporter. As the

6    Panel correctly held, Ex. 11 at 3, AAA Rule R-28 does not provide any party the right to a

7    transcribed hearing. The Rule states, in relevant part: "Any party desiring a stenographic record

8    shall make arrangements directly with a stenographer and shall notify the other parties of these

9    arrangements at least three calendar days in advance of the hearing. The requesting party or parties

10   shall pay the cost of the record." On its face the Rule does not guarantee to any party the *right* to

11   obtain a transcript—it merely sets out the procedure for apportioning the cost of a transcript in the

12   ordinary course. But even if the text of the Rule were ambiguous, this Court should defer to the

13   AAA arbitrators' broad discretion in interpreting and applying their own arbitral rules. *E.g.*,

14   *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (holding

15   arbitrators have wide discretion to interpret AAA rules and the scope of their own authority under

16   those rules, and affirming arbitrator's decision under the AAA rules to shift all arbitral expenses to

17   one party when second party claimed it could not pay: "The arbitrators exercised their discretion in

18   this case by allowing the arbitration to proceed on the condition that Lifescan advance the remaining

19   fees. This may not be an ideal solution to the problem of a party's failure to pay its share of the fees,

20   but it is well within the discretion of the arbitrators."); *Glob. Gold Mining LLC v. Caldera Res.,*

21   *Inc.*, 941 F. Supp. 2d 374, 388 (S.D.N.Y. 2013) ("[D]eference to the arbitrator's interpretation of

22   AAA rules would be particularly appropriate here because that interpretation concerns the efficient

23   management of the arbitration proceeding itself."); *Howsam v. Dean Witter Reynolds, Inc.*, 537

24   U.S. 79, 85 (2002) (courts should defer to the arbitrators' interpretation of NASD procedural rules

25   because "NASD arbitrators, comparatively more expert about the meaning of their own rule, are

26   comparatively better able to interpret and to apply it."). A procedural ruling on which reasonable

27   minds can differ is not the egregious bad faith or affirmative misconduct required for vacatur.

28

Nor can Coinmint show that it was so prejudiced by the Panel's transcript ruling that it was effectively denied due process or the opportunity to be heard. Coinmint does not contend that it lacked adequate notice of the arbitration. *See Zcon Builders*, 96 F.3d at 413. It does not contend that it was denied a hearing on the evidence. *See id.*

Coinmint cites no support for its argument that due process entitles it to a full transcript in a private arbitration, which is unsurprising given that there is "no right to a transcript" in arbitration. *M & L Power Servs., Inc. v. Am. Networks Int'l*, 44 F. Supp. 2d 134, 142 (D.R.I. 1999); *see also Pickman Brokerage v. Bevona*, No. 93-cv-6677, 1994 WL 37820, at *4 (S.D.N.Y. Feb. 8, 1994) (holding the "arbitrator's decision not to permit a stenographic record of the arbitration hearings" is not grounds for vacatur); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Tadco Constr. Corp.*, No. 07-cv-2712, 2008 WL 540078, at *3 (S.D.N.Y. Feb. 28, 2008) (denying motion to vacate because, among other reasons, "arbitration does not require a stenographic record"). Indeed, even in *criminal proceedings in federal court*, "a mere failure of transcription, by itself, does not rise to a due process violation." *Kheireddine v. Gonzales*, 427 F.3d 80, 85 (1st Cir. 2005).[12]

Nor does Coinmint cite any support for its argument that its due process rights to "confront and cross-examine witnesses" included the right to use transcribed testimony of certain witnesses during the cross-examination of later witnesses. Mot. at 17–21. It is, of course, improper to ask a witness to testify whether a previous witness was telling the truth. *United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002); *see also, e.g.*, *State v. Anderson*, 162 Idaho 610, 619 (2017) ("a witness may not opine as to the truthfulness of another witness"); *State v. Bell*, 283 Conn. 748, 778 ("it is improper to ask a witness to comment on another witness' veracity"); *Masser v. Johnson*, 108 Ohio App. 419, 421 (1958) ("[I]t is not proper to propound one question to a witness which requires it to comment upon the testimony of another.") There is no due process right to use the transcript of witness A's testimony in questioning witness B. What's important and what Coinmint

---

[12] Beyond that, Coinmint makes no attempt to otherwise demonstrate a deprivation of due process under *Mathews v. Eldridge* or any other framework.

ignores is that Coinmint was not prevented from questioning any witness about his or her percipient knowledge of the facts and events at issue here.

