# EXHIBIT 2

FLETCHER C. ALFORD  (SBN:  152314)
falford@grsm.com
KEVIN LIU  (SBN:  295287)
kliu@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

ROBERT LEMUS (PRO HAC VICE FORTHCOMING)
rlemus@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
3D/International Tower
1900 West Loop South, Suite 1000
Houston, TX 77027
Telephone:  (713) 490-4876

Attorneys for Plaintiff
COINMINT, LLC

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| COINMINT, LLC,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DX CORR DESIGN, INC., a California Corporation, SAGAR REDDY, an individual, ROBERT BLECK, an individual, JIM DENAUT, an individual, FRANK KINNEY, an individual, and DOES 1- 40, inclusive,<br><br>                    Defendants. | CASE NO.<br><br>**COMPLAINT BY COINMINT, LLC** |

Plaintiff Coinmint, LLC ("Coinmint") hereby alleges, upon knowledge with respect to its own acts, and upon information and belief with respect to all other matters, the following against Defendants DX Corr Design, Inc. ("DX Corr"), Sagar Reddy ("Reddy"), Robert Bleck ("Bleck"); Jim Denaut ("Denaut"), Frank Kinney ("Kinney") and DOES 1-40, inclusive (collectively, "Defendants"):

1.      Coinmint is a Puerto-Rican limited liability company, having its principal place of business at 2210 Dorado Beach Road, Dorado, PR 00646-2243. Coinmint maintains its

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

principal place of business in Puerto Rico and operates, through its subsidiaries, a substantial Bitcoin mining facility in Massena, NY.

2. Coinmint is informed and believes that Defendant DX Corr is, and at all times mentioned herein was, a computer chip design company having its principal place of business in Sunnyvale, California.

3. Coinmint is informed and believes that Defendant Reddy is, and at all times mentioned herein was, an individual domiciled, residing in, and conducting business in Santa Clara County, California.  Coinmint is informed and believes that Defendant Reddy is, and at all times mentioned herein was, acting in his capacity as a principal, officer, and founder of DX Corr.

4. Coinmint is informed and believes that Defendant Bleck is, and at all times mentioned herein was, an individual domiciled in, residing, and conducting business in California.

5. Coinmint is informed and believes that Defendant Denaut is, and at all times mentioned herein was, an individual conducting business in California.

6. Coinmint is informed and believes that Defendant Kinney is, and at all times mentioned herein was, an individual conducting business in California.

7. Coinmint is unaware of the true names and capacities of defendants sued herein as DOES 1 through 40, inclusive, and therefore sues these defendants by these fictitious names. Coinmint is informed and believes and thereon alleges that some or all of the fictitiously named defendants are individuals who reside or conduct business in California. Coinmint is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, that defendants have interests in the issues implicated by this Complaint and are, therefore necessary parties to the relief sought herein, and that Coinmint's damages as herein alleged were proximately caused by said defendants. Coinmint will amend this complaint to allege their true names and capacities when ascertained.

8. Coinmint is informed and believes and thereon alleges that at all times material to this complaint, each of the Defendants, in addition to acting for himself, herself, or itself and on

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

his, her, or its own behalf individually, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope and authority of that agency, service, employment, representation, and conspiracy. Coinmint further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the other Defendants. Specifically, and without limitation, Coinmint alleges on information and belief that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the Defendants.

**SUMMARY OF THE DISPUTE**

9.      This action arises from a fraudulent scheme perpetrated by Katena Computing Technologies, Inc. ("Katena"), acting in concert with DX Corr and its founder, defendant Reddy, as well as several of Coinmint's co-conspirators, including DOE 1 ("DOE 1"),  defendant Denaut, and Coinmint's former acting COO defendant Kinney,  pursuant to which Coinmint was defrauded of $23,397,197.91. Through an elaborate scheme (conducted almost exclusively via text messages and phone calls), Katena and DX Corr improperly influenced, bribed or incentivized DOE 1, Denaut, and Kinney, including but not limited to, offering each of them employment and monetary kickbacks, so that they would utilize their positions as officers and/or consultants of Coinmint to bind Coinmint to a $150 million purchase contract pursuant to which Katena was to provide to Coinmint thousands of bitcoin mining computers and related microchips ("the contract"), that Katena had no ability or intention to perform.  Moreover, Katena, DX Corr, and Reddy improperly influenced, bribed, or incentivized Bleck (the supposedly independent expert retained by Coinmint to evaluate Katena's ability to perform under the contract) and revised his supposedly independent report of Katena's proprietary chip in order to falsely represent Katena's ability to perform under the contract and induce Coinmint to advance the more than $23 million in deposit payments to Katena.  Katena also engaged in an extensive scheme of what it called ████████████████████████████████ ████████████████████████████████████████████████████████.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

