# EXHIBIT 6

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Coinmint, LLC,<br>　　　Claimant / Counter-Respondent,<br><br>-against-<br><br>Katena Computing Technologies, Inc.,<br>　　　Respondent / Counter-Claimant. | Case No. 01-22-0001-7627<br><br><br>**KATENA'S BRIEF IN SUPPORT OF<br>REQUEST FOR SANCTIONS** |

**EXECUTIVE SUMMARY**

Coinmint violated the Stipulated Protective Order that it negotiated and agreed to and that the Panel entered as Order No. 6 (the SPO). As the Panel put it: "Coinmint violated the Protective Order (a) when it attached Protected Material to the complaint it filed in the State Court Action, and (b) when it quoted (or paraphrased or otherwise summarized) from Protected Material in the body of the complaint it filed in the State Court Action." Order No. 18.

As the Panel turns to deciding the appropriate sanction(s) for Coinmint's past violations and what is needed to stop a defiant Coinmint from future violations, the intentionality of Coinmint takes center stage. This was no mistake. Coinmint told the Panel that it meant to violate the SPO because it "does not believe that the SPO applies and that it cannot be enforced to restrict what Coinmint may want to file in other actions or proceedings, including the State and Federal Court Actions" despite the fact that Coinmint negotiated the SPO. Order No. 18.

And since the Panel issued Order No. 18 Coinmint has breached the SPO again, and again, and again. Coinmint served the unredacted complaint and exhibits on defendants in the Federal Court action (and wrongly served a random woman, even though all defendants are men). Coinmint filed the state court Complaint and all 14 confidential Katena exhibits to the docket in the federal action and asked the Court <u>not</u> to seal them. Coinmint gratuitously attached dozens of confidential Katena documents to its response to Mr. Reddy's Motion to Stay for the sole purpose of publicly smearing Katena—the documents are not cited once in support of the actual legal argument. And finally, after winning release of the deposition transcripts (and relief

from Order No. 16) by promising the Panel and Katena that it would keep those deposition transcripts confidential, Coinmint ignored its own promises, the Panel's orders, and the Panel's warnings and intentionally filed confidential deposition transcripts to the public docket.

All of this in a quest to get out of a contract that Ashton Soniat wanted and signed of his own volition.

Coinmint's actions are an affront to the arbitrators, the arbitral forum, and the Arbitration process to which Coinmint agreed. Terminating sanctions are warranted based on Coinmint's actions, allowed by the AAA Rules, and confirmed by courts when imposed in this situation. Terminating sanctions—together with an order requiring Coinmint to destroy all Katena confidential documents in its (or its counsel's) possession—are the only thing that can stop further violations of the SPO. What else will stop Coinmint? The Panel has declined to have any written record of the forthcoming third-party Hearing testimony because there is no other way to prevent Coinmint from immediately misusing and publishing confidential arbitration records.

In addition to terminating Coinmint's claims, Katena is entitled to monetary sanctions. Katena's Protected Material, which was to be guarded under the SPO, is now in the public domain. So is the confidential deposition testimony of its current and former employees. There's no easy way to put a dollar figure on that kind of harm, but we propose a proportional sanction: Coinmint should pay a set amount for each disclosure of any Confidential document and pay for the attorneys' fees incurred by Katena as a result of Coinmint's violations of the SPO (including the initial motion for sanctions and this briefing on remedies).[1]

Lastly, the Panel should determine a sanction to be imposed if Coinmint violates the SPO in the future, <u>recognizing that Coinmint has Katena's trade secrets and proprietary information in its possession</u>, in addition to the confidential and private information.  If the Panel declines to terminate Coinmint's claims now, then it should at least put Coinmint on notice: any further

---

[1] At this time, Katena has not submitted a supporting affidavit as it seemed more efficient to allow the Panel to determine what sanctions it wants to apply first, but Katena will submit whatever documentation the Panel deems appropriate should it include attorneys' fees.

violation of the SPO or Order No. 20 (or any other Order of the Panel related to confidentiality) will result in immediate termination of Coinmint's claims. If the Panel issues terminating sanctions, we ask that Coinmint and Gordon Rees both be ordered to destroy all copies of all documents in its possession and those of others to whom it allowed access and to certify under penalty of perjury to the Panel that it has done so. We also ask for a fixed fine for any future publication of Katena's Protected Material: $50,000 each time that Coinmint quotes or uses anywhere else—including, but not limited to the California action that has now been removed to federal court ("Federal Action") any Confidential document; and $1 Million each time Coinmint publishes an Attorneys' Eyes Only document disclosing Katena's trade secrets or proprietary technical information, with this Arbitration Panel retaining jurisdiction to make that determination and enforce the award.

Coinmint's actions are unprecedented and Coinmint is unrepentant. The sanction must match.

## FACTUAL BACKGROUND

### A.    Coinmint's actions are intentional.

The Panel already knows Coinmint used Katena's Protected Material marked as "Confidential" under the SPO ("Confidential Information") to initiate what is now the Federal Action, has read Coinmint's defiant response, and remarked on both in determining that Coinmint violated the SPO by using documents produced in this Arbitration for purposes beyond the Arbitration and by publicly displaying Katena's Confidential Information in the Federal Action. Order No. 18. The Panel surely noted that, in Coinmint's response brief, it argued that Order No. 6, the SPO, was entered for the purpose of perpetrating a fraud against Coinmint.

