# EXHIBIT 7

**AMERICAN ARBITRATION ASSOCIATION**

| | | |
|---|---|---|
| COINMINT, LLC, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COINMINT'S OPPOSITION TO** |
| KATENA COMPUTING TECHNOLOGIES, | ) | **KATENA'S MOTION FOR SANCTIONS** |
| INC., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## I.    <u>INTRODUCTION</u>

It is critically important that the Panel step back and consider the "big picture" facts – the very facts Katena is desperately attempting to avoid:

***1) Katena blatantly defrauded Coinmint out of $23.5 million.***  You don't have to take Coinmint's word for that.   You need only credit the very words that Katena's principals themselves wrote to one another in their WhatsApp text messages:

- Monzon and Gao boasted to one another that they found "one of Sagar [Reddy]'s bitch engineers" (Robert Bleck) to issue an engineering report blessing Katena/DxCorr and their claimed technology – a report that Coinmint owner Ashton Soniat required before paying any money to Katena.  *See* Declaration of Kevin Liu in Support of Coinmint's Administrative Motion to Consider Whether Another Party's Material Should be Sealed Pursuant to Civil Local Rule 79-5 in Support of Opposition to Reddy's Motion to Stay, attached hereto as Ex. A, at Ex. 8 thereto, pgs. KATENA 006616-19.

- Gao wrote to Monzon that he convinced Coinmint's then-CFO, Maloney, to lie to

1

Soniat and "just say that he found them [Bleck] himself." *Id.* Unbeknownst to Soniat, Bleck served on the Board of DxCorr and acted as a consultant to the company. But text messages exchanged between Monzon, Gao, and Reddy reveal that they altered the DxCorr website to remove the prior reference to Bleck as board member; and they had Bleck alter his LinkedIn profile to remove a similar reference contained therein. *See id.* at Ex. 5, pgs. KATENA 005949-51.

- When Reddy expressed he was "worried about people knowing about" the scheme to disguise Bleck's affiliation with DxCorr/Katena and misrepresent him as independent, Monzon assured him that "***it would all be confidential.***" *See id.* at Ex. 5, pgs. KATENA 006623-24 (emphasis added).

- Unbeknownst to Soniat, Reddy obtained a draft of Bleck's report and re-wrote it to his liking **before Bleck sent it to Coinmint**, boasting that "the Coinmint audience won't understand shit anyway." *See id.* at Ex. 19, pg. KATENA 005877.

- Maloney agreed to facilitate the scheme because Katena had dangled in front of him the prospect of employment at Katena, equity in Katena, and a large cash payment --- in other words, Katena offered Maloney bribes. This is all confirmed in the text messages exchanged between Monzon, Gao, and Reddy, in which they confirm that Maloney "will join us after he gets us this deal," and that "**his [job] interview is this deal**." *See id.* at Ex. 9, pgs. KATENA 008141-45 (emphasis added). They describe the contract as a "sweetheart deal" that is "**due to Maloney because of the deal in the works for him**." *See id.* at Ex. 13, pg. KATENA 006215 (emphasis added). They discuss paying Maloney $500,000.00 disguised as "a sales commission or whatever I guess. Unless we find a[nother] scheme." *See id.* at Ex. 23, pgs.

KATENA 006417-18.  They make clear that "**he won't join [Katena] without getting us wire, this is obvious and an eventuality**."  *See id.* at Ex. 17, pgs. KATENA 006647-48 (emphasis added).

- Relying on the false portrayal of Bleck's report as that of an independent expert, Soniat wired to Katena a total of $23.5 million over the course of several months.  By Katena's own admission, at least $100,000.00 of that money went straight into Gao's own pocket.  *See id.* at Ex. 22, pg. KATENA 006752.  What happened to the rest of Coinmint's money is anyone's guess at this point.   But we know for certain it was not used to manufacture bitcoin mining rigs as required by the contract:  Gao admitted in depo that, to this very day, **Katena has never manufactured a single mining rig** for Coinmint *or any other customer* for that matter.  *See id.* at Ex. 2. pg. 22:20-23.

*2) The documents Katena seeks to sanction Coinmint for disclosing are those quoted and cited above*.  *Katena marked those documents as "confidential," but the documents do not contain any proprietary business information*.  Further, none of the documents include any technical, scientific data or other proprietary information.  Thus, the documents are **not properly within the scope of the SPO**.  Rather, they establish a prima facie case of not only fraud *but also the crime of Commercial Bribery* under California Penal Code section 641.3.  That section provides that:

>  "Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, *and any person who offers* or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery." (emphasis added).

As will be explained in the argument section below, California Civil Code section 1668 prohibits

enforcement of the SPO (or any other contract) in a manner that tends to shield Katena or its co-conspirators from the consequences of their fraudulent and criminal conduct.

　　*3)  The only "disclosures" are ones that occurred in connection with the filing (under seal) and service of pleadings and motions in the companion civil action.*  Conspicuously, Katena does not contend that Coinmint distributed the documents to the press, provided them to Katena's competitors or its investors, posted them on the internet, or uploaded them to social media.  Katena complains only that Coinmint filed the documents (under seal) with the Court and served them on the litigants in that action (all of whom were either party to the communications set forth in the documents and/or are affiliates of Katena).  But, as will be explained below, federal law – including the First Amendment, the Noerr-Pennington Doctrine, FRCP 26, and other controlling authority – preclude punishing Coinmint for its protected activity of petitioning the courts for redress.

