# EXHIBIT 9

AMERICAN ARBITRATION ASSOCIATION

| Coinmint, LLC, | |
|---|---|
|     Claimant / Counter Respondent, | Case No. 01-22-0001-7627 |
| -against- | |
| Katena Computing Technologies, Inc., | **KATENA'S MOTION RELATED TO** |
|     Respondent / Counter Claimant. | **APRIL EVIDENTIARY HEARINGS** |

With the dual intentions of accountability and fairness, Katena submits this motion requesting two rulings from the Panel. First, Katena asks that the Panel postpone the April hearing testimony of Messrs. Maloney, DeNaut, and Bleck until Coinmint's California action is stayed and/or the Panel issues its sanction for past and future violations of the SPO, which will give these three witnesses the comfort they objectively need, and after Coinmint completes its document production, which will give Katena and the Panel the information they need. Second, Katena asks that the Panel implement fair and equitable hearing procedures for whenever the testimony is provided.

**Executive Summary**

Katena files this Motion seeking to modify the dates for the third-party hearing testimony of Coinmint's former employees and agents, Messrs. Maloney, DeNaut, and Bleck. We know the Panel set the current dates after careful consideration of everyone's calendar and we assume the Panel is reluctant to reconsider those dates. We, too, were reluctant to raise the issue as we are eager for the Panel to hear critical evidence of Coinmint's breach and the intentionality with which it proceeded between May and November 2021 in breaching and ultimately repudiating the Agreement, as the documents show. But we are raising the issue nonetheless because Coinmint has taken a trilogy of actions that have deeply altered events since the Panel issued Order No 15. When the very real consequences of these actions are considered, the calendar

delay we seek becomes a necessary tool of accountability and fairness, rather than a tool of mere delay. First, Coinmint filed the California action against the individuals set to testify. Second, Coinmint rejected the SPO and has made it clear that it will use information from this action, including transcripts of hearing testimony, in the California action against these individuals. And, third, Coinmint has failed to produce critical documents such as its mobile data. Pushing forward in April with that backdrop will likely limit the witnesses' testimony and deprive Katena and the Panel of the benefit of the documents still to be produced. The testimony of these individuals is critical. Postponing their testimony until July (or later) will benefit a just process and will harm no one (particularly since Coinmint has yet to serve the subpoenas). Moving ahead as scheduled will only reward Coinmint for its sanctionable behavior.

Second, whenever the testimony occurs, Katena needs the Panel's assistance in ensuring that Katena gets a fair opportunity to question the witnesses. We attempted to confer with Coinmint on the issue of hearing logistics; this should be easy for parties to reach agreement. Mr. Alford's response is below, but the short answer is we could not even get an agreement from Mr. Alford to share the witnesses' time equally. It's clear that Coinmint is taking a variety of positions to limit and control the testimony when it occurs, and we need the Panel's help.

### Relevant Facts

Prior to the time Coinmint's trilogy of actions occurred, the Panel issued four Orders that are relevant to this Motion. On August 19, 2022, the Panel issued **Order No. 1** setting a deadline of July 31, 2023, for "subpoenas for the attendance of witnesses or documents" at the Evidentiary Hearing(s) to occur in August and September to "be submitted to the Panel." Order No. 1 also set a June 5, 2023, deadline for opening expert reports. This would include any expert reports regarding the accuracy and reliability of Mr. Bleck's technical due diligence report, which Coinmint has tried to put in issue.

On September 8, 2022, the Panel issued **Order No. 3** setting a fact discovery cutoff of April 20, 2023.

On January 20, 2023, the Panel issued **Order No. 12**, among other things instructing the parties to request hearing summonses if the party wished "to obtain testimonial and/or documentary evidence from Mr. DeNaut or Mr. Maloney in advance of the evidentiary hearing." Because of the phrase "in advance" Katena (mistakenly) understood Order No. 12 to be setting a separate deadline for requesting third-party depositions and only third-party depositions, as opposed to third-party hearing testimony. Katena did not understand Order No. 12 to be modifying Order No. 1's July 31, 2023, deadline for requesting subpoenas for the attendance of third-party witnesses at the Evidentiary Hearing(s) to occur in August and September.

