# EXHIBIT 12

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| COINMINT, LLC, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | **CLAIMANT COINMINT, LLC'S** |
| | ) | **MOTION FOR CLARIFICATION OF** |
| KATENA COMPUTING TECHNOLOGIES, | ) | **AAA PANEL ORDER NOS. 29 AND 30** |
| INC., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Claimant Coinmint, LLC respectfully submits this Motion for Clarification of AAA Panel Order Nos. 29 and 30, on the following grounds:

## 1. INTRODUCTION

The Panel's Order No 30 creates an untenable situation for the upcoming evidentiary hearings of Robert Bleck, James DeNaut, and Michael Maloney, for which Coinmint seeks clarification.  At paragraph 5(b) of Order No. 30, the Panel has ordered "that all documents produced by Messrs. DeNaut, Maloney, and Bleck in this arbitration shall be 'CONFIDENTIAL,' meaning that they are strictly to be used only in this arbitration, and are entitled to the protections from disclosure, dissemination, or other use as provided by Order No. 6."  As the Panel is aware, the parties both agree that DeNaut and Maloney were either employees and/or agents of Coinmint for most of the relevant period (indeed this forms the basis of Coinmint's breach of loyalty allegations against DeNaut and Maloney).  In addition, Coinmint hired and compensated Bleck as a consultant, believing that he was an independent hardware engineer, to prepare the engineering diligence report.  Coinmint has consistently taken the position, in accordance with applicable law, that documents in the possession of DeNaut, Maloney, and Bleck belong to Coinmint and has attempted to recover its documents from DeNaut, Maloney, and Bleck.  These attempts have included properly requesting that the Panel hold evidentiary hearings to obtain said documents

from DeNaut, Maloney, and Bleck over the objections of Katena.

Thus, Coinmint seeks clarification as to whether the Panel intends (a) to decide *sua sponte* that none of the documents in the possession of DeNaut, Maloney, and Bleck properly belong to Coinmint; (b) to impose "CONFIDENTIAL" designations on documents that properly belong to Coinmint; and/or (c) to prohibit Coinmint from using its own documents outside of the arbitration. This is the effect of Order No. 30, and Coinmint needs confirmation that the Panel intends this outcome, as this will necessarily affect how Coinmint approaches each of the evidentiary hearings. Coinmint also needs clarification to analyze properly whether it needs to seek court intervention to gain appropriate access to its own documents currently in the possession of DeNaut, Maloney, and Bleck.

Coinmint also seeks clarification regarding paragraph 4 of Order No. 29 in which the Panel has elected to "exclude court reporters from the hearing proceedings."  Without the presence of court reporters, Coinmint seeks clarification regarding (a) whether the Panel's notes will serve as the official record of the hearings; and, (b) the making of a record of non-appearance if a witness fails to appear.

## 2.  ARGUMENT AND AUTHORITIES

### A.  Order No. 30: Coinmint's Documents in the Possession of DeNaut, Maloney, and Bleck.

It is established law in California that documents prepared by an employee for use within the scope of their employment belong to the employer.  (Lab. Code, § 2860 ["Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."].)  It is undisputed that DeNaut and Maloney were at the time of the events in question senior management employees and  officers of Coinmint. Thus, any emails or other documents that they created or may have from their time of employment with Coinmint relating to the work Coinmint hired them to do clearly belong to Coinmint under

the law.  (*Ibid*.)  When an employee retains work documents after their employment ends, they have no property rights as to those documents and must return them to their employer.  (See *Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 781 ["The Court finds that Plaintiff and Plaintiff's counsel have improperly refused to return privileged and otherwise improperly acquired documents precipitating the necessity of this motion. Regardless of whether some of the documents may be ultimately discoverable, defendants have, and have always had, the right to keep their own documents until met with proper discovery requests or ordered to disclose them by the Court. Plaintiff improperly removed documents essentially belonging to Defendant around the time he left Defendant's employ. . . The prudent and good faith thing for Plaintiff's counsel to have done in February, 1986 would have been to immediately return the documents."].)

With respect to Bleck, the supposed independent engineer Coinmint hired to perform the engineering due diligence, the analysis is somewhat different because section 2860 itself does not apply to independent contractors.  With independent contractors, ownership of their documents is governed by not 2860 but rather by the terms of the contract pursuant to which they were retained. "Although California law presumes employers own property their employees develop, independent contractors' property rights depend on the relevant employment agreement."  (*PEO Experts CA, Inc. v. Engstrom* (E.D. Cal., Sept. 21, 2017, No. 217CV00318KJMCKD) 2017 WL 4181130, at *9, citing Labor Code § 2860 ["No such presumption exists for independent contractors, however, whose ownership rights are determined by the parties' agreement."].)

