# EXHIBIT 17

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Coinmint, LLC,<br>　　　Claimant / Counter-Respondent,<br><br>　　　-against-<br><br>Katena Computing Technologies, Inc.,<br>　　　Respondent / Counter-Claimant. | Case No. 01-22-0001-7627<br><br><br>**KATENA'S RESPONSE TO<br>COINMINT'S EMAIL** |

　　　Katena responds to Coinmint's February 22, 2023 "emergency" email seeking to compel the deposition of Sagar Reddy on February 28, 2023.

**EXECUTIVE SUMMARY**

　　　The overarching problem is Coinmint's past intentional violation of the Stipulated Protective Order ("SPO") and its ongoing refusal to acknowledge that the SPO requires all information obtained in this Arbitration to be used only for this Arbitration and prohibits that information from being publicly disclosed. It's this ongoing refusal that is particularly problematic. When the Panel requested briefing on Coinmint's breach of the SPO, Katena expected Coinmint to argue that its breach had been inadvertent somehow or show some contrition. Not so. As we learned when Coinmint responded on February 9, 2023, Coinmint intentionally and willfully breached the SPO because Coinmint believes that the SPO is void and unenforceable and, even if it is enforceable, that it permits Coinmint to use confidential discovery materials in court to pursue claims against other parties. Since then, Coinmint has doubled down on this position. Despite repeated requests from Katena, counsel for Coinmint has never represented that Coinmint will honor the SPO going forward. And it still will not acknowledge to Katena or to this Panel that it has been found to have violated the SPO, or that it understands that the SPO prohibits its use of confidential discovery materials in court.

Against that backdrop, we had to decide whether we could go forward with the previously scheduled deposition of Sagar Reddy, who as Katena's CTO knows all of the company's most sensitive trade secrets (the public disclosure of which could, literally, destroy the business). We also had to consider that Coinmint is currently suing Mr. Reddy in California and seeking $23 million in damages against him in his individual capacity—substantially increasing the likelihood that Coinmint will publicly disclose (by using in that California proceeding) Mr. Reddy's deposition transcript or the highly confidential information that would be contained therein. In a world where all parties honor the SPO, we would go forward. Katena *wants* to move this case along. But because Coinmint refuses to comply with the SPO, we have a duty to protect our client and our client's trade secrets.

The damage to Katena from Coinmint's actions is real and we seek the Panel's immediate help to correct Coinmint's ongoing violations. At page 8 of this brief, Katena proposes three specific solutions to move this matter forward. Katena is not interested in stalling discovery. No doubt Mr. Reddy has valuable information. The story the Panel has heard from Coinmint about Mr. Bleck and Mr. Reddy is rubbish, and Mr. Reddy's testimony as well as his documents will show that. But requiring Mr. Reddy to sit for a deposition under these circumstances, without a deterrent against Coinmint's planned future violations of the SPO, would substantially prejudice both Katena and Mr. Reddy.  It would put at risk Katena's commercially valuable intellectual property and other sensitive information, like vendor relationships, pricing strategies, and discussions with chip manufacturers. Katena therefore respectfully requests that the Panel deny Coinmint's request and allows Mr. Reddy's deposition to be rescheduled for a date after the Panel rules on Katena's application for sanctions.

## PROCEDURAL BACKGROUND

The timing and way Coinmint submitted this to the Panel is important. Coinmint submitted a Redfern to Katena on Monday, February 20th, on discovery disputes, including seeking new document requests related to Mr. Reddy. Coinmint could (and should) have followed Order No. 12 and addressed its concern about Mr. Reddy's deposition through the Redfern process. ("To the extent that either party has a dispute concerning the other party's responses to discovery, such a dispute <u>may not</u> be submitted to the Panel orally <u>or informally by email</u> or letter submission.")  If Coinmint had, the issue would have been submitted and fully briefed this week, and the Panel could have ruled on deposition and documents all at once. But that's not Coinmint's way. So, here we are—again—with another Coinmint "emergency" email to the Panel. And until Coinmint is corrected, they will continue. They've shown that.

