# EXHIBIT 19

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Panel

---

In the Matter of the Arbitration Between:

Coinmint, LLC,

*Claimant and Counter-Respondent,*

- vs –

Katena Computing Technologies, Inc.,

*Respondent and Counter-Claimant,*

AAA Case No. 01-22-0001-7627

---

<u>ORDER NO. 23 – ORDER ON DISCOVERY DISPUTE MATTERS REGARDING KATENA'S DOCUMENT PRODUCTION AS SET FORTH IN REDFERN CHART DATED FEBRUARY 23, 2023</u>

On February 23, 2023, Claimant Coinmint, LLC ("Coinmint") submitted a Redfern Chart to the Panel, which raised several items of discovery disputes concerning what it termed a "deficient document production" by Respondent Katena Computing Technologies, Inc. ("Katena"). The Panel's specific rulings on the discovery disputes raised by Coinmint are set forth in the Redfern Chart with Panel Rulings, attached hereto as Attachment 1 and incorporated herein by this reference.

Dated:  3 March 2023

Rebecca Callahan, Chair
*On behalf of the Panel*

ATTACHMENT 1

**February 24, 2023 Redfern Chart: Katena's Deficient Document Production**

*Coinmint, LLC v. Katena Computing Technologies, Inc.*, Case No. 01-22-0001-7627

| No. | Discovery Dispute | Coinmint's Position | Katena's Position | Ruling of the Panel |
|---|---|---|---|---|
| 1. | Katena has only produced a scant amount of communications involving Sagar Reddy.  Katena agreed to collect, search, and produce all responsive communications involving Mr. Reddy but has yet to do so. | Katena previously agreed to collect, search, and produce all responsive communications (such as text messages, WhatsApp messages, and emails) involving Sagar Reddy. However, Katena has only produced a small handful of such communications.  Reddy is a key witness in this case and was heavily involved with some of the most critical aspects of the subject transaction, including but not limited to, the preparation of Bleck's due diligence report and revisions made thereto before it was shared with Coinmint, and relaying information to Bleck about DxCorr, Katena's chip design, manufacture, and associated hardware.  In particular, Katena's text messages reveal that during Bleck's preparation of his report, Reddy had numerous meetings and conversations with Bleck and was the primary source of information given to Bleck concerning Katena's design of its specialized chip and ability to | Three preliminary points that apply to all of the Discovery Disputes on this Redfern. First, Coinmint did not meaningfully meet and confer on many of these items. When the issue of Sagar Reddy (for example) was raised, we reminded Coinmint that it never requested him as a custodian, but that we would be willing to pull his documents. We told Coinmint that we needed to meet and confer and determine exactly what was being sought, and that never happened. The Parties' last meet and confer was a February 2, 2023, telephone call and Coinmint never identified (either on that call or in a follow-up communication) what exactly it was looking for.  Second, all of these issues were known to Coinmint before February 6, 2023, and would be barred by the "use it or lose it" argument Coinmint is making in connection with Katena's Redfern chart on the clawback log. Coinmint identified all of the issues on this Redfern chart in Mr. Lemus's January 26, 2023 (at | The scope of discovery in this matter is limited to its relevance to the specific claims and counterclaims that the parties have submitted for determination in this arbitration. The claims and counterclaims in this arbitration do not name Sagar Reddy, and Coinmint's request fails to adequately explain the relevance or materiality of Mr. Reddy to the claims and counterclaims that support the document requests Coinmint now seeks. This arbitration is to be distinguished from Coinmint's state court action in which it has asserted claims against Mr. Reddy, Mr. Bleck and others, individually, and where Coinmint can pursue discovery for use in those proceedings.  In this case, the record shows that the parties' counsel spent a great deal of time and effort in the Fall of 2022 developing |

