UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COINMINT, LLC,

    Plaintiff,

v.

KATENA COMPUTING TECHNOLOGIES, INC.,

    Defendant.

Case No. 23-cv-04683-RS

**ORDER DENYING COINMINT'S MOTION TO VACATE ARBITRATION AWARD AND GRANTING KATENA'S PETITION TO CONFIRM ARBITRATION AWARD**

# I. INTRODUCTION

This is a breach of contract case between two bitcoin companies. Following arbitration that resulted in a favorable judgment for Defendant Katena Computing Technologies, LLC ("Katena"), it filed a "petition" to confirm the arbitration award. *See Coinmint, LLC v. Katena Computing Technologies, Inc.*, AAA Case No. 01-22-0001-7627 (2024) (Callahan, Glick, Turitz, Arbs.) (hereinafter, "AAA Case No. 01-22-0001-7627"). Plaintiff Coinmint, LLC ("Coinmint") opposes that petition and moves to vacate the arbitration award. The instant order denies Coinmint's motion to vacate and grants Katena's petition to confirm the arbitration award.

# II. BACKGROUND

As a preliminary matter, a stay was imposed on December 1, 2023 upon request by Katena concurrent with the order compelling arbitration. This order lifts the stay, given that arbitration "has been had in accordance with the term of the agreement" between Coinmint and Katena. 9 U.S.C. § 3. "The power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Wilson v. Wells Fargo & Co.*, No.: 3:20-cv-02307-RBM-WVG 2022 WL 4125220 at *2 (S.D. Cal. Sept. 9, 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The corollary to this power is the ability to lift a stay previously imposed." *Id.* (quoting *Boyle v. Cnty. of Kern*, No. 103-CV-05162-OWW-GSA, 2008 WL 220413, at *5 (E.D. Cal. Jan. 25, 2008)).

Coinmint is a bitcoin mining company. It sought to acquire bitcoin mining rigs from Katena, a start-up company in that business. The dispute in this action arose from a $150 million Sales and Purchase Agreement ("SPA") for bitcoin mining rigs entered into by the parties. The terms of the SPA required Coinmint to pay Katena a down payment of $37.5 million, or $25%, of the contract price to begin construction of the bitcoin mining rigs. Both parties insist the other breached, resulting in the instant dispute.

In November of 2022, Coinmint and Katena entered a Stipulated Protective Order ("SPO") and agreed to keep all proprietary and confidential information from public disclosure and to apply the protections afforded by the SPO to information produced by non-parties. The parties further agreed to limit the use of designated-confidential discovery materials to "prosecuting, defending, or attempting to settle" the arbitration.

Following arbitration, the Arbitration Panel ("the Panel") returned a judgment in favor of Katena, awarding it $23.4 million. Katena filed an ex-parte petition to confirm the arbitration award. Coinmint responded by filing a combined opposition to Katena's petition to confirm the arbitration award as well as a motion to vacate the arbitration award under Section 10 of the Federal Arbitration Act ("FAA").

### III. LEGAL STANDARD

Section 9 of the FAA provides that a federal district court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Judicial review of an arbitration award is limited, and "neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitration

award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 661-62 (9th Cir. 2012). Therefore, "the court must defer to the arbitrator's decision 'as long as the arbitrator . . . even arguably constru[ed] or appl[ied] the contract." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–37 (1987)).

Section 10(a) of the FAA provides that a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Section 10(a)'s limited grounds are designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *U.S. Life Ins. Co.*, 591 F.3d at 1173 (internal quotations omitted). Further, "[i]n determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, we ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). A fair hearing is one where the parties had notice, "the opportunity to be heard and to present relevant and material evidence, and the decisionmakers were not infected with bias." *Id.* (quoting *U.S. Life Ins. Co.*, 591 F.3d at 1177).