Coinmint's assertion that the Panel's no-transcript order affected the Parties differently is also meritless. Mot. at 11. Neither Coinmint nor Katena could use transcripts of earlier witnesses in preparing for cross-examination. Hardin Dec. at ¶ 24. Neither Coinmint nor Katena could cite to trial testimony of these witnesses in their pre-hearing and post-hearing briefing. *Id*. Neither Coinmint nor Katena could have cited to those transcripts in opposing confirmation of the award (had the Panel decided the case differently). *Id*. And neither Coinmint nor Katena had their witnesses treated differently. Both Parties included Messrs. Bleck, DeNaut, Maloney, and Reddy on their respective witness lists. *Id*. And critical party witnesses on both sides (Coinmint's CEO, Ashton Soniat; Coinmint's General Counsel, Randy Foret; Katena's former CEO, Henry Monzon; and Katena's current CEO, Michael Gao) appeared for depositions and for <u>transcribed</u> hearing testimony. *Id*. ¶ 25. This is not a case where Coinmint's witnesses were treated one way and Katena's another.

Finally, even if so minor an issue could be grounds to declare the entire hearing fundamentally unfair, Coinmint was not deprived of due process just because the transcript order was <u>initially</u> issued *sua sponte*. Coinmint had the opportunity to seek rehearing afterwards and did so, first orally at the March 22, 2023, case management conference and subsequently in writing. *See* Ex. 11; Ex. 12; Ex. 13. There is simply no truth to Coinmint's contention that the Panel issued and enforced the transcript order "without permitting Coinmint to be heard." *See* Mot. at 10.

At bottom, the four witnesses subject to the no-transcript order appeared, swore an oath to testify truthfully, testified, and were cross-examined by Coinmint's counsel—just like every other witness in the hearing. And just like every other witness in this hearing, their testimony was heard and carefully considered by the three note-taking members of the Panel. That's a fair hearing.

**III.    Coinmint has not proven that the Panel "exceeded their powers" or manifestly disregarded the law under Section 10(a)(4).**

Finally, Coinmint contends that the panel "exceeded its powers" in the arbitration

1   proceedings, referring to Section 10(a)(4). Mot. at 1, 7, 25. "This is a high standard for vacatur,"

2   *Lagstein*, 607 F.3d at 641, and courts have "extremely limited authority to review arbitration

3   awards" under Section 10(a)(4). *HayDay Farms, Inc. v. FeeDx Holdings, Inc*., 55 F.4th 1232, 1239

4   (9th Cir. 2022). "[I]t is not enough . . . to show that the panel committed an error—or even a serious

5   error." *Lagstein*, 607 F.3d at 641. Arbitrators exceed their powers only "when they express a

6   'manifest disregard of law,' or when they issue an award that is 'completely irrational.'" *Bosack v.*

7   *Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009).

8       Coinmint does not suggest the Final Award was completely irrational but does make several

9   oblique references to "manifest disregard of law." Mot. at 7, 10, 21. "[T]o rise to the level of

10  manifest disregard, the governing law alleged to have been ignored by the arbitrators must be *well*

11  *defined, explicit, and clearly applicable*." *Riley*, 2024 WL 885034, at *2 (emphasis in original). It

12  is "more than just an error in the law or a failure on the part of the arbitrators to understand or apply

13  the law." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). "There must be some

14  evidence in the record, other than the result, that the arbitrators were aware of the law and

15  intentionally disregarded it." *HayDay Farms*, 55 F.4th at 1241. This Court has set forth two

16  requirements to find manifest disregard for the law on the part of the arbitrators, each of which is

17  necessary: "(a) the arbitrators knew of a governing legal principle yet refused to apply it or ignored

18  it altogether; and (b) the law ignored by the arbitrators was 'well defined, explicit, and clearly

19  applicable to the case.'" *Villegas v. US Bancorp*, No. 10-cv-1762, 2014 WL 1338734, at *2 (N.D.

20  Cal. Mar. 31, 2014) (Seeborg, J.), *aff'd sub nom. Villegas v. U.S. Bank NA*, 639 F. App'x 463 (9th

21  Cir. 2016) (citation omitted).

22      Coinmint attempts to meet this high standard by arguing that the "right to a transcribed

23  record is well-defined, explicit, and applicable to the instant case." *See* Mot. at 8. But that is simply

24  not true. There is "no right to a transcript" in arbitration, and to "overturn [an] award merely because

25  [the arbitrator] did not use [a] transcript would be a complete disregard for the discretion given to

26  arbitrators." *M & L Power Servs.*, 44 F. Supp. 2d at 142; *see also PhotoFixitPro, Inc. v. Costco*

27  *Wholesale Corp.*, No. 22-cv-8955, 2023 WL 3432235, at *3 (C.D. Cal. Mar. 16, 2023) (arbitrator's

28

decision to proceed without a transcript and rely on her notes did not deprive plaintiff of a fundamentally fair hearing); *Province*, 2019 WL 13191938, at *4 (denying motion to vacate on the basis that no hearing transcript was prepared); *N.Y.C. Dist. Council of Carpenters Pension Fund*, 2008 WL 540078, at *3 (denying motion to vacate because, among other reasons, "arbitration does not require a stenographic record"); *Arteaga v. Bevona*, 21 F. Supp. 2d 198, 208 (E.D.N.Y. 1998) ("It is also difficult to decipher precisely how the failure to arrange for a transcript of the arbitration 'seriously undermines' the entire arbitral process."); *Pickman Brokerage*, 1994 WL 37820, at *4 (holding the "Arbitrator's decision not to permit a stenographic record of the arbitration hearings" is not grounds for vacatur). "No such formal record needs to be made, because 'by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Goulds Pumps (IPG), LLC v. United Steel Workers Loc. Union No. 3298*, 583 F. Supp. 3d 427, 434 (W.D.N.Y. 2022) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).