██████████████████████████████████████████████████████

████████

10.     As a result of Defendants' fraudulent scheme, Coinmint advanced more than $23 million in deposit payments to Katena and has received nothing in return. Despite the fact that Katena has failed to manufacture a single Bitcoin miner (or even any of its proprietary chips), it refuses to return the money and refuses to explain where it is or how it has been used despite repeated requests by Coinmint to Katena to provide an accounting related to the use of the funds.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████.     When Coinmint became concerned with Katena's behavior and demanded assurances of its performance and an accounting of the whereabouts of Coinmint's millions of dollars of deposit payments, Katena responded by "terminating" the agreement without notice or opportunity to cure. ████████████████████████████

████████████████████     Consequently, Coinmint is presently pursuing its claims against Katena in arbitration pursuant to the arbitration clause in the contract. However, Coinmint does not have an arbitration agreement with any of the Defendants named in this action.  Therefore, this action is necessary to hold each of the Defendants responsible for their role in the fraudulent scheme perpetrated against Coinmint.

## FACTUAL ALLEGATIONS

### I.     Coinmint And Bitcoin Mining

11.     Coinmint is a "Bitcoin mining company."  Through its operating subsidiary, it owns and runs one of the largest digital currency data centers in the world, in a former Alcoa Aluminum facility located in Massena, NY  (the "Data Center"), as well as a much smaller digital currency data center in Plattsburgh, NY.  The Data Center house tens of thousands of "miners" – computers specially designed to perform the Bitcoin mining operations central to Coinmint's business and described in more detail below.

12.     Ashton Soniat (and a former minority partner) founded Coinmint in 2016.  As explained above, Coinmint operates, through its subsidiaries, an extensive Bitcoin mining

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

facility at its Data Center in Massena, New York. It presently houses thousands of specialized mining computers of the type Katena claimed it had the capability of designing and manufacturing. Prior to entering the Bitcoin mining industry, Soniat founded a successful energy trading firm. With Coinmint, Soniat sought to leverage his experience in the energy industry and bring hope that the new economics of cryptocurrencies would revive a region suffering due to the decline of American manufacturing. Coinmint eventually brought over one hundred new jobs to the Northern New York region.

13. Bitcoin mining is both the process that (i) creates new Bitcoin to add to those already in circulation and (ii) verifies and records transactions on the blockchain. The blockchain is a decentralized public ledger that records and secures Bitcoin transactions. The process of transaction verification is known as proof of work (or PoW) because miners must solve complex math problems (i.e., algorithms) in order to be able to verify a new block of Bitcoin transactions. In order to solve these unusually complex math functions (called hashes), Bitcoin miners require powerful computers with specialized graphics processing units (GPUs) and application-specific integrated circuits (ASICs).

14. Miners earn Bitcoin as a reward for solving the hash functions that secure and enable the blockchain. Bitcoin mining is a costly process because it requires expensive, specialized, and highly powerful computers that consume large amounts of electricity in order to power the specialized microprocessors needed to solve these hash functions. If derived from non-renewable sources, mining can be both financially expensive and costly for the environment. Soniat innovated an idea to mine Bitcoin in a manner that was both environmentally friendly and profitable by providing Bitcoin miners with access to significant quantities of renewable low-cost electricity. He was drawn to upstate New York both for the access to low cost hydroelectric power and the low temperatures, which increase the efficiency and reliability of Bitcoin-mining computers while avoiding much of the ancillary electricity and costs ordinarily necessary to cool the powerful ASIC semiconductors operating within those computers.