The Panel also recalls that, after Coinmint filed the Complaint on the eve of the depositions of Katena's witnesses and before the Panel could rule on Katena's motion for sanctions, the Panel issued Order No. 16.  "Because of the serious nature of the issues raised" by

Katena's sanctions motions, the Panel ordered that, "EFFECTIVE IMMEDIATELY," no deposition transcripts could be "delivered to the parties or their counsel" until further notice. The Panel further ordered, again "EFFECTIVE IMMEDIATELY," that Coinmint was "not to use, publish, excerpt, quote, summarize or in any way disseminate, publish or share any part of any such deposition transcript in any proceeding or setting other than this arbitration, including but not limited to" the Federal Action. The Panel's warning could not have been clearer. After the sanctions motion was briefed and the Panel issued Order No. 18, it also issued Order No. 20 which allowed for deposition transcripts to be released but ordered the parties "*not* to use, copy, excerpt, or quote from any deposition or its exhibits" during the 30-day period following receipt of the transcript. With Coinmint having been bluntly called out for its violations and with the parties reminded of their obligations with respect to the depositions, no doubt the Panel assumed that the violations would stop, and we could all focus on getting to the evidentiary hearing.

The violations did not stop. On March 20, 2023, Coinmint responded to Sagar Reddy's Motion to Stay the Federal Action until this Arbitration concluded. Coinmint's brief is attached as Exhibit A; the Declaration of Kevin Liu attaching Katena's confidential documents is attached as Exhibit B. Attached to Coinmint's opposition are 28 exhibits, 23 of which were produced by Katena in the Arbitration and marked as Confidential. Nine of the exhibits were previously attached to the State Court Complaint and represent repeat violations of the SPO. Fourteen of the exhibits were not published previously and represent fresh violations. Although Coinmint provisionally filed the brief and exhibits "under seal," it bluntly asked the Court to deny Katena's motion to maintain the seal: "Coinmint contends that these information and records to not contain any information that is even arguably confidential, proprietary or trade secret, and do not otherwise qualify for protection from disclosure." Coinmint's Administrative Motion to Seal is

attached as Exhibit C.  Coinmint could not have been clearer that it intends for the 23

Confidential documents and transcript excerpts to be filed publicly to the federal court's docket:

> 1   Coinmint seeks to file the Opposition Brief and Liu Declaration, including exhibits attached
>
> 2   thereto, under seal because Katena contends that the records and information contained therein
>
> 3   are confidential, protected from disclosure, and cannot be used in this litigation.  Coinmint
>
> 4   disagrees and it is Katena's burden to show good cause for sealing any portion of these
>
> 5   documents by submitting a statement and/or declaration within seven days of this motion. See
>
> 6   Civ. L. R. 79-5(f)(3).
>
> 7      Coinmint is filing the above materials under seal in a good faith effort to protect these
>
> 8   materials from public disclosure until a determination is made regarding Katena's assertion of
>
> 9   confidentiality over these materials.  However, Coinmint believes that all of the designated
>
> 10   material being submitted under seal does not satisfy the requirements for sealing. The Ninth

Coinmint had no justification whatsoever for attaching 23 Confidential Documents of

Katena to its federal court brief. Coinmint used the first 17 pages of its brief to smear Katena—a

non-party in the case who was not seeking any relief. None of Coinmint's narrative (largely a

rehash of the Motion to Attach filed in this Arbitration) was germane to the legal issue of

whether the allegations in the Federal Action contained an issue "referrable" to Arbitration.

There's no reason for a court to consider evidence on such a motion, which is why Coinmint did

not cite to any of Katena's Confidential Documents in the portion of its brief geared at legal

analysis. The motion page limit was just a vehicle for Coinmint to funnel Katena's confidential

internal documents out to journalists and investors even after the Panel noted that such conduct

violated the SPO. This was no inadvertent breach; Coinmint deliberately publicized Katena's

Confidential Documents, and for no other reason than to harm Katena's reputation.

The violations did not stop. Coinmint also purported to file a First Amended Complaint,

which again quotes and paraphrases Katena's Confidential Documents produced in this

Arbitration, and attached 14 exhibits to it, all of which were produced in this Arbitration and

marked as Confidential. Another violation. Coinmint's purported First Amended Complaint is attached as Exhibit D.

It's all egregious, but particularly telling as to Coinmint's intentionality and status as a bad-faith actor are Coinmint's actions in regard to attaching the deposition testimony of Mr. Monzon and Mr. Gao to its response to Mr. Reddy's Motion to Stay:

- Paragraph 5.1(b) of the SPO provides that deposition transcripts "shall automatically be considered Protected Material for a period of thirty (30) calendar days following the delivery of the transcript."

- Mr. Monzon was deposed on February 7, 2023.

- Mr. Gao was deposed on February 8, 2023.

- On February 8, 2023, after Coinmint violated the SPO, the Panel issued Order No. 16 prohibiting the parties from receiving deposition transcripts until further notice.