　　*4) Katena has not shown, and cannot possibly show, any injury to its legitimate interests by virtue of the fact that the documents were attached to the court pleadings.*  The documents Katena contends were wrongfully disclosed in the civil case will inevitably have to be produced in discovery in the civil action in any event.  In the civil action, Coinmint contends (and the evidence quoted above substantiates) that Katena conspired with Reddy/DxCorr, Bleck, and former Coinmint employees Maloney, DeNaut, and Kinney – all of whom are defendants in the civil action -- to defraud Coinmint.  The defendants in the civil action are not parties to the arbitration agreement between Coinmint and Katena.  Thus, Coinmint has no lawful choice but to pursue those defendants in civil court.  And there can be no doubt that the documents tending to show the fraudulent conspiracy will have to be produced via discovery and/or subpoena in the civil action.  Nor can there be any reasonable doubt that Gao and Monzon will be subpoenaed to

testify in that action.  For that, Katena has only itself to blame.  If it wished for all of its dirty deeds to remain within the ambit of arbitration, it should not have entered into a fraudulent conspiracy with third parties who are not signatories to the arbitration agreement.

For each of these reasons, and as explained more fully below, Coinmint respectfully submits that Katena's request for sanctions should be denied.  Alternatively, Coinmint respectfully requests that the decision on sanctions be deferred until either: 1) the Court decides whether the documents in question merit sealing; 2) the Court decides whether the documents in question must be produced in discovery/via subpoena in the civil case; and 3) the Panel decides whether the documents in question demonstrate that Katena conspired with the civil defendants to defraud Coinmint.  Any award of sanctions rendered prior to these critical decisions may well create fundamentally inconsistent rulings or bring the Panel into conflict with the Court.

Meanwhile, the SPO can and should be revised to make clear that its reach does not extend to disclosures made in the context of the civil litigation -- matters that are properly left to the Court to address.  In that way, the SPO can continue to safeguard against gratuitous disclosures to the press, business competitors, the internet, etc. without precluding disclosures that may be appropriate *or even required* in the context of the litigation[1] and thus avoid the potential of bringing the Panel into conflict with the Court.


## II.     LEGAL ARGUMENT

### 1.  Neither the SPO Nor the Law Supports Katena's Assertion That the Documents "Disclosed" by Coinmint Are Legitimately Confidential

Katena's entire argument in favor of draconian sanctions is founded on the unproven and

---

[1] FRCP 26, for example, imposes an affirmative obligation upon litigants to disclose and produce documents of which it is aware that it believes are relevant to the case.  Surely the Panel cannot sanction Coinmint for complying with its Rule 26 obligations or issue an order prohibiting it from doing so.

false premise that the documents Coinmint "disclosed" in the civil litigation are legitimately confidential. They are not. Conspicuously, Katena fails to point to any specific contents of those documents that it claims reveal technical, trade secret, or proprietary information. As explained in detail above, the only thing the documents reveal is evidence of fraudulent and criminal conduct. It is not surprising that Katena would prefer those documents never see the light of day. But that is a far cry from an assertion that the documents are legally protectable or that Coinmint engaged in sanctionable conduct by submitting them to the Court.

Arbitration is a matter of contract. Parties cannot be compelled to arbitrate other than under the terms, conditions and rules to which they contractually agreed. Coinmint agreed to arbitrate pursuant to the AAA Commercial Rules. As Coinmint explained in detail at pgs. 6-7 of its Reply Brief Re. Designation of Matters That Do Not Qualify As Confidential, the AAA Commercial Rules (unlike other AAA Rules, including for example the Employment Rules) do **not** provide that all documents and information adduced in the course of the arbitration are presumptively confidential. *Compare* AAA Employment Arbitration Rule 23 (arbitrator **shall** maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary) with AAA's Commercial Arbitration Rule 45 (the arbitrator **may** make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting **trade secrets and confidential information**) (emphasis added.).

Nor does the SPO impose such blanket, unqualified protections. As Katena likes to frequently remind the Panel, the SPO was heavily negotiated by sophisticated parties and their counsel. Katena could have negotiated for a requirement that all documents produced in the

arbitration, and all aspects of the proceedings, are protected against disclosure.  But it did not do

so.  Instead, it negotiated for (and the parties agreed to) a regime under which only the *pages* of

documents that contain legitimately protectable information may be protected  -- and even then,

only if the "owner" of the documents makes a proper, page-by-page identification of the

protectable material.  *See* SPO, at Paragraph 5 ("Designation in conformity with this Stipulated

Protective Order requires:  . . . For information in documentary form . . . that the Producing Party

affix the legend 'CONFIDENTIAL' or 'ATTORNEY EYE'S ONLY' *as appropriate to each*

*page that contains Protected Material*."  (SPO, ¶ 5.1(a) italics added.)