Finally, on February 3, 2023, the Panel issued **Order No. 15** scheduling hearing dates for the testimony of for Messrs. Maloney, DeNaut, and Bleck on April 3, April 4, and April 18, respectively. The scheduled hearing dates are prior to the close of fact discovery and prior to the expert disclosure deadline. Order No. 15 also precluded seeking subpoenas for any other parties except for good cause.

But Coinmint's abdication of accountability warrants reconsidering these dates. Coinmint's substantial delay and discovery misconduct—both before and after Order No. 15—has culminated in Coinmint failing to provide key documents (like its mobile data); Coinmint's decision to file a public complaint in Santa Clara ("California Complaint") that violated the Stipulated Protective Order (SPO); Coinmint's disavowal of the SPO on a going forward basis; Coinmint's use of testimony and discovery from this Arbitration to publicly smear the reputations of Katena and its current and former employees; and Coinmint's delay in serving the

subpoenas and, we believe the California Complaint itself on Messrs. Maloney, DeNaut, and Bleck to undoubtedly create another "emergency."

First, consider the ESI Order and **Coinmint's violation of its own promise to collect and produce mobile data**. Coinmint took three months to negotiate the ESI Order. In the final version, the Parties agreed to collect and produce mobile data. Not once during these negotiations did Coinmint take the position that its officers' personal mobile devices, which were used for work purposes, were outside of Coinmint's control. To the contrary, Coinmint promised to collect and produce its mobile data and demanded that Katena do the same. Katena complied. In fact, Coinmint's Motion in December 2021 took the inaccurate view that Katena had done wrong claiming Katena had not collected Mr. Monzon's mobile data before he left when Katena had, in fact, collected that data and produced it.

Coinmint did not comply with its own commitment. Coinmint claimed in early January 2022 that it was substantially complete with its production even though it had not produced any mobile data. Katena raised this issue with the Panel, which issued Order No. 13 requiring that Coinmint produce "mobile data containing communications between the parties or persons acting for or on their behalves" on or before January 25, 2023. That day—just two days before Mr. Soniat's deposition[1]—Coinmint refused to comply by submitting a declaration from Mr. Foret claiming that, because Coinmint officers used their personal mobile devices for work, work-related communications on those devices were outside Coinmint's control. Coinmint sat by while Katena produced mobile data it collected from its custodians' personal devices but refused

---

[1] Coinmint has a history of producing items <u>after</u> people testify. Take Mr. Soniat's deposition—approximately three weeks afterward, Coinmint "found" the attached July 28, 2021, email to Mr. Soniat that expressly references the $150 million agreement that Mr. Soniat testified he could not remember signing, as well as the ongoing and incomplete nature of negotiations with Katena. Clearly, Coinmint did not want Mr. Soniat to be asked why Ms. Schneider told him in July that "We (Mike) is in the process of negotiation [of] a new price, contract, purchase order, etc. [with Katena]," given Mr. Soniat's deposition testimony that he thought an oral agreement was entered into in June (it had not been). Ex. A.

to collect or preserve mobile data from any of its employees while it fired them and even failed to collect or preserve the data from its Chairman and CEO, Ashton Soniat.

Coinmint, through Mr. Lemus, also tried to downplay the conduct by telling the Panel that it was "not the custom of either Coinmint or [Mr.] Soniat to use text messages for substantive communications." This claim is totally false and can only be interpreted as misdirection. The very next day, Mr. Soniat testified that he used "iPhone iMessage; WhatsApp, Signal, and Telegram" for work-related communications. Tr. 278:23–279:18. After Order No. 12 on the timing of discovery disputes Coinmint "promised" that Mobile Data will be produced by February 28, 2023. Katena waited. Coinmint failed to deliver. Again.[2] If Coinmint ever produces these documents, it won't be in time for Katena to use them at the scheduled April hearings. This schedule would create a disadvantaged discovery gap so potentially large that Coinmint could drive a truck of unfairness through it.