The independent contractor agreement between Bleck and Coinmint provided that: "The Independent Contract is engaged in offering services related to reviewing the architectural, design and manufacturing feasibility of a custom ASIC and is being retained in that capacity…."  Equally important, the independent contractor agreement between Bleck and Coinmint provided that "any

information" Bleck obtained from Coinmint or Katena that is of a secret nature while in his position was confidential and needed to be returned to Coinmint "at the earlier of the Company's request, and if no such request is made prior to the termination of this Agreement, then immediately upon termination of this Agreement." (See Exhibit A, Robert Bleck Independent Contractor Agreement, ¶ IV.).

Here, Katena has designated all communications and documents related to this matter as confidential, and if the Panel is inclined to let that stand, then for consistency purposes the law of this case is such that all the communications involving Bleck were of a secret nature and thus belong to Coinmint. Bleck would have no legal right to withhold or make designations as to Coinmint's documents.

If the Panel is inclined to hold that not all the communications and documents relating to this transaction are confidential, and is inclined to de-designate many of Katena's confidentiality designations, then it is possible that not all of Bleck's documents in this matter belong to Coinmint and evaluation will need to be done on a document by document basis. With this approach, any designation of a document produced by Bleck that is covered by his NDA with Coinmint will need to be de-designated or ignored.

Thus, all documents and communications involving DeNaut and Maloney, and many or all documents and communications involving Bleck that concern or relate to the transaction between Katena and Coinmint in which DeNaut, Maloney, and/or Bleck were or should have been acting on behalf of Coinmint properly belong to Coinmint. (Lab. Code, § 2860; *PEO Experts CA, Inc. v. Engstrom* (E.D. Cal., Sept. 21, 2017, No. 217CV00318KJMCKD) 2017 WL 4181130, at *9.)

B.  Order No. 29: Exclusion of Court Reporters

 The Panels' Order No 29 denies Coinmint's request for the presence of a court reporter and, presumably, a member of the Panel will take notes of the proceedings. However, the ruling

by the Panel presents a dilemma that Coinmint respectfully requests the Panel address prior to the start of the testimony.  Specifically, in the event that a witness fails to appear, how will the Panel address the issue and/or how will the parties make an official record of non-appearance that can be presented to the district court to enforce the Panel's summons issued to third parties?  Normally this would be done by a court reporter's transcript that makes a record of the non-appearance; but no court reporter will be present to perform that function.  Does the Panel's ruling mean that the notes transcribed by a Panel member will serve as the official record of the proceeding and any future proceedings, and if these notes are "CONFIDENTIAL" under the protective order, as Order Nos. 29 and 30 suggest they will be,, how might the parties use them to enforce the Panel's summonses?  If the parties cannot use the Panel's notes, then what mechanism should the Parties use to prepare an official record of the proceedings for enforcement with the district court? The answer to these questions will affect how Coinmint approaches each of the evidentiary hearings, including whether to retain a court reporter for the limited purpose or making a record of non-appearance.

### 3. <u>CONCLUSION</u>

Therefore, under Order No. 6, Coinmint should retain the right to designate (or not designate) documents produced by DeNaut, Maloney, and Bleck that properly belong to Coinmint. If DeNaut, Maloney, and Bleck want to take advantage of the protections offered under Order No. 30, they should be required to show that the documents for which they seek said protections do not belong, in fact, to Coinmint.  Absent this showing, the documents should be deemed to belong to Coinmint, and Coinmint should be permitted to use its own documents as it sees fit.  To hold otherwise, and allow them to make unilateral decisions as to the use of such documents in this and other instances would allow them to keep "an advantage which was wrongfully gained."  (*Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 785 [former employee took three boxes of documents

5

from employer and was ordered to return them].)

## 4. PRAYER

Coinmint prays that the Panel provide clarification for its Order No. 30, and either (1) confirm its intent (a) to decide *sua sponte* that none of the documents in the possession of DeNaut, Maloney, and Bleck properly belong to Coinmint; (b) to impose "CONFIDENTIAL" designations on documents that properly belong to Coinmint; and/or (c) to prohibit Coinmint from using its own documents outside of the arbitration; or (2) revise Order No. 30 to address the concerns identified herein by Coinmint. Coinmint respectfully submits that the Order No. 30 can be clarified by requiring the third party seeking to take advantage of the protections afforded under Order No. 30 to rebut the presumption with clear and convincing evidence that the subject document or communication does not properly belong to Coinmint.