As for Mr. Liu's statement that an "urgent situation has arisen" and the implication that the timing was such that emailing the Panel was warranted, it's false. Katena raised its concerns regarding the scheduling of Mr. Reddy's deposition with Coinmint on February 14—three business days after Coinmint first disclosed to Katena and to the Panel that Coinmint does not believe that the SPO is binding or enforceable. When Coinmint was unwilling to provide meaningful solutions, Katena informed Coinmint on February 15th that Katena accordingly would not be able to produce Mr. Reddy for deposition at this time. If Coinmint believed this was so urgent that ignoring Order No 12 was warranted, Coinmint should have sent its email last week. Or it could have raised it on the Redfern chart it sent on Monday (or sent the Redfern sooner and requested an earlier submission date to the Panel). Coinmint's decision to wait until Wednesday—less than a week before the demanded deposition date—so Katena and the Panel could engage in this fire drill is telling and reason enough to deny Coinmint's Motion.

## FACTUAL BACKGROUND

What changed between Katena emailing the Panel on January 24 about Mr. Reddy's availability and Katena's email to Coinmint on February 14? Coinmint's deliberate and intentional disregarding of the SPO through the filing of the California Complaint, which it disclosed to Katena on February 6.  There is no doubt that, had Coinmint filed the California Complaint and shared it before Katena emailed the Panel on January 24, 2023, this discussion would have happened then. Should Coinmint get a pass on its timing? Coinmint has argued that "we told everyone we were filing a lawsuit." True, but Coinmint did not tell the Panel or Katena that it viewed the SPO as unlawful and that Coinmint would not be honoring it. I'm sure the discussion at the January 19 hearing would have been significantly different if Coinmint had.

The ongoing issue is Coinmint's adherence to its position that the SPO does not apply to its California action or preclude it from using information from the Arbitration over there. Coinmint has shown no remorse for what it did, fully intends to do it again, and now demands to depose Mr. Reddy, who is Katena's Chief Technology Officer, designed the chip at issue, and possesses other confidential information that is highly sensitive. Coinmint is well aware that the most commercially valuable information in this case—the "special sauce" that makes Katena's chip design more efficient (and profitable to customers) than its competitors'—is in Mr. Reddy's hands.  Katena has no choice but to zealously protect that information.

February 14 was three business days after Coinmint disclosed to everyone it had intentionally disregarded the SPO and views the SPO as unenforceable. Coinmint emailed about the location of Mr. Reddy's deposition,[1] and Katena responded with its concerns:

> The issue is Coinmint violated the Protective Order and you've gone so far as to assert that the Protective Order does not "prohibit[] the use of any documents produced during the arbitration to initiate lawsuits against non-parties." Of course

---

[1] Mr. Liu says Coinmint emailed "multiple times." It was Friday and Monday.

we disagree with you, but given your stated view that there is no protective order in place, we are unable to make Mr. Reddy available for a deposition. He is Katena's Chief Technology Officer with some of the most sensitive data such as the design of the chip, the performance of the chip in comparison to the industry, confidential workings with IMEC and TSMC, and other sensitive topics that we assume you intend to question him about. History tells us you clearly intend to disclose the testimony to the public and use it for purposes other than this arbitration, including the California lawsuit against Mr. Reddy.

We told them our one and only problem—Coinmint's rejection of the SPO. In response, Coinmint claimed that it would not be asking about the "technical intricacies of Katena's claimed technology" (whatever that means) but made no further representations about eliminating topics or providing any assurance that it would comply with the SPO (and still hasn't). Again, Katena responded:

You told us and the Panel that Coinmint does not think that the Stipulated Protective Order (Order No. 6) is legally binding or enforceable; that Coinmint deliberately breached Order No. 6 by filing the California complaint; that the Panel is without authority to sanction Coinmint; and that Coinmint does not intend to abide by Order No. 6 in the future. Your email below is consistent on that point—you say that Order No. 20 is "all the protection [Katena] can legitimately demand with regard to the handling of the transcript of Mr. Reddy's deposition," because, in Coinmint's view, any restriction on Coinmint's use of that transcript outside of the arbitration is illegitimate.