| | | | | |
|---|---|---|---|---|
| | | perform.  Additionally, Reddy was in constant communications with Bleck and did not allow Bleck to finalize the report without first obtaining Reddy's approval.  Indeed, before the report was shared with Coinmint, Reddy exclaimed to Katena's principals Henry Monzon and Michael Gao that he had just completed an hour long conversation with Bleck and had already "helped [Bleck] with what the report should be etc." Reddy also stated that he "was not happy with what [Bleck] had" initially written in his report as it was "too floral."  Thus, it is apparent that multiple drafts of Bleck's report were exchanged between Reddy and Bleck but not a single one of these drafts or communications have been produced.  Such communications are highly relevant to the issues in this case and are not protected by any privilege as demonstrated by Katena's recently produced privilege log which only identifies one document involving Reddy that has been withheld on a claim of privilege.<br><br>At a minimum, Katena should be ordered to produce all communications sent to or from Reddy relating to (1) the subject transaction between Katena and | 11:32 am PT) email to the Panel. In its Redfern chart on the clawback log, Coinmint argues that anything "known" before February 6, 2023 was waived by not raising it on February 6, 2023.  According to Coinmint's argument, it has waived every issue on this chart under Order No. 14 by not raising them on or before February 6.  Katena disagrees with Coinmint's argument but mentions it here to showcase Coinmint's gamesmanship. In Katena's view, the Panel should consider and rule on all pending discovery disputes.<br><br>Third, Coinmint is demanding that Katena produce additional highly confidential documents— including Mr. Reddy's technical documents that contain the "secret sauce" behind Katena's chip—without adequate protection.  For the reasons stated in Katena's February 23 brief to the Panel, because Coinmint has willfully breached the Stipulated Protective Order ("SPO") and maintains that it is not obligated to comply with that Order, it's as if there's no protective order in place. Coinmint still won't admit that the SPO prohibits Coinmint from filing Katena's confidential | an ESI protocol, an agreed upon set of search terms and custodians, and an agreed upon discovery plan. *See* Order Nos. 5, 6 and 7. Mr. Reddy was not named as a custodian whose records should be searched by Katena.<br><br>The parties completed their Rule R-22 exchanges in early October 2022, and at a case management conference in early January 2023, the parties' counsel reported to the Panel that the parties had "substantially completed their respective productions, as well as their responses to each other's formal document requests."<br><br>Coinmint has failed to explain its omission of Mr. Reddy as a custodian and has failed to provide good cause warranting a new search.<br><br>While the Panel would deny Coinmint's request, Katena has agreed to collect Mr. Reddy's custodian file and to identify documents from Mr. Reddy that are responsive to Coinmint's initial set of document requests. |

| | | Coinmint; (2) the preparation of Bleck's report, whether prepared by Bleck or any other engineer; (3) redlines and edits made to Bleck's report; (4) efforts to design and/or manufacture chips and associated hardware that was the subject of this transaction; and (5) discussions about hiring, retaining, remunerating, employing, and/or contracting with Coinmint's former officers Michael Maloney, Jim DeNaut, and Frank Kinney.

Katena has recently stated that they would no longer make Reddy available for deposition due to their claim that Coinmint violated the Protective Order. To the extent Katena is relying on this same excuse to justify their refusal for producing communications involving Reddy, this excuse should be flatly rejected.  The Panel has already issued several orders in response to Katena's motion and imposed restrictions on the use of deposition transcripts. Nothing in the Panel's Orders allows Katena to withhold responsive documents or avoid complying with their discovery obligations.

*Katena states that the Parties last met and conferred on these* | documents to the public docket in its California action—it talks about Katena's "*claim* that Coinmint violated the Protective Order" and entirely ignores Order No. 18.  In its February 9 submission to the Panel Coinmint asserted that the Protective Order does not "prohibit[] the use of any documents produced during the arbitration to initiate lawsuits against non-parties"; that the Panel's interpretation of the Protective Order is contrary to California public policy and unenforceable; and that filings in the California lawsuit are "necessary for 'prosecuting, defending, or attempting to settle this arbitration.'"  Coinmint has never walked back any of these claims.  Coinmint has not provided any assurance to Katena that it will abide by the Stipulated Protective Order in the future. Coinmint won't promise not to file more confidential documents to the public docket.

Some of the additional documents requested by Coinmint are critical for the Panel to see. They show that Bleck was not "controlled by Mr. Reddy" or otherwise under his influence but was instead performing as one would expect. | Accordingly, this production will go forward as agreed by Katena.

Katena has objected to including Coinmint's five new topics in its search effort. While Coinmint did not seek the Panel's approval before issuing these additional document production demands, the more efficient course of action is for the Panel to rule on whether the additional topics should be included in Katena's search for Mr. Reddy's custodian file. The following three topics should be included:

(1) the subject transaction between Katena and Coinmint;

(2) the preparation of Bleck's report, whether prepared by Bleck or any other engineer; and

(3) redlines and edits made to Bleck's report.

Coinmint's request that Katena be required to produce documents concerning Mr. Reddy and his involvement in "efforts to design and/or manufacture chips and associated hardware that was |

- 3 -

| | | | | |
|---|---|---|---|---|
| | | discovery dispute items during a February 2, 2023 telephone call without identifying what Coinmint was looking for. That is incorrect. Attached hereto as Exhibit C is a copy of Mr. Lemus's email and attachments on February 3, 2023 in response to the previous day's telephonic meet and confer. | We want to produce them so the Panel can see. But they contain schematics and other trade secrets making it problematic given Coinmint's rejection of the SPO and for all the reasons Katena stated in its response to Coinmint's request to compel Sagar Reddy's deposition. Under current circumstances, Katena cannot produce highly sensitive documents to Coinmint.

Turning to the substance, Coinmint misstates the facts. Katena never "agreed to collect, search, and produce all responsive communications involving Mr. Reddy," and that is readily shown by reviewing Coinmint's September 22, 2022, list of Coinmint's requested custodians and search terms. Mr. Lemus's email and attachment are attached hereto as Exhibit A. Coinmint did not request that Mr. Reddy be included as a Katena custodian. And we know that Mr. Reddy was known to Coinmint then, as he appears on Katena's investor decks as a founder of Katena (with his affiliation with DxCorr identified too). Coinmint never requested that Mr. Reddy be added as a custodian. Katena agreed to "collect, search, and produce" documents from the files of the | the subject of this transaction" is DENIED. Coinmint has failed to show how such documents are relevant or material to the claims and counterclaims in this arbitration.