## IV. DISCUSSION

Coinmint insists that vacatur is appropriate because the arbitration proceedings were so "fundamentally flawed" that it was deprived of due process. Without specifying on which Section

10 provision it bases its motion,[1] Coinmint suggests that the Panel issued two rulings that "stripped Coinmint of its most basic rights – the rights to be heard and present evidence." First, Coinmint challenges the Panel's ruling that certain witnesses' testimonies need not be recorded or transcribed, insisting that this ruling violates Coinmint's due process rights. Second, Coinmint challenges the Panel's decision to deny Coinmint access to certain critical documents from Katena's virtual data room, an action that purportedly inhibited Coinmint's ability to make its case. Neither of Coinmint's arguments implicate any Section 10(a) ground such that vacatur is warranted.

        *i.*       *Prohibiting the recording or transcription of certain witnesses' testimonies*

The 2013 Commercial Arbitration Rules of the American Arbitration Association ("2013 AAA Rules"), which governed the parties' arbitration, includes Rule R-28. That Rule permits a party seeking a stenographic record to "make arrangements directly with a stenographer and…notify the other parties of these arrangements at least three calendar days in advance of the hearing." 2013 AAA Rules R-28. Coinmint suggests Rule R-28 underpins its right to a transcribed record; a right the Panel contravened.

The arbitration in the instant case spanned eight months and involved several hearings. Fourteen witnesses testified. Coinmint alleges that the Panel "followed Rule R-28" for only ten of those witnesses by permitting a court reporter to transcribe their testimony. On March 9, 2023, the Panel issued Order No. 24, prohibiting the recording of the testimonies of Michael Maloney, Jim Denaut, and Robert Bleck, all witnesses in the instant case as well as named defendants in related litigation. The Panel suggested that it would rely on its own hearing notes and record the testimony for its own use, but that the parties would not receive any recordings. The Panel subsequently added Sagar Reddy to the list of witnesses whose hearing testimony would not be

---

[1] "It is [petitioner's] burden to establish that vacatur is appropriate, and the Court will not take [petitioner's] invitation to scour his brief and extract arguments for him." *Riley v. QuantumScape Corp.*, No. 22-cv-03871-BLF, 2023 WL 1475092, at *15 (N.D. Cal. Feb. 2, 2023), *aff'd*, No. 23-15277, 2024 WL 885034 (9th Cir. Mar. 1, 2024).

transcribed for the same reasons as Maloney, Denaut, and Bleck's.

Prior to implementing this measure, the Panel was confronted with Coinmint's improper conduct in a related litigation. When it initiated that action, Coinmint attached to the complaint fourteen confidential documents that Katena had provided in the arbitration. The Panel issued an order imposing sanctions on Coinmint for violating the SPO and the Panel's previous orders. AAA Case No. 01-22-0001-7627, Order No. 43.

Before any sanctions were imposed on Coinmint, Katena filed a motion to postpone Maloney, Denaut, and Bleck's scheduled hearing testimonies until the Panel imposed a specific sanction on Coinmint. The Panel denied Katena request to postpone the testimonies, but heeded Katena's well-founded concerns by designating the third-party hearing proceedings as confidential. AAA Case No. 01-22-0001-7627, Order No. 24. Coinmint orally moved to reconsider that ruling at a case management conference before the Panel, but did not file any motions or written objections. The Panel responded to Coinmint's concerns by explaining that Rule R-28 "does not create an absolute right to a stenographic record." AAA Case No. 01-22-0001-7627, Order No. 29. Instead, the Panel clarified that Rule R-28 "simply makes clear that if a party desires a stenographic record, that party is responsible for making the arrangements." *Id*. Additionally, the Panel explained:

> By not allowing a court reporter or the preparation of a reporter's transcript, the Panel is not in any way preventing or impeding the taking and receipt of testimonial evidence in this matter. To the contrary, it is creating an environment where the witnesses can answer fully without fear that their testimony in this arbitration will be treated as some type of pre-hearing discovery and used against them in the [related litigation] or some other proceeding.

*Id* at ¶ 4.

Coinmint insists that its due process rights were violated when the Panel issued Order No. 24 and subsequently added Reddy, in Order No. 48, to the list of witnesses whose testimonies would not be transcribed. Specifically, Coinmint maintains that its ability to cross-examine witnesses was severely hindered, it had no record to substantiate its claims, the testimonies of witnesses were not treated equally depending on which party elicited the testimony, the parties

could not adequately prepare findings of fact and conclusions, and that Coinmint lacks a record to show the Panel's conclusions contradicted the transcribed testimony.