Coinmint cherry picks quotes from federal cases that do not deal with arbitrations or Section 10 to argue that the right to a transcribed record is "among the most basic rights of any litigant." Mot. at 10. But these cases do not say what Coinmint claims they do, and certainly do not support Coinmint's argument that it has a legal right to a transcribed record in a <u>private arbitration</u>:

- *United States v. Rechnitz*, 75 F.4th 131 (2d Cir. 2023) involved a federal judge's inexplicable failure to recuse himself from a case in which one of the witnesses was "someone [whom] he regarded as a son" and had advised "on how to proceed with respect to his own criminal matter" arising out of the same set of facts. Coinmint omits that the court's discussion regarding the utility of transcripts was "particular" to the criminal context, and that it was *dicta*. *See id.* at 144–48.

- *Hardy v. United States*, 375 U.S. 277 (1964) is about whether a new court-appointed counsel who represents an indigent criminal defendant on appeal (but not at trial) may obtain at public expense the entire transcript in order to determine which issues should be raised on appeal.

- *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) involved a particular type of bond hearing for detained aliens "facing prolonged detention while their [habeas] petitions for review of their removal orders are pending." *Id.* at 1200. The Ninth Circuit engaged in an analysis under *Mathews v. Eldridge*—something Coinmint

does not attempt to do here—to determine if due process requires an alien be entitled to a transcript or audio recording of the bond hearing. *Id.* at 1208-09. In light of the "unquestionably substantial" "private interest" at stake—i.e., "freedom from prolonged detention"—the court held that a post-hoc memorandum of the hearing was insufficient. *Id.*

- *Bergerco, U.S.A. v. Shipping Corp. of India*, 896 F.2d 1210, 1217 (9th Cir. 1990) established several factors that may be relevant to determining whether a case should be remanded for new trial due to lack of a complete transcript. The court clarified that remand is not automatic but that, under "certain circumstances, the original transcript may be so essential to meaningful appellate review that a remand for a new trial is necessary to insure a fair appeal." But "meaningful appellate review" in a federal court case looks nothing like the limited and deferential review of a private arbitration award, and thus the framework in *Bergerco* does not apply. *Goulds Pumps*, 583 F. Supp. 3d at 434.

No law requires that arbitration hearings be fully transcribed, which is why Coinmint did not cite a case that is on point or attempt to show (as it must) that the Panel was aware that such a law existed and refused to comply with it. *See HayDay Farms*, 55 F.4th at 1241. The Panel did not manifestly disregard the law by issuing Order No. 24.

Even if Coinmint were correct that the AAA Rules provide the right to a transcript—they don't—an arbitrator's failure to apply arbitral rules is not "manifest disregard for law" and cannot support vacatur under Section 10(a)(4) either. AAA rules "do not have the force of law." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983) (Posner, J.); *see also Halliburton Energy Servs., Inc. v. NL Indus.*, 553 F. Supp. 2d 733, 788 (S.D. Tex. 2008); *Chelmowski v. AT & T Mobility LLC*, No. 14-cv-7283, 2015 WL 231811, at *2 (N.D. Ill. Jan. 15, 2015) ("[A]ny contention by Plaintiff that the arbitrator's rulings departed from the AAA's own rules regarding discovery does not provide support for vacating an arbitration award. . . . '[A]lthough we have great respect for the' AAA rules, 'they are not the proper starting point for an inquiry into an award's validity under section 10 of the FAA,' because those 'arbitration rules . . . do not have the force of law.'") (quoting *Merit Ins.*, 714 F.2d at 680), *aff'd*, 615 F. App'x 380 (7th Cir. 2015); *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 254 (3d Cir. 2013) (similar). And in any event, courts give great deference to an arbitrator's interpretation of arbitral rules and procedure. *E.g.*, *Lifescan*,

1   363 F.3d at 1012; *Glob. Gold Mining*, 941 F. Supp. 2d at 388 ("[D]eference to the arbitrator's

2   interpretation of AAA rules would be particularly appropriate here because that interpretation

3   concerns the efficient management of the arbitration proceeding itself.") It is black letter law that

4   an arbitrator's failure to follow arbitration rules or its own orders is not grounds for vacatur under