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

15.     Soniat endeavored to leverage the abundance of hydroelectric generation in upstate New York by leasing a former Alcoa Aluminum smelting facility in Massena, New York that utilizes environmentally conscious hydroelectric power from the abutting St. Lawrence River to power Coinmint's Bitcoin mining computers.  At a significant cost, Coinmint made substantial investments and rehabilitated the facility to transform it into a Data Center suitable to house, power and cool the tens of thousands of dedicated mining computers used in its Bitcoin mining operation.  The Data Center has been operational since 2018, and currently utilizes 150 MW of the total 435 MW capacity of the facility.

16.     In 2021, Coinmint retained DOE 1 as its CFO, Denaut as its acting CEO, and Kinney as its acting COO.  As officers of the company, DOE 1, Denaut, and Kinney owed fiduciary duties to Coinmint and were expected to act in its best interest.

17.     Henry Monzon ("Monzon") is the founder of Katena, a start-up company that purports to be in the business of, among other things, the development, manufacturing, and sale of computer chips and cryptocurrency mining technology. Katena's other original founders and minority partners are Michael Gao ("Gao") and Reddy.  However, despite its representations, Katena did not have the capability of creating its own chips and had been unsuccessful in its sales efforts with other Bitcoin mining operators.

18.     On information and belief, DX Corr is a computer chip design company that performed chip simulations for Katena.  Reddy is also a principal and owner of DX Corr, a fact which was not disclosed to Coinmint.

19.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  Importantly, Katena failed to disclose in the investment material that it sent to Coinmint that

2  among other things, Reddy was a cofounder of DX Corr, the supposedly independent company

3  that performed the chip simulation for Katena, and that Reddy was also a minority partner in

4  Katena.  In other words, Reddy was an undisclosed founder and/or principal of both DX Corr

5  and Katena.   In addition to the Pitch Deck, Katena created a data room that contained

6  information that Katena allowed DOE 1 to review. The information contained in that data room

7  included ██████████████████████████████████████████████████████████

8  ██████

9      20.    At some point after DOE 1 was introduced to Katena, DOE 1 began engaging in

10  discussions with Katena concerning a proposed transaction which contemplated Coinmint's

11  purchase of thousands of specially designed miners from Katena.  Apparently, Katena decided

12  to employ a different and fraudulent scheme with DOE 1 ████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ████████████

16      21.    Since DOE 1 lacked the authority of Coinmint to sign any agreement with Katena

17  or disburse Coinmint funds to Katena, Katena engaged in an elaborate deception to convince

18  Soniat, Coinmint's owner, that Katena truly possessed a revolutionary chip design that would

19  disrupt the Bitcoin mining world.  As part of the scheme, ████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ███████████████████████████████████████   Attached as **Exhibit 2**

22  is ████████████████████████████████████████████████████████████

23  ████████████    Katena knowingly, intentionally, and willfully failed to inform DOE 1 and

24  Coinmint that the independent chip expert was actually a paid shill of Reddy.

25      22.    As cover for his secret scheme, ██████████████████████████████████

26  ███████████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████████████

28  ///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Coinmint were equally unaware.  Attached as **Exhibit 3** is ██████████████████

2    ████

3        23.    ████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7                                    Attached as **Exhibit 4** is ████████████████

8    ████████████████████████████

9        24.    Prior to the alleged signing of the contract between Coinmint and Katena, ██████

10    ████████████████████████████████████████████████████████████

11    ████████████████████████████████████████████████████████████

12    ████████████████████████████████████████████████████████████

13            Attached as **Exhibit 5** is ████████████████████████████

14    ██████████████████████

15        25.    ████████████████████████████████████████████████

16    ████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████

20    ████████████████████████████████    Attached as **Exhibit 6** is ████

21    ████████████████████████████████████████

22        26.    During these discussions prior to the alleged signing of the contract by Soniat,

23    Katena induced DOE 1 through its corruption of Bleck to make  a series of intentionally false

24    and/or misleading material representations to Soniat, including that: (a) Katena had developed

25    a patented microchip and was "a world class chip" manufacturer; (b) the miners that Coinmint

26    would  purchase  from  Katena  were  powered  by  patented  microchips  specially  designed  by

27    Katena  and  manufactured  by  the  world's  leading  semiconductor  manufacturer,  Taiwan

28    Semiconductor  Manufacturing  Company  ("TSMC");  (c)  Katena  had  other  significant  clients

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

who had entered into contracts similar to those under discussion with Coinmint; and (d) Katena was financed by a large, nationally recognized investment firm and was itself financially secure (collectively, the "Fraudulent Representations").