- On February 13, 2023, the Panel issued Order No. 18 finding that Coinmint violated the SPO and remarking on Coinmint's defiance.

- On February 14, 2023, the Panel issued Order No. 20 allowing for the release of deposition transcripts and "cautioning" Coinmint and its counsel that they may not "use, copy, excerpt, or quote from any deposition or its exhibits unless and until the 30-day period following delivery of [the] transcript has lapsed without either party designating" it confidential.

- Katena received Mr. Gao's deposition transcript on February 21, 2023, making its designations due on March 23, 2023.

- Katena received Mr. Monzon's deposition transcript on March 8, 2023, making its designations due on April 7, 2023

- Not believing that Coinmint would honor the Orders, Katena emailed Coinmint on March 16, 2023, stating the dates that it received the transcripts, the dates designations were due (and would be provided) and reminding Coinmint of Order No. 20. A copy of that email is attached as Exhibit E.

The violations still did not stop. On March 20, Coinmint quoted from and paraphrased the Gao Deposition Transcript and attached excerpts of both deposition transcripts as exhibits to its opposition brief filed in the Federal Action. Coinmint distorted Mr. Gao's testimony and smeared Katena by claiming to Katena's potential customers and investors that "Katena has not even finished designing—much less manufacturing—the computer chip that would serve as the

brain of the mining rigs." Ex. A at 9. Is that true? No. Is it what Gao said? Of course not; he testified that Katena had transmitted a completed design of the chip to the foundry in early 2021. (Gao Tr. 65:6–70:2.) Does it have anything to do with Mr. Reddy's motion to stay? Also no. So why is it in there? To smear Katena and try to force a conclusion to this dispute through public pressure because Coinmint knows that Katena is a start-up and that potential investors would likely read this material. And all of this was after the Panel's warnings and other comments in Order Nos. 16, 18, 20, and 23.

Coinmint's actions were intentional. There is no disputing it. They did it. They meant to do it. They have expressed no remorse. They do not intend to stop. Having used the SPO to get the Protected Material it wanted, Coinmint no longer finds the SPO convenient and thus claims it to be illegal, void, and not binding and intends to continue violating it.

**B.     Coinmint is now challenging the validity of the Arbitration Agreement (and thus the authority of this Panel).**

When the Parties brought their dispute about Sagar Reddy's deposition to the Panel, Katena expressed concern that Coinmint would ask him about Katena's sensitive trade secrets and then make that information public. Foreshadowing things to come, Coinmint asserted that it "may well be that" the "use" of Katena's confidential discovery materials outside of this Arbitration "is ultimately permitted." (2/22 K. Liu email to Panel, attached as Exhibit F.)

Since then, we have seen at least two strategies by Coinmint to invalidate the SPO and thus attempt to permit Coinmint's use of Katena's Confidential Documents outside of this arbitration. First, Coinmint has tried to "talk over" the reality that the SPO explicitly protects "confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending the Action may be warranted." Order No. 6 at ¶ 1. Instead, Coinmint has tried to insert the Ninth Circuit standard to *seal* documents, which (according to Coinmint) limits "confidentiality" to proprietary information or trade secrets. That's simply not what the parties negotiated or what the Panel

ordered, and federal court—with its responsibility to weigh the right of the public to access court documents—is a much different forum than private arbitration.

More startling is Coinmint's recent argument to the federal court that it should invalidate the arbitration agreement that forms the basis of the Panel's authority. Specifically, in its opposition to Reddy's Motion to Stay, Coinmint argued that there is no "valid arbitration agreement between Coinmint and Katena." Ex. A. at p. 5. Stunning. Of course, Coinmint is wrong legally. But Coinmint's willingness to make the argument shows the magnitude of Coinmint's contempt. Coinmint told the federal court that it only recently learned the basis for its supposed fraud claim against Katena:

26
27
28

> [1] As Reddy notes in his motion, Coinmint instituted arbitration against Katena pursuant to the arbitration clause in the contract; but the arbitration was commenced in April of 2022 – many months before Katena produced in discovery in that arbitration the above-referenced documents demonstrating the fraudulent inducement of the contract.

Not true.  This Panel saw the discussion between Katena and Coinmint about Maloney and Katena's interviews after Maloney quit—whatever "fraud" Coinmint wants to claim, it knew about in 2021. This Panel also knows that Coinmint included a Fraudulent Inducement claim in its Original Arbitration Demand, which it filed with the AAA in April 2022 because Coinmint chose to invoke the arbitration agreement.  And now Coinmint tells the Federal court that it just learned about claims it has been pursuing for over a year? It's running the same play in federal court about the Panel that it ran with this Panel about Katena—agreeing to a contract (this time, the SPO), invoking its protections, breaching the contract, and then claiming the contract was never enforceable to begin with. Coinmint cannot be trusted to abide by any contract that it signs.

## ARGUMENT

As the Panel emphasized in Order No. 18, "[t]he violation of a protective order—especially one issued pursuant to parties' stipulation—is a rare occurrence in both arbitration and court proceedings." Order No. 18 ¶ 5. That uniqueness is elevated here as Coinmint argues in response that the agreement it negotiated is unenforceable. Did Coinmint ever intend to honor it?