Katena did not comply with the SPO.  Instead, it simply affixed a blanket "Confidential"

designation to ***each and every one*** of the more than 8,000 pages of documents it produced.  The

vast majority of the auto-stamped pages do not contain any information that remotely qualifies

them for protection under the SPO.  Katena took essentially the same approach with the

deposition transcripts – designating as confidential every bit of testimony that was remotely

substantive and beyond mere formalities or introductory matters.  *See* Katena's Deposition

Designations, attached hereto as Ex. "B."  The case law makes clear that this is a sanctionable

abuse of the protective order process.  (*Humphreys v. Regents of University of California* (N.D.

Cal., Oct. 23, 2006, No. C04-03808 SIEDL) 2006 WL 3020902, at *2 ["rather than individually

reviewing the 18,162 pages of emails they produced for confidential information, defendants

marked everyone as confidential, effectively shifting the costs of assessing the confidentiality of

those documents to plaintiff."]; *Del Campo v. American Corrective Counseling Services, Inc*.

(N.D. Cal., Nov. 6, 2007, No. C-01-21151JWPVT) 2007 WL 3306496, at *4 ["ACCS' massive

overdesignation of documents warrants sanctions. ACCS' belated recognition that the

confidential designation of over 1,500 documents could not be supported does not render its

behavior substantially justified and does nothing to undermine the justification for sanctions. ACCS' actions in indiscriminately designating documents had the result of improperly shifting the cost of review of confidentiality to Plaintiffs. Sanctions are necessary to correct this unfair burden. Moreover, ACCS compounded its error by failing to meet and confer prior to the bringing of this motion."]; *THK America, Inc. v. NSK Co. Ltd.* (N.D. Ill. 1993) 157 F.R.D. 637, 647 ["***Defendants' overdesignations are the product of bad faith.*** Courts are too overburdened with heavy caseloads and backlogs to be taxed by parties engaging in uncooperative, dilatory, and obstructionist litigation tactics, or similar stratagems designed to increase the litigation expenses of the opposing party. The risks for engaging in such conduct must be substantial in order to act as an effective deterrent."], italics and boldface in original.).

The *In re ULLICO Inc. Litigation* (D.D.C. 2006) 237 F.R.D. 314, 317 case paints exactly the situation that has occurred in the instant arbitration, except in *ULLICO* the court properly treated the blanket designation as being a product of bad faith and an action that cannot be approved by a court because of the gamesmanship that it entails and promotes:

> However, the challenging party is not unduly prejudiced by the procedure as long as the designating party acts in good faith, which minimizes the amount of legitimate challenges raised.  In this case, however, ULLICO has acted in bad faith regarding its designation of documents as "confidential." In response to Counterclaim Defendants' document requests, ULLICO produced boxes of documents and stamped a substantial amount of these documents "confidential." In its Motion, Counterclaim Defendants assert that ULLICO designated "over 99% of the roughly 60,000 documents (200,000 pages)" as "confidential." (Motion at 1–2.) Without the foundation of ULLICO's good-faith designations, Counterclaim Defendants cannot be expected to follow the Protective Order's procedure, which would prejudice them further. Requiring Counterclaim Defendants to adhere to the procedure set forth in the Protective Order would cause Counterclaim Defendants to suffer additional delays and would exacerbate the effects of

> ULLICO's bad faith. Moreover, it would encourage the
> designating party to overuse the "confidential" label in the
> first place and provide a strategic advantage in the form of
> an unwarranted and unfair designation of "confidential" for
> months. ULLICO did just this and should not be entitled to
> benefit from its blanket unexplained designation.
> Counterclaim Defendants are therefore entitled to seek relief
> from the court.

One might legitimately ask whether, in hindsight, and prior to filing the civil action, it would have been better had Coinmint first petitioned the Panel to de-designate all of the many thousands of documents that Katena improperly "robo designated" as confidential.  Perhaps so.  But the case law discussed above speaks to exactly that point; and the courts uniformly have held that a party cannot "robo designate" all or nearly all of its documents as confidential and thereby *shift the burden* to the other party to make a detailed showing as to why each page is not in fact deserving of confidential treatment.  In short, Katena is arguing we should have done exactly what the case law says it was *their* burden to do.  Those cases make clear that Katena's blanket, "robo designation" of every single page of every single document as confidential was ineffectual, was a sanctionable abuse of the protective order, and did not thereby shift the burden to Coinmint to conduct a page by page analysis of all 8,000-plus pages and argue to the Panel why each such page is not deserving of the robo designation applied to it.

> **2.  Any Interpretation Of The SPO As Warranting Sanctions Here Would Render It Void As Against Public Policy**

For all of the reasons explained above, Coinmint respectfully submits that the law and the facts lead to the conclusion that it did not engage in sanctionable misconduct under the SPO by "disclosing" the documents in question in the context of the civil litigation.  But, to the extent the SPO could be interpreted as warranting sanctions in this context, any such interpretation would render the SPO void as against California law and public policy.