Second, consider **the filing of Coinmint's California Complaint**. Coinmint told the Panel on January 17, 2023, that "within the next several days" it would be filing a collateral action for the narrow purpose of securing third-party discovery. That's not what Coinmint did. Instead, it used its publicly filed complaint as a venue to smear Katena's reputation, mislead witnesses in this case about Katena's internal communications, and pressure those witnesses to provide favorable testimony before the Panel or risk a $23 million judgment plus punitives and attorneys' fees. No doubt the mere existence of the California Complaint will impact the witnesses, but so will Coinmint's rejection of the SPO. Coinmint's actions prove Coinmint believes the SPO is void. Every witness knows that Coinmint will use their testimony to smear them publicly, and that will undoubtedly cause the witnesses to pull back.

---

[2] Per Order No. 12, Katena will file its third motion to compel the production of Coinmint's mobile data via Redfern on March 10 (the earliest available date after Coinmint's missed production deadline of Tuesday, February 28).

Third, consider **Coinmint's failure to promptly serve the hearing subpoenas, and potentially not having served them at all yet.** The Panel issued hearing subpoenas on February 3. Nearly two weeks later, and only after Katena asked for proof of service, Mr. Alford said they had not even been served yet but would be "ASAP." One month later, we <u>still</u> have not received proof of service from Coinmint and have no choice but to assume that the witnesses have not been served. We also can reasonably expect that these witnesses, each of whom has been sued in the California action, will hire lawyers and may move to quash or modify the subpoenas. What does that mean? The longer Coinmint waits, the more of an "emergency" it puts on everyone and the more likely that these witnesses will back out, be rushed, etc. and the less likely it is that anyone can meaningfully negotiate with the lawyers to secure their testimony.

<u>Argument</u>

**I.   The Hearing Testimony Should Be Postponed**

Katena respectfully requests that the Panel modify the subpoenas (which, to our understanding, have not yet been served) and delay the hearing testimony until after the close of fact discovery for the following three reasons:

First, Coinmint is now suing Maloney, DeNaut, and Bleck for $23 million each, which represent not insignificant amounts that have significant implications. We know that the lawyers for these individuals will be loath to allow them to testify because they know Coinmint will try to use the testimony against them in the California action, perhaps to try and defeat a motion to dismiss.[3] Indeed, to the best that we know, Coinmint has yet to serve the California Complaint on the Defendants, presumably because Coinmint wanted the threat of a filed lawsuit and wanted

---

[3] Katena has the same concern about its confidential information that will be in the possession of these people and thus will come out during the testimony, although presumably the Panel can cabin that testimony in real time.

Third, consider **Coinmint's failure to promptly serve the hearing subpoenas, and potentially not having served them at all yet.** The Panel issued hearing subpoenas on February 3. Nearly two weeks later, and only after Katena asked for proof of service, Mr. Alford said they had not even been served yet but would be "ASAP." One month later, we <u>still</u> have not received proof of service from Coinmint and have no choice but to assume that the witnesses have not been served. We also can reasonably expect that these witnesses, each of whom has been sued in the California action, will hire lawyers and may move to quash or modify the subpoenas. What does that mean? The longer Coinmint waits, the more of an "emergency" it puts on everyone and the more likely that these witnesses will back out, be rushed, etc. and the less likely it is that anyone can meaningfully negotiate with the lawyers to secure their testimony.

<u>Argument</u>

**I.   The Hearing Testimony Should Be Postponed**

Katena respectfully requests that the Panel modify the subpoenas (which, to our understanding, have not yet been served) and delay the hearing testimony until after the close of fact discovery for the following three reasons:

First, Coinmint is now suing Maloney, DeNaut, and Bleck for $23 million each, which represent not insignificant amounts that have significant implications. We know that the lawyers for these individuals will be loath to allow them to testify because they know Coinmint will try to use the testimony against them in the California action, perhaps to try and defeat a motion to dismiss.[3] Indeed, to the best that we know, Coinmint has yet to serve the California Complaint on the Defendants, presumably because Coinmint wanted the threat of a filed lawsuit and wanted

---

[3] Katena has the same concern about its confidential information that will be in the possession of these people and thus will come out during the testimony, although presumably the Panel can cabin that testimony in real time.

to wait to serve it closer to the testimony to maximize the pressure on the witnesses and delay the Defendants' inevitable motions to dismiss the facially deficient California Complaint.