Coinmint also prays that the Panel provide clarification for its Order No. 29, and either (1) confirm its intent (a) to administer oaths to all witnesses at the evidentiary hearing; and (b) provide an official record of non-appearance that can be presented to a district court to enforce summons issued to third parties; or (2) revise Order No. 29 to address the concerns identified herein by Coinmint.

Dated: 03/30/2023

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____

Robert A. Lemus
TX State Bar No. 24052225
rlemus@grsm.com
1900 West Loop South
Suite 1000

6

Houston, TX  77027
713-961-3366
713-961-9398 fax


By:_____
Fletcher C. Alford
CA State Bar No. 152314
falford@grsm.com
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 875-3115
Facsimile:  (415) 986-8054

**ATTORNEYS FOR CLAIMANT
COINMINT, LLC.**

# EXHIBIT A

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is entered into between:

| | |
|---|---|
| **COINMINT, LLC**<br><br>**1413 Avenida Ponce de Leon**<br><br>**San Juan, PR 00946**<br><br>(the "Company") | **INDEPENDENT CONTRACTOR**<br><br>(the "Independent Contractor") |

The Company and Independent Contractor may collectively be referred to herein as the Parties.

## I.   SERVICES RENDERED

    *A.*   ENGAGEMENT AND BUSINESS. In consideration for the mutual agreements set forth herein, the Company hereby agrees to engage the services of Independent Contractor and Independent Contractor hereby agrees to perform services for the Company, in the capacity and under the arrangement set forth below. ***The Independent Contract is engaged in offering services related to reviewing the architectural, design and manufacturing feasibility of a custom ASIC and is being retained in that capacity only unless the Parties agree in writing to extend the scope of services offered by Independent Contractor.***

    **B.**   RELATIONSHIP. Nothing contained in this Agreement is intended to create the relationship of employer and employee between the Company and Independent Contractor. Independent Contractor shall at all times be an independent contractor, and shall be free to exercise his/her own judgment as to the time, place and means of performing all acts hereunder. Independent Contractor agrees to conform to and comply with the Company regulations and procedures, as well as customer specifications, to the extent necessary to carry out the services for which Independent Contractor is retained.

*This is a personal services agreement, and Independent Contractor understands and agrees that he / she will not engage another individual or company to perform any service for which he / she has been engaged under this Agreement, but will personally perform such service absent prior written permission from the Company.*

    **C.**   DESCRIPTION. By this Agreement, Independent Contractor has been engaged by the Company and is being retained to provide the following services to Company: high level review and feasibility assessment of the proposed custom ASIC as enumerated below.
- General assessment of architectural feasibility and power efficiency
- General assessment of design methodology, simulations and pre-silicon validation
- General assessment that typical and industry standard ASIC engineering best practices are being followed
- General assessment of post-silicon validation plans such as wafer level probing or post-packaging ATE programs

- Risk profile assessment of semiconductor fabrication partner and manufacturing process node

The Parties can expand the scope of services provided by Independent Contractor by an addendum to this Agreement.

**D.    RESPONSIBILITY OF INDEPENDENT CONTRACTOR.** Independent Contractor shall:

**1.**  Be responsible for performing any job offered and accepted on the terms requested by the Company with a standard of care that meets the requirements of this Agreement and is in the best interests of the Company;

**2.**  Be responsible for and pay his/her own health insurance, disability insurance and all other similar benefits which the Company will not pay under this Agreement;

**3.**  Be responsible for carrying and pay the costs of a general liability insurance policy that covers the services being performed by Independent Contractor for Company and that is sufficient to indemnify the Company for Independent Contractor's negligence;

**4.**   Be responsible for carrying and pay the costs of a workers' compensation policy (if the Independent Contractor has employees);

**5.**  Be responsible for and pay the costs of his/her own business equipment and all ordinary travel expenses incurred in the course of performing services for the Company under this Agreement;

**6.**  Be responsible for and pay all of his/her employees directly as the Company will not pay, nor have any responsibility to, Independent Contractor's employees, and

**7.**  Invoice the Company for services rendered on a monthly basis. Independent Contractor shall submit a detailed invoice of the services rendered, the rate charged and total amount owed.

**E.    RESPONSIBILITY OF COMPANY.**

**1.**  Any jobs offered to the Independent Contractor from the Company will be at the sole discretion of the Company. For jobs offered to the Independent Contractor, the Company shall:

a.    Make sure that Independent Contractor has sufficient information and other documentation as necessary to perform the job(s) on which Independent Contractor has agreed to perform services; and

b.    Reimburse Independent Contractor for reasonable and necessary expenses that are necessary to perform the job and are pre-approved by Company (but which shall not include overhead expenses of Independent Contractor's business). All expenses will be reimburese at the actual cost to Independent Contractor.

c.