Coinmint deliberately filed 14 of Katena's confidential documents as exhibits to a publicly filed complaint, (mis)quoted from those confidential documents in the Complaint, refused to withdraw the Complaint or take any action to limit the public disclosure of those documents and Katena's confidential information. Coinmint has made no efforts to comply in any way with the Stipulated Protective Order, either before or after the Panel issued Order No. 18. So we cannot make Mr. Reddy available for a deposition.

Coinmint did not respond further. It did not offer solutions to the problem it created. It did not seek to meet and confer. It did not send Katena a Redfern chart on Monday (or at any other time) raising this dispute. And, it never committed to complying with the SPO. Silence. Because we heard nothing from Coinmint and Coinmint did not timely raise a challenge with the Panel, we understood that the deposition was off and made plans accordingly.  It is too late now

to put it back on the calendar for February 28, and it seems obvious why Coinmint waited until yesterday to start this fire drill. For that reason alone, Coinmint's motion should be denied.

But even with this submission, Coinmint is coy with what it is willing to do with respect to following the Panel's Orders. Coinmint says "The Panel has issued an order governing the treatment of deposition transcripts and Coinmint fully intends to abide by that order." The "order" Mr. Liu is referencing is Order No. 20, NOT the SPO. While it's the first time Coinmint has said it will follow Order No. 20, it is not the same as saying it will abide by the Stipulated Protective Order (Order No. 6).  To the contrary, Coinmint says "It may well be that such use[2] is ultimately permitted." What? Where is the blanket statement the Panel should expect and demand that "Coinmint will follow the SPO and not use material in this Arbitration elsewhere." And who does Coinmint think will decide that its misuse of Katena's confidential discovery materials is "ultimately permitted"? The only explanation is that Coinmint intends to use Katena's highly confidential discovery materials in the California litigation and "ultimately" intends to seek relief from Order No. 18 and Order No. 20 if and when Katena is forced to go to court to enforce them.  It could not be clearer that Coinmint does not intend to abide by the obligations it voluntarily undertook, and that the Panel ordered, in the Stipulated Protective Order.

**ARGUMENT**

The Panel asked us to state why Katena was unable to go forward as initially planned. Given Mr. Reddy's position as Katena's CTO, the trade secrets he possesses, his status as a defendant in Coinmint's pending lawsuit, his status with DxCorr and its status as a Defendant in the same lawsuit, Coinmint's past actions with respect to the SPO, and Coinmint's expressed

---

[2] Coinmint is referring to the use of Katena's confidential discovery materials outside this arbitration and the public disclosure of those discovery materials.

disagreement with the SPO since publicly filing the California action and its expressed

unwillingness to abide by it in the future, Katena thinks that it is clear that compelling Mr.

Reddy's deposition would substantially prejudice Katena as well as Mr. Reddy. On numerous

occasions, the Panel has encouraged or ordered disclosure based on the protections in the SPO.

We participated in that philosophy; Coinmint didn't, and, instead, used it to its advantage to

create leverage over every witness it could by naming them in the California action.[3] And

Coinmint has made it clear that it intends to continue violating the SPO.

      How do we move this dispute forward? Mr. Reddy's testimony is very important, and the

Panel is going to want to hear from him, but he holds critically sensitive information belonging

to Katena and DxCorr. Respectfully, Katena (and others) should not be put in the position of

hoping the Panel's SPO is honored. What if Coinmint now "super-duper promised" to abide by

the Stipulated Protective Order, would that solve this? No, because history has taught us

otherwise and the Panel read Coinmint's response to Katena's Motion for Sanctions—Coinmint

simply does not believe the SPO stops it from using material from this Arbitration in the

California action.  Whatever Coinmint might say today, it has already said that "ultimately" it

will argue in Court that the SPO is void and unenforceable.

      So with Coinmint's incalcitrant attitude about confidentiality, and the Panel's need to

hear from others who have confidential information or who are being sued by Coinmint in

California (including Mr. Maloney and Mr. DeNaut), how does the Panel move this dispute

---

[3] Katena is also concerned that critical witnesses like Mr. Maloney and Mr. DeNaut may use
Coinmint's breach of the SPO to try and avoid testifying.  Although not the subject of this
dispute, the solutions that Katena proposes may help in securing the testimony of those third-
party witnesses.

forward, get the information it needs to issue an award, and protect the parties' legitimate confidentiality concerns? Katena proposes three solutions.