Coinmint's request that Katena be required to produce documents concerning Mr. Reddy and his involvement in "discussions about hiring, retaining, remunerating, employing, and/or contracting with Coinmint's former officers Michael Maloney, Jim DeNaut, and Frank Kinney is DENIED. Coinmint has failed to show how such documents are relevant or material to the claims and counterclaims in this arbitration. |

agreed-upon custodians that Coinmint requested.  To be clear, when those custodians (like Mr. Monzon and Mr. Gao) communicated with Mr. Reddy, and those communications were responsive to a Coinmint document request, we produced them—Coinmint already has all responsive documents from the agreed-upon custodians that "involve" Mr. Reddy.

Coinmint is now asking Katena, five months into discovery, to add Mr. Reddy as an additional document custodian.  We have no obligation to do that, but we also have nothing to hide.  **Katena therefore <u>already</u> agreed to collect Mr. Reddy's custodian file and identify documents from Mr. Reddy that are responsive to Coinmint's initial set of document requests.  We are in the process of doing that.**  Coinmint just wanted to create the illusion of a dispute so it could get its one-sided mischaracterization of Mr. Reddy in before the Panel can consider all the evidence at the August hearing.

However, Katena does object to Coinmint's attempts to revisit the scope of Coinmint's document

| | | | requests, which the parties extensively negotiated, took to the Panel, and received a ruling from the Panel. Katena objects to Coinmint listing five topics in the Redfern that are not tied to any discovery Request and demanding "all communications sent to or from Reddy" on those topics. They are nothing short of new requests being masqueraded as the subject of some "existing" dispute (they are not, and this is our first time seeing them). This might explain why Coinmint refused to meet and confer before filing this Redfern.  If Coinmint wants to seek leave to promulgate additional document requests, there's a process for that. | |

| 2. | Katena's document production reveals that a number of text messages have been deleted. Katena has not produced these deleted messages or provided any information concerning when and why the messages were deleted, the content of the deleted messages, and whether such messages can be recovered. | The text messages produced by Katena indicate that several key messages were deleted and none of these deleted messages appear on Katena's recently produced privilege log.<br><br>For example, KATENA005889 is a May 13, 2021 WhatsApp communication between Michael Gao, Henry Monzon, and Sagar Reddy in which Monzon writes "Coinmint; Only hiccup we have is getting the engineer report – we have a verbal confirmation yesterday from Bleck.  I'm moving that across fast."  However, the very next message appears to have been deleted by Monzon.  The text message then resumes with Monzon telling Reddy to "touch base with [Bleck] this morning and just check in where he's at, I don't want these guys to have excuses not to sign.  Docusign has literally already gone out for signatures…(it's now a $150M purchase order)."<br><br>Similarly, KATENA005967-5968 is another WhatsApp | Coinmint's request goes far beyond what is required under Rule R-22 and this Panel's Orders, would be overly burdensome, and should be denied.<br><br>WhatsApp is an end-to-end encrypted messaging platform that does not store messages to a server.  It allows senders or receivers of messages to delete messages, and records that a deletion has occurred.  Deleted messages cannot be recovered.  In the ordinary course of using WhatsApp and prior to the commencement of this Arbitration, Katena employees (like everyone) sometimes deleted messages.  These ordinary course deletions, from before Katena anticipated probable litigation, are entirely proper.  *See, e.g.,* *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009); *Durham v. Cty. of Maui*, 2010 WL 3528991, at *4 (D. Haw. Sept. 10, 2010) (collecting cases).<br><br>Katena has already told Coinmint everything it knows | Coinmint's request is DENIED because it has failed to establish that there is anything for the Panel to order be produced.<br><br>Katena has acknowledged and explained that there were deletions.<br><br>Coinmint had the opportunity to ask Messrs. Monzon and Gao about the deletions at their depositions, which questions may have yielded information that might have justified and delineated the scope of a further search and production effort.<br><br>For example, had Coinmint asked Mr. Monzon about deletions in his WhatsApp messages and had he testified that he did not make any deletions, then Coinmint may have had a basis for seeking an explanation from Katena about the deletions. |