These allegations, unrooted in any specific Section 10 ground, fail to persuade. The Panel explained to Coinmint that it had the discretion to prohibit a court reporter from creating a transcript or otherwise recording the four witnesses' testimonies. *See id*. Despite Coinmint's insistence otherwise, the plain language of Rule R-28 does not support the conclusion that it had an absolute right to a transcribed record in the course of the arbitration; instead, the rule clearly suggests that the right to a transcribed record is permissive, not mandatory. Even accepting Coinmint's interpretation of Rule R-28, it is unclear how denying Coinmint its purported right to a transcribed record implicates a Section 10 ground, and Coinmint has provided no authority or clarity to support this argument. Further, the Panel's measures were not intended to sanction Coinmint for violating the SPO. Indeed, the order imposing sanctions on Coinmint for violating the SPO was issued more than two months after the Panel's protective measures were imposed, demonstrating the Panel's desire "maintain the privacy of the evidentiary hearing" as appropriate. AAA Case No. 01-22-0001-7627, Order No. 29 at ¶ 4; AAA Case No. 01-22-0001-7627, Order No. 43; *see* 2013 AAA Rules R-25. Highlighting Coinmint's violations of the SPO, the Panel "exercised its discretion to exclude court reporters from the hearing proceedings so as to assure the privacy and confidentiality of those proceedings," intending to create an environment where the witnesses could provide their testimony freely and without the concern that their statements would be used against them in some other forum. AAA Case No. 01-22-0001-7627, Order No. 29 at ¶ 4.

Coinmint likens the lack of a record in the arbitration proceedings for these witnesses to an incomplete trial court record as encountered by an appellate court, relying on caselaw applicable to judicial proceedings and immigration hearings for the proposition that it has an absolute right to a transcribed proceeding in an arbitration. Coinmint's chosen authority is inapposite. Coinmint has failed to show why arbitration proceedings and judicial proceedings must unfold identically. In fact, the FAA does not specify what procedures must be used when conducting an arbitration, and "[a]rbitrations do not require the same procedural protection as judicial proceedings: the arbitrator

may rely on evidence inadmissible under the Federal Rules of Civil Procedure and parties do not have an absolute right to cross-examine witnesses." *Wailua Associates v. Aetna Cas. & Sur. Co.*, 904 F. Supp. 1142 (D. Haw. 1995). Even the one procedural rule Coinmint concedes is applicable to the arbitration in this case, Rule R-28, does not create an absolute right to a transcribed record.

The suggestions that the Panel's ruling invited false testimony by the four witnesses or that they were held to a different standard are likewise baseless. Rather, the Panel evidently sought to level the playing field by creating an environment where the four adverse witnesses would freely testify—as other witnesses presumably had—without fear that their statements would be used against them in another proceeding. Indeed, this function fits squarely within the Panel's role. *See* 2013 AAA Rules R-25. Given Coinmint's repeated violations of the SPO and its insistence that it was otherwise invalid, the Panel was faced with the challenge of making sure it could reach an ultimate determination in the arbitration supported by a comprehensive record. For this reason, too, Coinmint's suggestion that the Panel exceeded its authority is without support. Nothing in the Panel's orders show that the panel members abused their authority as neutral arbitrators and became "protectors" of the four non-party witnesses.

Coinmint's remaining allegations, including that it was unable to cross-examine witnesses, prepare findings and conclusions, and that it cannot show the Panel's conclusions are contrary to the elicited testimony, are all similarly unfounded under Section 10. In fact, Coinmint *was* permitted to cross-examine the witnesses even without a transcribed record. The claim that it could not rely on a witness' recorded statements during cross-examination fails to implicate a Section 10 violation or that Coinmint otherwise received a hearing that was not "fundamentally fair." The same is true for the contention that it was unable to prepare adequately its findings of facts and conclusions. Moreover, even assuming that the Panel's factual findings were contrary to the unrecorded testimony, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute." *Biller*, 668 F.3d at 662.