5   the FAA. *E.g.*, *ANR Coal Co. v. Cogentrix of N. Carolina, Inc.*, 173 F.3d 493, 499 (4th Cir. 1999)

6   ("Even if [the arbitrator] . . . had violated [AAA] Rule 19, that would not, by itself, require or even

7   permit a court to nullify an arbitration award."); *ALS & Assocs., Inc. v. AGM Marine Constructors,*

8   *Inc.*, 557 F. Supp. 2d 180, 184 (D. Mass. 2008) (holding the FAA "articulates no grounds for

9   vacatur based on" a violation of the AAA rules); *Halliburton Energy Servs.*, 553 F. Supp. 2d at 788

10  (holding a "violation of AAA Rules is not a sufficient basis for vacating an arbitrator's decision");

11  *Freeman v. Citibank, N.A.*, No. 14-cv-00067, 2015 WL 13777266, at *15 (N.D. Ga. Jan. 20, 2015)

12  (holding that "the Court is not permitted to vacate the award based on the panel's alleged violation

13  of its own procedural rules" and collecting cases). Coinmint therefore cannot obtain vacatur under

14  Section 10(a)(4) on the basis of the Panel's purported failure to comply with AAA Rule R-28.

15  **IV.    Purported errors of fact are not grounds for vacatur.**

16        Coinmint also argues that the Final Award is inconsistent with Mr. Foret's recollection of

17  Mr. Maloney's and Mr. Reddy's testimony. Mot. at 21-23. But a purported error of fact is not a

18  ground on which an arbitration award can be vacated. *Bosack*, 586 F.3d at 1102 ("Neither erroneous

19  legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral

20  award under [the FAA]."); *New Frontier Inv. AG*, -- F. Supp. 3d --, 2024 WL 459070, at *5

21  ("Confirmation [of an arbitration award] is required even in the face of erroneous findings of fact

22  ….") (brackets in original).

23        Coinmint's argument is in any case meritless. Coinmint claims that the Panel erred in stating

24  that no evidence showed that "Katena offered or paid anything to Maloney" because Maloney

25  testified that he discussed the possibility of a job with Katena and did not take it because he did not

26  want to work for a start-up. Mot. at 22 (citing ECF No. 27-1 at 38). But that is exactly what the

27  Panel found: "Moreover, Maloney testified that he was not interested in going to work for Katena.

28

1 Maloney acknowledged that Katena had approached him about the possibility of working for
2 Katena, but having previously worked at a start-up, stated that he 'had no intention of joining
3 another start-up,' …." ECF No. 27-1 at 38. He had an interview but was not formally offered a job
4 (and was not interested in a job). Coinmint also complains that the Parties disagreed about whether
5 or not Mr. Reddy testified that the Katena chip project was cancelled in October 2021, six months
6 *after* Coinmint materially breached. *See* Mot. at 21. While not relevant to any claim or defense and
7 not mentioned in the Final Award, the testimony of both Mr. Reddy and Katena's CEO, Mr. Gao,
8 was clear that Katena continued working on its Bitcoin miner well into 1Q 2022. Hardin Dec. ¶ 34.
9 The Final Award is entirely consistent with and supported by the evidence.

10 **V.      The court should confirm the Final Award.**

11 Coinmint's willful and repeated refusal to abide by the Panel's orders while insisting that
12 those same orders were void, illegal, and unenforceable placed the Panel in a difficult position.
13 Coinmint's actions forced the Panel to decide how to preserve the integrity of the proceeding,
14 protect third parties against discovery abuse, and uphold Katena's rights under the agreed-upon
15 SPO in the face of Coinmint's intransigence. The Panel's orders—and especially Order No. 29—
16 reflect the Panel's thoughtful and dispassionate efforts to work through the problems created by a
17 party who signs a protective order, receives the benefit (discovery materials) of that protective
18 order, and then repudiates it and the Panel's authority.

19 It is ludicrous for Coinmint to now claim that the Panel's efforts to solve the problems that
20 Coinmint created (and that Coinmint could have solved, at any time, by committing to follow the
21 SPO) are evidence of actual bias or some form of misconduct that would warrant vacatur of the
22 Final Award. The Panel should be applauded for their efforts, not have their well-reasoned Orders
23 and Final Award torn up and the process started anew in favor of a recalcitrant litigant that created
24 the situation.

25 Vacatur is unwarranted. Coinmint's Motion should be denied. The Final Award should be
26 confirmed.

27

28

1

2

3   Dated:  April 22, 2024                    **PERKINS COIE LLP**

4

5                                            By:*/s/ David P. Chiappetta*
                                                David P. Chiappetta, Cal. Bar No. 172099
6                                               John R. Hardin, Texas Bar No. 24012784
                                                Jacob J. Taber, New York Bar No. 5374020

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28