27.     Gao, the current CEO of Katena, has admitted that DOE 1, acting in his capacity as then-CFO of Coinmint, was the sole representative from Coinmint who participated in the discussions with Katena leading up to the proposed $150 million equipment purchase which, if consummated, would be the largest transaction in Coinmint's history.  On or about May 8, 2021 DOE 1 added to the draft contract a number of important clauses that benefited Katena and hurt Coinmint ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████ Attached as **Exhibit 7** is ████████████

████████████████████████████████████████

28.     During the negotiations with DOE 1, ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████ as **Exhibit 8** is ████████████████████████████

██████████████████████████

29.     On May 13, 2021, just weeks after the discussions between DOE 1 and Katena apparently began, based on the representations made by Katena to DOE 1, as well as verbal

confirmation from Bleck, Soniat (Coinmint's co-founder and Chairman) purportedly electronically executed a Sales and Purchase Agreement dated May 12, 2021[1] (the "S&P Agreement") and an associated Purchaser Order No. 1 (the "First PO") (collectively "the Contract") via DocuSign software.  The DocuSign versions of the S&P Agreement and First PO were presumably sent to Soniat by Monzon on May 12, 2021. ███████████████████

████████████████████████████████████████████████████████

█████████████████ Attached as **Exhibit 9** ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████ Attached as **Exhibit 10** is ███████████████

██████████████████████████

     30.     Contrary to representations made by Katena, those documents purport to obligate Coinmint to pay Katena $150 million for miners without security or customary protection for Coinmint's payments or the equipment that Katena allegedly would supply.  After the purported execution of the contracts, Katena continued to make false statements to Coinmint in an attempt to convince Coinmint to make further deposit payments to Katena.  Katena continued to make these statements despite the fact that it knew that the First PO had been orally modified. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Attached as **Exhibit 11** is ████████████████

████████████████████████ Monzon, Gao and Reddy all knew that to reduce the contract changes to writing at this stage in the game would require an admission of securities

---

[1] Although the S&P Agreement is dated May 12, 2021, it was signed on May 13, 2021.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

and/or banking fraud on the part of Katena since Monzon, Gao and Reddy knew that they were pretending that Coinmint was obligated on a contract that had been modified and for which due diligence had been fraudulently provided by Katena.

31.     To induce DOE 1 to persuade Soniat to make payments on the now modified agreements, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Attached as **Exhibit 12** is ███████████████████

██████████████████████████

32.     ████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ Attached as **Exhibit 13** is ████████████████

████████████████████████████

33.     In the weeks and months that followed Coinmint's entry into the contract, Coinmint and Katena continued to engage in discussions regarding the transaction and potential amendments to the agreements. During these discussions, Katena continued to make additional misrepresentations to Coinmint concerning the parties' discussions and intentions, the terms of the agreements and Katena's ability to actually manufacture the chips and miners that it promised it could manufacture. Among other things, Katena informed Coinmint that it could not deliver a prototype or any other working unit of a miner unless Coinmint paid Katena the entire $37.5 million initial deposit required by the First PO – despite the fact that DOE 1, Monzon and Gao had secretly agreed to orally revise the Contract to no longer require that payment to Katena. Denaut and Kinney, acting against the interests of Coinmint, repeated these representations to convince Soniat to make deposits to Coinmint when they knew the falsity of their statements. In fact, Denaut discussed DOE 1's departure with Katena before it was even common knowledge amongst the other Coinmint executives. During a text message exchange with Monzon on September 17, 2021, Denaut actually recommended that Katena hire DOE 1 as

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

its CFO even though DOE 1 was leaving Coinmint under suspicious circumstances. According to information that Denaut provided to the other Coinmint executives, just a few weeks prior to his departure, DOE 1 had informed Denaut that if the company didn't meet his severance package demands, "he had information that could burn the company to the ground."