Given Coinmint's repeated violations, even after Order No. 18, and Coinmint's frontal challenge to the Panel's authority, it seems painfully clear that the answer is no. And it puts Katena in a grossly unfair position. Katena's Confidential Information has been filed to the public docket in a court case that Katena is not even a part of. We're being tried in the court of public opinion without the ability to respond because we're honoring the SPO. The false narrative that Coinmint is peddling is particularly damaging given that Katena is a start-up company that is reliant on investor money, which shows another level of intentionality by Coinmint that should be addressed.

Given Coinmint's intentional violation of the SPO, its repeated violations after multiple warnings by the Panel, its lack of remorse for its actions, its open defiance of the SPO, its claims that the SPO is now unenforceable, its refusal to draft a new SPO that would be binding on Gordon Rees, and its attempts to invalidate this Panel's authority by challenging the arbitration clause itself under false pretenses, there is only one sanction that fits: terminating sanctions. The only way the Panel can address the harm that Coinmint has done is to terminate Coinmint's claims, force it to pay a monetary sanction, and order it to shred all Confidential Information or be subject to a further, steeper monetary sanction. The Panel clearly has the authority under the AAA Rules as confirmed by numerous courts and arbitrators to issue both terminating sanctions and monetary sanctions against Coinmint.

## I.    The AAA Rules broadly authorize the Panel to award sanctions against Coinmint for its egregious violation of the SPO.

First, the AAA allows for the Panel to police its own orders and to issue sanctions, including terminating sanctions, as appropriate. As set forth in Katena's Supplemental Brief dated February 9, 2023 (the "Supplemental Brief"), the AAA Rules provide at least three procedural avenues authorizing the Panel's ability to sanction Coinmint as the Panel deems fit. And as detailed below, not only have other arbitration panels employed these tools in issuing terminating and monetary sanctions, but courts have confirmed those sanctions for much less egregious behavior.

*First*, AAA Rule R-23 ("Enforcement Powers of the Arbitrator") grants the Panel "the authority to issue any orders necessary to enforce the provisions of Rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation . . . (d) in the cases of willful non-compliance with any order issued by the arbitrator . . . making special allocations of costs or an interim award of costs arising from such non-compliance; and (e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law."

*Second*, AAA Rule R-37 ("Interim Measures") re-emphasizes the Panel's authority to take "whatever interim measures [the Arbitrators] deem necessary" during the pendency of the arbitration.

*And finally*, AAA Rule R-58 ("Sanctions") specifically authorizes the Panel to "order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator."

These three rules emphasize the Panel's authority to enter whatever relief the Panel deems necessary or appropriate against the parties before it. This is consistent with the Panel's reasoning in Order No. 18; it makes sense that arbitrators be empowered to order appropriate relief and that misconduct such as Coinmint's violation of the SPO not be ignored. "Otherwise, of what moment or significance is Order No. 6 for purposes of facilitating the production of confidential materials that might be relevant to the parties' claims, counterclaims, and affirmative defenses in this arbitration, and protecting such materials which both parties agreed to do, without expensive and time-consuming discovery disputes?" Order No. 18 ¶ 5.

## II.   The Panel should award terminating sanctions against Coinmint.

The law is clear: the Panel may issue terminating sanctions due to Coinmint's intentional and repeated misconduct under the AAA Rules <u>and the Courts will uphold such a decision</u>.[2]

---

[2] AAA Rule R-58(a) states that "[t]he arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator." The rule clarifies that "[t]he arbitrator may not enter a default award as a

A. **Arbitrators issue terminating sanctions in instances where a party fails to comply with an order.**

Arbitrators issue terminating sanctions when a party repeatedly and intentionally violates an Arbitrator(s) order. *See, e.g.*, *[CLAIMANT] v. [RESPONDENT] (Depository institutions) AND[RESPONDENT 2]*, 2018 WL 6069211 (AAA Sept. 26, 2018) (striking Claimant's claim and answer and affirmative defenses to Respondent's counterclaim because "Claimant and her counsel exhibited a lack of respect for the Arbitrator's orders and had not treated them with the seriousness inherent in the adversarial proceeding"); *IN THE MATTER OF ARBITRATION BETWEEN [CLAIMANT], Claimant, [RESPONDENT] (HEALTH SERVICES), Respondent.*, 2014 WL 8709759 (AAA Dec. 3, 2014) (issuing terminating sanctions with prejudice of Claimant's claims in part due to Claimant's violation of the arbitrator's order); *[CLAIMANT], Claimant v. [RESPONDENT 1] (NOT ELSEWHERE CLASSIFIED)*, 2014 WL 7895669 (AAA Nov. 13, 2014) (ordering terminating sanctions due to claimant's spoliation of evidence); *[CLAIMANT], Claimant v. [RESPONDENT] (Printing, Publishing & Allied Indus.)*, 2014 WL 4418592, at *1–3 (AAA May 14, 2014) (ordering terminating sanctions because of claimant's repeated refusal to participate in discovery and to abide by other orders of the arbitrator); *[CLAIMANT], Claimant, v. [RESPONDENT] (Educational Services)*, 2012 WL 2068694, at *2 (AAA May 1, 2012) (ordering terminating sanctions because of plaintiff's failure to abide by orders of the arbitrator and failing to make required filings).