California Civil Code section 1668 provides:

All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Thus, a contract that prevents evidence of fraud from being utilized is unenforceable as against public policy due to indirectly exempting one from responsibility for fraud. One cannot contract away liability for fraud and cannot seek to avoid that limitation by instead restricting all evidence of fraud from being utilized against them. *See Blankenheim v. E.F. Hutton & Co., Inc.,* 217 Cal.App.3d 1463, 1471–72 (1990) ("Under [§ 1668], a party may not contract away liability for fraudulent or intentional acts or for negligent violations of statutory law."); *Baker Pac. Corp. v. Suttles,* 220 Cal.App.3d 1148, 1154 (1990) ("[A] release from liability for fraud and intentional acts ... on its face violates the public policy as set forth in Civil Code section 1668.").

As Katena has frequently reminded the Panel, the SPO is a stipulation – i.e., an *agreement*, a *contract* – that was negotiated and agreed to by the parties. For all of the reasons set forth in section 1 above, Coinmint respectfully submits that the SPO cannot reasonably be interpreted as warranting the imposition of sanctions against Coinmint due to its disclosure, in the context of the civil litigation, of documents evidencing the fraudulent and criminal conduct[2] engaged in by Katena and its co-conspirators (i.e., the civil litigation defendants). But, if Katena is correct that the SPO precludes Coinmint from using the documents Katena has produced showing its fraudulent conspiracy within the context of the civil litigation to hold its co-conspirators to account for their fraudulent and illegal conduct, the resulting conclusion is inevitable: The SPO is void as contrary to public policy pursuant to section 1668. Stated otherwise, section 1668 prohibits enforcement of the SPO (or any other contract) in a manner

---

[2] *See* discussion in the Introduction section above of California's Commercial Bribery statue, Penal Code section 641.3.

that tends to shield Katena or its co-conspirators from the consequences of their fraudulent and criminal conduct.

Katena may retort that the SPO does not run afoul of section 1668 because it does not **prohibit** Coinmint from using Katena's documents in the civil case to prove fraud against its co-conspirators; rather, the SPO simply requires that Coinmint **obtain those documents a second time** through discovery or subpoena in the civil case. But if that is indeed Katena's position, then it necessarily follows that any violation of the SPO by Coinmint was a hyper-technical one at most and caused no harm to Katena. The documents would come out in the civil case discovery anyway, and it is all much ado about technical process only.

But even that very limited, hyper-technical position does not fly. As the Panel is well aware, there is an automatic stay on discovery at the outset of all federal cases. Yet Coinmint has been required – and will again be required – by federal law and practice to disclose the evidence of fraud from Katena's documents *before* discovery commences. As every first year law student knows, fraud must be pleaded with particularity – including specific factual averments showing the "who, what, where, when, and how" of the fraudulent conduct. There is simply no way Coinmint could have satisfied that very high pleading standard without revealing the evidence of the fraudulent conspiracy set forth in Katena's documents. Indeed, civil defendant DxCorr – represented by the very same Perkins Coie lawyers that are representing Katena in this arbitration – has filed a motion to dismiss the civil action **on the very ground that Coinmint has not pleaded its fraud claims with sufficient evidentiary detail.** *See* DxCorr's Motion To Dismiss, attached hereto as Ex. "C." We trust the irony and insincerity inherent in these "whip-sawing" tactics will not be lost on the Panel.[3]

---

[3] Equally "whip-sawing" is Katena's argument that Coinmint should be sanctioned for filing – under seal, no less -- the documentary evidence of fraudulent inducement in support of Coinmint's opposition to the motion that the

Similarly, FRCP 26 requires that all parties to a federal case must,

> "without awaiting a discovery request, provide to the other parties:
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Invariably, the Rule 26 disclosures must be made prior to the commencement of discovery.

Under Katena's interpretation of the SPO, Coinmint will be obliged to violate Rule 26, Rule 11, and Coinmint's duty of candor to the tribunal by pretending that it is unaware of the evidence of fraud produced by Katena and must withhold those documents from its upcoming disclosures. The SPO cannot be interpreted in such a way as to require Coinmint to violate its duties under federal law.

Finally, in its order denying Coinmint's motion for interim relief in the form of an order attaching Katena's assets, the Panel indicated its view that such relief is more properly sought in civil court; and the Panel specifically noted that its denial of the motion was without prejudice to

---

Perkins Coie firm filed on behalf of Sagar Reddy seeking to stay the federal litigation. In that motion, Perkins Coie argued on behalf of Reddy that the civil action should be stayed because all of the civil defendants should be entitled to avail themselves of the arbitration clause in the Katena-Coinmint contract. *See* Reddy's Motion To Stay, attached hereto as Ex. "D," at 2:11-17. It was thus entirely appropriate – indeed *necessary* – for Coinmint to submit to the court evidence (under seal) showing that Katena and the civil defendants conspired with one another to fraudulently induce Coinmint to enter into the contract that contains the arbitration clause. Coinmint can hardly be faulted for submitting evidence relevant to opposing a motion that Katena's own principal (Reddy) and its own lawyers (Perkins Coie) filed with the Court. Katena's assertion that this issue was "irrelevant" or somehow an "affront" to the Panel verges on the absurd. Katena correctly notes that, as between parties to a contract that contains an arbitration clause, it is for the arbitrator to decide whether the contract (and thus, the arbitration clause) was induced by fraud. But the law is equally clear that where a non-party to the contract seeks to invoke the protections of the contract's arbitration clause, it is for the ***Court*** – not the arbitrator – to decide any defenses that may exist to enforcement of the clause by the non-party including the issue of fraudulent inducement. *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1127. Thus, Coinmint's submission of evidence of fraudulent inducement was neither irrelevant to the motion nor an "affront" to the Panel. To the contrary, it was necessitated by the strategic litigation tactics of Katena's own principal (Reddy) and its own lawyers (Perkins Coie).