But we all know that the California action will not be resolved by the time the hearing on the merits in this Arbitration is heard, so does that mean Maloney, DeNaut, and Bleck never testify in the Arbitration? Not at all. Their testimony is critical for the Panel and our goal is to ensure that the Panel gets as much information from them that it can. Sagar Reddy (Katena's Chief Technology Officer and a Defendant in the California action) is filing a Motion to Stay the California action pending resolution of this arbitration under the FAA. The California Complaint seeks to invalidate the Agreement between Coinmint and Katena, but that issue is for this Panel to decide. Coinmint cannot run from the Panel by seeking the same relief in another forum. If the Panel delays the witnesses' testimony as we request, it gives time for Mr. Reddy's motion to be decided, and, if the stay is granted, the witnesses will be able to testify without fear of having their testimony used against them in Coinmint's attempt to short-circuit a ruling of this Panel or as a pretense to obtain intrusive discovery against them in the California action. Mr. Reddy is expected to file his Motion to Stay shortly.

Second, and relatedly, we expect that Coinmint's continued refusal to comply with the SPO will have a chilling effect on the third-party witnesses who don't want their testimony in a private arbitration to end up in the public domain as a smear tactic. Coinmint already tried to smear Katena's reputation by filing the California action which makes gratuitous and false attacks on Katena even though Katena is not a party. Given its disavowal of the SPO, it follows that Coinmint will try to do the same with the other defendants in its crosshairs, Messrs. Maloney, DeNaut, and Bleck. After this Panel rules on Katena's sanction request, the imposition of a significant sanction (including, if not the dismissal of Coinmint's claims, then an order that

any subsequent breach of the SPO will result in the immediate dismissal with prejudice of Coinmint's claims) should give the third-party witnesses the comfort they need to testify completely and accurately at the hearing.

Third, Coinmint is still withholding critical documents from production, and Katena is entitled to receive them before the 11th hour. Coinmint's failure to produce mobile data is the most pressing, and we are addressing it through the Redfern process. But it matters for the upcoming testimony because Mr. Soniat revealed that he has changed mobile devices several times since Coinmint anticipated litigation and chose not to back up his iPhone to the cloud, so if he no longer has his text messages we may also need to subpoena mobile data from Messrs. Maloney or DeNaut (although we shouldn't have to). And Katena has also served additional requests for key documents based on information it learned during the depositions (within the original 30 requests per side that the parties agreed to and the Panel ordered) such as the documents related to Mr. Maloney's ownership interest in Coinmint, Mr. Soniat's refusal to honor it, and Coinmint's subsequent attempts to negotiate Mr. Maloney's ownership interest away, including "settlement negotiations" in connection with the California action; and the communications Mr. Soniat and Coinmint had with Jay Morton about selling Coinmint and the related discussions of how the Katena Agreement impacted a possible sale. Katena sent those requests to Coinmint on February 27, 2023. This information (the mobile data and the documents responsive to the new requests) will benefit the testimony of Messrs. Maloney and DeNaut.

It's also disturbing that Coinmint destroyed evidence—which raises an important spoliation issue that should be resolved before the Panel hears testimony. Coinmint anticipated litigation on October 19, 2021.[4]  It terminated Mr. DeNaut on November 3, 2021 without

---

[4] October 19, 2021 is a critical date. Coinmint asked Blockchain.com for access to $50 million to use for the much-delayed down payment under the Katena Agreement. On October 19, Blockchain.com again denied Coinmint's ask

collecting or preserving his mobile data. Coinmint's controller, Kathleen Schneider stayed on at Coinmint until Fall 2022, after this arbitration was filed, but Coinmint failed to collect or preserve her mobile data too.[5]  Katena is preparing a Motion for Sanctions on these issues, but it will take time for the Panel to rule. These issues of document production, destruction, and spoliation should be resolved before the commencement of hearing testimony.