**II.    RESPONSIBILITY FOR TAXES**

Independent Contractor understands and agrees that the Company will not withhold

income, occupation or other taxes from Independent Contractor's income. The Company will not make any social security, worker's compensation, unemployment or other similar payments or contributions on Independent Contractor's behalf to any federal, state, or local agency or fund. Rather, Independent Contractor is responsible for paying or making all federal, state or local income, occupation, social security, unemployment, worker's compensation, self-employment and other taxes, payments and contributions which are due or may become due and payable on account of any compensation received by Independent Contractor. Because Independent Contractor is self-employed, he/she is responsible for completing the appropriate IRS forms, and he/she shall receive an IRS Form 1099 at the end of each calendar year from the Company.

## III.    TERM OF AGREEMENT

**A.    INDEFINITE PERIOD.** This Agreement will begin on the date of the last signature below (the "Start Date"), and shall remain in force for an indefinite period but is expected to terminate no later than 7 days from the Start Date. However, either party hereto may elect to terminate this Agreement, at any time and for any reason, by giving the other party at least two (2) days written notice, sent by personal delivery, e-mail or certified mail, return receipt requested to the addresses contained at the top of this Agreement. All services that are completed by Independent Contractor prior to any written notice must be credited as services performed by Independent Contractor for which compensation under this Agreement is due.

**B.    AUTOMATIC TERMINATION.** Notwithstanding the two (2) day termination notice, this Agreement may be terminated immediately by the Company upon the occurrence of:

**1.**   Independent Contractor breaches any term of this Agreement and/or engages in acts that may injure the Company's interests and/or reputation;

**2.**   Independent Contractor fails, after accepting a job from Company, to show up for the job or fails arrive timely to perform the accepted job;

**3.**   Independent Contractor disobeys reasonable rules of the Company and/or reasonable rules of any customer or on any job site where services are to be performed;

**4.**   Independent Contractor engages in acts that result in, or are intended to result in, the his/her personal gain or enrichment to the detriment of the Company;

**5.**   Independent Contractor violates any federal, state or local law, including but not limited to, those pertaining to the operation of motor vechicles;

**6.**   Independent Contractor commits an act of dishonesty or other act of material misconduct, or a fraudulent act or a felony, driving under the influence while performing services under this Agreement or violating the laws of any state or the United States;

**7.**   The death of the Independent Contractor, or the inability of the Independent Contractor to perform his/her duties hereunder, whether by reason of injury (physical or mental), illness or otherwise, incapacitating him or her for a continuous period exceeding seven (7) days.

**C.    COMPENSATION.** The Company will pay to Independent Contractor the following compensation in consideration for services performed pursuant to this Agreement:

**1. RATE**. The Company will pay to Independent Contractor an hourly rate in the amount of **$300.00** (the "Compensation").

**2. RETAINER.** Company shall not provide Independent Contractor with a retainer. In the event that Company does provide a retainer, the retainer provided by Company may be used by Company to offset any invoice submitted by Independent Contractor. Independent Contractor shall return any remaining retainer within seven (7) days from the termination of this Agreement.

**3. NO OTHER COMPENSATION.** Independent Contractor understands and acknowledges that other than the Compensation outlined above, that he/she shall not be entitled to any additional money or other form of compensation under this Agreement.

## IV.    NON-DISCLOSURE OF CONFIDENTIAL INFORMATION

**A.    CONFIDENTIAL INFORMATION.** In order to assist Independent Contractor in the performance of his/her duties under this Agreement, the Company has provided, and will continue to provide, to Independent Contractor information that is confidential, trade secret and proprietary in nature. This information includes, but is not limited to, information and materials belonging to the Company, its affiliates and/or to third parties (including but not limited to vendors, customers and prospects of the Company who have furnished such information and materials to the Company under obligations of confidentiality). Confidential information includes, but is not limited to, any information Independent Contractor obtains from the Company, customer, vendor or prospective customer of the Company during the term of this

Agreement, such as inventions, ideas, technical data, medical information, product specifications, customer/prospective customer lists, business methods, business forms, procedures and processes, machinery, apparatuses, prices, financial information, discounts, manufacturing costs, computer and information systems (including software which shall encompass source code, object code) documentation, diagrams, unpublished works of any nature whether or not copyrightable, future plans, policies, and all other information and knowledge in whatever form used in management, engineering, sales, manufacturing, marketing, purchasing, finance, operations, which is of a secret nature, ("Confidential Information").