### A.     Katena's requested sanctions may moot this issue

First, the deposition should not be held (if at all) until after the Panel issues a ruling on Katena's Motion for Sanctions. At the Panel's instruction, Katena has focused its forthcoming brief on remedies that have been ordered by other arbitrators and upheld by courts. Of those, the one that fits here is death penalty sanctions, and there is clear case law that AAA arbitrators can issue such sanctions for the willful public disclosure of confidential discovery materials in violation of a protective order. If the Panel agrees, this dispute (and the need for Mr. Reddy's deposition) is likely over. The briefing schedule contemplates a hearing for May 15. We understand that the Panel has a busy calendar, but to the extent it is needed or helpful, Katena will agree to move up the briefing deadlines and/or hearing on the application for sanctions. Whatever we can do to help the Panel in reaching this decision faster we will do if at all possible.

### B.     Mr. Reddy's testimony should be deferred to the merits hearing

This is arbitration. Depositions are not guaranteed. So, if the Panel issues a lesser sanction and allows Coinmint to continue pursuing its claims, then Mr. Reddy's testimony should be deferred to the evidentiary hearing. Coinmint has sued Mr. Reddy and demands $23 million in damages from him as an individual. Coinmint has made it clear that it does not feel bound by the SPO and that it will use his testimony outside of the Arbitration. Why should Coinmint get a deposition in that scenario? It is improper for Coinmint to seek a deposition in this proceeding for the purpose of getting pre-answer discovery from Mr. Reddy to use in its lawsuit against him.

The AAA Rules do not require or guarantee depositions, and many of the key witnesses in this case on Coinmint's side are not available for deposition (after weeks of false promises by

Coinmint about securing their depositions). Key witnesses like Mr. Maloney and Mr. DeNaut will only be testifying at the hearing.  The Panel could order the same approach for Mr. Reddy. There is no amount of money the Panel could award that would compensate Katena if Coinmint follows its playbook with the sensitive information Mr. Reddy has. But delaying Mr. Reddy's testimony until the hearing would minimize (although not eliminate) the risk by (a) permitting the Panel to, in real time, cabin Mr. Reddy's testimony to avoid the unnecessary disclosure of highly confidential information, and (b) allowing the Panel to order that Mr. Reddy's testimony is not transcribed or, if it is transcribed, that the transcript be for the Panel's use only and not made available to the parties (who would not need it, because the Panel will be able to rule on all objections as they come, unlike with a deposition).

### C.    Mr. Reddy's deposition could be deferred until after the Panel issues its sanctions order against Coinmint

Third, if the Panel is inclined to not issue death penalty sanctions and allow Coinmint to depose Mr. Reddy, the deposition should still be after the Panel issues its sanctions order. Katena will request, and believes that the Panel will order, sanctions of such a nature that they would deter future misconduct by Coinmint and its counsel. Katena will further request that the Panel include in its sanction order that any further misuse of Katena's confidential discovery materials (including, but not limited to, any use of Mr. Reddy's deposition transcript in the California proceeding) would be grounds for immediate dismissal of Coinmint's claims. For now, Coinmint is committed to further willful breach of the SPO. But after the Panel issues its sanctions order, Coinmint may be pressed to reevaluate that position.

As for the location of the deposition, it should be at the convenience of Mr. Reddy in Palo Alto. Mr. Soniat was done in New York as a convenience to him at the request of Mr. Alford. Mr. Foret chose to be deposed there. Mr. Monzon's deposition was held in San Diego for

his convenience, and Mr. Gao flew into San Diego as a courtesy. In the latest round of emails, Mr. Alford demanded "the California Rule be applied" and demanded that Mr. Reddy's deposition be held at a location convenient to Mr. Alford (and more than an hour in traffic from Mr. Reddy's home). All of this is contained in the attached email as Exhibit A, and while we appreciate the Panel has no desire to read the Parties' communications, it is illuminating.