| | | messages in which Reddy informs Monzon and Gao that he has reviewed Bleck's report and that it looked good.  Monzon then tells Gao to talk to "Maloney on group chat or offline" and tells Reddy to "check again with [Bleck] if he has his agreement in had already or not."  Reddy's response is then deleted.<br><br>In addition to the above two examples, there are at least another dozen WhatsApp communications containing deleted text messages. These deleted messages are likely to contain critical information to this case, especially given that some of the deletions occur in the middle of a string of incriminating text messages between Monzon, Gao, and Reddy.  Hence, Katena should be ordered to produce the missing or deleted messages and/or provide as much information as possible about the content that was deleted, including, but not limited to, when the deletion occurred, whether other copies exist, why the message was deleted, and what efforts, if any, have been made to recover the | about the deleted messages. Coinmint knows about these deletions because they are reflected in the WhatsApp message chains that Katena produced to Coinmint.  We have provided Coinmint with all available metadata.  There are no copies of the deleted messages, so we cannot provide those.<br><br>In fact, we invited Coinmint to ask Mr. Monzon and Mr. Gao about the contents of deleted messages or the circumstances of their deletion during their depositions.  Coinmint chose not to ask those questions. Instead, they now demand, in essence, a second written deposition of witnesses who have already sat for five and seven hours, respectively that would be unlikely to reveal anything of substance—if the witnesses can even remember the details of a text message conversations they had two years ago.  Take KATENA005966, for example. In the What's App Message (and what Coinmint omits) Mr. Reddy responds to Mr. Monzon's question. Mr. Monzon asked Mr. Reddy to ask Mr. Bleck if | As the record stands, the Panel has not been provided with anything that would justify or delineate an order to produce directed to Katena. Accordingly Coinmint's request is DENIED. |

| | | deleted messages. | Coinmint had signed his advisor agreement or not, because everyone understood that Mr. Bleck could not start work until he had a contract with Coinmint.  Mr. Reddy sent Mr. Monzon a message at 12:08:38 (in all likelihood a typo), deleted it, and just seconds later at 12:08:59 answered Mr. Monzon's question: "Contract came through a few minutes ago." In context, this deletion is almost certainly neither relevant nor material. | |

| 3. | Katena's document production reveals that relevant communications occurred on other communications platforms such as Signal and Telegram. Katena has not committed to collecting, reviewing, and producing all responsive information and ESI from these communications platforms. | Although Katena's production contain WhatsApp messages, other text messages and documents produced by Katena reveal that Monzon, Gao, and perhaps Reddy were also using other text messaging platforms such as Signal and Telegram to discuss the transaction between Coinmint and Katena. This includes communications concerning the modification of the agreement between the parties after its execution. At Katena's request, these modifications were memorialized in WhatsApp messages between Maloney and Monzon, as well as other "offline" communications platforms, rather than modifying the actual Purchase Order or Purchase Agreement. It does not appear that Katena has collected any ESI from any other messaging platforms besides WhatsApp. Hence, Katena should collect, review, and produce all responsive ESI and communications from all of the messaging platforms, including but not limited to, Signal and | There is no discovery dispute for the Panel to rule on.<br><br>We note that we produced a substantial quantity of mobile data to Coinmint already, including WhatsApp messages and text message. Coinmint has not yet produced _any_ mobile data; as of the January 15 deadline set by the Panel for Coinmint's production of mobile data, it had not even attempted to _collect_ any mobile data; and although Coinmint promises to belatedly produce Mr. Soniat's mobile data by February 28, it may be that all such data was destroyed when Mr. Soniat repeatedly and voluntarily disposed of his cell phones during the pendency of this arbitration.<br><br>Messrs. Monzon, Gao, and Reddy did not use Telegram. Again, Coinmint was told this before their depositions | Given the apparent testimony by Messrs. Monzon and Gao that they did not communicate using Telegram, there is no basis for the Panel to order the production of such communications.<br><br>Given Katena's response that it has collected Mr. Gao's communications on Signal and has engaged a vendor to review and de-encrypt the messages AND has committed to producing any responsive messages subject to a protective order, there is nothing for the Panel to order in terms of a production.<br><br>However, Katena shall have no obligation to produce Mr. Gao's communications on Signal unless and until the Panel is provided with a stipulated protective order covering that production between Coinmint, Katena _and_ their attorneys, as parties to the stipulation, in a form satisfactory to the Panel, with regard to (a) the protections to be afforded any documents in the production that Katena |

| | | Telegram. | and chose not to ask any questions about it. Messrs. Monzon and Gao did use Signal, a messaging app that is more secure than WhatsApp.  When we collected mobile data from Messrs. Monzon and Gao, we collected their Signal data—but it is encrypted and therefore unreadable.  We understand that to collect and produce Signal messages is labor intensive and requires taking screenshots of each message.  We have retained a vendor for that purpose and are in the process of collecting and reviewing Signal messages.  We hope to be able to produce them subject to a protective order. | may designate as "CONFIDENTIAL" or "ATTORNEYS EYES ONLY," and (b) the remedies available to the Panel should the protective order be violated. *See also* the Panel's ruling with respect to No. 5, *infra.* |
|---|---|---|---|---|