  ii. *Denial of certain discovery requests*

Coinmint's second challenge to the arbitration proceedings relates to the Panel's denial of

its request for certain discovery documents from Katena's virtual data room. The discovery sought purportedly comprised of documents and records reviewed by Coinmint and Maloney (as Coinmint's employee) when deciding whether to enter into the contract with Katena. This discovery was supposedly probative because it evidenced Katena's misrepresentation about its experience and financial standing to Coinmint. Coinmint insists that the Panel acted prejudicially by blocking it from receiving that evidence and then apparently ruling "against Coinmint on the merits based in part on the absence of that very evidence." *See Lindsey v. Travelers Com. Ins. Co.*, 636 F. Supp. 3d 1181, 1186 (E.D. Cal. 2022); *aff'd*, No. 22-16795, 2023 WL 8613598 (9th Cir. Dec. 13, 2023) (holding that vacatur is appropriate when the arbitrator denies a party "the very evidence that the arbitrator later faulted [the party] for nor producing" in support of his prima facie case, rendering the hearing "fundamentally unfair" under Section 10(a)(3)).

In its motion, Coinmint once again omits the Panel's explanation of why it prohibited Coinmint from accessing documents in Katena's virtual data room. The Panel's Redfern Chart from February 24, 2023 delves into the parties' discovery disputes. AAA Case No. 01-22-0001-7627, Order No. 23. Recognizing Coinmint's repeated violations of the SPO, reflected in Order No. 6 in the arbitration, the Panel determined that "[i]t is a conundrum of Coinmint's own making that Katena has documents Coinmint would like to inspect," a prerogative "conditioned on maintaining the confidentiality of the documents and limiting their use to this arbitration." AAA Case No. 01-22-0001-7627, Order No. 23, Redfern Chart at 14 (Feb. 24, 2023). To wit, Coinmint's use of documents designated as confidential under the SPO in the related litigation, coupled with its unwillingness to respect the SPO thereafter, required the Panel to deem a further protective order for the documents in Katena's virtual data room necessary. *Id*. at 15. The Panel concluded that the virtual data room documents would be made available to Coinmint once it provided the Panel with "a stipulated protective order covering all documents and information in the virtual data room" that would cover "the protections to be afforded any documents in the production that Katena may designate as 'CONFIDENTIAL' or 'ATTORNEYS EYES ONLY'" as well as remedies if that protective order is violated. *Id*. That second protective order was never entered into by the parties.

Contrary to Coinmint's insistence otherwise, the Panel did afford it the opportunity to receive and use this evidence for its claims, provided it do so in good faith. By failing to agree to a further protective order, Coinmint effectively conceded that access to the virtual data room documents would result in the risk of future violations of the SPO, an untenable and unduly prejudicial outcome for Katena. Instead of bias, therefore, the Panel's rulings as to the virtual data room documents show an effort to minimize prejudice to one party due to the other's misconduct in the course of the arbitration.

Coinmint has also failed to show that the Panel faulted Coinmint for failing to provide evidence on which it later based its Final Award. In fact, the Panel explained that Coinmint "changed the nature of its fraudulent inducement claim" in its Closing Brief, arguing for the first time that "Katena made affirmative misrepresentations to Coinmint in specific marketing documents." AAA Case No. 01-22-0001-7627, Final Award at 43 (Feb. 6, 2024). As the Panel pointed out, Katena's Opening Brief initially focused on "Katena's alleged bribery of Maloney to induce Soniat to sign the SPA and [Purchase Order] # 1." *Id*. at 43 n. 61. Coinmint's departure from its original arguments in its Closing Brief bears no weight on the Panel's conclusions. Therefore, the Panel's rulings as to Katena's virtual data room did not result in a hearing that was fundamentally unfair to Coinmint such that vacatur is appropriate.

## V. CONCLUSION

For the reasons set forth herein, Coinmint's motion to vacate is denied. As no basis under Section 10 of the FAA has been identified to vacate the arbitration award, Katena's petition to confirm the arbitration award is hereby granted. *See* 9 U.S.C. § 9.

**IT IS SO ORDERED**.

Dated: May 29, 2024

_____
RICHARD SEEBORG
Chief United States District Judge