34.    After DOE 1 left Coinmint, Denaut assumed the role of persuading Soniat to continue to fund Katena's fledgling startup operation. Unknown to Soniat, Denaut and Kinney (Denaut's right hand man and the de facto COO of Coinmint) were plotting a hostile takeover of Coinmint. When Soniat refused to accept Denaut's demand that Denaut have 100% control over Coinmint's day-to-day operations, Denaut and Kinney parted ways with Coinmint. Within days of parting ways with Coinmint, and after successfully convincing Soniat to deposit additional millions of dollars with Katena, Denaut began working as an advisor with Katena. Denaut accepted this position with Katena even though he was informed by Coinmint's General Counsel that it would be inappropriate and possibly a breach of his fiduciary duty to Coinmint to take such a position. ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ Both Denaut and Kinney misrepresented their ongoing relationship with Katena, failed to disclose their association with Katena, and continued to feed misinformation to Coinmint. Coinmint did not learn about the advisor relationships that Denaut and Kinney had with Katena or that the both of them had been actively working against the interests of Coinmint until January of 2023.

35.    Like Denaut and Kinney, Bleck (who is currently an engineering program manager at Microsoft) intentionally misled Coinmint about his relationship with Katena and especially Reddy. On several occasions, Bleck was asked directly by counsel for Coinmint if he had a relationship with Katena and its principals either before or after his engagement with Coinmint ended. To both questions, Bleck affirmatively stated "No." Bleck lied about his relationship with Katena. ███████████████████████████

███████████████████████████████████████████████

1  ██████████  Bleck knew and understood that Soniat would not agree to pay millions of

2  dollars to Katena unless Bleck "wowed" Coinmint. ████████████████████

3  ████████████████████████████████████████

4  ████████████████████████████████████████

5  ████████████████████  Attached as **Exhibit 14** is ████████

6  ████████████████████████████

7  36.    Contrary to the information he provided to Coinmint, Bleck continued to assist

8  Katena in its attempts to raise capital. ████████████  were among the investment

9  firms that Bleck contacted on behalf of Katena. ████████████  the due diligence

10  report ████████████████████████████  for Coinmint ████

11  ████████████████████████████████████████

12  ████  even though he was contractually obligated not to disclose information related to his

13  engagement with Coinmint.

14  37.    Based on its continued dealings with Katena, Coinmint became increasingly

15  concerned with Katena and its ability to perform its contractual obligation to deliver thousands

16  of miners to Coinmint.  Ultimately, Coinmint requested that Katena (a) confirm that it had used

17  the $23 million deposit payments for their intended purpose (i.e. to manufacture and deliver

18  miners to Coinmint, starting with a prototype), (b) provide Coinmint with adequate and

19  reasonable assurances of Katena's ability and intention to perform under the agreements and (c)

20  ultimately refund the $23 million in deposit payments paid to Katena by Coinmint.  Initially,

21  Katena used Denaut (who had not disclosed his relationship with Katena) to deceive Coinmint

22  and ensure Coinmint that all of its deposits would be repaid. Believing that Denaut would honor

23  his fiduciary obligations to Coinmint, Coinmint delayed filing an action against Katena or

24  against Denaut and Kinney.

25  38.    In response to the numerous requests made by Coinmint, Katena rejected all of

26  Coinmint's requests, insisted that Katena did not have any escrow obligations with respect to

27  any of Coinmint's deposit payments (which unbeknownst to Coinmint, was struck from the

28  contract by Katena ████████████████████████████

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-13-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

■■■■. In addition, Katena sent Coinmint a notice terminating the S&P Agreement and the First PO on grounds that Coinmint had failed to make sufficient deposit payments to Katena. According to Katena, it is entitled now to keep Coinmint's entire $23 million in deposit payments even though Katena failed to deliver even a single working unit of a miner – not even a prototype. Katena asserts Coinmint has no recourse and should simply walk away empty-handed while demanding an additional $14 million be paid to them. Upon information and belief, Katena, Gao, Monzon, Reddy, and DX Corr are now in the process of rebranding Katena and attempting to raise additional funds in an another scheme.