Particularly illustrative is the case *IN THE MATTER OF ARBITRATION BETWEEN [CLAIMANT], Claimant and [RESPONDENT] (Real Estate), Respondents*, 2012 WL 363639

---

sanction," and, to be clear, Katena is not seeking a default. Katena intends to move forward and prosecute its counterclaims. As such, Katena requests that the Panel strike Coinmint's affirmative claims.  The court in *Willick v. Napoli Bern Ripka & Assocs., LLP*, No. 2-15-CV-00652(ABEX), 2018 WL 6443080 (C.D. Cal. Sept. 13, 2018) specifically examined and rejected a defendant's argument that AAA Rule 58(a) prohibited arbitrators from issuing terminating sanctions and affirmed an arbitrator's award of terminating sanctions: "by allowing an arbitrator to impose an 'adverse determination of an issue or issues' as a sanction, AAA Rule 58(a) permits determinative sanctions. But in proscribing 'a default award as a sanction,' AAA Rule 58(a) prevents arbitrators from automatically, without proof, providing the non-defaulting party an award. Instead of immediately granting a default arbitration award, the arbitrator must consider 'evidence and legal argument prior to making ... an award.'"  2018 WL 6443080 at *3.

(AAA Jan. 24, 2022). In that case, the Arbitrator dismissed a Claimant's claims due to the Claimant's "repeated violations of the Arbitrator's rulings in [the] Arbitration with regard to <u>confidentiality</u>." *Id.* at *1 (emphasis added). Claimant's counsel "[took] the position in [the] Arbitration that he is entitled to use testimony and evidence from this Arbitration in other litigation . . . and using it 'in any other proceeding' without limitation.'" *Id.* at *3. Prior to the hearing, the Arbitrator demanded that Claimant's counsel represent that he would maintain the confidentiality of the hearing transcript and documents, and counsel made an empty promise to do so. *Id.* at *4. But he almost immediately thereafter filed a motion in a case pending in federal court in Massachusetts that "summarized testimony and evidence given in the Arbitration." *Id.* The Arbitrator sanctioned Claimant by dismissing its claims <u>with prejudice</u>. In doing so, the Arbitrator explained that "[m]any well-respected arbitrators have dismissed claimants' claims where the claimant him/herself, or claimant's counsel has refused to comply with the arbitrator's orders, or engaged in obstreperous conduct . . ." *Id.* at *10. The Arbitrator found that a lesser sanction may have sufficed in a case in which "counsel apologized for their actions and agreed to comply with court orders going forward," but that Claimant has "repeatedly insisted that the Arbitrator is <u>mistaken</u> or <u>wrong</u>" and there was "no indication here that [CLAIMANT'S] counsel will comply with this Arbitrator's orders in the future." *Id.* at *11. The Arbitrator therefore concluded: "repeated public and private disclosure of information and documents concerning this Arbitration proceeding, demonstrate a deliberate attempt to interfere with the administration of justice in this Arbitration. Dismissal of this case due to [Claimant's counsel's] noncompliance with the Arbitrator's orders is the appropriate sanction." *Id.* at *11.

That is this case. The violations will not stop. Coinmint filed the deposition excerpts AFTER Orders No. 16, 18, 20, and 23. Coinmint has told the federal court that it doesn't want the documents sealed. Coinmint has asked that court to invalidate the Arbitration Agreement. Coinmint doesn't care. It has never apologized, and the Panel need only see how Coinmint acted with respect to the display of the deposition testimony to know that any apology or promise to behave in the future is hollow. Coinmint's discovery abuses and recalcitrant disregard for this

Panel and its orders are every bit as bad as the circumstances that other arbitrators have found warrant terminating sanctions.

### B. Courts across the country have confirmed an arbitrators' ability to issue terminating sanctions.

There is no question that this Panel has the authority to issue terminating sanctions—Courts across the country have confirmed arbitration awards that include such sanctions. A particularly apt example is *Willick v. Napoli Bern Ripka & Assocs., LLP*, No. 2-15-CV-00652(ABEX), 2018 WL 6443080 (C.D. Cal. Sept. 13, 2018). In *Willick*, the district court was presented the issue of whether an arbitrator had exceeded his/her authority by issuing terminating sanctions based on a respondent's failure to comply with an arbitrator's order. Specifically, the arbitrator had ordered respondent to participate in (and pay for) an accounting, and respondent refused. *Id.* at *1. After the Respondent failed to comply with the accounting, the arbitrator determined that the respondent's conduct "demonstrate[d] a level of (continuing) obstruction so egregious as to warrant (if not *require*) the imposition of terminating sanctions." *Id.* at *2 (emphasis in the original) (internal citations omitted). The arbitrator then struck the respondent's answer and scheduled a "prove-up hearing" during which the claimant had the opportunity to prove his claims. *Id.* The *Willick* court confirmed that the arbitrator had authority to issue terminating sanctions and rejected the respondent's argument that the terminating sanctions were outside of the arbitrators' authority. *Id.* at *3. The *Willick* court specifically determined that the terminating sanctions were permitted under the AAA Commercial Rules, explaining that the arbitrator's conduct "falls within the scope of the power granted to arbitrators under AAA Rule 58." *Willick*, at *3. As such, the *Willick* court confirmed the arbitration award which included an affirmative award for the claimant (as established at the prove-up hearing) and terminating respondent's answer and defenses.