Coinmint's right to file the motion in civil court.  *See* Order No. 28 at page 6.  Within the next several days, Coinmint will be heeding the Panel's advice and filing that motion with the Court.  But under Katena's view, that motion is destined to fail because the SPO prohibits Coinmint from supporting the motion with any of the documentary evidence of Katena's fraud that has been produced in these proceedings.  Or, perhaps, Katena's position will be that it is ok for Coinmint to file in court the documentary evidence of Katena's fraud for the purpose of supporting its application for prejudgment attachment; but it is not ok for Coinmint to file those very same documents for purposes of prosecuting the fraud case against Katena's co-conspirators.  But if that be Katena's argument, then once again it collapses into an arbitrary, hyper-technical alleged violation of the SPO that caused Katena no harm whatsoever ***because the cat will be out of the bag in any event.***

Equally deficient, and for similar reasons, is Katena's suggestion that Coinmint should be sanctioned because, although Coinmint filed the documents provisionally under seal, it offered to the Court its view that the documents do not qualify to remain sealed.  But once again, Coinmint was simply adhering to federal law and federal procedure; and it should not be sanctioned by the Panel for doing so.  Local Rule 79-5 of the Northern District Federal Court specifically provides that, "The public has a right of access to the Court's files," and that "Reference to a stipulation or protective order that allows a part to designate certain documents as confidential is **not sufficient** to establish that a document, or portions thereof, are sealable."  *See* Northern District Local Rule 79-5(a) and (c) (emphasis added).  The Rule also specifies the exact procedure to be followed where, as here, a party ("the filing party") intends to file documents that a third party ("the designating party") has designated as confidential.  In such circumstances, the filing party is to submit a "Motion to Consider Whether Another Party's Material Should be Sealed."  *See* Rule

79-5(f).  The Rule makes clear that, in that situation, the burden of proving that the documents are "seal worthy" rests not with the filing party but with the designating party.  That is true whether or not the designating party is a party to the litigation proceeding in which its documents are filed.  *See id*. at (f)(1) and (f)(3).  The filing party is then to file a response with its own view of whether the documents meet the high threshold needed to overcome the strong presumption that the court's records should be accessible to the public.  *See id*. at (f)(4).  The designating party's burden is a high one and requires a showing of "compelling reasons" necessary to justify sealing.  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006) (upholding order denying motion to seal because the supporting declarations consisted of "conclusory statements about the content of the documents—that they are confidential and that, in general, their production would, amongst other things, hinder CIU's future operations with other agencies, endanger informants' lives, and cast HPD officers in a false light.")  Furthermore, the mere fact that the documents have been designated "confidential" pursuant to a protective order does not in itself justify sealing.  L.R. 79-5(c); see also *Kamakana*, 447 F.3d at 1183 ("a non-party's reliance on a blanket protective order is unreasonable and is not a "compelling reason" that rebuts the presumption of access.)

It is undisputed that Coinmint followed exactly the procedure mandated by Rule 79-5.  Indeed, Katena itself attaches a copy of Coinmint's Rule 79-5 motion as Exhibit "C" to its brief in support of sanctions.  Apparently, Katena's view is that, to avoid sanctions, Coinmint should have actively advocated to the Court that the documents are seal-worthy even though the law makes clear they are not.  But, of course, Coinmint cannot be sanctioned for honestly stating its view of the law to the Court.   The sealing motion is presently before the Court for decision.  Coinmint fully expects the Court will find Katena's arguments unavailing and order that the

documents do not warrant sealing as they do not contain truly confidential or proprietary information.  If the Panel is at all inclined to issue sanctions here, at the very least it should await this highly relevant decision from the Court.

### 3. Federal Law Precludes Sanctioning Coinmint For Filing Evidence With the Court

Conspicuously, Katena does not contend that Coinmint distributed the documents to the press; or provided them to Katena's competitors or its investors; or posted them on the internet. Katena complains only that Coinmint filed the documents (under seal) with the Court and served them on the litigants in that action (all of whom were either party to the communications set forth in the documents and/or are affiliates of Katena).  But federal law – specifically the First Amendment as expressed via the Noerr-Pennington Doctrine -- precludes punishing Coinmint for its protected activity of petitioning the courts for redress.