We have additional concerns about the timing of Mr. Bleck's testimony. Coinmint said it intends to retain an expert witness to try to poke holes in Mr. Bleck's due diligence presentation and find some flaw in Katena's chip (which Mr. Soniat admitted they haven't found yet). That is Coinmint's right. But the calendar timing poses a problem. Under Order No. 1, opening expert reports are due on June 5 and the close of expert discovery is July 14. If Mr. Bleck's only hearing testimony is in April, he will not get to defend his due diligence presentation. The Panel will be denied the benefit of Mr. Bleck's perspective. Instead, he will be providing the testimony that a future expert will simply try to get around. That doesn't seem right to us—especially because, as far as we are aware, no one has asked Mr. Bleck (who lives in California, but more than 100 miles from San Francisco) if he will come to the August hearing voluntarily.

We respectfully ask the Panel to modify the subpoenas and reschedule the third-party testimony. Doing so will give the federal court a chance to stay the California action; it will give the Panel a chance to issue a sanctions award for Coinmint's past violations and identify sanctions for future violations that might assuage the reasonable concerns of these witnesses; and it will allow the opportunity to ensure that Coinmint either produces documents or is further sanctioned for the intentional destruction of its data.

---

because of issues with Coinmint's financial statements. Mr. Soniat then called Mr. Jay Morton who told him to stop trying to make the Katena deal work and just get out of it. Later that day, Mr. Morton connected Mr. Soniat with his first counsel, Mr. Stephen Doyle, in the first of a series of highly relevant emails that Coinmint is attempting to shield from production despite having no legitimate basis to do so. That's how litigation became "anticipated."
[5] Coinmint promised to get us this information as recently as last month, but reversed course after Order No. 18.

## II. Whenever These Individuals Testify, Each Party Should Get a Fair Opportunity to Question Them.

It goes without saying that each side should have a full and fair opportunity to question these witnesses. For example, given the number of material documents Mr. Maloney authored, we think both sides will want a day with him. We contacted Coinmint about the issue; the full email string is attached as Exhibit B, but here is the relevant exchange:

> **Mr. Taber (on behalf of Katena)**: We also need to discuss logistics for the April hearing testimony. How much time does Coinmint envision with each witness? We should discuss so that we ensure we have them for the appropriate amount of time. With respect to Mr. DeNaut's testimony, the proposed location is about a two-hour drive from New York and an hour-and-a-half from Mr. DeNaut's Greenwich home—would you consider working to identify a more convenient location for the witness, either in Greenwich or in New York if Mr. DeNaut is amenable so that the parties can finish him in one day? To that end, please let us know if you have heard from counsel for any of the witnesses and provide us their name and contact information. Please also provide us with proof of service of the arbitral subpoenas. If you are instead just working with Mr. DeNaut or any of the other witnesses directly, please let us know and we will do the same.
>
> **Mr. Fletcher's Response (on behalf of Coinmint)**: We are in the process of serving the hearing summonses on Bleck, Maloney, and DeNaut, and will provide proof of service to you in due course. The Panel's order makes clear that the Panel views the dates and locations of those hearings as firm. We are thus not in a position to agree to change them or add additional parameters not addressed in the Panel's order. I find it ironic that you are insisting on time to examine these witnesses, given that you opposed our request for these hearings.[6] These are witnesses that we are calling to testify. We will examine them as efficiently as possible. I have no doubt that if the Panel concludes we are being dilatory in our examination, they will rule accordingly. But we cannot commit to an exact length of examination in advance, having no idea of the documents the witnesses will or will not produce at the hearing or what they will say under oath.

In other words, Coinmint's proposal is that it be allowed to start the questioning of each witness, take as much time as it wants, and leave Katena with an hour or two at the end of the day (if that). But that is not equitable. Although witness lists for the hearing are not due until August 7,

---

[6] Coinmint is fond of saying that Katena opposed Maloney, DeNaut, and Bleck testifying, so "you get what you deserve." False. As Katena said to the Panel from the outset, "Katena agrees that the below witnesses should be subpoenaed for attendance at the August and September hearing." The only thing Katena objected to was "asking the witnesses to sit for depositions before the Panel and then asking the witnesses to come back for the first week of the evidentiary hearing." The Panel did not authorize subpoenas for one round of depositions and a separate round of hearing testimony, resolving Katena's objection.