**B.    NON-DISCLOSURE.** Except as authorized by the Company in writing, Independent Contractor will not disclose or use, directly or indirectly, either during or subsequent to the termination of employment with the Company, any Confidential Information that he/she obtains from the Company, or a customer, prospect or third party associated with the Company. Independent Contractor shall return to the Company any original documents, copies and/or other Confidential information regardless of whether it exists in hard copy, software or where it is kept, customer entry codes and / or keys upon the earlier of the Company's request, and if no such request is made prior to the termination of this Agreement, then immediately upon termination of this Agreement.

## V.    INDEMNIFICATION

Independent Contractor agrees to indemnify and hold harmless the Company, and its respective principals, affiliates, agents, employees successors and assigns against any and all losses, claims, damages, judgments, penalties, liabilities and expenses of every kind (including,

without limitation, all expenses of litigation, preparation therefore, including reasonable attorneys' fees, whether or not the Company is a party thereto), which result from or arise out of any act or omission on the part on Independent Contractor or its respective principals, affiliates, agents, employees successors *without limit and without regard to the cause or causes thereof or the negligence of Company*.

## VI.   OTHER PROVISIONS

**A.      GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, regardless of conflict of law principles, and all obligations are performable in St. Lawrence County, New York. Venue for any dispute arising from, related to or ancillary to this this Agreement shall be in a court of competent jurisdiction in St. Lawrence County, New York to the exclusion of all other venues.

**B.      SEVERABILITY**. If any provision or subsection is held to be over broad as written, Independent Contractor agrees that a court should reform the provision or subsection to render the provision or subsection reasonable and enforceable to the greatest extent allowed by law.

**C.      INJUNCTIVE RELIEF**. It is acknowledged and agreed that it is difficult and/or impossible to measure damages to the Company for a breach of one or more of the promises by the Independent Contractor set forth in this Agreement and that therefore there may not be an adequate remedy for such breach. Independent Contractor acknowledges and agrees that if he/she materially breaches any part of this Agreement, the Company shall be entitled, in addition to all other remedies it may have in law and in equity, to seek injunctive relief, or other appropriate equitable relief, without showing or proving irreparable injury and/or any actual damages sustained by the Company.

**D.      ATTORNEY'S FEES AND COSTS**. If Company is required to initiate legal action to enforce any provision of this Agreement, Independent Contractor shall be responsible for the payment of all costs, including the Company's attorney's fees associated with such legal action.

**E.      ASSIGNMENT.** The Company may transfer or assign its rights or obligations hereunder with written notice to Independent Contractor. Independent Contractor may not assign this Agreement.

**F.      MUTUAL NON-DISPARAGEMENT**. The Parties to this Agreement agree that during and, after the expiration of this Agreement, they will refrain from making any verbal or written statements that criticizes, disparages or discredits the other party or any of such party's business practices or properties. This includes a prohibition of disparaging posts on social media, twitter, texts and/or any other verbal or written statements that disparage the other party.

**G.      ENTIRE AGREEMENT.** This Agreement contains the entire understanding and agreement between the Parties, completely replaces all prior agreements, oral and/or written. The Agreement may not be changed orally, but may only be changed by a written instrument signed by the Company and Independent Contractor.

**H.      WAIVER.** The waiver of a breach of a term / condition of this Agreement shall not be deemed to constitute the waiver of another breach of the same or any other term or condition.

**I.      NO JURY TRIAL**. **The Parties agree to waive, to the fullest extent permitted by**

**INDEPENDENT CONTRACTOR AGREEMENT- (Contractor's_____initials)                    PAGE 5**

law, their right to a jury trial for any dispute arising out of this Agreement. By signing this Agreement, the Parties understand and acknowledge that they are waiving their right to have a jury trial, and that any dispute arising under this Agreement shall be decided exclusively by a Judge presiding over a court of competent jurisdiction in St. Lawrence County, New York.

      **J.**      **NOTICE.** Any notice, demand, or communication required or permitted to be given under this Agreement shall be deemed effectively given when personally delivered, e-mailed or mailed by prepaid certified mail, return receipt requested, addressed to the Party at the primary address of the Company or, at the last known address of Independent Contractor.

      IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the date designated below and agree to be bound as set forth above.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

**AGREED:**


**COINMINT, LLC(COMPANY)**

By:    _Michael Maloney_____
          [SIGNATURE]

          _Michael Maloney_____
          [PRINTED NAME]

          CFO_____
          [TITLE]

          5-18-2021_____
          [DATED]



**ROBERT BLECK CONSULTING (INDEPENDENT CONTRACTOR)**


By:    _____
          [SIGNATURE]

          _____
          [PRINTED NAME]

          _____
          [TITLE]

          _____
          [DATED]