Finally, if the Panel is inclined to grant Coinmint a deposition before Sanctions are ordered and without anything else that would protect Katena, we respectfully request that Katena's counsel not be ordered to appear at a deposition across the country five days from now. Coinmint should not get any benefit of making us scramble while it ignored Order No. 12 and waited until this became an "emergency."  Rescheduling the deposition for a mutually convenient date in March will not prejudice Coinmint in any way, and frankly is more practical given Katena's position in the Redfern chart (which the Panel will see). To be clear, we find this alternative of proceeding before sanctions are ordered as objectionable because it would not protect Katena's confidentiality interests, and it is not a solution that we are proposing, but we are trying to be mindful of the Panel's mandate to the Parties. We need your help.

Dated: Dallas, Texas
       February 23, 2023

Respectfully submitted,

PERKINS COIE LLP

By: */s/ John R. Hardin*
    John R. Hardin
    Jacob J. Taber
    500 N. Akard Street, Suite 3300
    Dallas, Texas 75201
    Tel: +1.214.965.7700
    Fax: +1.214.965.7799
    JohnHardin@perkinscoie.com
    JTaber@perkinscoie.com

**Taber, Jacob (NYC)**

| | |
|---|---|
| **From:** | Taber, Jacob (NYC) |
| **Sent:** | Wednesday, February 15, 2023 5:15 PM |
| **To:** | Fletcher Alford; Hardin, John (DAL) |
| **Cc:** | Robert Lemus; Kevin Liu; Maria Deang |
| **Subject:** | RE: Coinmint v. Katena |

Fletcher,

You can claim leapfrogging and unfairness, but it falls flat. This is all based on Coinmint's actions. You told us and the Panel that Coinmint does not think that the Stipulated Protective Order (Order No. 6) is legally binding or enforceable; that Coinmint deliberately breached Order No. 6 by filing the California complaint; that the Panel is without authority to sanction Coinmint; and that Coinmint does not intend to abide by Order No. 6 in the future. Your email below is consistent on that point—you say that Order No. 20 is "all the protection [Katena] can legitimately demand with regard to the handling of the transcript of Mr. Reddy's deposition," because, in Coinmint's view, any restriction on Coinmint's use of that transcript outside of the arbitration is illegitimate.

Coinmint deliberately filed 14 of Katena's confidential documents as exhibits to a publicly filed complaint, (mis)quoted from those confidential documents in the Complaint, refused to withdraw the Complaint or take any action to limit the public disclosure of those documents and Katena's confidential information. Coinmint has made no efforts to comply in any way with the Stipulated Protective Order, either before or after the Panel issued Order No. 18. So we cannot make Mr. Reddy available for a deposition. If you want to take that to the Panel, that's your prerogative.

We also note the irony in your approach to Mr. Reddy and Coinmint's obligations. Ms. Schneider was described as Coinmint's "information hub" and was fired after the Arbitration was filed and Katena had identified her as a key individual. We understand that you are now saying that Coinmint refuses to ask that she voluntarily provide her mobile data, even though she was affiliated with Coinmint through fall 2022 and Coinmint had an obligation to preserve her relevant documents before she departed, and Robert specifically stated on our February 2 call that, if we wanted Coinmint to gather her data, Coinmint would. We all know Ms. Schneider has relevant documents in her possession because Mr. Soniat testified as such and Mr. Foret called her the center of Coinmint's information flow. We take this as an impasse and will raise with the Panel.

Likewise, the delay with producing Mr. Soniat's mobile data seems intentional. It was requested in September 2022, it was ordered by the Panel on January 20, 2023 to be produced no later than January 25, 2023, Mr. Soniat was deposed on January 25, 2023 and readily admitted to using Texts and WhatsApp Messages for work messages (which is in stark contrast to your statement to the Panel that he didn't use his personal device for work messages) and you are still claiming that Coinmint needs more time and cannot even commit to February 28th being a firm deadline, while at the same time demanding that Mr. Reddy be deposed on February 28th. We take this as an impasse and will raise with the Panel.