| 4. | Katena's document production reveals that relevant communications exist on Henry Monzon's personal email address monzoncali@gmail.com. Katena did not collect, review, or produce information on this email account and has not committed to doing so. | KATENA006499 is a WhatsApp text message string between Monzon and Gao discussing whether Maloney sent a document pertaining to the subject transaction. Monzon tells Gao to have Maloney send the document again "And to my Gmail then if there's any bs," which Monzon then follows with "monzoncali@gmail.com." Katena has represented that it did not search for, or collect ESI from this email account. Given that this email account belongs to Monzon and was apparently used to share information with Maloney about the subject transaction, Katena should be ordered to collect, review, and produce all responsive ESI and information from this email account. | Mr. Monzon did not use his personal Gmail account to conduct Katena business. He only used his Katena email address, which was collected and produced. In the cited text message string, Mr. Monzon was trying to trouble-shoot an issue— Mr. Maloney said he had sent an attachment, but Mr. Monzon had not received it. He therefore suggested that Mr. Maloney send the document to both his work email and his Gmail, in case it wasn't going through for some reason to his work email. Mr. Maloney did not do so. On May 8, 2021, Mr. Maloney sent an email to Mr. Monzon's work email address and Mr. Gao's work email address, not copying any other email address. He wrote: "My earlier email appears to have been lost forever, so I have updated the Purchase Order and Purchase Agreement | This request is DENIED because Coinmint has not made a sufficient showing of any factual basis for Coinmint to have a reasonable belief that Mr. Monzon used his personal Gmail account to conduct Katena business – with the one exception noted in Katena's response, which documents have been produced or are in Coinmint's custody. |

| | | | |
|---|---|---|---|
| | | (attached) with my comments and legal review." Mr. Maloney did not send any email to Mr. Monzon's Gmail.<br><br>Coinmint's document production does not include <u>any</u> emails to or from or cced to Mr. Monzon's Gmail. Neither does Katena's. And that's because Mr. Monzon did not use his Gmail for work purposes. Coinmint has not provided any evidence to the contrary showing that Mr. Monzon's Gmail contains material documents or that would otherwise justify the serious intrusion of collecting and reviewing a former employee's <u>personal</u> email account. | |

| 5. | Katena provided Mr. Maloney with access to Katena's virtual data room prior to the execution of the agreement between Coinmint and Katena.  Katena has not produced a record of what was contained in the data room, who had access to the data room, when and why the data room was taken down, and whether the contents of that data room can be recovered. | Discovery conducted to date reveals that Katena utilized a virtual data room to provide information to Maloney related to Katena's specialized chip, its ability to perform, its contracts with other clients, and its investments and financing secured from financial institutions in order to induce Coinmint to enter into the subject transaction with Katena. Indeed, Monzon stated to Gao, "let's get that fucking data room and deck sanitized, compliance by JP [Morgan], and we're in front of investors" as part of their scheme to "fomo" Coinmint.  Hence, the documents and information Katena placed in its virtual data room is highly relevant to proving Coinmint's fraud claims.  Accordingly, Katena should be ordered to produce all documents and information that was contained in its virtual data room.  If the data room no longer exists, Katena should provide information concerning who had access to the data room, when and why the data room was taken down, whether the contents of the data room can be recovered, and what efforts, if | Coinmint never met and conferred with Katena regarding this request.  Nor do they point to any Coinmint document request that calls for the production of documents in the "Katena data room," because there is no such document request.  And Coinmint does not explain why documents provided to <u>other</u> customers and potential investors would be relevant to this dispute, let alone material.

Katena has nothing to hide. Even though Coinmint never asked for them, Katena is willing to voluntarily provide to Coinmint the documents in its virtual data room in April 2021 to which Maloney had access.  That should resolve this dispute. These highly sensitive documents, which were originally made available under NDA in a secure data room, cannot be produced without a protective order. | Coinmint's request is DENIED WITHOUT PREJUDICE for the reasons discussed herein.

As discussed in Order No. 18, Coinmint and its counsel have demonstrated their unwillingness to respect and comply with the protective Order – Order No. 6 – which the parties and their attorneys agreed to in November 2022. The Panel has found that Coinmint violated the protective order when it attached documents to its state court complaint that Katena had designated as "CONFIDENTIAL" pursuant to the protective order without first seeking to have the documents declassified using the procedures set forth in the protective order.

It is a conundrum of Coinmint's own making that Katena has documents Coinmint would like to inspect, but those inspection rights are conditioned on maintaining the confidentiality of the documents and limiting their use to this arbitration. |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | any, have been made to recover the data room. | | Because Order No. 6 has been violated, a further, specific protective order is needed to protect the documents in Katena's virtual data room. Accordingly, Katena shall have no obligation to make the virtual data room documents available to Coinmint unless and until the Panel is provided with a stipulated protective order covering all documents and information in the virtual data room between Coinmint, Katena <u>and</u> their attorneys, as parties to the stipulation, in a form satisfactory to the Panel with regard to (a) the protections to be afforded any documents in the production that Katena may designate as "CONFIDENTIAL" or "ATTORNEYS EYES ONLY," and (b) the remedies available to the Panel should the protective order be violated. |
| 6. | Katena's production of WhatsApp text messages contain numerous references to links and attachments that have not been produced.  Katena has not committed to producing these attachments or a record of what was contained within each link. | Katena's production of its WhatsApp messages contain numerous links and attachments that have not been produced (see e.g., KATENA006533 and KATENA 6601).  Furthermore, these missing links and attachments do not appear on Katena's recently produced | During the parties' meet and confer, Katena repeatedly asked Coinmint to identify the specific documents and specific messages that they think contain missing information, so that Katena could investigate and respond.  A February 2, 2023 email from Mr. Taber to counsel for Coinmint | Coinmint's request is DENIED for lack of specificity, overbreadth, and insufficient showing of relevance or materiality to warrant this type of search and production effort. |