39. To date, Coinmint has paid Katena just over $23 million and has received literally nothing in return. Upon information and belief, as of the signing of the contracts, Katena did not design, and had never before manufactured, the miners it proposed to supply to Coinmint (or for that matter any other semiconductor chip of any kind), and Katena did not have the significant customers represented to Coinmint (and/or any customers) and no ability to produce thousands of miners to Coinmint that Katena represented it would deliver. To the contrary, Katena recently admitted that it was hoping that Coinmint would be its "anchor customer," yet another material fact that was not disclosed at the time of the execution of the transaction, whose cash deposits would provide the capital that Katena needed to finance its foray into the microchip and ASIC miner business. Coinmint intended to purchase specialized computer equipment as called for under the agreements, not to "finance" Katena's startup business. Defendants' participation in this fraudulent scheme with Katena, including working in concert with Katena to lure Coinmint into some type of "investment contract" that was disguised as a contract for the purchase of Bitcoin miners, is a violation of the Blue Sky laws of both New York and California.

40. Coinmint brings this action seeking a declaration, judgment and order against Defendants for damages in the amount of at least $23 million which represents the money previously paid by Coinmint as a result of Defendants' fraud in inducing it to enter into the agreement with Katena and require Defendants to compensate Coinmint for any and all other

///

damages, attorney's fees, and expenses.  Furthermore, Coinmint seeks punitive damages against Defendants for their willful misconduct.

## FIRST COUNT

### (Fraud against all Defendants)

41.    Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

42.    By engaging in the conduct alleged in this Complaint, Coinmint was fraudulently induced by Defendants to sign the P&S Agreement and First PO with Katena and to make deposits of over $23 million.

43.    As alleged herein, Katena made material representations to Denaut, Kinney, and DOE 1 prior to Coinmint's execution of the S&P Agreement and the First PO, including the Fraudulent Representations that: (a) Katena had developed a patented microchip and had the ability to produce the thousands of miners it agreed to deliver to Coinmint; (b) the miners that Coinmint would purchase from Katena were designed by Katena and would be manufactured by the world's leading semiconductor manufacturer, TSMC; (c) Katena had significant clients who had entered into contracts similar to those under discussion with Coinmint; and (d) Katena was financed by a large, nationally recognized investment firm, and had the resources to manufacture and deliver thousands of miners to Coinmint.  Katena also represented that Bleck was an independent due diligence expert.

44.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

45.    Defendants Denault, Kinney and DOE 1 conveyed these representations to Coinmint with the intent to induce Coinmint to rely on them so that Coinmint would sign the S&P Agreement and First PO and advance deposit payments to Katena.  Meanwhile, DX Corr and Reddy, through their manipulation of Bleck and his report, also conveyed these representations relating to Katena's ability to perform to Coinmint with the intent to induce

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Coinmint to rely on them so that Coinmint would sign the S&P Agreement and First PO and advance deposit payments to Katena.

46. Coinmint justifiably relied on Katena's misrepresentations, including because of Denaut's, Kinney's, and DOE 1's representations about Katena and its ability to produce the miners to Coinmint, as well as similar representations conveyed through Bleck's supposedly independent report.

47. Coinmint actually relied on Katena's representations because the company would not have entered into the S&P Agreement and First PO absent Katena's representations.

48. Katena has not given anything of value or otherwise materially changed position as a result of the S&P Agreement or First PO because it has not provided Coinmint with any K10 miners or other mining equipment in exchange for the $23 million in payments Coinmint has made to Katena, for which Katena still refuses to account.

49. As a proximate cause and result of these representations, Coinmint has suffered and continues to suffer actual and irreparable harm including being held to a contract procured by fraud.

50. Under applicable law, fraud in the inducement renders the entire contract voidable.

51. Under applicable law, a material misrepresentation renders a contract voidable by a party induced thereby to enter it if the other party thereto has reason to know of the misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction.

52. Coinmint therefore requests a judicial determination rescinding the S&P Agreement and First PO and declaring them void as they were executed as a result of Defendants' fraudulent inducement and awarding monetary damages in the amount of $23 million plus interests, costs, punitive damages, and attorney fees.

53. Defendants' fraudulent conduct caused Conmint to suffer damages in an amount according to proof but not less than $23 million.

54. Defendants acted with malice, oppression, or fraud, and Coinmint is entitled to punitive damages according to proof.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

<u>**SECOND COUNT**</u>

**(Breach of Fiduciary Duty against Bleck, DeNaut, Kinney, and DOE 1)**

55.     Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

56.     As the supposedly independent chip expert retained by Coinmint to evaluate Katena's ability to perform under the contract, Bleck was in a special relationship with Coinmint and owed Coinmint a fiduciary duty.  As officers of Coinmint, DOE 1, Denaut, and Kinney owed fiduciary duties to Coinmint and were expected to act in its best interest.