Similarly, the court in *First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co., Inc.*, 939 F. Supp. 1559 (S.D. Fla. 1996) confirmed an arbitrator's authority to dismiss a claim with prejudice due to the claimant's discovery misconduct—the claimant had improperly

burdened third party by serving purported arbitral subpoenas that had not been authorized by the arbitrator. *Id.* at 1562. The court emphasized the importance of terminating sanctions to ensuring the integrity of the arbitral forum: "[I]f arbitrators are not permitted to impose the ultimate sanction of dismissal on plaintiffs who flagrantly disregard rules and procedures put in place to control discovery, arbitrators will not be able to assert the power necessary to properly adjudicate claims." *Id.* at 1565. The Court further explained that "[a]llowing parties … to abuse the [arbitration] process not only serves to undermine the principles of arbitration, it will ultimately diminish the integrity of any court in which information obtained through an abuse of arbitration is used." *Id.* Coinmint's conduct is substantially more egregious; dismissal is certainly warranted. *See also, e.g.*, *AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs.*, 627 F. Supp. 2d 85, 96 (E.D.N.Y. 2008) (confirming arbitration award and rejecting argument that arbitrator did not have authority to dismiss counterclaim due to defendant's destruction of evidence, explaining that dismissal of the counterclaim was within the arbitrator's broad authority to resolve "any dispute arising out of or related to this Agreement"); *Mir v. State Farm Mutual Automobile Ins. Co.*, 2020 WL 1265417 (C.D. Ill. Mar. 16, 2020) (giving res judicata effect to a terminating sanction in an arbitration, explaining that "[d]ismissals pursuant to a terminating sanction for violation of discovery orders are indeed res judicata.")

### C.     Terminating sanctions are appropriate in this circumstance.

As in the cases cited above, terminating sanctions are warranted here to protect the integrity of the arbitral forum. Coinmint is flagrantly violating the SPO. Its goal now in obtaining documents and information is not to use them in this Arbitration but to publicize them and pursue Katena in the court of public opinion. What is particularly telling is the exchange of

correspondence related to Coinmint's (completely improper) demand that Katena de-designate all of its documents:

> Fletcher, you complain that we are trying to "hide" documents by marking them as confidential. From who? The Panel will see all admissible evidence at the hearing, whether it's marked Confidential, Attorneys' Eyes Only, or not at all. What you mean is that the Stipulated Protective Order (SPO) is doing what it is supposed to—keeping you and Coinmint from disclosing documents protected under the SPO to the public even though you agreed as part of the negotiations for the SPO to not use discovery in this matter for any other purpose and to keep such material protected. You can't use Katena's confidential discovery materials to sue other people in other forums or to drag Katena's name through the mud, which is your real goal.

(Ex. G at 1.) Of course, Coinmint did not respond. Coinmint is defiant and adamant that it will continue. Just look at how Coinmint treated the deposition transcripts of Messrs. Gao and Monzon. Coinmint was warned by the Panel. Coinmint promised the Panel it would abide. Coinmint was told by email the exact date Katena received the transcripts, when the designations would be forthcoming, and given a reminder about the disclosure of any information before then. What did Coinmint do? And if the Panel needed further proof of Coinmint's intent, look to how Coinmint has responded to Order No. 23 wherein the Panel required Coinmint to agree to a new stipulated protective order "between Coinmint, Katena and their attorneys … in a form satisfactory to the Panel." The Panel's point was clear: if Coinmint wanted to continue to participate in discovery, Coinmint and its counsel had to propose something that it would not claim was "void." Did they? No. To this day, Coinmint has not proposed the form of any such new protective order, and we all know why: because Coinmint refuses to be bound by a SPO, much less one that would explicitly make Gordon Rees and its partners responsible. Coinmint is misusing the limited discovery in this arbitration for the purpose of prosecuting the Federal Action against other parties, and now Coinmint is even using the Federal Action to try and invalidate the arbitration agreement itself and (again) directly challenging this Panel's authority. Coinmint is not interested in complying with any further order of the Panel related to the SPO, isn't really interested in this forum resolving the dispute, and is betting that whatever sanction the Panel enters will not be severe enough to matter to Coinmint.

### III.   Katena also needs the Panel to award monetary sanctions for Coinmint's willful violation of the SPO.

Terminating sanctions are necessary but not sufficient—they cannot make Katena whole for the reputational harm caused by Coinmint's publication and mischaracterization of Katena's confidential documents. Given the damage that Coinmint's intentional actions have caused, Katena is also entitled to monetary sanctions. Monetary sanctions are authorized by the AAA Rules and their use in this and similar situations have been confirmed by Courts and arbitrators, including the imposition of attorney fees and/or arbitration costs.

### A.   The Panel should issue a monetary sanction for each Confidential Document used and for each instance in which it is used.