The First Amendment, as reflected under the *Noerr-Pennington* doctrine, protects "a concerted effort to influence public officials regardless of intent or purpose." *Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *see also E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). Under *Noerr-Pennington*, a party may not be held liable for petitioning a federal court or agency unless the petition is shown to be a sham. *BE & K Const. Co. v.* NLRB, 536 U.S. 516, 525-26 (2002). The two-part definition of sham litigation originated in the antitrust context but is now broadly applied. *See id.* at 525. For litigation conduct to qualify as "sham," a two-prong test must be satisfied: "first, it must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; second, the litigant's subjective motivation must conceal an attempt to interfere *directly* with the business relationships of a competitor ... through the use [of] governmental *process*—as opposed to the

*outcome* of that process—as an anticompetive weapon." *Id.* at 526 (internal quotation omitted).

A petition is objectively baseless if "no reasonable litigant could realistically expect success on

the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60

(1993).

Notably, the *Noerr-Pennington* doctrine has been interpreted as precluding a court or

other tribunal from sanctioning a litigant before it for conduct the litigant took in petitioning a

different court or tribunal to grant it relief in a separate matter. *See, e.g., Vasudevan Software,*

*Inc. v. Microstrategy, Inc.* (N.D. Ca., 3/11/13) 2013 WL 12174179. *Vasudevan* was a patent

infringement action.   Plaintiff in that action alleged that defendant and its counsel should be

sanctioned because they threatened to conduct a "scorched earth" defense strategy, including

filing petitions with the Patent Office seeking to reexamine all of the patents of the plaintiff as

well as all of the patents of other clients represented by the plaintiff's law firm.   Admittedly,

defendant and its counsel then made good on that threat by filing patent reexamination petitions

against all of the patents held not only by plaintiff but also by numerous other companies

represented by the plaintiff's law firm – even though those patents had already been previously

upheld against challenge.  *Id.* at *1.  Plaintiff moved for sanctions against defendant and its

counsel, but the Court, citing the *Noerr-Pennington* doctrine, refused to award sanctions.

Although the Court found that the second prong of *Noerr-Pennington* was met through evidence

of defendant Microstrategy's subjectively bad faith motivation in filing the multiple patent

reexamination petitions, the Court nevertheless held that sanctions could not be awarded because

plaintiff failed to present evidence showing that the petitions were objectively baseless.  *Id.* at *3.

The Court explained:

> While MS and Quinn Emanuel appear to have engaged in sharp practice that falls far
> short of model professional conduct, given the First Amendment implications of

16

sanctioning a party engaged in petitioning activity, the Constitution shields MS and its counsel from sanction at this time.

*Id*. at *3.  Plaintiff countered by citing cases holding that the *Noerr-Pennington* doctrine does not limit a court's sanction power; but the Court distinguished those cases as holding only that the doctrine does not limit a court's power to sanction litigants for conduct they have undertaken *in the context of that very same action*.  But the doctrine is fully applicable where a court or other tribunal is asked to sanction a party for conduct the party undertook to petition a different court or other tribunal for redress in a separate matter; in that context, the constitutionally-protected right of petitioning is triggered and sanctions cannot be awarded unless both prongs of the Noerr-Pennington doctrine are met.  *Id.* at *3-*4.

Notably, the *Vasudevan* decision was rendered by the very same judge that is presiding over Coinmint's civil action against Katena's co-conspirators: Judge Seeborg.  *Id*. at *1; s*ee also* California Civil Code section 47(b) (defining a "privileged publication or broadcast" as one made "in any judicial proceeding."  The California courts have "consistently and forcefully reiterated that this privilege is virtually absolute and that the only tort cause of action which can be based upon the initiation of a lawsuit (or communicative acts related to the lawsuit) is that of malicious prosecution."  *Ludwig v. Superior Court* (1995) 37 Cal.App.4[th] 8, 24 (also discussing and endorsing application of the *Noerr-Pennington* doctrine).

The law is clear:   Absent a showing that Coinmint's civil action is both subjectively in bad faith and objectively meritless, the Panel cannot, consistent with the First amendment and California's litigation privilege, sanction Coinmint for filing documents with the federal court in connection with that litigation.  Katena does not even attempt to make either showing here.  Nor could it do so, given that the bases for the claims Coinmint asserts in the civil action are substantiated from Katena's own documents authored by its principals Monzon, Gao, and Reddy.

Katena makes much of the fact that although Coinmint filed the federal complaint and the documents attached thereto under seal, it served the civil defendants with unredacted versions of the complaint and the documents attached thereto.  Indeed, Katena seeks separate sanctions awards of ***$700,000.00*** for each act of Coinmint in serving the complaint on the civil defendants.  *See* Katena's Sanctions Brief, at chart on pg. 18.  We anticipate Katena will argue that the petitioning privilege of the First Amendment and of Civil Code section 47(b) does not apply to Coinmint's conduct in serving the unredacted documents on the civil defendants.  But, for at least two reasons, that argument cannot survive even passing scrutiny.

*First*, the law is clear that the privilege is not limited just to the filing of the petition/complaint itself; rather, it extends to all matters reasonably related to prosecution of the case.  *Rusheen v. Cohen,* 37 Cal.4th 1048, 1057 (2006) (litigation privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior to the litigation, or afterwards."  It applies to any "[c]ommunications with 'some relation' to judicial proceedings. . .").  It would make absolutely no sense to suggest that the filing of a complaint is privileged but the service of it is not.  Any such holding would effectively gut the privilege.