Katena will identify each of these witnesses on its list. It is only fair we get equal time with each witness. We therefore respectfully request that the Panel set a schedule for each hearing day (with set start and end times for each side's allotted questioning) so that the parties can plan their presentations. We also ask the Panel to allow Katena to start the questioning of either Maloney or DeNaut. And we ask the Panel to provide for any other parameters it finds appropriate; as the Panel can plainly see, there is no common ground being found (or attempted) between lawyers.

We also have witness-specific concerns. For Mr. Maloney, we are deeply concerned that one hearing day will not be enough time given his centrality to this case. Mr. Maloney is the only Coinmint witness who: heard the alleged misrepresentations; participated in negotiating the Agreement; participated in the June 2021 discussions that Coinmint contends resulted in the formation of an oral agreement; or ever spoke to Robert Bleck or reviewed the Bleck Report before Coinmint "anticipated litigation." Until he left Coinmint in mid-September 2021, Mr. Maloney was involved in every missed, late, and partial payment from Coinmint. He worked extensively with Ms. Schneider, Coinmint's controller, on getting payments for Katena and heard Ms. Schneider's complaints that Coinmint was "broke." As the CFO, he would have been involved in Mr. Soniat's plans to sell Coinmint and can explain how the Agreement for Katena's K10 Miners fit into that plan. We easily see Katena needing at least 5 hours of testimony from Mr. Maloney, and that is being extremely efficient with the questioning. Katena does not want to see any of this evidence cut short—the facts are on our side. We simply want the ability to provide the Panel with all the facts it needs to get a full and complete picture of the kind of business that Coinmint really is, and what happened. As such, we ask the Panel to modify the subpoena (which we understand has not yet been served on Mr. Maloney) or authorize the issuance of a second subpoena to allow for two hearing days given the unique importance of Mr.

Maloney to this case. We appreciate that coordinating the Panel's schedules is no small task, and we will do whatever we can to accommodate the Panel and Mr. Maloney if it means ensuring that Mr. Maloney's testimony is not artificially cut short.

As for Mr. DeNaut, Coinmint has proposed an inconvenient location for his testimony that may constrain the time the parties have with this critical witness. The location suggested by Coinmint's counsel for his hearing testimony is just outside Hartford, Connecticut, which is approximately 1.5 hours from Mr. DeNaut's home in Greenwich, Connecticut (more in traffic) and would be a significant inconvenience for him. It will inconvenience the parties and the Panel, who will all need to travel more than two hours from Mr. Maloney's testimony in New York to Hartford for Mr. DeNaut's testimony. We did not appreciate the difference previously or we would have raised it. Would the Panel consider modifying its subpoena to identify the place of Mr. DeNaut's testimony as the offices of Whitman Breed Abbott & Morgan LLC, 500 W. Putnam Avenue, Greenwich, Connecticut 06830, so as to be more convenient to Mr. DeNaut and allow more time for testimony? Whitman Breed has offered us the use of their facilities without cost as a professional courtesy (they do not represent either party in this matter), so there will be no prejudice to the Parties in changing venue. Of course, this might all be moot if Mr. DeNaut is willing to voluntarily travel to New York instead, but we won't know that until Coinmint serves the hearing subpoena and Mr. DeNaut obtains counsel that is shared with us.

Lastly, we have asked repeatedly to be apprised of when Coinmint actually serves the subpoenas and the contact information for the attorneys representing these individuals as soon as Coinmint receives it. It seems clear that Coinmint is attempting to run out the clock and minimize the time these witnesses testify, and we simply want the ability to coordinate so the Panel can get the information it deserves.