As for Mr. Foret's deposition, we need the Panel to rule on the Claw Back documents we've identified on the Redfern sent to Coinmint on Monday and which we will be providing to the Panel on Friday. As I understand Coinmint's position, you are choosing to not work with us on agreeable dates or convenient location; as such, once we receive the information, we will send a notification of date and location, but this would obviously be more constructive with your participation now instead of more delay tactics

Lastly, your intransigence on the hearing logistics is not constructive. We never objected to taking hearing testimony from Mr. Maloney, Mr. DeNaut, or Mr. Bleck—it just didn't make sense to have them appear twice. They

are now appearing in April for what the Panel described as "evidentiary testimony" instead of depositions, and, obviously, the Panel is going to allow Katena the right to question the witness and otherwise be afforded the same procedural and substantive due process rights as Coinmint. We've reached out and tried to find workable ground, but not only have you failed to provide any, you're essentially taking the position that Katena is not allowed to question the witnesses. Obviously, that's wrong, but we can let the Panel know we tried and Coinmint rejected. If you change your mind and would rather find some workable solution, let us know.

Jacob

**Jacob Taber** | **Perkins Coie LLP**
COUNSEL
D. +1.212.261.6907
F. +1.212.399.8085
E. JTaber@perkinscoie.com

---

**From:** Fletcher Alford <falford@grsm.com>
**Sent:** Tuesday, February 14, 2023 6:35 PM
**To:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>; Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Cc:** Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>; Maria Deang <mdeang@grsm.com>
**Subject:** RE: Coinmint v. Katena

Jacob,

You previously agreed to produce Reddy – and this agreement was memorialized in an order from the Panel.   We originally agreed on February 24 for the depo.   At your request, that date was changed to February 28.  We have planned our travel and work schedules accordingly.

There is no legitimate basis for your unilateral announcement that you will no longer be producing Mr. Reddy for deposition as previously agreed and ordered.  The Panel's order of today provides Katena with all the protection it can legitimately demand with regard to the handling of the transcript of Mr. Reddy's deposition.  If, by close of business tomorrow, we do not receive confirmation from you that you will be producing Mr. Reddy for deposition on February 28, we will bring the matter before the Panel.

To the extent that it is relevant (and I don't believe it is), I do not intend to cross-examine Mr. Reddy on the technical intricacies of Katena's claimed technology.  I intend to cross-examine him on the fraud scheme that is evident from your client's documents.

It seems apparent that this is a ploy by your office to attempt to improperly "leap frog" over us in the sequencing of depositions.

Because Ms. Schneider is no longer employed by Coinmint, we will not agree to produce her for deposition nor obtain data from her personal cell phone.  Moreover, given that she was not involved in the negotiation or execution of the contract that is the subject of this arbitration, we fail to see how her deposition could add anything material.

I will get back to you with alternative dates for Mr. Guiol's availability.

FTI has "harvested" the data from Mr. Soniat's mobile device.   There have been technical challenges organizing that data and transferring it to our firm's ESI platform.   Once that has been completed, we will need to run searches against it using the previously agreed parameters and search terms.   We will then need to review it for potential privilege.   This will take some time.   We are making it a priority with the goal of completing the process and producing any responsive, non-privilege documents to you by the end of this month.

You have only 30 minutes of allowable time remaining for Mr. Foret's deposition. Thus, that deposition can and should be completed immediately following Mr. Reddy's February 28 deposition.

We are in the process of serving the hearing summonses on Bleck, Maloney, and DeNaut, and will provide proof of service to you in due course. The Panel's order makes clear that the Panel views the dates and locations of those hearings as firm. We are thus not in a position to agree to change them or add additional parameters not addressed in the Panel's order. I find it ironic that you are insisting on time to examine these witnesses, given that you opposed our request for these hearings. These are witnesses that we are calling to testify. We will examine them as efficiently as possible. I have no doubt that if the Panel concludes we are being dilatory in our examination, they will rule accordingly. But we cannot commit to an exact length of examination in advance, having no idea of the documents the witnesses will or will not produce at the hearing or what they will say under oath.