| | | | |
|---|---|---|---|
| | | privilege log.  Therefore, Katena should be ordered to produce all documents and attachments that were exchanged through WhatsApp.  If the documents or attachments no longer exist, then Katena should provide a record of what was contained within each link or attachment along with information concerning what efforts, if any, have been made to recover the contents of these links and attachments. | making that request is attached hereto as Exhibit B.  Coinmint did not do so then and provides no specificity now.  Certainly, Coinmint's request that Katena "produce all documents and attachments that were exchanged through WhatsApp" whether or not responsive to any document request or relevant in any way to this matter is substantially overbroad.<br><br>Coinmint lists two documents as examples.  KATENA06533 is a 40-page WhatsApp conversation, but Coinmint does not provide a pinpoint cite to the supposedly missing attachment or link.  On the first page of the document the chat references two attachments which were not produced because they concern other customers and are not responsive to any document request.  On page KATENA006547 there is a Zoom link for a May 12, 2021 call with JP Morgan—Katena does not understand what information, beyond the Zoom link, Katena was required to supply.  KATENA006586, which contains the page with Bates Number Katena006601, is a 39-page WhatsApp conversation. The full conversation includes a number of JPEG photos.  On | |

| | | | |
|---|---|---|---|
| | | page KATENA006601 there is a notice from WhatsApp: "K Org draft - Edwin.jpeg Attachment Missing.jpeg."  This means that the attachment was missing at the time of document collection—we do not have the attachment and cannot produce it (we are not withholding it from production).  Coinmint already has as much information as we can provide on this.<br><br>If Coinmint has additional questions about specific documents and pages, we can answer them.  A blanket order to produce all "missing attachments" (which would include documents that are not within Katena's possession) is not warranted.  *Nichols v. Noom Inc.*, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021) (denying motion to compel production of all hyperlinked internal documents in responsive emails as overly burdensome and not proportional to the needs of the case, and directing parties to meet and confer about specific documents). | |
| 7. | Coinmint propounded Request for Production, Set 3, consisting of 7 document demands, most of which cover the same topics above.  Katena has not | Katena's document production is incomplete and there are clearly responsive documents that have not been produced.  Nor are these documents privileged as | Coinmint agrees that its proposed third set of document requests is largely duplicative of its existing requests—it provides no grounds to support the need | Coinmint's Request for Production, Set 3 is not a legitimate discovery request because it exceeds the discovery plan that was |

| | | | |
|---|---|---|---|
| committed to responding and producing responsive documents to this set of document demands. | demonstrated by the fact that none of the missing documents are identified on Katena's privilege log. As discussed above, many of these deficiencies relate to Katena's WhatsApp messages and other "offline" communications media. These deficiencies include communications involving Reddy and DxCorr, deleted text messages, responsive information that has not been produced such as the contents of Katena's virtual data room, information contained in other communication platforms such as Signal and Telegram, document links and attachments that have not been provided or identified, communications from Katena's other email accounts such as Monzon's personal email, and payments made to Coinmint's co-conspirators Bleck, Maloney, DeNaut, and Kinney.<br><br>Katena's contention that they do not need to respond to this set of discovery because Coinmint has already propounded more than 30 document demands should be rejected. Given that most of these demands relate to information discussed and referenced in Katena's WhatsApp communications, Katena should | to serve an additional 7 requests on top of the 45 that Coinmint already propounded, which is greater than the Panel ordered or allowed.<br><br>In Order No. 3 the Panel ruled that "[e]ach side may propound up to thirty (30) requests for production of documents." Coinmint served its first set of document requests, consisting of 30 requests, on September 16, 2022. On December 2, 2022, Coinmint sought leave of the Panel to serve an additional 15 document requests on Katena related to the cessation of Mr. Monzon's employment as Katena's CEO. In Order No. 11, the Panel allowed Coinmint to move forward with two of those 15 document requests and sustained Katena's objection to the remaining 13.<br><br>Despite the Panel's clear ruling, Coinmint served what purports to be a third set of document requests on February 1, 2023. The very next day, Katena offered (via email from Mr. Taber) to meet and confer with Coinmint regarding a possible "compromise" that "will avoid the need for motion practice" regarding the third set of document requests. (Ex. B at 2.) | discussed, agreed to, and ordered in this matter. *See* Order Nos. 5, 6 and 7. Additionally, Coinmint has not made a sufficient showing as to why these requests are necessary and not duplicative of the extensive discovery already implemented in this matter pursuant to the aforementioned discovery plan. Nor has Coinmint explained (a) why it waited so long to seek this new discovery, (b) how any of the requests seek information that is relevant and material to the claims and counterclaims in this arbitration, or (c) why it is appropriate to expend time and money to duplicate to some extent the extensive document search and retrieval that has taken place over the past 6 months and which the parties reported was "substantially completed" in early January 2023.<br><br>Coinmint has made no showing that anything new was discovered that prompted this proposed additional round of document discovery in this arbitration. The only changed |