57.     By engaging in the conduct described above, Bleck breached his fiduciary duty to Coinmint as Coinmint's retained expert.  By engaging in the conduct described above, Denaut, Kinney, and DOE 1 breached their fiduciary duties as officers of Coinmint.

58.     Bleck, Denaut's, Kinney's, and DOE 1's breaches of their fiduciary duties to Coinmint caused Conmint to suffer damages in an amount according to proof but not less than $23 million.

59.     Bleck, Denault, Kinney, and DOE 1 acted with malice, oppression, or fraud, and Coinmint is entitled to punitive damages according to proof.

<u>**THIRD COUNT**</u>

**(Aiding and Abetting Breach of Fiduciary Duty against DX Corr, Reddy, and Bleck)**

60.     Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

61.     At all relevant times, DX Corr, Reddy, and Bleck knew that Denaut, Kinney, and DOE 1 were officers of Coinmint and owed fiduciary duties to Coinmint. DX Corr and Reddy also knew that Bleck was retained by Coinmint to provide an independent evaluation of Katena's ability to perform under the contract, and that Bleck was in a special relationship and owed a fiduciary duty to Coinmint.

62.     By engaging in the conduct described hereinabove, DX Corr, Reddy and Bleck aided and abetted and/or gave substantial assistance to Denaut, Kinney, and DOE 1 in breaching their fiduciary duties, as officers of Coinmint.  By engaging in the conduct described

-17-

1  hereinabove, DX Corr and Reddy aided and abetted and/or gave substantial assistance to Bleck

2  in breaching his fiduciary duty to Coinmint.

3        63.    DX Corr, Reddy and Bleck's aiding and abetting Denaut's, Kinney's, and DOE

4  1's breaches of their fiduciary duties to Coinmint and DX Corr and Reddy's aiding and abetting

5  Bleck's breach of his fiduciary duty to Coinmint caused Coinmint to suffer damages in an

6  amount according to proof but not less than $23 million.

7        64.    DX Corr, Reddy and Bleck acted with malice, oppression, or fraud, and Coinmint

8  is entitled to punitive damages according to proof.

9  <center>**FOURTH COUNT**</center>

10  <center>**(Breach of Contract against Bleck)**</center>

11        65.    Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set

12  forth herein.

13        66.    Bleck entered into a contract with Coinmint to provide an independent evaluation

14  and due diligence report of Katena's chip design and capabilities.  Bleck also executed a non-

15  disclosure agreement promising not to disclose any information related to his engagement with

16  Coinmint.

17        67.    Bleck breached his contract with Coinmint by engaging in the conduct described

18  hereinabove, including but not limited to, failing to provide an honest, independent evaluation

19  of Katena's chip design and capabilities and by ████████████████████

20  ████████████████████████ Bleck also breached the non-disclosure

21  agreement by ████████████████████

22        68.    Coinmint has performed all of its obligations under the contract with Bleck.

23        69.    Bleck's breach of his contract with Coinmint and the non-disclosure agreement

24  has caused Coinmint to suffer damages in an amount according to proof but not less than $23

25  million.

26  ///

27  ///

28  ///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**FIFTH COUNT**

**(Breach of Covenant of Good Faith and Fair Dealing against Bleck)**

70.    Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

71.    Bleck entered into a contract with Coinmint to provide an independent evaluation and due diligence report of Katena's chip design and capabilities.

72.    Bleck prevented Coinmint from receiving the benefits under the contract by, among other things failing to provide an honest, independent evaluation of Katena's chip design and capabilities, ███████████████████████████████ ████████ and later disclosing the contents of the report to third parties and others about his engagement with Coinmint ██████████████████.

73.    Bleck did not act fairly or in good faith by engaging in the conduct described herein above.

74.    Bleck's wrongful conduct has caused Coinmint to suffer significant damages, including but not limited to, loss of use of the $23 million payment Katena has wrongfully retained, loss of revenue, and loss of future profits.

75.    Coinmint is entitled to a judgment against Bleck in an amount to be proven at trial.

**SIXTH COUNT**

**(Conspiracy against all Defendants)**

76.    Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

77.    Defendants DX Corr, Reddy, Bleck, DeNaut, Kinney, and DOE 1 had knowledge of, and agreed to conspire with Katena for the purpose of defrauding and causing injury to Coinmint.