Courts across the country have held that arbitrators may issue appropriate monetary sanctions for abuse of the arbitration process. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990) (citing *Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 246 (E.D.N.Y.1973)); *Interbill, Inc. v. Atl.-Pac. Processing Sys. NV Corp.*, 2022 WL 17833429 (D. Nev. Dec. 21, 2022) ("I decline to vacate the arbitrator's award of attorneys' fees and costs because she did not exceed her authority in awarding them."); *Neurosigma, Inc. v. De Salles*, No. CV-13-7973(DMG)(PJWX), 2016 WL 10654051 (C.D. Cal. May 12, 2016) (upholding arbitrators' award of penalties for failure to comply with interim decision, and citing to the AAA Rules in determining that an arbitration panel has the power to award sanctions "where a party fails to comply . . . with an order of the arbitrator"); *Interchem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340 (S.D.N.Y. 2005) (confirming in part arbitration award that sanctioned a party for faulty document production); *Salowitz Organization v. Traditional Industries*, 219 Cal. App. 3d 797, 807 (1990) (affirming monetary sanction against defendant who failed to attend arbitration hearing).

The case law supports Katena's request that the Panel sanction Coinmint in the amount of $50,000 per violation of the SPO. Courts have confirmed arbitration awards that included substantial monetary sanctions for conduct that was less egregious than Coinmint's continuous and willful violation of an agreed-upon protective order. For example, the court in *Hamstein*

*Cumberland Music Grp. v. Williams*, 532 F. App'x 538 (5th Cir. 2013) reversed the district court's refusal to confirm an arbitration award which included $500,000 in sanctions—nearly as much as the claimed damages of the plaintiff in that case—for failure to comply with the arbitrators' order to produce all documents by a date certain. The Fifth Circuit expressly determined that the arbitrators did not exceed their authority under the FAA in issuing the sanction and reaffirmed that "arbitrators enjoy inherent authority to police the arbitration process and fashion appropriate remedies to effectuate this authority." *Id.* at 543. Of course the Panel does.

The court in *Superadio Ltd. P'ship v. Winstar Radio Prods., LLC*, 446 Mass. 330, 339 (2006) also upheld a AAA arbitration panel's monetary sanction in the hundreds of thousands of dollars range due to a party's noncompliance with discovery orders. In *Superadio*, the court affirmed a sanction of $1,000 per day (totaling $271,000) for claimant's willful refusal to comply with an order compelling discovery, reasoning, "[t]o give arbitrators control over discovery and discovery disputes without the authority to impose monetary sanctions for discovery violations and noncompliance with appropriate discovery orders, would impede the arbitrators' ability to adjudicate claims effectively in the manner contemplated by the arbitration process." *Id.* at 339. The court held that the arbitrators' authority to impose the $271,000 in sanctions derived from "the parties' agreement, which contains a broad arbitration provision, and from the AAA rules which the agreement incorporates." *Id.* at 337. The Arbitration Clause here includes the same broad language as the clause in *Superadio*: it states that "any dispute, controversy, difference or claim arising out of or relating to this Agreement" is subject to arbitration, and that the arbitration be "administered by [the] American Arbitration Association under the rules for commercial arbitration." *Compare* SPA § 19.2 *with Superadio*, 446 Mass. at 331 (arbitration clause stating "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the American Arbitration Association [AAA]") (internal citations omitted).

Sanctioning Coinmint for each time it uses Confidential Information is appropriate as is Katena's proposed monetary amount of $50,000 for documents that are marked as "Confidential". Coinmint is intentionally violating the SPO and doing so to obtain unfair advantages. If the Panel were to simply sanction Coinmint the first time it used a Confidential Document, Coinmint would simply choose which ones it wanted to "pay" to disclose, which is no remedy at all.

Here is what a "per document; per violation" sanction would look like:

| Event Violating SPO | Quantity of "Protected Material" Coinmint "Used" | Multiplier | Total |
|---|---|---|---|
| Filing of the State Court Complaint | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on James DeNaut | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on Michael Maloney | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on Frank Kinney | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on Robert Bleck | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on DxCorr | 14 | x $50,000 | $700,000 |
| Service of the State Court Complaint on Woman with similar name to Sagar Reddy | 14 | x $50,000 | $700,000 |
| Filing a First Amended Complaint in Federal Court | 14 | x $50,000 | $700,000 |
| Coinmint's Response to Reddy's Motion to Stay | 23 | X $50,000 | $1,150,000 |

That comes to $6,750,000. No doubt Coinmint will scream about the amount, but that should fall flat as the amount is a direct result of the number of times that Coinmint has violated the SPO. The grand total simply shows how prolific Coinmint has been in flouting the SPO.

### B. The Panel should also award attorneys' fees and arbitration costs for Coinmint's misconduct.

Courts have also made it clear that arbitrators are authorized to impose penalties in the form of attorneys' fees or costs as sanctions for a party's violation of arbitration orders.