*Second*, it simply would not have been possible for Coinmint to serve the civil defendants with a copy of the complaint redacted of all factual allegations.  It takes little speculation to conclude what those defendants would have done upon being served with a complaint redacted of all factual allegations:  They would have immediately, and successfully, moved to dismiss.  Any defendant – much less one being sued for fraud – is entitled to be served with the version of the complaint that includes the factual allegations against him or her, not a version beset with blacked-out spaces obscuring the factual allegations.

No matter how Katena might try to spin things, it cannot escape the reality that its request

for sanctions is squarely barred by Coinmint's right of petitioning under both the First

Amendment to the United States Constitution and California's section 47(b).

**4.  <u>The Cases Katena String-Cites Are Both Non-Precedential and Distinguishable</u>**.

Katena string-cites a number of decisions in a desperate attempt to persuade the Panel

that the absurdly draconian relief it seeks – terminating sanctions *and* a monetary award of $6.75

million *plus* attorney fees – is non-controversial and well within the norm.  But virtually all of

the decisions Katena cites for that absurd proposition are arbitration decisions.   And the law is

very clear that "[A]rbitration decisions carry little, if any, precedential value."  *Stasz v.*

*Schwab*, 121 Cal.App.4th 420, 435 (2004).  And, even more importantly, none of the decisions

Katena cites support an award of sanctions under these facts – and certainly not the absurdly

draconian sanctions Katena seeks.

Most of the decisions are cited for the non-controversial proposition that arbitrators have

the power to sanction litigants in appropriate circumstances.  But that begs the question of

whether the circumstances are appropriate here.  As demonstrated in detail above, they are not.

Considerations of time and space counsel against discussing in detail all of the decisions Katena

string-cites – particularly given that Katena itself does not elect to do so.  But it would seem

worthwhile to consider in some detail the decisions upon which Katena places particular

reliance.

Katena contends that the arbitration decision in *In The Matter of Arbitration Between*

*[Claimant] and [Respondent] (Real Estate),* 2012 WL 363639, is "particularly illustrative."  *See*

Katena's sanctions brief, at pg. 11.  Not so.  As a preliminary matter, so much of the decision is

redacted that it is difficult if not impossible to determine exactly what occurred that led to the

imposition of sanctions (which is no doubt part of the reason why arbitration decisions have little to no precedential value).  But the facts that can be gleaned from the decision make clear that it is fundamentally distinguishable from this case.

First, as the decision itself makes clear, that matter was brought under AAA employment rules which provide that "The arbitrator *shall* maintain the confidentiality of the arbitration." 2012 WL 363639 at *7 (quoting AAA Employment Arbitration Rule 23).   But this is not an employment matter.  As explained in detail previously in this brief, AAA Commercial Arbitration Rule 45 – unlike Employment Rule 23 -- does not provide that all documents and information adduced in the course of the arbitration are presumptively confidential.   *Compare* AAA Employment Arbitration Rule 23 (arbitrator **shall** maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary) with AAA's Commercial Arbitration Rule 45 (the arbitrator *may* make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting **trade secrets and confidential information**) (emphasis added.).

And the employment rule that governed the arbitration decision Katena claims is "particularly illustrative" is even further afield from the SPO that specifically governs this case. As previously explained at length, the SPO provides that only those portions of documents that specifically contain confidential, proprietary or private information are protected from disclosure.  Katena has not shown, and cannot show, that any of the documents filed under seal in the civil litigation include legitimately confidential or proprietary information nor any information protectable by the right of privacy.

Second, and unlike here, the claimant in *In The Matter of Arbitration Between [Claimant] and [Respondent] (Real Estate)* was alleged to have disclosed the documents and information not just in a court proceeding but also to apparently random third parties including "the brother of [Redacted], the named plaintiff in a class action lawsuit against [Redacted]", and "the lead plaintiff in a whistleblower case against [Redacted]." *Id*. at *5. Although the redactions make it impossible to determine who these people were or their connection if any to the proceedings at hand, it is clear that these disclosures occurred outside of the privileged context of a document filed with the court.

Third, although at least one of the disclosures apparently did occur in a court filing, notably the parties do not appear to have briefed -- and the arbitrator never addressed -- the question of whether those disclosures were privileged under the law (Massachusetts, not California as here) that governed those proceedings. Thus, this decision does not cast any doubt on the clear California and federal law cited by Coinmint showing that the disclosures here are privileged.

Fourth, the disclosures in that case were not claimed to show proof of fraud; and thus – unlike here – there was no argument available that prohibiting their disclosure violated California Civil Code section 1668 or any similar Massachusetts statute.

Fifth, and unlike here, there was no indication in that case that the documents from the arbitration that were disclosed in the litigation would inevitably be produced through discovery in the civil case in any event and thus caused no harm.