### III.     Katena May Need a Trial Subpoena For Ms. Schneider.

Lastly, there's Kathleen Schneider, Coinmint's former controller. Coinmint belatedly disclosed in late January, after we had requested her documents and identified her as a key witness, that Ashton Soniat fired her (as he had the rest of Coinmint's executive team). Coinmint further disclosed that it did not collect or preserve her mobile data even though she was fired after this arbitration was filed and even after the start of document discovery. And while Coinmint originally agreed to ask her for mobile data and deposition dates, after Order No. 18, Coinmint changed its position and now refuses.

We did not know prior to the January 31 deadline that this would be an issue, but we know now that Coinmint hasn't done what it was required to do and that the only path to getting Ms. Schneider's documents is a subpoena. Mr. Foret testified that Ms. Schneider was Coinmint's "air traffic controller" who "managed a lot of the flow of information and work and reported back up directly to Mr. Soniat," and so we expect that her mobile data includes material communications with Mr. Soniat that have not been produced (and may not otherwise be given what we know about Mr. Soniat's phone).  We respectfully request leave from the Panel to set an evidentiary hearing in Houston, Texas, where we understand Ms. Schneider to live, for the purpose of obtaining her documents and mobile data.

As for Ms. Schneider's testimony, we think it's most efficient for the Panel to wait. There is a lot of overlap between Ms. Schneider's and Mr. Maloney's knowledge. If Mr. Maloney does not successfully quash his subpoena and testifies, and if each side has enough time to ask him all its questions (ideally over two hearing days), then Ms. Schneider's testimony will likely be cumulative and unnecessary. But if Mr. Maloney does not show, or if we are severely constrained in the questions that we can ask him, we'll have to triage and Ms. Schneider may be

the only witness available to testify about her key communications with Mr. Maloney. If the Panel would prefer to move forward and schedule a hearing date for Ms. Schneider's testimony now, we can certainly do that. But in our view, there is enough time before the July 31, 2023, deadline set by Order No. 1 for third-party subpoenas, if that deadline still controls.

## IV.   Conclusion

We recognize that we are asking the Panel to reconsider an earlier ruling, and the reason we are doing that is that a lot in this case has changed since January. Coinmint has sued these individuals, disavowed the SPO, shown that it will use information from the Arbitration in public filings to smear its litigation adversaries, and continues to be late on its production. And on the other hand, Coinmint can hardly be heard to complain as it delayed service for weeks. We still don't know if the subpoenas have been served, although we suspect not as Coinmint failed to provide us with proof of service as requested (and as customary), meaning that another "emergency" is likely coming.

Getting the Panel's decision on the sanctions for Coinmint's past and planned ongoing violations of the SPO, getting the documents that Coinmint continues to delay in producing, and giving the Federal Court the opportunity to stay that matter, will put things in place to deal with Coinmint's conduct and to give the Panel a more fulsome picture when these witnesses testify.

For the reasons stated above, Katena respectfully asks the Panel to:

1. Set a schedule for each third-party witness hearing day, with set start and end times for each side's allotted questioning;
2. Modify the schedule to allow for two hearing days in which to complete Mr. Maloney's testimony;
3. Modify the location of Mr. DeNaut's hearing testimony to the Greenwich, Connecticut, offices of Whitman Breed Abbott & Morgan LLC for the convenience of the witness and the parties;
4. Postpone Mr. Bleck's hearing testimony until after the close of expert discovery (or at least after the disclosure of opening expert reports);

5. Issue a subpoena for the production of Ms. Schneider's relevant documents that remain in her possession, such as mobile data; and

6. Grant Katena leave to request a testimony subpoena of Ms. Schneider, if necessary, following the completion of Mr. Maloney's hearing testimony or earlier depending on the date the Panel takes Mr. Maloney's testimony.

Dated: March 3, 2023                                        Respectfully submitted,

                                                     PERKINS COIE LLP

By: */s/ John R. Hardin*
    John R. Hardin
    Jacob J. Taber
    500 N. Akard Street, Suite 3300
    Dallas, Texas 75201
    Tel: 214.965.7700
    Fax: 214.965.7799
    JohnHardin@perkinscoie.com
    JTaber@perkinscoie.com