---

**From:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>
**Sent:** Tuesday, February 14, 2023 9:50 AM
**To:** Fletcher Alford <falford@grsm.com>; Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Cc:** Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>; Maria Deang <mdeang@grsm.com>
**Subject:** RE: Coinmint v. Katena

Fletcher,

The issue is Coinmint violated the Protective Order and you've gone so far as to assert that the Protective Order does not "prohibit[] the use of any documents produced during the arbitration to initiate lawsuits against non-parties." Of course we disagree with you, but given your stated view that there is no protective order in place, we are unable to make Mr. Reddy available for a deposition. He is Katena's Chief Technology Officer with some of the most sensitive data such as the design of the chip, the performance of the chip in comparison to the industry, confidential workings with IMEC and TSMC, and other sensitive topics that we assume you intend to question him about. History tells us you clearly intend to disclose the testimony to the public and use it for purposes other than this arbitration, including the California lawsuit against Mr. Reddy.

We need to address the following discovery issues on a Redfern, unless we can come to some agreement:

1. We intend to take Mr. Guiol's deposition—we did not agree to your proposal of February 10 in San Diego because we were not available then. Please provide a location for Mr. Guiol's deposition that is convenient to Mr. Guiol and three dates between March 1 and March 10 that would work for his deposition.

2. What is the status of Coinmint's collection and production of mobile data from Ashton Soniat? That issue has been outstanding for weeks with the last representation being that Coinmint hired FTI Consulting to see whether Mr. Soniat's document could be retrieved given that they were previously not collected and he has since replaced his phone. We need that data to complete the deposition of Mr. Soniat at a minimum. If we cannot get a date certain that is relatively soon, we intend to raise the issue via Redfern this Monday.

3. You told us that you did not collect mobile data from Kathleen Schneider before Coinmint fired her, but that you would be doing so. Please let us know the status of those efforts.

4. Please also let us know if Coinmint intends to produce Ms. Schneider for a deposition as discussed. If not, please let us know no later than this Friday, February 17 whether Ms. Schneider will voluntarily appear for a deposition or whether she will voluntarily appear to testify at the hearing in August (whether in-person or via Zoom).

5. We need to complete Mr. Foret's deposition. From our perspective, the Parties should wait until the Panel rules on the current Redfern that we sent to you yesterday related to the clawback documents, but please provide available dates for Mr. Foret.

We also need to discuss logistics for the April hearing testimony. How much time does Coinmint envision with each witness? We should discuss so that we ensure we have them for the appropriate amount of time. With respect to Mr. DeNaut's testimony, the proposed location is about a two-hour drive from New York and an hour-and-a-half from Mr. DeNaut's Greenwich home—would you consider working to identify a more convenient location for the witness, either in Greenwich or in New York if Mr. DeNaut is amenable so that the parties can finish him in one day? To that end, please let us know if you have heard from counsel for any of the witnesses and provide us their name and contact information. Please also provide us with proof of service of the arbitral subpoenas. If you are instead just working with Mr. DeNaut or any of the other witnesses directly, please let us know and we will do the same.

Finally, attached please find Katena's privilege log.  As discussed, we have logged all documents responsive to Coinmint's document requests and sent or received during the agreed-upon relevant period that were withheld or redacted for privilege (including work product).

Jacob


**Jacob Taber** | **Perkins Coie LLP**
COUNSEL
D. +1.212.261.6907
F. +1.212.399.8085
E. JTaber@perkinscoie.com

---

**From:** Fletcher Alford <falford@grsm.com>
**Sent:** Friday, February 10, 2023 7:48 PM
**To:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>; Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Cc:** Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>; Maria Deang <mdeang@grsm.com>
**Subject:** RE: Coinmint v. Katena

Unless I missed an email, I don't believe we've nailed down certain of the details of the below depos.

It is my understanding that Reddy's depo is confirmed for February 28, and that the only remaining issue is the location.  California law provides that the deposition of a natural person may be taken at any location selected by the party taking the deposition, provided that location is within 75 miles of the deponent's residence or within the county where the action is pending and within 150 miles of the deponent's residence.   You indicated that Mr. Reddy lives in Palo Alto.   The Gordon Rees San Francisco office is well within the above-referenced limits.  Accordingly, it is our position the deposition should be taken at our firm's San Francisco office (just as you took the depositions of Messrs. Soniat and Foret at your firm's office).   Please consider this email, together with our previous conversations on this issue, as our final attempt to meet and confer on this issue before bringing the matter to the Panel.