| | | | | |
|---|---|---|---|---|
| | | have collected and produced this information during its prior document productions. | Coinmint ignored this offer and refused to meet and confer regarding the third set of document requests.<br><br>For the reasons stated below, Coinmint has not provided any grounds to justify imposing a new round of document discovery on Katena.  Some of the Requests are duplicative of what Katena has already agreed to produce and has produced.  To the extent Coinmint contends that Katena's document production is deficient, the remedy is to file a motion to compel (never mind the waiver argument Coinmint is pressing in the clawback Redfern) and not to serve duplicative document requests. Others are substantially overbroad and seek documents that are not relevant or material to any party's claim or defense.<br><br>Finally, Coinmint's fishing expedition for Sagar Reddy's irrelevant and immaterial documents must be understood against the backdrop of its intentional breach of and continued disregard for the Stipulated Protective Order in this case.  Coinmint has made clear that, no matter what the Panel orders, Coinmint intends to use confidential documents | circumstance appears to be Coinmint's recently filed action against Mr. Reddy, Mr. Bleck and others, which is not an appropriate basis for the Panel to allow additional, unauthorized discovery in this arbitration.<br><br>Finally, as noted by Katena, many of Coinmint's proposed discovery requests are duplicative of prior requests that were the subject of dispute between the parties and that the Panel has previously ruled on and denied. |

| | | | produced in this case to prosecute its California litigation against Messrs. Reddy, Bleck, Maloney, DeNaut, and Kinney. It served these document requests after filing the California action, and its motivations are obvious—to find dirt that it can use in that action. That is not a proper purpose for discovery under Rule R-22 and Order No. 3. | |
|---|---|---|---|---|

| 8. | Coinmint's Requests for Production, Set 3, No. 1 requests "All communications between Katena or Katena personnel (Monzon, Gao, Reddy, etc.)and Coinmint or Coinmint personnel (Maloney, DeNaut, Kinney, etc.) on Signal, Telegram, or personal e-mails (such as monzoncali@gmail.com)." Katena has not committed to responding and producing responsive documents to this request. | Coinmint incorporates its response to discovery dispute no. 3 and no. 4. | Coinmint does not even attempt to explain why this discovery request is necessary, not duplicative of prior requests, and limited to documents that are relevant and material to this case. It cannot do so.

Coinmint already asked for all communications between Katena and Coinmint in its fist set of RFPs, and Katena agreed to produce such communications from the agreed-upon list of custodians and did produce them.  Unlike Coinmint, Katena already collected and reviewed the mobile data from the personal devices of its custodians and produced text messages and WhatsApp messages.  For the reasons described above its initial collection did not capture usable Signal messages, but it is currently collecting screenshots of those messages.

As for personal emails, for the reasons stated above Coinmint has not provided any justification for an intrusive and unnecessary search of the Gmail accounts of Katena's custodians. There is no indication that Katena custodians ever used their personal email accounts for work purposes. | This request is DENIED for the reasons stated in No. 7, above. |

| | | | Finally, Coinmint should already have its own communications with Katena—there is no reason to make Katena jump through more hoops to send Coinmint's own documents back to Coinmint. | |
|---|---|---|---|---|
| 9. | Coinmint's Requests for Production, Set 3, No. 2 requests "All communications between Reddy and Bleck about Katena, Coinmint, and/or JPMorgan related to Bleck's due diligence report." Katena has not committed to responding and producing responsive documents to this request. | Coinmint incorporates its response to discovery dispute no. 1. | Coinmint does not even attempt to explain why this discovery request is necessary, not duplicative of prior requests, and limited to documents that are relevant and material to this case. It cannot do so.<br><br>Coinmint already asked for all communications with Bleck related to Coinmint and the due diligence report in its first set of RFPs. Katena agreed to collect and produce those documents, and did produce them.<br><br>As stated above, Coinmint never previously requested that Katena collect documents from Mr. Reddy as a custodian. Katena is doing so now and will identify all non-privileged documents that are responsive to Coinmint's first set of RFPs, including its existing requests for communications with Bleck regarding Coinmint. | This request is DENIED for the reasons stated in No. 7, above. |