78.    Defendants DX Corr, Reddy, and Bleck had further knowledge of, and agreed to conspire with Katena for the purpose of causing DeNaut, Kinney, and DOE 1 to breach their fiduciary duties and causing injury to Coinmint.

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

79.     Defendants DX Corr and Reddy had further knowledge of, and agreed to conspire with Katena for the purpose of causing Bleck to breach his fiduciary duty and causing injury to Coinmint.

80.     By engaging in the conduct described hereinabove, DX Corr, Reddy, Bleck, DeNaut, Kinney, and DOE 1 acted pursuant to their respective conspiracies with Katena and each other, resulting in injury to Coinmint in an amount according to proof but not less than $23 million.

81.     Defendants acted with malice, oppression, or fraud, and Coinmint is entitled to punitive damages according to proof.

## SEVENTH COUNT

### (Intentional Interference with Contractual Relations against DX Corr and Reddy)

82.     Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

83.     Bleck and Coinmint entered into a valid contract for Bleck to provide an independent evaluation and due diligence report of Katena's chip design and capabilities.

84.     DX Corr and Reddy were not a party to that contract but were aware of the existence of that contract.

85.     DX Corr and Reddy intended to interfere with that contract by ██████████ ████████████████████████████████ and revising the contents of the report such that it was not an honest and independent evaluation of Katena's chip design and capabilities.

86.     By engaging in the conduct described above, DX Corr and Reddy caused Bleck to breach his contract with Coinmint and disrupt their relationship because Bleck was no longer providing an independent evaluation of Katena's chip design and capabilities.

87.     As a result, DX Corr and Reddy caused Coinmint to suffer damages in an amount according to proof but not less than $23 million.

88.     DX Corr and Reddy acted with malice, oppression, or fraud, and Coinmint is entitled to punitive damages according to proof.

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## EIGHTH COUNT

**(Violation of Business and Professions Code section 17200 against all Defendants)**

89.   Coinmint repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

90.   Defendants have committed acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in the following: participating in Katena's fraudulent scheme to induce Coinmint's execution of the S&P Agreement and payment of over $23 million to Katena, including facilitating Katena's fraudulent representations that: (a) Katena had developed a patented microchip and had the ability to produce the thousands of miners it agreed to deliver to Coinmint; (b) the miners that Coinmint would purchase from Katena were designed by Katena and would be manufactured by the world's leading semiconductor manufacturer, TSMC; (c) Katena had significant clients who had entered into contracts similar to those under discussion with Coinmint; (d) Katena was financed by a large, nationally recognized investment firm, and had the resources to manufacture and deliver thousands of miners to Coinmint; and (e) Katena would use the deposit payment to fulfill its obligations under the contract.

91.   These acts and practices, as described in the paragraphs above, violate Business and Professions Code Section 17200 because members of the public were likely to believe that Katena had the capability to develop and produce specialized computer systems to perform Bitcoin mining operations and would use deposit payments for such purposes, and that Bleck's report was an accurate and independent evaluation of Katena's chip design and capabilities. Consequently, such practices and policies constitute a fraudulent business act or practice within the meaning of Business and Professions Code section 17200.

92.   Coinmint and other members of the general public have no other adequate remedy of law.

93.   As a result of the aforementioned acts, Coinmint and other members of the public have lost money or property and suffered injury in fact.

///

94.   Katena received and continues to retain the $23 million deposit payment from Coinmint.  Furthermore, Defendants have benefited from participating and facilitating Katena's fraudulent scheme because Katena has offered and provided employment benefits and monetary kickbacks to Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Coinmint respectfully requests the following relief:

1.   Award Coinmint actual, compensatory and consequential damages, including but not limited to the $23 million;

2.   Award Coinmint punitive and exemplary damages;

3.   Pre- and Post-judgment interest at the maximum rate provided by law;

4.   Attorney fees and costs; and

5.   Such other and further relief as this Court may deem just and proper.

Dated: January 26, 2023         GORDON REES SCULLY MANSUKHANI, LLP

By:  _____
Fletcher C. Alford
Kevin Liu
Attorneys for Plaintiff
Coinmint, LLC

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-22-