In *Todd Shipyard Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1064 (9th Cir. 1991) the Ninth Circuit held that arbitrators may award attorneys' fees where a party has acted in bad faith, explaining that "Federal law takes an expansive view of arbitrator authority to decide disputes and fashion remedies." Similarly, the court in *ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 88, 85–87 (2d Cir. 2009) upheld a $3.5 million award of costs and attorney's fees because the party against which sanctions were imposed acted in bad faith. Courts across the country have followed suit and confirmed arbitration awards which include attorneys' fees and/or costs. *See Marshall v. Duke*, 114 F.3d 188, 189-90 (11th Cir. 1997) (confirming award of attorneys' fees); *Neurosigma, Inc. v. De Salles*, No. CV-13-7973(DMG)(PJWX), 2016 WL 10654051 (C.D. Cal. May 12, 2016) (upholding arbitrators' award of penalties for failure to comply with interim decision, and citing to the AAA Rules in determining that an arbitration panel has the power to grant sanctions "where a party fails to comply ... with an order of the arbitrator."); *Konkar Maritime Enters., S.A. v. Compagnie Belge D'Affretement*, 668 F. Supp. 267 (S.D.N.Y. 1987) (affirming award of the arbitration fees against respondent due to failure to comply with arbitration order); *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238 (S.D.N.Y.2000), *reconsideration denied*, 132 F. Supp. 2d 126 (S.D.N.Y.2000) (confirming arbitration award which entitled defendant to half its expenses, including attorney fees, as a sanction for plaintiff's conduct).

Coinmint has unquestionably engaged in the sort of bad faith conduct that courts have found warrants the award of attorneys' fees. In *Todd Shipyard*, the court determined that a respondent in an arbitration had acted in bad faith which warranted the arbitrators' award of attorneys' fees to claimant. The respondent's "bad faith conduct" included the respondent challenging the arbitration panel's authority to consider extrinsic evidence and then subsequently filing suit in New Jersey federal district court in an attempt to circumvent the arbitration process, as well as the respondent's refusal to attend the arbitration hearings in San Francisco, and

objection to the lifting of the stay of bankruptcy. *See Todd Shipyards Corp. v. Cunard Line Ltd.*, 735 F. Supp. 1463, 1465, 1468 (N.D. Cal. 1989), *aff'd*, 943 F.2d 1056 (9th Cir. 1991). Coinmint's actions are far more egregious. Coinmint has willfully violated the SPO that it negotiated, claimed that it is void, publicized confidential information procured under the SPO, injured Katena's reputation, and caused Katena to incur additional attorneys' fees merely in responding to Coinmint's breaches and bad faith conduct.

### IV.   The Panel may award sanctions against Coinmint's counsel, but Katena is not seeking that at this time.

The Panel asked Katena to address whether it was seeking sanctions against Coinmint's counsel.  Katena does not do so at this time as Gordon Rees did not sign the SPO and is strategically avoiding the Panel's instruction in Order No. 23. We note, however, that some courts have held that arbitrators may directly sanction counsel for misconduct that occurred in the course of an arbitration hearing. For example, the court in *Bak v. MCL Financial Group, Inc.*, 170 Cal. App. 4th 1118, 1126 (4th Dist. 2009) upheld arbitrators' sanctioning of defense counsel for copying documents which plaintiffs' counsel had inadvertently produced and which plaintiffs' counsel claimed were privileged. The court reasoned that "by voluntarily appearing for defendants in the arbitration proceedings, which included conducting prehearing discovery, and in responding to plaintiffs' claim some of the documents they produced were privileged material, [the attorney] subjected himself to the jurisdiction of the arbitration panel and was subject to its rulings." Similarly, the court in *Polin v. Kellwood Co.*, 103 F.Supp.2d 238, 248 (S.D.N.Y.2000) confirmed a final arbitration award which included sanctions directed at counsel. The *Polin* court concluded that the arbitrators were entitled to sanction the lawyer for making false representations to the arbitrators regarding a witnesses' testimony. *Id.* at 248-49.

Coinmint's misconduct is just as severe as that in *Bak* and *Polin*. Coinmint has repeatedly misled the Panel by, among other things, signing a Stipulated Protective Order for the purpose of obtaining discovery that it always intended to use outside the arbitration. Coinmint's attempt to avoid the production of Mr. Soniat's damaging text messages by having its lawyer falsely tell the

Panel that "it is not the custom of either Coinmint or Soniat to use text messages for substantive communications" when Mr. Soniat testifying to the opposite just days later speaks volumes. Thus, although Katena does not seek to impose sanctions against Coinmint's counsel at this time, the Panel would have grounds to do so.

**CONCLUSION**

Intentional. Has anyone ever seen such an intentional disregard for a Stipulated Protective Order by the party that negotiated it? Coinmint has made it very clear that it no longer cares about this arbitral forum as the place to decide this dispute. It has filed the Federal Action suing every individual that was discussed in this case. And Coinmint has asked the federal court to invalidate the arbitration agreement. Coinmint has done all of that while openly disregarding the SPO, misrepresenting what is protected by the SPO, and openly defying multiple orders by the Panel. That warrants terminating sanctions and the monetary sanctions sought herein.

Dated: March 27, 2023

Respectfully submitted,

PERKINS COIE LLP

By: */s/ John R. Hardin*
    John R. Hardin
    Jacob J. Taber
    500 N. Akard Street, Suite 3300
    Dallas, Texas 75201
    Tel: +1.214.965.7700
    Fax: +1.214.965.7799
    JohnHardin@perkinscoie.com
    JTaber@perkinscoie.com