Equally distinguishable is the *[Claimant 1] v. [Respondent 1] (Health Services)*, AAA Case No. [Redacted], 2021 WL 6106872 decision cited by Katena. In that case, unlike here, "all parties agreed that all information obtained or used in this proceeding may NOT be used or

disclosed outside this proceeding" and that "all information must be maintained in strict confidence." *Id*. at *174. Moreover, the information at issue there – unlike here -- was not disclosed in the privileged context of a court proceeding; and the information was of a nature traditionally recognized as private including medical and employment records, wage information (it was an employment wrongful termination case and not a commercial dispute), offers and demands in mediation, etc. *Id*. at *174-75. Finally, that arbitration was decided under the AAA's employment arbitration rules which have a much broader confidentiality provision (Rule 23) compared to the confidentiality provision of the commercial rules (Rule 45).

Even further afield is the case – *Willick v. Napoli Bern Ripka Assocs., LLP* (C.D. Cal, 2018) 2018 WL 6443080 – that Katena claims is "particularly apt." *See* Katena's sanctions brief, at pg. 13. The claimant in *Willick* – a lawyer – brought an arbitration action against the respondent law firm claiming the law firm had reneged on a contract that required the firm to pay him a portion of the fees it collected on certain asbestos personal injury cases. *Id*. at *1. The arbitrator ordered that an accounting be conducted at the respondent law firm's expense. However, despite the passage of several years, the law firm consistently refused to pay for the accounting. The arbitrator found the law firm's failure to pay constituted a willful failure to comply with the arbitrator's orders and entered a default against the law firm as a sanction. *Id*. at *1-*2. The district court affirmed. *Id*.

*Willick* has nothing whatsoever to do with the facts presented here. *Willick* certainly does not stand for the proposition that sanctions are appropriate where, as here, a party submits non-confidential evidence of fraud, to a court, under seal, in a legally privileged context, and without any legitimate prejudice to the other party.

It is neither due to accident nor inadvertence that Katena is unable to cite any decisions

awarding the draconian sanctions it seeks under facts even remotely analogous to those presented herein.  There are no such decisions.  A decision by this Panel granting Katena's motion would be without precedent and entirely unwarranted by the law, the facts, or simple equity.

III.    <u>CONCLUSION</u>

Katena's feigned righteous indignation and cries of victimization fall flat.  The facts show that Katena and its co-conspirators – the defendants in the civil action – committed a sustained, calculated, and incredibly damaging fraud against Coinmint, costing it more than $23 million dollars.  This is the latest in a series of motions brought in arbitration and in civil court by Katena and its co-conspirators desperately seeking to avoid the consequences of their conduct, to keep hold of the $23 million it obtained from Coinmint, and to prevent the evidence of their fraud from seeing the light of day.  Reduced to its essence, Katena's position is that the SPO precludes Coinmint from pleading its fraud claims against the civil litigants with the required particularity, ties Coinmint's hands in opposing the very motions that Katena's co-conspirators and the Perkins Coie law firm have themselves filed in the civil action, and forces Coinmint to breach its obligations to the Court under Rule 26, Rule 11, and other fundamental rules governing civil litigation in the federal courts.  Manifestly, the SPO was never intended to countenance those results and it cannot reasonably be construed to require them.  The documents "disclosed" under seal in the civil action contain evidence of fraud – not legitimately confidential, proprietary business or technical data; and Katena submits no specific examples to the contrary, because there are none.  Both the First Amendment to the United States Constitution and California law (Civil Code sections 47(b) and 1668) preclude punishing Coinmint for its submission to the court of evidence of the fraudulent conspiracy among Katena and the civil defendants.  If Katena

wanted this entire dispute to remain within the cloak of arbitration, it should not have conspired with individuals and entities with whom Coinmint has no arbitration agreement.  For each of these reasons, we respectfully request that this motion be denied.

But that leaves open one important question:  What should become of the SPO moving forward?  Although we adamantly reject Katena's claim that "the sky is falling," we do agree it makes sense to clarify the rules moving forward.   In that regard, Coinmint respectfully requests that the SPO be revised to make clear that:  1) The parties are not permitted to "robo designate" all or essentially all of their documents or deposition testimony as confidential; and 2) Katena's prior designation of each and every one of its 8,000-plus documents as confidential is not effective to grant those documents protected status, and grant Katena a short time to re-issue and properly designate documents; and 3) Documents and deposition testimony that the parties selectively and appropriately designate as confidential shall not be disclosed by the parties to the press, posted on the internet, or otherwise made available to persons or entities that are not involved in either the arbitration or the related civil action; and 4) Nothing in the SPO governs what Coinmint, Katena, Reddy, DxCorr, or the other litigants may or may not file in civil actions, as those matters are properly left for the respective courts to determine in the course of policing its own docket.  Coinmint and its counsel hereby pledge to abide by those clarified terms.  And those terms provide Katena all of the protection it can legitimately demand.


Dated:  04/13/2023

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____

Robert A. Lemus
TX State Bar No. 24052225
rlemus@grsm.com
1900 West Loop South
Suite 1000
Houston, TX  77027
713-961-3366
713-961-9398 fax


By _____

Fletcher C. Alford
CA State Bar No. 152314
falford@grsm.com
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 875-3115
Facsimile:  (415) 986-8054

**ATTORNEYS FOR CLAIMANT
COINMINT, LLC.**