Although Mr. Guiol lives and works in North Carolina, I had offered to make him available for deposition in San Diego while we were there this week for the depositions of your clients.   But you declined that offer and have yet to provide alternative suggestions on dates and location.  Do you still wish to proceed with this deposition or not?

Sincerely,

Fletcher

---

**From:** Fletcher Alford
**Sent:** Tuesday, January 24, 2023 10:36 AM
**To:** 'Taber, Jacob (NYC)' <JTaber@perkinscoie.com>; Robert Lemus <rlemus@grsm.com>; Kevin Liu

<kliu@grsm.com>
**Cc:** Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Subject:** RE: Coinmint v. Katena

She left in September of 2021.   Her emails were collected and produced as part of our prior production, to the extent there were hits on the search terms.   She did not have a Coinmint-issued phone, so we don't have access to her mobile data.

Let's plan on taking Reddy's depo on the 28th at the Gordon Rees office in San Francisco at 10:00 a.m. pacific.

Mr. Guiol lives and works in North Carolina.   But for the convenience of all others, he is willing to travel to San Diego to have his deposition taken the same week as Monzon and Gao – specifically, Friday, 2/10 starting at 8:00 a.m.

---

**From:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>
**Sent:** Tuesday, January 24, 2023 8:33 AM
**To:** Fletcher Alford <falford@grsm.com>; Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>
**Cc:** Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Subject:** RE: Coinmint v. Katena

Fletcher,

When did Ms. Schneider leave Coinmint? And did the Company collect and preserve her documents, including mobile data, prior to her departure?

We'll provide a method for Mr. Lemus to attend the deposition virtually.  Depending on the requirements of the videographer, this may be by video conference or solely by audio; I will let you know.  The depositions will be at Perkins Coie's New York office, which is at 1155 Avenue of the Americas (corner of 44th Street), on the 22nd Floor.

Confirmed that we will start Mr. Foret's deposition at 8 am on Monday, 1/31.

Mr. Reddy is available to be deposed in Palo Alto, CA on Tuesday, February 28.

Best,
Jacob

**Jacob Taber | Perkins Coie LLP**
COUNSEL
D. +1.212.261.6907
F. +1.212.399.8085
E. JTaber@perkinscoie.com

---

**From:** Fletcher Alford <falford@grsm.com>
**Sent:** Sunday, January 22, 2023 6:14 PM
**To:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>; Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>
**Cc:** Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Subject:** RE: Coinmint v. Katena

1. We cannot produce Ms. Schneider as she is no longer affiliated with Coinmint.   We are in the process of inquiring about dates and location for Mr. Guiol's deposition.

2. At this point, I believe it will just be Mr. Foret, Mr. Soniat, and me attending their depositions.  Mr. Lemus will participate remotely.   Please advise as to arrangements for that.  Please also advise as to the address of the office where those depos will be taken.

3. We will need to start Mr. Foret's deposition at 8:00 a.m. EST as he has a flight to catch that afternoon.

Let me know where you're at with respect to our longstanding request for dates for the deposition of Mr. Reddy.

---

**From:** Taber, Jacob (NYC) <JTaber@perkinscoie.com>
**Sent:** Thursday, January 19, 2023 11:02 PM
**To:** Fletcher Alford <falford@grsm.com>; Robert Lemus <rlemus@grsm.com>; Kevin Liu <kliu@grsm.com>
**Cc:** Hardin, John (DAL) <JohnHardin@perkinscoie.com>
**Subject:** Coinmint v. Katena

Mr. Alford,

Three items regarding depositions.

1. Please provide dates for the depositions of Norbert Guiol and Kathleen Schneider.
2. Please let me know who will be attending the depositions of Mr. Soniat and Mr. Foret so that I can provide the names to building security.
3. Is Mr. Foret available for a 9 am start time on Monday, January 30?

Thank you,
Jacob

**Jacob Taber** | **Perkins Coie LLP**
COUNSEL
D. +1.212.261.6907
F. +1.212.399.8085
E. JTaber@perkinscoie.com

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE PARTNER®**
http://www.grsm.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.