| 10. | Coinmint's Requests for Production, Set 3, No. 3 requests "Documents reflecting any remuneration (whether currency or benefits) given to Maloney, DeNaut, Kinney, and/or Bleck by or at the instruction of Katena, DxCorr, Reddy, Monzon, Gao, or any other personnel under the control of Katena or DxCorr." Katena has not committed to responding and producing responsive documents to this request. | Documents produced by Katena reveal that Reddy selected Bleck to prepare the due diligence report and controlled the information conveyed to Bleck along with the contents of his report.  Documents produced by Katena also reveal that Katena offered employment opportunities to Maloney, DeNaut, and Kinney, and that DeNaut did in fact end up working for Katena.  As such, any payments made to these individuals at the direction of Katena or DxCorr are highly relevant to exposing Katena's fraudulent scheme. | This, again, is Coinmint simply finding reasons to insert its trial themes into an ordinary discovery dispute.  Here, no such documents exist because Katena never paid any remuneration to Messrs. Maloney, DeNaut, Kinney, or Bleck (and Mr. DeNaut was never employed by or otherwise retained by Katena). As for Coinmint's blatant mischaracterization of the documents, the evidence at the hearing will speak for itself. | This request is DENIED for the reasons stated in No. 7, above. |
| 11. | Coinmint's Requests for Production, Set 3, No. 4 requests "All attachments and files exchanged between or among Monzon, Gao, Reddy, Maloney, DeNaut, Bleck, and/or Kinney via WhatsApp, Signal, Telegram, or personal e-mails."  Katena has not committed to responding and producing responsive documents to this request. | Coinmint incorporates its response to discovery dispute no. 3, no.4, and no. 6 | Coinmint does not even attempt to explain why this discovery request is necessary, not duplicative of prior requests, and limited to documents that are relevant and material to this case. It cannot do so.<br><br>Coinmint's proposed document Request is incredibly overbroad. It seeks the production of any documents exchanged between the three co-founders of Katena using messaging apps, regardless of whether those documents have anything to do with Coinmint or with this case.<br><br>Katena has already produced | This request is DENIED for the reasons stated in No. 7, above. |

| | | | |
|---|---|---|---|
| | | documents exchanged by text message or WhatsApp message that are <u>responsive</u> to Coinmint's document requests.  If Coinmint believes that a particular attachment is missing from the production, Katena can consider such requests on a document-by-document basis.  But a blanket order to produce <u>all</u> documents exchanged using messaging platforms is overly broad, unduly burdensome, and does not seek documents that are relevant or material to the issues in this case. | |
| 12. | Coinmint's Requests for Production, Set 3, No. 5 requests "Information sufficient to reconstruct the deleted messages not produced, including, but not limited to, the content of the message and the date/time of the deletion." Katena has not committed to responding and producing responsive documents to this request. | Coinmint incorporates its response to discovery dispute no. 2. | Katena has already produced the message threads themselves and all metadata thereto.  No other such documents exist, so Katena cannot agree to produce them.  If Coinmint wishes to question any witness regarding messages that the witness deleted, Coinmint is free to do so at the hearing. | This request is DENIED for the reasons stated in No. 7, above. |
| 13. | Coinmint's Requests for Production, Set 3, No. 6 requests "All communications between Katena and DxCorr concerning Katena, Bleck, Coinmint, JP Morgan, and/or the use of DxCorr engineers by Katena." Katena has not committed to responding and producing responsive documents to this | Reddy is a founder and principal of both Katena and DxCorr.  Moreover, Katena was relying on DxCorr to design its chip and fulfill its obligations under the agreement.  WhatsApp messages between Monzon and Gao also discussed utilizing the engineers at DxCorr and eventually bringing them onboard as Katena | DxCorr is a chip design consulting firm that was contracted by Katena to design the ASIC chip to be used in Katena's Bitcoin mining rig.  Coinmint seeks the production of "all communications between Katena and DxCorr concerning Katena . . . and the use of DxCorr engineers by Katena"— | This request is DENIED for the reasons stated in No. 7, above. |

| | | | |
|---|---|---|---|
| request. | employees.  However, other than a few text messages with Sagar Reddy, Katena has not produced any communications with DxCorr. | in other words, <u>every single communication between Katena and DxCorr on any topic</u>.  That is incredibly overbroad and seeks the production of documents that are not relevant or material to any claim or defense in this case.  Moreover, these highly sensitive communications are likely to contain Katena trade secrets.  In light of Coinmint's continued refusal to abide by the SPO, Katena cannot risk the disclosure of additional highly sensitive technical documents to Coinmint.<br><br>Any communications between Katena and DxCorr regarding Coinmint and the Bleck Report from the agreed-upon custodians have already been produced. And Katena has already agreed to collect the custodial emails of Mr. Reddy, which—by virtue of his role as Chief Technology Officer at Katena and relationship with DxCorr—may contain additional communications between Katena and DxCorr on those subjects. That is all that Coinmint is entitled to. | |

| 14. | Coinmint's Requests for Production, Set 3, No. 7 requests "All communications, including redlines or comments, concerning Bleck's report." Katena has not committed to responding and producing responsive documents to this request. | Coinmint incorporates its response to discovery dispute no. 1.<br><br>To the extent, individuals other than Reddy and Bleck also made redlines or comments concerning Bleck's report, such communications and documents should also be produced. | Coinmint already requested in its first set of RFPs the production of "[a]ll communications of any kind or nature exchanged between Robert Bleck and any employees, officers, directors, contractors, or agents of Katena in any way relating to, referencing, or referring to Coinmint." Katena agreed to produce and did produce documents responsive to that request. Katena also agreed to produce and did produce all non-privileged internal communications regarding Coinmint, which necessarily includes communications regarding the Bleck report. This request is entirely duplicative of what Katena has already agreed to produced and already produced (or will produce, in the case of Mr. Reddy's custodial file). It is unnecessary. | This request is DENIED for the reasons stated in No. 7, above. |